ORIGINAL

1  HULETT HARPER STEWART LLP
   KIRK B. HULETT, SBN: 110726
2  DENNIS STEWART, SBN: 99152
   LINDSAY J. FOSTER, SBN: 254008
3  525 B Street, Suite 760
   San Diego, CA 92101
4  Telephone:    (619) 338-1133
5  Facsimile:    (619) 338-1139

6  Attorneys for Plaintiff Ramon Eugenio Sanchez
7  Ritchie

FILED

2010 JUL 20  PM 4: 09

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

8              IN THE UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 RAMON EUGENIO SANCHEZ RITCHIE,     Case No.  '10 CV 1513 IEG   WVG

11               Plaintiff,

12 v.                                  **COMPLAINT FOR VIOLATIONS OF
                                       BUSINESS AND PROFESSIONS CODE
13 SEMPRA ENERGY, a California         SECTIONS 17200, *ET SEQ.* AND
   corporation,                        TORTIOUS INTERFERENCE**
14
                                       **DEMAND FOR JURY TRIAL**
15               Defendant.
                                       **REQUEST FOR PUNITIVE DAMAGES**
16

17

18

19

20

21

22

23

24

25

26

27

28



COMPLAINT

**INTRODUCTION**

1.     This case arises from a pattern of misconduct on the part of the Defendant and its co-conspirators involving, among other things, false accusations, the resulting false imprisonment of the Plaintiff and the unlawful seizure of over 600 acres of Plaintiff's property located approximately 15 miles north of Ensenada, Mexico.  The false accusations made by Defendant and its agents and their other misconduct caused the Mexican authorities to unlawfully seize Plaintiff's property, to dispossess him of it and to unlawfully arrest, assault and detain Plaintiff.  Immediately upon the unlawful dispossession of Plaintiff and entry onto his property, Defendant and its agents removed from the property part of Plaintiff's trailer housing and bulldozed Plaintiff's permanent house and its fixtures to the ground.  Thereafter, Defendant and its agents furthered their ongoing scheme to defraud the Courts and Mexican authorities through the creation of sham land agreements, knowing such agreements were unlawful, based on false pretense and non-binding. Despite knowledge that it did not legally hold title to Plaintiff's property, Defendant and its agents falsely asserted before several Courts and other Mexican authorities that it, in fact, held legal title. These falsehoods were repeated to Mexican regulatory authorities to secure licenses to build and operate a billion dollar Liquified Natural Gas ("LNG") plant on property abutting Plaintiff's property.  Obtaining title to Plaintiff's property was essential to Defendant's effort to build and operate the LNG Plant.

2.     After much litigation, false imprisonment of the Plaintiff, trespass and destruction by Defendant and its co-conspirators of Plaintiff's personal and real property, Plaintiff was successful in exposing the Defendant's and its co-conspirators' false and illegal acts with respect to his property and has recently been adjudged by the Mexican courts to be the sole legal title holder of the land and thus entitled to the exclusive quiet use, enjoyment and access to the property.  Thereafter, by order of the Court, Mexican police evicted Defendant from Plaintiff's property.  Plaintiff seeks damages, punitive damages and equitable relief for the outrageous and knowingly fraudulent conduct engaged in by Defendant and its co-conspirators.  Plaintiff alleges on information and belief, except as to those allegations describing his own actions, as follows:

1

COMPLAINT

**BACKGROUND**

3.     Plaintiff is an individual who is a citizen of Mexico.  Plaintiff alleges that Defendant Sempra Energy, in conjunction and in concert with Mexican officials which acted as Sempra Energy's agent and co-conspirator, did willfully, maliciously and systematically violate Plaintiff's human rights, by means that include inhuman and degrading treatment, for the purpose and with the effect of suppressing and/or deterring Plaintiff's quiet enjoyment of his property which Sempra Energy desperately needed to legally build and operate a LNG Plant just north of Ensenada, Mexico.

4.     The harm suffered by Plaintiff was inflicted by a combination of Mexican officials who were acting at the behest of, and with the support, and cooperation of Defendant Sempra Energy, including, but not limited to, the presence and participation of Sempra Energy personnel. Sempra Energy and Mexican officials executed an attack upon Plaintiff's land and person.  The unfair and unlawful business practices which emanated from Sempra Energy's California based operations, were engaged in by Sempra Energy and its agents.  As alleged herein, Defendant caused and is responsible for the trespass, intentional infliction of emotional distress, false imprisonment, assault, battery and destruction of Plaintiff's real and personal property.

**JURISDICTION**

5.     Jurisdiction is proper in this Court under title 28 U.S.C. § 1332, because Sempra Energy is a San Diego, California based corporation and Plaintiff is a citizen of Mexico.  Many of the acts complained of herein emanated from Sempra Energy's business offices located in San Diego, California.  The claims stated herein exceed $75,000.00.

6.     Venue is proper in this County because Defendant Sempra Energy is a resident of San Diego County.

**PARTIES**

**Plaintiff**

7.     Plaintiff Ramon Eugenio Sanchez Ritchie is, and was during all relevant times, a citizen of Mexico.

2

**Defendant**

8.     Defendant Sempra Energy is a California corporation.  Its principal place of business and headquarters are located at 101 Ash Street in San Diego, California.  According to its website, Sempra Energy is a Fortune 500 energy services company with 2009 revenues of nearly $8 billion.  Sempra Energy owns, controls and operates regulated and unregulated subsidiaries, including Sempra LNG, Sempra Energy México, and Energía Costa Azul, S. de R.L. de C.V. ("ECA").  It also owns, controls and operates LNG receipt terminals, including the Energía Costa Azul terminal located at lots 24 through 28-1, 28 miles north of Ensenada, Baja California, Mexico.

9.     At all relevant times, Sempra Energy México, and ECA, were Mexican based wholly-owned subsidiaries of Sempra Energy and were controlled by and were agents of Sempra Energy.

10.     At all time herein material, with respect to the events at issue, Sempra Energy, Sempra Energy México, ECA (the "Sempra Entities") and their respective agents (a) conspired with and/or worked in concert with Mexican officials, and/or (b) Mexican officials acted as the agents of and/or worked in concert with each defendant.  The Sempra Entities, including, but not limited to, Sempra Energy management and other personnel in California and other parts of the United States and Mexico were acting within the course and scope of such agency, employment and/or concerted activity.  The wrongful conduct alleged herein was perpetrated by the Sempra Entities' management and other personnel both in Mexico and the United States, including California.

11.     Sempra Energy (a) aided and abetted Sempra LNG, Sempra Energy México, and ECA, in the commission of the acts alleged herein, (b) conspired with Sempra LNG, Sempra Energy México, and ECA, to commit the acts alleged herein, and/or (c) ratified the acts of Sempra LNG, Sempra Energy México, and ECA, alleged herein.

12.     Whenever and wherever reference is made in this Complaint to any conduct committed by Sempra Energy, and/or their agents Sempra LNG, Sempra Energy México, and ECA, such allegations and references shall also be deemed to mean the conduct of Sempra Energy,

3

1   acting individually, jointly and severally, through personnel working in the United States and

2   Mexico for the benefit of Sempra Energy.

3         13.     Plaintiff is informed and believes and based upon such information and belief

4   alleges that Sempra Energy management and other personnel both in California and in other parts

5   of the United States and in Mexico were informed of the ongoing events complained of herein and

6   personally participated in the decision making, planning, preparation, ratification, and/or execution

7   of the plan.

8         14.     Whenever and wherever reference is made to individuals who are not named as

9   Defendants in this Complaint, but who were employees/agents of Sempra Energy, such individuals

10  at all relevant times acted on behalf of the Sempra Entities and within the scope of their respective

11  employments.

12  **Co-Conspirators**

13        15.     Various others, including the Sempra Entitles and others presently unknown to

14  Plaintiffs, participated as coconspirators with the Defendant in the violations of law alleged in this

15  Complaint and have engaged in conduct and made statements in furtherance thereof.  The acts

16  charged in this Complaint have been done by Defendant and its co-conspirators, or were

17  authorized, ordered or done by their respective officers, agents, employees or representatives while

18  actively engaged in the management of Defendant's business or affairs.

19        16.     Each of the Sempra Entities named herein acted as the agent or joint venture of or

20  for the other Sempra Entities with respect to the acts, violations and common course of conduct

21  alleged herein.

22                                        **FACTUAL BACKGROUND**

23  **Plaintiff's Claim to Legal Possession of the Property**

24        17.     In or about 1972, Plaintiff acquired possession of property located adjacent to the

25  Colonial Federal Costa Azul, in Ensenada, Mexico, known as "Las Brisas" (the "Property").  The

26  Property consists of approximately 272 hectares, or 672 acres.  In or about 1993, Plaintiff

27  constructed and maintained his personal residence on the portion of the Property known as Lots A

28  and B.

COMPLAINT

18.     In or about 1992, a purported sale of the Property was made to Elodia Gomez Castañon ("Castañon") and Armando Navarro Peña ("Peña") despite the seller not having legal title or possession of the Property.  However, as a result of Plaintiff's right of possession and ownership of the Property, Castañon and Peña were unable to obtain a certificate of possession from the Secretary of Agrarian Reform, which recognized Plaintiff as the legal owner and possessor and had issued a certificate of ownership in favor of Plaintiff.

**The LNG Plant**

19.     In or about 2001, Sempra Energy, Sempra Energy México, and ECA announced their plan to build the Energía Costa Azul terminal near Ensenada, Mexico (the "LNG Plant").  On or about September 13, 2002, Sempra Energy, through ECA, submitted its applications to obtain the construction and operating permits for the LNG Plant.  The application disclosed that the LNG Plant would be 15 miles north of Ensenada, Baja California, Mexico, and would require hundreds of acres of land for construction and operations, include required setback cushions.  These setback cushions were required because of, among other things the inherent danger to the community of the LNG operations Sempra Energy intended to conduct at Costa Azul.

20.     As least ten properties, including Plaintiff's, were located in or around the intended boundaries of the LNG Plant and the setback cushion and Sempra Energy needed to acquire Plaintiff's property to satisfy the setback requirements.  In or about 2001, Sempra Energy, through Sempra Energy México, retained Francisco Molina Robles to negotiate ECA's acquisition of the properties located within the boundaries of the LNG Plant.  Sempra Energy, through ECA, began to acquire each of the Properties within and around the boundaries of the LNG Plant.  Press articles reflect that ECA paid up to $5 million for each of the properties located within the boundaries and setback cushion of the LNG Plant.

21.     In or about July 2001, Robles arranged a meeting with Plaintiff and his neighbor, Felipe Lopez Ruvalcaba, at Sanborn's Café in Tijuana, Mexico.  The purpose of the meeting was to negotiate ECA's purchase of Ruvalcaba's and Plaintiff's Property.  Plaintiff presented Robles with documentation, including his Certificate of Possession from the Secretary of Agrarian Reform, reflecting that he was in lawful possession and owner of the Property, and informed

5

1   Robles of his intent to negotiate the sale of his property to ECA.

2      22.    On January 11, 2005, Mexico's state-owned electrical utility, Comisión Federal de

3   Electricidad ("CFE"), awarded Sempra Energy's subsidiary, Sempra LNG, a 15-year natural gas

4   supply contract estimated at $1.4 billion.  By the time the CFE awarded Sempra LNG the gas

5   supply contract, Sempra Energy, through Sempra Energy México and ECA, had acquired each and

6   every one of the properties it needed for Sempra LNG to begin the LNG Plant's operations, save

7   Plaintiff's.  Despite not having acquired lawful possession of Plaintiff's Property, and thus in

8   violation of its license to build and operate Sempra LNG, began construction of the LNG Plant

9   along the coast of Baja California, on property immediately adjacent to Plaintiff's Property.

10  **Fraudulent Schemes of Sempra Energy and Others to Illegally Acquire Plaintiff's Property and Obtain the Operating Permit for the LNG Plant**

12      23.    In order to avoid any delays in acquiring possession of Plaintiff's Property, to

13  obtain the operating permit for the LNG Plant and to commence operations, in or about 2005,

14  Sempra Energy, Sempra Energy México and ECA, and it co-conspirators devised and

15  implemented secret schemes to fraudulently acquire possession of Plaintiff's Property in order to

16  obtain the requisite permits from the CFE. As described below, Sempra Energy and its co-

17  conspirators, participated in executing the fraudulent scheme.

18      24.    In or about 2005, Sempra Energy, through Sempra Energy Vice President and

19  ECA representative, Darcel Lloyd Hulse, entered into an agreement with Armando Navarro Peña,

20  Gabriela Natera Ramirez, and Dinorah Villafan Gutierrez, who had a power of attorney to act for

21  the Property's original possessors, Castañon, for the purported sale of the Property to ECA.

22  Sempra Energy and its co-conspirators knew that Plaintiff, and not Peña, Ramirez or Castañon,

23  was the legal possessor and owner of the Property, and that Gutierrez could not lawfully effectuate

24  a sale of the Property on behalf of Castañon because Gutierrez's power of attorney to do so

25  expired when Castañon died on October 10, 2004.

26      25.    In furtherance of the scheme, on January 31, 2006, Sempra Energy, through

27  Sempra LNG's Vice-President and CEO, Hulse, executed a purchase agreement reflecting ECA's

28  purported purchase of the Property from Peña, Ramirez and Castañon.  Thereafter, Sempra Energy

COMPLAINT

1  caused ECA to file the sham purchase agreement relating to the Property with Mexican officials in

2  furtherance of the schemes to illegally obtain title and possession of Plaintiff's Property and

3  defraud the CFE into granting the operating permit for the LNG Plant.

4        26.     Thereafter, in order to obtain the operating permit for the LNG Plant, the Sempra

5  Entities, through their representatives, submitted knowingly false documents to Mexican

6  governmental agents and the Mexican courts falsely reflecting ECA's purported ownership and

7  possession of the Property through the Peña, Ramirez, and Castañon agreement.

8  **Sempra Energy's False Prosecution of Plaintiff, Witness Tampering and Attempted Bribery**

9        27.     In furtherance of the fraudulent scheme and in order to prevent disruption of the

10  LNG Plant's operations resulting from Plaintiff's ownership and right to possess the property,

11  Sempra Energy, through ECA's General Counsel, Rippa, and ECA attorney, Sergio Fillad Fahme,

12  met with the Lieutenant Governor, Bernardo Martinez Aguirre, who referred them to the Attorney

13  General of Baja California, Mexico, to file a criminal complaint to have Plaintiff forcibly removed

14  from the Property under the guise and false representation that Plaintiff was an illegal squatter who

15  had unlawfully dispossessed and evicted ECA from the Property.  Sempra Energy, through its

16  agents, Rippa and Fahme gave the Attorney General the sham purchase agreement to initiate the

17  criminal prosecution of Plaintiff to remove him from his property.  Rippa and Fahme fraudulently

18  concealed from the Courts the fact that Sempra Energy knew as early as 2001 that Plaintiff was the

19  lawful possessor of the Property and that Castañon, as the purported sellers of the Property to

20  ECA, was deceased when the sham purchase agreement was executed.

21        28.     In furtherance of the fraudulent scheme, on or about July 21, 2006, Sempra Energy

22  caused the Attorney General to institute the criminal prosecution of Plaintiff for his purported

23  unlawful eviction of ECA from the Property.  In reliance on the sham purchase agreement

24  reflecting ECA's purported ownership of the Property and the false statements of Rippa and Fillad,

25  the Attorney General *forcibly removed Plaintiff* and his family from his Property.

26        29.     The Sempra Entities, in furtherance of their conspiracy to oust Plaintiff and

27  thereafter wrongfully possess and profitably use Plaintiff's land, paid $16,000 in cash to Mexican

28  officials who would not otherwise have raided Plaintiff's property and falsely arrested Plaintiff.

1   Once this illegal raid was successfully completed and Plaintiff's home destroyed, Sempra

2   Energy's management rewarded Alex Rios, a key LNG Plant employee with an all expenses paid

3   $22,000 vacation to Europe, all disguised by Sempra Energy as a "bonus."   The unlawful

4   fraudulent eviction was unique in other ways.  Not only was the bulldozing of Plaintiff's ranch

5   house swift and complete, but there was the establishment of a 50 person armed guard force on the

6   property, the payment of unusually large, and thus suspect, lawyer and other "eviction" costs, and

7   a purported contract to build an exorbitantly priced $1.0 million perimeter fence.  Finally, not

8   content to merely destroy Plaintiff's home and assault his family in the process of eviction,

9   Sempra Energy through its agents filed false police reports and insisted even after securing

10  Plaintiff's land to their own use, to have him arrested and detained.

11          30.     The Sempra Entities, through their representative Francisco Molina Robles, asked

12  Plaintiff's neighbor, Felipe Lopez Ruvalcaba, to lie to the Attorney General regarding Plaintiff's

13  claim of ownership of the Property.   The Sempra Entities, through Rippa, and another ECA

14  attorney, Gerardo Ranero Puig, as well as Armando Navarro Peña, and others, presented false

15  testimony at trial purporting to establish that Plaintiff had illegally entered the Property in August

16  2006, caused damage to the Property, and unlawfully evicted ECA and its security officers from

17  the Property.  To conceal the fact that the purchase of the Property was a sham, Sempra Energy

18  presented further false testimony through Peña that Castañon was residing in Nicaragua in

19  September 2006, even though Castañon had died on August 10, 2004.

20          31.     In furtherance of the fraudulent scheme, on or about April 16, 2008, Sempra

21  Energy, through its Managing Attorney, Raul Olamendi Smith, retained private investigator, Jaime

22  Niebla, of Chula Vista, California, for the purpose of harassing and intimidating Plaintiff under the

23  guise of conducting surveillance and reporting on Plaintiff and his family and others, including

24  Plaintiff's lawyer, Omar Paz Arrellano, and judicial officials in Baja California.  On or about

25  June 30, 2008, after discovering that he was being followed by Niebla and reasonably fearing for

26  his physical safety, Plaintiff called the local police to inform them of Niebla's activities.  When

27  Niebla called Lt. Governor Aguirre and informed him that the local police had detained him,

28  Aguirre directed Niebla to conceal Niebla's association with Sempra Energy.  ECA's General

8

1    Counsel, Rippa, subsequently directed Niebla to alter his invoices to conceal from the authorities

2    the true nature and dates of Niebla's investigation and surveillance of Plaintiff.

3           32.     Thereafter, based on Sempra Energy's false testimony, the First Criminal Judge of

4    Tijuana, Mexico, found Plaintiff guilty of unlawfully evicting ECA from the Property.  In March

5    2009, the Superior Court of the Tenth District of Ensenada, Mexico *reversed* the trial court's

6    conviction of Plaintiff and held that Plaintiff was the legal possessor of the Property and that the

7    purported sale of the Property to ECA was ineffective.

8           33.     Later, in 2009, based on Sempra Energy's and its agent's further false assertions

9    and material omissions, the Attorney General instituted a second criminal prosecution against

10   Plaintiff relating to his ownership of the property.  Sempra Energy and its co-conspirators again

11   presented false evidence at trial purporting to establish that Plaintiff was not the lawful possessor

12   of the Property.

13          34.     On March 10, 2010, the Superior Court for the Tenth District of Baja California,

14   Mexico, held that Plaintiff was the legal possessor of the Property and absolved him of any

15   criminal liability relating to ECA's allegation of dispossession and eviction.  The Superior Court

16   re-iterated and again found that Plaintiff is the owner and has been in lawful possession of the

17   Property since 1983 and that Sempra Energy, Sempra Energy México, and ECA knew as early as

18   July 18, 2001, that Plaintiff, and not Peña, Gutierrez or Castañon, was in lawful possession of the

19   Property.  It further ordered that possession of the Property be restored to Plaintiff.  As a result of

20   Sempra Energy's failure to comply with the court's order on May 24, 2010, the court ordered that

21   Plaintiff's Property be restored to him within 24 hours of the issuance of the Order.  The Mexican

22   authorities executed the Order on May 25, 2010, and thereafter restored possession of the Property

23   to Plaintiff.  However, because there now exists an LNG Plant and pipeline within walking

24   distance from Plaintiff's Property, Plaintiff is no longer able to use or enjoy the Property.

25   **False Statements to Licensing Authorities**

26          35.     In addition to the false statements identified in the preceding paragraphs, Sempra

27   Energy concealed from Mexico's LNG licensing authorities that the LNG Plant is in violation of

28   the setback cushion required for the level of gas being produced by it and thus poses a danger to

1  the surrounding community.  Despite the lack of the requisite setback cushion, Sempra LNG's

2  website falsely states that the LNG Plant is "far removed from any residential areas . . . in a

3  remote, undeveloped area that is suitable for infrastructure, including energy storage."

4  **The Effect of Sempra Energy's Illegal Conduct on California**

5       36.     As a result of Sempra Energy's and its co-conspirators fraudulent scheme and

6  illegal activities relating to Plaintiff's Property and the LNG Plant, Sempra Energy has obtained a

7  competitive advantage in the United States and has impacted the United States economy.  ECA

8  transports fifty-percent of the LNG Plant's gas production into the United States largely through

9  pipes and terminals located in California.  According to ECA's website, the LNG Plant "provides

10  a new supply alternative to California and the West, where an increasing imbalance between

11  supply and demand has led to rapidly escalating natural gas prices and electric rates."

12       37.     According to Sempra Energy's annual reports, the LNG Plant generates large

13  profits for Sempra Energy in California.  Further, despite the Mexican court rulings affirming

14  Plaintiff's entitlement to lawful possession of the Property, ECA continues to operate the LNG

15  Plant even though without legal possession of Plaintiff's Property, the LNG Plant may not legally

16  operate.

17       38.     Each of the foregoing acts and pattern of misconduct involved and were furthered

18  by the use of interstate or foreign wires and mail, in order to transmit documentation, including

19  false documentation designed to conceal the true nature of the facts and payment relating to the

20  Property and LNG Plant, the transfer of funds, including funds used for unlawful purposes and

21  communications relating to Plaintiff, the Property and the LNG Plant.

22                                **FIRST CLAIM FOR RELIEF**

23       **Violation of California Business and Professional Code Sections 17200, *et seq.*,**

24                              **Unfair Business Practices**

25       39.     Plaintiff incorporates by reference the previous statements and allegations as if

26  restated herein.

27       40.     Plaintiff brings this cause of action on behalf of himself pursuant to Business &

28  Professions Code § 17204.  The Defendant's conduct as alleged herein has been and continues to

10

COMPLAINT

be deleterious to Plaintiff, and Plaintiff is seeking to enforce important rights affecting the public interest within the meaning of the Code of Civil Procedure §1021.5.227.   Plaintiff also seeks compensation for the loss of his property, the personal financial impacts he has suffered as a result of Defendant's unfair business practices, and unjust enrichment.

41.     The California Business & Professions Code §§17200, *et seq.* prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent business acts or practice." These acts or practices consist of those forbidden by law.  Defendant's conduct constitutes violations of each of the three prongs of § 17200, unlawful, unfair and fraudulent, a conspiracy to violate § 17200 and the aiding and abetting of § 17200 violations.

42.     The unlawful, unfair, and fraudulent acts and practices described herein constitute ongoing and continuous unfair business practices within the meaning of Business & Professions Code §§ 17200, *et seq.*, as they are prohibited by state, federal, and international laws.

43.     Defendant's practices described herein offend established public polices and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous and violate policies reflected in the laws referred to herein.

44.     Such practices include, but are not limited to, fraud, assault, battery, false imprisonment, bribery, perjury, malicious prosecution, abuse of process, and the making of material misrepresentations to Mexican courts and authorities.  Plaintiff and members of the public have been in the past and will in the future likely be damaged by these practices.

45.     Plaintiff seeks an injunction, disgorgement of all profits resulting from these unfair business practices, restitution and other appropriate relief as provided in California Business & Professions Code § 17203.

## SECOND CLAIM FOR RELIEF

### False Imprisonment

46.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

47.     On information or belief, Defendant, by and through its agents, individually and as part of the conspiracy alleged herein intentionally and unlawfully exercised force or the express or

11

1   implied threat of force to restrain, detain or confine Plaintiff on an arbitrary and unlawful basis.

2   The restraint, detention, or confinement compelled Plaintiff to stay somewhere against his will for

3   some appreciable time.  Plaintiff did not consent to this restraint, detention or confinement.

4       48.     Defendant's actions constituted false imprisonment under the standards of law

5   applied by California and the United States.

6       49.     With respect to each of the foregoing causes of action, the facts alleged herein

7   show that Defendant acted fraudulently, oppressively, and maliciously.  Pursuant to California

8   Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be

9   determined at trial.

10      50.     Defendant is liable for committing, conspiring to commit and aiding and abetting

11  and/or ratifying these abuses as specified in this cause of action.

12                          **THIRD CLAIM FOR RELIEF**

13                                **Assault**

14      51.     Plaintiff incorporates by reference the previous statements and allegations as if

15  restated herein.

16      52.     On information or belief, Defendant, by and through its agents, conduct caused

17  Plaintiff to be subjected to battery and/or intentional invasions of his right to be free from

18  offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability

19  to subject Plaintiff to immediate, intentional, offensive, and harmful touching.

20      53.     The act described herein constitutes assault, actionable under the laws of

21  California and the United States.

22      54.     Defendant's practices described herein offend established public polices and

23  involve business practices that are immoral, unethical, oppressive, and/or unscrupulous and violate

24  policies reflected in the laws referred to herein.

25      55.     Defendant is liable for committing, conspiring to commit and aiding and abetting

26  and/or ratifying these abuses, as set forth in this cause of action.

27

28

COMPLAINT

## FOURTH CLAIM FOR RELIEF

### Battery

56.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

57.     On information or belief, Defendant, by and through its agents, intentionally committed acts that resulted in harmful or offensive treatment of Plaintiff's person and produced bodily harm. Plaintiff did not consent to the contact and treatment that caused injury, damage, loss or harm to Plaintiff.

58.     The acts described constitute battery, actionable under the laws of California and the United States.

59.     With respect to each of the foregoing causes of action, the facts alleged herein show that Defendant acted fraudulently, oppressively, and maliciously.   Pursuant to California Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

60.     Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

## FIFTH CLAIM FOR RELIEF

### Trespass

61.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

62.     On or about 2001, Plaintiff was in possession of certain real property situated in Northern Mexico.

63.     Plaintiff was using the property described in paragraph 17 as a place of residence and agrarian use.

64.     In or about September 2006, Defendant, without the consent or authority and against the will of the Plaintiff, entered onto the Property and forcibly ejected Plaintiff and his family and destroyed Plaintiff's home and other structures.

65.     Defendant excluded Plaintiff from his Property until ordered in 2010 to return the

13

1   Property to Plaintiff.

2        66.     By reason of Defendant's conduct, Plaintiff has been deprived of the use and

3   possession of the Property for a period of years and has been damages thereby.

4        67.     With respect to each of the foregoing causes of action, the facts alleged herein

5   show that Defendant acted fraudulently, oppressively, and maliciously.  Pursuant to California

6   Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be

7   determined at trial.

8        68.     Defendant is liable for committing, conspiring to commit and aiding and abetting

9   and/or ratifying these trespasses, as specified in this cause of action.

10   **SIXTH CLAIM FOR RELIEF**

11   **Conversion**

12        69.     Plaintiff incorporates by reference the previous statements and allegations as if

13   restated herein.

14        70.     Defendant deprived Plaintiff of property by wrongful acts and disposition as

15   alleged above.  At the time of the conversion, Plaintiff owned and was in possession of the

16   Property.

17        71.     As a result of Defendant's conversion of Plaintiff's Property, Plaintiff was

18   damaged by the loss and/or the loss of the use of his Property.

19        72.     Defendant is liable for committing, conspiring to commit and aiding and abetting

20   and/or ratifying these trespasses, as specified in this cause of action.

21        73.     With respect to each of the foregoing causes of action, the facts alleged herein

22   show that Defendant acted fraudulently, oppressively, and maliciously.  Pursuant to California

23   Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be

24   determined at trial.

25   **SEVENTH CLAIM FOR RELIEF**

26   **Fraud**

27        74.     Plaintiff incorporates by reference the previous statements and allegations as if

28   restated herein.

14

75.   Defendant made false representations regarding Plaintiff's property in Northern Mexico to the Mexican courts and authorities with the intent to defraud Plaintiff.

76.   Defendant's misrepresentations were material.

77.   Defendant knew that its misrepresentations and omissions were false and misleading when they made them, or acted in reckless disregard as to whether its misrepresentations and omissions were true when made.

78.   Defendant's misrepresentations and omissions were made with the intent to induce Mexican authorities and court's reliance upon its statements and to defraud Plaintiff of his property in Northern Mexico.

79.   Defendant concealed these misrepresentations from Plaintiff.

80.   Mexican courts and authorities relied upon Defendant's misrepresentations and omissions and seized Plaintiff's Property, subjecting Plaintiff to arrest and detention.

81.   As a direct and proximate result of Defendant's conduct as described herein, Plaintiff has suffered damages, all in an amount to be determined at the time of trial, according to the evidence to be introduced by the parties.

82.   With respect to each of the foregoing causes of action, the facts alleged herein show that Defendant acted fraudulently, oppressively, and maliciously.   Pursuant to California Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

83.   Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying these trespasses, as specified in this cause of action.

## EIGHTH CLAIM FOR RELIEF

### Negligence

84.   Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

85.   On information or belief, Defendant failed to use ordinary or reasonable care in order to avoid injury to Plaintiff.   Defendant's negligence was a cause of injury, damage, loss or harm to Plaintiff.

86.     As a result of these acts, Plaintiff suffered harm, including, but not limited to, battery, false imprisonment, assault, and severe emotional distress.   Defendant's conduct constitutes negligence and is actionable under the causes of action as set forth in this Complaint.

87.     Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying these breaches as specified in this cause of action.

## NINTH CLAIM FOR RELIEF

### Intentional Interference with Prospective Economic Advantage

88.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

89.     Defendant knew of Plaintiff's contractual rights and ownership of his property in Northern Mexico, from which he stood to receive a substantial economic benefit.  Defendant knew that a disruption of Plaintiff's ownership rights to his property in Northern Mexico and the substantial economic benefit he stood to obtain was substantially certain to result from its conduct. This conduct was independently wrongful because it was procured by fraud and corruption and by the violations of law herein alleged.   The purpose and effect of Defendant's conduct was to remove Plaintiff's authority to sell his property. Defendant's conduct also constituted an act of unfair competition pursuant to California Business & Professions Code §§ 17200, *et seq.* as hereinabove alleged because their conduct eliminated Plaintiff's possession of his property.

90.     Defendant's conduct intentionally interfered with and disrupted Plaintiff's ownership rights to his property in Northern Mexico and the substantial economic benefit he stood to obtain.  Plaintiff suffered damages in an amount to be determined by the evidence.

91.     Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying these interferences as specified in this cause of action.

## TENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

92.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

93.     As alleged in greater detail in the preceding paragraphs, the Sempra Entities

16

intentionally made untrue statements of material fact and/or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, and provided material false information to Mexican authorities directed at depriving Plaintiff of his Property. The Sempra Entities were intentionally involved in conceiving, negotiating, and effectuating, and directing others to effectuate, the fraudulent purchase of the Property without his consent.

94.     The Sempra Entities further acted intentionally and outrageously to cause Plaintiff and his entire family to be evicted from the Property. The Sempra Entities intentionally used false documents and misrepresentations to various governmental officials in order to have Plaintiff arrested and prosecuted by the Mexican government under the guise that he had unlawfully dispossessed the Sempra Entities from the Property. Further, Sempra Energy intentionally hired and directed a private investigator to investigate and report on Plaintiff and his family to cause Plaintiff to cease pursuing his claim of ownership of the Property.

95.     Plaintiff was injured as a direct result of the above-stated actions given that he was dispossessed of his Property, cannot regain the prior use of the Property due to the fact that the Property now sits within the setback cushion of the LNG Plant's operations and has been contaminated by the LNG Plant, was falsely prosecuted by Mexican authorities, causing him humiliation, loss of use of the Property, and experienced harassment and humiliation as a result of the egregious conduct the Sempra Entities directed at Plaintiff. Such injuries were foreseeable and a proximate result of the Sempra Entities' actions.

96.     Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying the infliction of emotional distress as specified in this cause of action.

97.     As a proximate result of the Defendant's intentional actions, malice and oppression, Plaintiff has and will continue to suffer anxiety, fear, humiliation, and discomfort.

98.     With respect to each of the foregoing causes of action, the facts alleged herein show that Defendant acted fraudulently, oppressively, and maliciously. Pursuant to California Civil Code § 3294, therefore, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

17

**ELEVENTH CLAIM FOR RELIEF**

**Negligent Infliction of Emotional Distress**

99.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

100.     As alleged in greater detail in the preceding paragraphs, the Sempra Entities were aware that Plaintiff claimed lawful possession of the land that Sempra Energy needed to acquire in order to operate LNG Plant.   Defendant had a duty to Plaintiff to properly investigate his ownership claim.  Defendant negligently ignored Plaintiff's claim of ownership of the Property, and effectuated an illegal purchase of the Property without his consent.  Despite knowledge that Plaintiff claimed ownership rights to the Property, the Defendant negligently failed to inform Mexican authorities and others of Plaintiff's claim to lawful possession of the Property.

101.     As a result of the Defendant's negligent conduct, Plaintiff and his family were evicted from the Property and due to the fact the Property now sits within the setback cushion of the LNG Plant, Plaintiff has been forced to relocate, was prosecuted by Mexican authorities for purported unlawful possession, and experienced harassment and humiliation.  Such injuries were foreseeable and a proximate result of the Defendant's negligent actions.

102.     Defendant is liable for committing, conspiring to commit and aiding and abetting and/or ratifying the infliction of emotional distress as specified in this cause of action.

**TWELFTH CLAIM FOR RELIEF**

**Unjust Enrichment**

103.     Plaintiff incorporates by reference the previous statements and allegations as if restated herein.

104.     At all times relevant to this Complaint, the Defendant knew that it had to acquire the rights to the Property lawfully possessed by Plaintiff in order to begin operations of the LNG Plant.  When Defendant was unable to do so by lawful means, the Sempra Entities conspired to create a scheme to make it appear that it had lawfully acquired title to the Property.  This, in turn, allowed the Sempra Entities to falsely represent to Mexican authorities that it had acquired all the land necessary to receive approval to operate the LNG Plant, and that Plaintiff was in unlawful

18

1   possession of the Property.

2        105.    The Sempra Entities actions caused Plaintiff to be evicted from his Property and

3   prosecuted so that the Sempra Entities could operate the LNG Plant within the boundaries of

4   Plaintiff's Property.  The Sempra Entities failed to deliver money, security or other consideration

5   for its use of the Property.  By virtue of its unlawful use of the Property, the Sempra Entities have

6   been unjustly enriched in an amount equal to, but not limited by, the profit resulting from the

7   operation of the LNG Plant.

8        106.    Plaintiff is entitled to restitution and recovery of a sum equal to the amount by

9   which the Sempra Entities have been unjustly enriched.

10                          **THIRTEENTH CLAIM FOR RELIEF**

11                          **Imposition of a Constructive Trust**

12       107.    Plaintiff incorporates by reference the previous statements and allegations as if

13   restated herein.

14       108.    At all material times herein, Plaintiff was the owner of residential real property

15   located in Northern Mexico.

16       109.    Between September 2006 and June 2010, Defendant unlawfully acquired and

17   exercised control over Plaintiff's property.  It used Plaintiff's property to secure licenses and to

18   operate a LNG plant.

19       110.    Defendant unjustly benefited during this time period because it was able through

20   the unlawful taking of Plaintiff's property to build and operate the LNG Plant and make

21   substantial profits as a result.

22       111.    By virtue of their fraudulent acts, Defendant held the property described above

23   during September 2006 to June 2010 as a constructive trustee for Plaintiff's benefit.

24                                    **PRAYER**

25       WHEREFORE, Plaintiff demands judgment against Defendant as follows:

26       A.      For restitution in the amount by which Sempra Energy and the other Sempra

27   Entities have been unjustly enriched, according to proof at trial;

28       B.      For compensatory and punitive damages in amounts to be determined at trial;

                                      19

1        C.     For an order declaring that Defendant and the Sempra Entities hold all monies

2   earned from their unlawful possession of Plaintiff's property in trust for Plaintiff;

3        D.     The costs and disbursements incurred in prosecuting this action, including a

4   reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

5        E.     Such other and further legal and equitable relief as the Court may deem just and

6   proper in these circumstances.

**JURY DEMAND**

8        Plaintiff demands a trial by jury.

9   DATED: July 20, 2010                HULETT HARPER STEWART LLP
                                      KIRK B. HULETT

10                                          DENNIS STEWART
                                      LINDSAY J. FOSTER

14                                        KIRK B. HULETT

15                                        525 B Street, Suite 760
                                      San Diego, CA 92101

16                                        Telephone:    (619) 338-1133
                                      Facsimile:    (619) 338-1139

18                                          Attorneys for Plaintiff, Ramon Eugenio Sanchez
                                      Ritchie

JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RAMON EUGENIO SANCHEZ RITCHIE | SEMPRA ENERGY, a California corporation 10 JUL 20 PM 4: 08 |
| (b)  County of Residence of First Listed Plaintiff **Baja California , Mex.** (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant U.S. **San Diego County** SOUTHERN DISTRICT OF CALIFORNIA (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. BY_____ DEPUTY |
| (c)  Attorney's (Firm Name, Address, and Telephone Number) Kirk B. Hulett, HULETT HARPER STEWART, 525 B Street, #760, San Diego, CA 92101 Tel: 619/338-1133 | Attorneys (If Known) |

**'10 CV 1513 IEG    WVG**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 861 HIA (1395ff) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | | ☐ 862 Black Lung (923) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | | ☐ 864 SSID Title XVI | ☐ 950 Constitutionality of State Statutes |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | |
| | ☐ 442 Employment | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | |
| | | | ☐ 465 Other Immigration Actions | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sec 1332

Brief description of cause:
Tortious Interference and Violations of Cal. Bus. Prof. Code sec 17200

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
07/20/2010

SIGNATURE OF ATTORNEY OF RECORD
Kirk B. Hulett

**FOR OFFICE USE ONLY**

RECEIPT # 16081   AMOUNT $350  7/20/10 BH   APPLYING IFP   JUDGE   MAG. JUDGE

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS016081
Cashier ID: bhartman
Transaction Date: 07/20/2010
Payer Name: HULLETT HARPER STEWART
----------------------------------
CIVIL FILING FEE
 For: RITCHIE V SEMPRA ENERGY
 Case/Party: D-CAS-3-10-CV-001513-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 8463
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```