# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON EUGENIO SANCHEZ RITCHIE,<br><br>  vs.   Plaintiff,<br><br>SEMPRA ENERGY,<br><br>                            Defendant. | CASE NO. 10CV1513 JLS (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 4.) |

Presently before the Court is Defendant Sempra Energy's (Defendant or Sempra) motion to dismiss Plaintiff's complaint. (Doc. No. 4 (Mot. to Dismiss).) Also before the Court is Plaintiff Ramon Eugenio Sanchez Ritchie's response in opposition (Doc. No. 8 (Opp'n)) and Defendant's reply in support. (Doc. No. 9 (Reply).) For the reasons stated below, the Court **GRANTS** Defendant's motion.

## BACKGROUND

Plaintiff brings this suit based on events occurring in Mexico. What follows is a story spanning nearly 40 years.

**1.    Acquiring the Property**

In 1972, Plaintiff acquired approximately 672 acres of property (the Property) in Ensenada, Mexico. (Doc. No. 1 (Complaint) ¶ 17.) Twenty years later, "a purported sale of the Property was made to Elodia Gomez Castañon (Castañon) and Armando Navarro Pena (Pena) despite the seller not having legal title or possession of the Property." (*Id.* ¶ 18.) Castañon and Pena were "unable to obtain a certificate of possession" from their purchase. (*Id.*)

1          In 2001, Sempra and associated subsidiaries—Sempra LNG, Sempra Energy Mexico, and
2   Energia Costa Azul (ECA)—announced their plan to build a power plant (the LNG Plant) near
3   Ensenada, Mexico. (*Id.* ¶ 19.) As part of this plan, Sempra had to acquire land around the LNG
4   Plant in order to create a setback cushion to protect the surrounding community. (*Id.*) Plaintiff's
5   property fell within this setback cushion. (*Id.* ¶ 21.)
6          That same year, Sempra retained Francisco Molina Robles (Robles) to negotiate the
7   purchase of the land around the LNG Plant. (*Id.* ¶ 20.) Robles met with Plaintiff in July of that
8   year to negotiate purchase of the Property. (*Id.* ¶ 21.)
9          Four years later, Mexico's state-owned electrical utility, Comisión Federal de Electricidad,
10  awarded Sempra and its subsidiaries a 15-year natural gas supply contract. (*Id.* ¶ 22.) At this
11  time, Sempra had acquired all of the properties necessary to begin building the LNG Plant, save
12  for Plaintiff's. (*Id.*) In spite of this, Sempra began constructing the plant. (*Id.*)
13         Hoping to avoid delays, Sempra and its subsidiaries allegedly devised a plan to acquire
14  possession of Plaintiff's property. (*Id.* ¶ 23.) In 2005, Darcel Lloyd Hulse—a Sempra
15  representative—entered into a purchase agreement for the Property with Pena, Gabriela Natera
16  Ramirez, and Dinorah Villafan Gutierrez (Gutierrez). (*Id.* at 24.) Sempra allegedly knew that the
17  aforementioned parties did not actually own the Property. (*Id.*) Moreover, Gutierrez—who had
18  power of attorney to act for Castañon—could not properly exercise his power of attorney because
19  it had expired when Castañon deceased in 2004. (*Id.*)
20         Despite these alleged fatal mistakes, on January 31, 2006, the parties executed a purchase
21  agreement reflecting Sempra's purchase of the Property. (*Id.* at 25.) And the purchase agreement
22  was filed with the relevant Mexican officials. (*Id.*)
23  **2.    Forcible Removal**
24         Following purchase of the Property, Sempra—through ECA attorneys—met with
25  Lieutenant Governor Bernardo Martinez Aguirre and filed a criminal complaint with the Attorney
26  General of Baja California, Mexico, to have Plaintiff forcibly removed from the Property. (*Id.*
27  ¶ 27.) During this transaction, Sempra provided the "sham purchase agreement" and "fraudulently
28  concealed" that Castañon was deceased when the purchase agreement was executed. (*Id.*) As a

result, Plaintiff and his family were forcibly removed from the property on July 21, 2006.  (*Id.* ¶ 28.)

But removal, apparently, was not enough.  Sempra allegedly paid $16,000 to Mexican officials to raid the property and bulldoze Plaintiff's ranch house.  (*Id.* ¶ 29.)  And after completing the destruction, "there was the establishment of a 50 person armed guard force on the property . . . and a purported contract to build a[] . . . $1.0 million perimeter fence."  (*Id.*)  Not content with occupying the property, Sempra "filed false police reports" and insisted on having Plaintiff arrested and detained.  (*Id.*)  Sempra alleged that Plaintiff "had illegally entered the Property in August 2006, caused damage to the property, and unlawfully evicted ECA and its security officers from the Property."[1]  (*Id.* ¶ 30.)  At trial for these charges, Sempra and its associates provided false testimony regarding Plaintiff's entry and Sempra's ownership of the property.  (*Id.* ¶ 32.)  The trial court found Plaintiff guilty of unlawfully evicting ECA from the Property.  (*Id.*)  Plaintiff's defeat did not last long.  In March 2009, the appeals court reversed the trial court and held that Plaintiff was the legal possessor of the Property and that the sale to Sempra was ineffective.  (*Id.*)

The legal back and forth continued, however, as the Attorney General "instituted a second criminal prosecution against Plaintiff relating to his ownership of the property."  (*Id.* at 33.)  Nonetheless, on March 10, 2010, the appeals court once again "held that Plaintiff was the legal possessor of the Property and absolved him of any criminal liability relating to ECA's allegation of dispossession and eviction."  (*Id.* ¶ 34.)  With things finally looking up for Plaintiff, the court "ordered that possession of the Property be restored to Plaintiff."  (*Id.*)  The victory was bittersweet, however; the LNG Plant is within walking distance, and Plaintiff is "no longer able to use or enjoy the Property."  (*Id.*)

**3.    The Present Action**

As a result of Sempra's actions, Plaintiff brings the present suit.  Filed on July 7, 2010, Plaintiff's complaint alleges thirteen claims for relief.  They include: (1) Violations of California

---

[1] During this time, Sempra hired private investigator Jaime Niebla (Niebla) to harass and intimidate Plaintiff "under the guise of conducting surveillance and reporting." (Complaint ¶ 31.)

1  Business and Professional Code Sections 17200, et seq., (UCL); (2) False Imprisonment; (3)
2  Assault; (4) Battery; (5) Trespass; (6) Conversion; (7) Fraud; (8) Negligence; (9) Intentional
3  Interference with Prospective Economic Advantage; (10) Intentional Infliction of Emotional
4  Distress (IIED); (11) Negligent Infliction of Emotional Distress (NIED); (12) Unjust Enrichment;
5  and (13) Imposition of a Constructive Trust.  Not long after receiving the complaint, Sempra filed
6  the present motion to dismiss.

## LEGAL STANDARD

8  Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that
9  the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a
10 motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and
11 sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
12 statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not
13 require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
14 defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949
15 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a
16 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
17 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
18 *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a
19 complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,
20 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

21 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
22 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,
23 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts
24 pled "allow[] the court to draw the reasonable inference that the defendant is liable for the
25 misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must
26 be probable, but there must be "more than a sheer possibility that a defendant has acted
27 unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible
28 entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept

1  as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific
2  analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation
3  omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
4  possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
5  entitled to relief.'" *Id.* Moreover, "for a complaint to be dismissed because the allegations give
6  rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."
7  *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

8  Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
9  determines that the allegation of other facts consistent with the challenged pleading could not
10 possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
11 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
12 1986)). In other words, where leave to amend would be futile, the Court may deny leave to
13 amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## ANALYSIS

15 Defendant raises a plethora of arguments to dismiss Plaintiff's complaint. It begins with
16 five affirmative defenses: the act of state doctrine, California Civil Code § 47(b), the *Noerr-*
17 *Pennington* doctrine, the local action doctrine, and statute of limitations. Defendant then raises
18 additional defects on a few causes of action. The Court will not address all these arguments.
19 Instead, the Court discusses Defendant's California Civil Code § 47(b) defense only, as it is
20 dispositive of Defendant's motion to dismiss. The other defenses may be considered another day.

21 California Civil Code § 47(b) makes privileged a communication made in any legislative,
22 judicial, or other official proceeding authorized by law. Cal. Civ. Code § 47(b). In fact, "the
23 privilege applie[s] not only to communications made during pending official proceedings, but also
24 to 'preinvestigation communications intended to trigger official action.'" *Hagberg v. Ca. Fed.*
25 *Bank FSB*, 32 Cal.4th 350, 366 (2004). And it is broadly applied to bar all tort causes of action
26 except malicious prosecution. *Jacob B. v. County of Shasta*, 40 Cal.4th 948, 960 (Cal. Ct. App.
27 2007). Geographically, § 47(b) applies not only to communications made within California and
28 the United States, but also to communications made outside those locales. *Beroiz v. Wahl*, 84

1  Cal.App.4th 485, 494 (Cal. Ct. App. 2000).

2  At the outset, the Court notes that Sempra is one-step removed from any misconduct. Plaintiff's allegations are set forth as occurring in the following manner: 1) Sempra acted, which 2) caused the Mexican authorities to act, which finally 3) caused harm to Plaintiff.

For instance, Plaintiff's cause of action for false imprisonment is based on Plaintiff's arrest. (Compl. ¶ 29.) Defendant's only involvement was the filing of allegedly "false police reports." (*Id.*) Thus, Plaintiff is suing for false imprisonment based on Defendant's conduct in filing the report. But the cause of action is barred because of § 47(b): filing a police report is privileged.

The same analysis can be made for Plaintiff's other claims. All of them began with Defendant's privileged communications to Mexican authorities. And any harm to Plaintiff was caused by Mexican authorities. Thus, these causes of action are also barred by § 47(b).

Plaintiff argues, however, where there are damages separate from the privileged communication, the alleged wrongful activity is not immunized. *See Scalzo v. Am. Express Co.*, 185 Cal.App.4th 91, 100–01 (Cal. Ct. App. 2010). In support, Plaintiff relies on *Kimmel v. Goland*, 51 Cal.3d 202, 221 (1990).

In *Kimmel*, Daniel Kimmel recorded a conversation that he had with Vaughn Drage. *Kimmel*, 51 Cal.3d at 207. Kimmel then used this recording in a lawsuit against Drage. *Id.* During litigation, Drage learned of the recording and "filed a cross-complaint alleging violation of Penal Code section 632, part of California's Invasion of Privacy Act." *Id.* Kimmel argued in defense that "because the tapes were made for the purpose of gathering evidence in anticipation of litigation, [his] conduct . . . was privileged under [§ 47(b)]." *Id.* at 208.

The *Kimmel* court disagreed with Kimmel and held that there was a "distinction between injury allegedly arising from communicative acts . . . and injury resulting from noncommunicative conduct." *Id.* at 211. And while Kimmel might not be liable for the use of tapes in trial, Kimmel was nonetheless liable for "injuries arising . . . from the recording of them." *Id.* at 212. And in fact, the act of making the recording violated a section of California's Invasion of Privacy Act.

Plaintiff's reliance on *Kimmel* is flawed because Plaintiff fails to allege damages separate

from those caused by Mexican authorities.  In *Kimmel*, the tapes caused damages separate from those arising from the use of the tapes in Court.  In this case, all the damages resulted from actions performed by Mexican authorities.  And the Mexican authorities acted on privileged communications made by Sempra.  Even assuming the existence of noncommunicative acts, Plaintiff does not allege that the noncommunicative acts resulted in any damages.  At the very least, the noncommunicative acts in *Kimmel* violated a penal code section.  No such parallel is found here.

Given the allegations in this case, the Court finds that California Civil Code § 47(b) bars Plaintiff's claims.  Any damages suffered by Plaintiff occurred as a result of Defendant's privileged activities.  Moreover, to the extent there were acts not protected under the litigation privilege, Plaintiff fails to allege damages arising from those acts.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss.  Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.  If Plaintiff wishes, Plaintiff may file an amended complaint within fourteen days after this order is electronically docketed.

**IT IS SO ORDERED.**

DATED:  December 1, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge