1  Peter J. Kahn (admitted *pro hac vice*)           Leonard B. Simon
2  William P. Ashworth (admitted *pro hac vice*)     (State Bar No. 58310)
   Grace L. Hill (admitted *pro hac vice*)           THE LAW OFFICES OF
3  WILLIAMS & CONNOLLY LLP                           LEONARD B. SIMON, P.C.
4  725 Twelfth Street, N.W.                          655 West Broadway, Suite 1900
   Washington, DC 20005                              San Diego, CA  92101
5  Telephone: (202) 434-5000                         Telephone:  (619) 338-4549
6  Facsimile: (202) 434-5029                         Facsimile:  (619) 231-7423
   pkahn@wc.com                                      lens@rgrdlaw.com
7  washworth@wc.com
8  ghill@wc.com

9  Kirk B. Hulett (State Bar No. 110726)
   HULETT HARPER STEWART LLP
10 225 Broadway, Suite 1350
11 San Diego, CA 92101
   Telephone: (619) 338-1133
12 Facsimile: (619) 338-1139

13
14 *Attorneys for Plaintiff*
   *Ramon Eugenio Sanchez Ritchie*
15

16                     **UNITED STATES DISTRICT COURT**
                     **SOUTHERN DISTRICT OF CALIFORNIA**
17                            **SAN DIEGO DIVISION**

18
19 | RAMON EUGENIO SANCHEZ RITCHIE, | Case No.: 3:10-cv-1513-CAB-KSC |
   |---|---|
20 | | **DECLARATION OF DAVID LOPEZ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
21 | Plaintiff, | |
22 | v. | |
23 | SEMPRA ENERGY, a California corporation, | |
24 | | Judge: Hon. Cathy Ann Bencivengo |
   | | Ctrm: 4C |
25 | Defendant. | Date: January 31, 2014 |
26 | | Time: 2:00 p.m. |

27
28

I, DAVID LOPEZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

## I. Introduction

1.1 My name is David Lopez. I am over 18 years of age. I am duly licensed to practice law in the states of Texas and California and am a partner with the law firm of Pulman, Cappuccio, Pullen & Benson, LLP, in San Antonio, Texas. A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

1.2 The Mexican legal system is the central focus of my scholarly and research interests. Beginning in January 1994, I taught courses involving various aspects of the Mexican legal system, including North American Legal Systems (Comparative Law: U.S., Mexico, and Canada) and NAFTA. I wrote the chapter on "The Legal System of Mexico" that appeared in William Hein & Co.'s 20-volume Modern Legal Systems Cyclopedia in 2000. I also wrote the brief chapter on "Mexico's Legal System" that appeared in 2002 in Transnational Publisher's Doing Business in Mexico series. In 2004, the book titled Mexican Law that I co-authored was published by Oxford University Press. My co-authors are a Justice of the Supreme Court of Mexico, two professors at one of Mexico's top law schools (ITAM) and a former Dean of the University of Houston Law Center. I presently am involved in research relating to the second edition of the Mexican Law treatise. In connection with this work, I have, during the past nineteen years, conducted intensive research into the structure and operation of Mexico's legal system.

1.3 I have taught and lectured in Mexico concerning matters of U.S. and Mexican law. In 1996, 1997, 1998, 1999 and 2000, I served as a visiting professor at the Universidad Autónoma de Guadalajara in connection with Baylor Law School's Study Abroad Program. I have delivered lectures on various occasions to Mexican judges, lawyers, and law students in Mexico City, Guadalajara, Monterrey and Veracruz, Mexico, and Austin and San Antonio, Texas. From 2001 to the present, I

have been involved in an international law practice representing Mexican clients in lawsuits pending in the United States and in international arbitration involving issues of Mexican substantive and procedural law, and representing U.S. businesses on matters relating to Mexican law.

1.4 From 1997 to 2014, I have served as a <u>testifying</u> expert on Mexican law in over 90 cases around the country, not including this case. These include cases in the United States District Courts for the Southern District of California, Central District of California, Western District of Texas (Del Rio, El Paso, Midland-Odessa and San Antonio Divisions), Southern District of Texas (Corpus Christi, Galveston, Houston, Laredo and Victoria Divisions), Northern District of Texas, Western District of Michigan, Western District of New York, Western District of Washington, Southern District of Alabama, Northern District of Oklahoma and Eastern District of Louisiana.

I have testified as an expert on Mexican law in state courts in California, Colorado, Georgia, Illinois, Pennsylvania and Texas (including state courts in Aransas, Bexar, Cameron, Dallas, El Paso, Harris, Hidalgo, Maverick, Montgomery, Starr, Tarrant, Travis, Val Verde and Webb counties).

I have served as a <u>consulting</u> expert on Mexican law in more than 200 matters over the years. Since 1997, I have been retained as a Mexican law expert by lawyers from Mexico and Canada as well as from California, Colorado, Georgia, Illinois, Louisiana, New York, Oklahoma, Pennsylvania, Texas and Washington.

1.5 This Declaration is provided in connection with Sempra Energy's Motion for Judgment on the Pleadings. I reserve the right to supplement my opinions as requested and to opine on matters in connection with other motions filed by the parties.

1.6 In formulating my opinions in this case, I have relied on my general familiarity with Mexican law and the Mexican legal system. I have consulted the sources of Mexican law cited below. In addition, I have been provided and have

reviewed case-specific materials, including:

- Complaint (July 20, 2010),
- Plaintiff's First Amended Complaint (Dec. 20, 2010),
- Plaintiff's Second Amended Complaint (Oct. 3, 2011),
- Sempra Energy's Memorandum of Points and Authorities in Support of Its Motion for Judgment on the Pleadings (Nov. 13, 2013),
- Declaration of Esteban C. Gorches in Support of Defendant Sempra Energy's Motion for Judgment on the Pleadings (Nov. 13, 2013),
- Order Granting Defendant's Motion to Dismiss (Dec. 1, 2010),
- Order Granting Defendant's Motion to Dismiss (Sept. 19, 2011),
- Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint (May 1, 2012),
- Decision of the Juzgado Mixto de Primera Instancia de Playas de Rosarito, Baja California (Oct. 11, 2007),
- Decision of the Cuarta Sala del Tribunal Superior de Justicia del Estado de Baja California (July 10, 2008),
- Decision of the Pleno del Segundo Tribunal Colegiado del Decimoquinto Circuito (Mar. 13, 2009),
- Decision of the Juez Décimo de Distrito en el Estado de Baja California (Mar. 10, 2010),
- Decision of the Pleno del Segundo Tribunal Colegiado del Decimoquinto Circuito (May 12, 2010),
- Order of the Juez Primero de lo Penal del Estado be Baja California (May 24, 2010),
- Decision of the Pleno del Segundo Tribunal Colegiado del Decimo Quinto Circuito (July 6, 2010),
- Decision of the Pleno del Segundo Tribunal Colegiado del Decimoquinto Circuito (Mar. 29, 2012),

• Miscellaneous other Mexican court records, and

• English translations of various Mexican court records.

The conclusions that follow assume that these documents are authentic, that they accurately portray developments in this case, and that the copies of them in my possession are true and complete.

1.7   Based on my review of case materials, I understand that the following has been alleged:

(a)   Acquiring the Property.  In connection with the development of a liquefied natural gas plant near Ensenada, Baja California, Mexico, Sempra Energy ("Sempra") and associated subsidiaries – Sempra LNG, Sempra Energy Mexico and Energia Costa Azul, S de R.L. de C.V. ("ECA") – had to acquire land around the plant to comply with regulatory setback requirements.  Ramon Sanchez Ritchie ("Mr. Ritchie") owned approximately 672 acres of property that fell within the setback cushion.  By 2005, Sempra had acquired all of the necessary properties in the setback cushion except Mr. Ritchie's property.

Mr. Ritchie alleges that Sempra and its subsidiaries devised a plan to take his property from him.  In 2005, a Sempra representative entered into an agreement to buy the property from third parties who Sempra allegedly knew did not own it.  Thereafter, Sempra allegedly procured and presented false testimony regarding ownership of the property.  In early 2006, ECA purportedly became the owner of the property.

(b)   Forcible Removal.  Also in 2006, Sempra – through ECA attorneys – met with Baja California criminal authorities, filed a criminal complaint to have Mr. Ritchie removed from the property and presented false testimony against Mr. Ritchie.  In September 2006, Sempra's agents forcibly removed Mr. Ritchie and his family from the property. Mr. Ritchie alleges that Sempra falsely represented that he was an illegal squatter who had unlawfully dispossessed and evicted ECA from the property, provided authorities with a sham purchase agreement and fraudulently

concealed the death of Elodia Gomez Castañon, one of the purported transferees of the property to ECA.

1.8 Based upon my review of the case materials and various Mexican court records, I understand the following transpired in connection with the underlying Mexican criminal proceedings:

(a) <u>Criminal Case No. 294</u>. In July 2006, Sempra caused state criminal authorities to institute a criminal proceeding against Ritchie for the crime of dispossession (*despojo*), which in September 2006 led to a provisional dispossession order. In late 2006, Sempra continued to pursue this first criminal prosecution against Mr. Ritchie, allegedly presenting false testimony that Mr. Ritchie was a trespasser and not entitled to possession of the property and that Elodia Castañon was alive.

In early 2007, Criminal Case No. 294 was initiated against Mr. Ritchie in a state court in Baja California for the crime of dispossession. On **October 11, 2007**, pursuant to the directive of a Mexican federal district court, the state court issued an order (*Auto de Libertad por Falta de Elementos para Procesar con Reservas Legales*) terminating the proceeding in favor of Mr. Ritchie. The state court concluded, on the merits, that the crime of dispossession of real property did not exist because proof of the element of "occupation of real property belonging to another" was lacking.

On or about **November 8, 2007**, the state prosecutor appealed the *Auto de Libertad* to Baja California's state supreme court.[1] On **July 10, 2008**, a 3-judge panel of that court vacated the lower state court's *Auto de Libertad*.

---

1 The highest state court in Baja California is the Superior Court of Justice (*Tribunal Superior de Justicia*). *Ley Orgánica del Poder Judicial del Estado de Baja California*, Art. 2. The Superior Court is composed of thirteen justices who function en banc (*en pleno*) or in panels (*salas*). <u>Id</u>., Art. 21. For purposes of convenience, I refer to the Superior Court as the "state supreme court."

    Thereafter, Mr. Ritchie challenged the state supreme court's ruling via *amparo* cases (constitutional challenges) filed in a federal district court and federal court of appeals in Baja California. On March 13, 2009, a 3-judge panel of the federal court of appeals unanimously granted Mr. Ritchie's *amparo*.

    On **April 17, 2009**, the state supreme court complied with the federal court of appeals' March 2009 *amparo* decision by vacating its July 10, 2008 ruling and fully and finally ending Criminal Case No. 294 in Mr. Ritchie's favor.

    (b) <u>Criminal Case No. 1197</u>. In April 2009, Sempra initiated for a second time a criminal complaint against Mr. Ritchie arising from the same earlier asserted alleged crime of trespass. Also in April 2009, in Criminal Case No. 1197, a Baja California state criminal court authorized the Baja California Attorney General to engage in a second investigation of the dispossession charges against Mr. Ritchie so as to allow for a renewed prosecution.

    Mr. Ritchie challenged the state court's order via *amparo* cases filed in federal district courts and the federal court of appeals in Baja California. On May 12, 2010, a 3-judge panel of the federal court of appeals unanimously granted Mr. Ritchie's *amparo*, finding that the second prosecution was not initiated within the 6-month period required by state law. The court of appeals' ruling was on the merits in that it determined that Mr. Richie was entitled to acquittal (*una sentencia absolutoria*) with res judicata (*cosa juzgada*) effect. <u>See</u> Decision of the Pleno del Segundo Tribunal Colegiado del Decimoquinto Circuito of May 12, 2010, at 142-150 (citing Articles 7 and 282 of the Code of Criminal Procedure for the State of Baja California (*Código de Procedimientos Penales para el Estado de Baja California*)).

    On **May 24, 2010**, the state criminal court complied with the federal court of appeals' *amparo* decision and voided its April 28, 2009 resolution as

being "without substance", thereby absolving Mr. Ritchie.[2]

1.9  Mr. Ritchie filed the instant suit in federal court in California on July 20, 2010.  In the Complaint, he accused the Sempra entities of "malicious prosecution, abuse of process, and the making of material misrepresentations to Mexican courts and authorities."  Complaint at ¶ 44.  Mr. Ritchie alleged that the Sempra entities used a sham purchase agreement, provided material false information and made false statements about the ownership of the property to cause Mexican criminal authorities to prosecute him and remove him from the property.  Id. at ¶¶ 28 & 93.  Mr. Ritchie alleged that he was exonerated in 2009.  Id. at ¶ 32.

## II.  The Mexican Legal System

2.1  Structure.  The Mexican government operates according to a federal structure.  Thus, there exists in Mexico a body of federal law and a separate body of law in each of the 31 Mexican states and Federal District.  The Mexican Constitution contains a Supremacy Clause that renders Mexican federal law supreme over state law.

2.2  Sources of Mexican law.  There are a variety of sources of law in the Mexican legal system, including constitutions, statutes, codes, official norms, regulations and judicial rulings.  See Stephen Zamora, et al., Mexican Law 77-94 (2004).  Not all of these sources of law are of equal weight or preeminence; rather, a

---

2  The procedural history in the Mexican criminal cases can be confusing, in part due to the Mexican procedural device of *amparo* and to the fact that the state criminal cases bounced between courts in three different cities, Ensenada, Tijuana and Rosarito  The two criminal cases – No. 294 and No. 1197 – overlap and are intertwined to a degree and, to an extent, are not free standing, unrelated judicial proceedings.  However, the two cases do have separate identifiable originating events in time (in Case No. 294, events of mid-2006; in Case No. 1197, events of April 2009) and separate and distinct end points (in Case No. 294, the state supreme court's April 17, 2009 judgment; in Case No. 1197, the state court of first instance's May 24, 2010 judgment).  Thus, as a conceptual matter, it is accurate and helpful to view the proceedings as two distinct cases.  That is what I do in my analysis.

hierarchy of law exists in the Mexican legal system that dictates the relative importance and ordering of the various sources of law.  See id. at 94-101.

2.3    Because Mexico is a Civil Law country, codes play a primary role in defining the relative legal rights and obligations of parties.  Mexico has distinct codes to regulate civil matters, criminal matters, commerce, tax matters, civil procedure and criminal procedure.  The federal government and each of the 31 Mexican states and Federal District possess separate sets of codes.  For the most part, state codes parallel the provisions and language of the federal codes.

2.4    Among Mexican codes, none is more central than the civil code.  The *Código Civil Federal* ("Federal Civil Code") governs throughout the country in federal matters.  The State of Baja California uses the *Código Civil para el Estado de Baja California* ("Civil Code for the State of Baja California" or "CCBC").

2.5    Mexican civil codes cover all matters in the civil legal realm, including the civil status of individuals, family law, assets, property, succession, contracts and other forms of civil obligations.  Mexican civil codes do not provide for a series of torts like those found in Common Law jurisdictions; rather, rules concerning civil liability between private parties are set forth in the portion of the civil codes titled "Obligations" (*De las Obligaciones*).  The law of obligations encompasses not only tort theories but also contract and quasi-contract theories of legal duty.

2.6    <u>Appeals as compared to *amparos*</u>.  In the U.S. judicial system, we have appeals which occur after a lower court has rendered a final judgment and interlocutory appeals such as writs of mandamus that are taken during the course of a case.  Appeals in the Mexican judicial system are similar to U.S. appeals in the sense that they proceed from a lower court in a judicial hierarchy (<u>e.g.</u>, a Baja California court of first instance) to a higher court in the same hierarchy (<u>e.g.</u>, the Superior Court of Justice of Baja California).

In Mexico, an *amparo* is a constitutional challenge made in a federal court to an act or omission by a government official or agency.  A "judicial *amparo*"

is a challenge to the ruling of a court on the grounds that the court's ruling is wrong and, for that reason, violates a litigant's federal constitutional right to due process. For example, if a litigant in a Mexican state court receives an adverse ruling during a case, Mexican federal law permits the litigant to file a judicial *amparo* in either a federal district court or federal court of appeals (depending on the nature of the challenge). Thus, like a U.S. writ of mandamus, judicial *amparos* can be and often are interlocutory. However, unlike a U.S. writ of mandamus, a Mexican judicial *amparo* of a state court's ruling is a challenge made in a different court system (in a federal court), not within the state judicial hierarchy. Indeed, multiple *amparos* can be filed during the course of a single state court case in Mexico. Thus, the procedural history of a Mexican state court case can involve multiple detours to the federal courts and then back again to the state court.

The role of the Mexican federal court in an *amparo* case is to judge whether the state court's decision is correct. If the federal court determines that the state court decision is erroneous, it declares there to be a constitutional violation, grants the complainant federal protection (*amparo*) and orders the state court to reverse or modify its decision accordingly. If the federal court determines that the state court decision is correct, it denies the complainant protection and the *amparo* case ends.

### III.     Mexican Analog to a Malicious Prosecution Claim

3.1   What is the analog in Mexican law to the civil claim that Mr. Ritchie has asserted under California law for malicious prosecution? There is no civil claim under Mexican law called "malicious prosecution." Rather, in Baja California, Mr. Ritchie's civil claim for redress would be brought as a "subjective liability" claim under Article 1788 of the Civil Code of Baja California. In addition, Mr. Ritchie would have available to him an additional, independent cause of action for "moral damages" under Article 1794 of that Code.

3.2 <u>Subjective Liability Claim</u>. As the Court has recognized in this case there is no cause of action in Mexico called "malicious prosecution." Instead of having a variety of torts such as negligence, tortious interference, conversion, etc. as we do in the Common Law, Civil Law countries such as Mexico have a unified body of law called "obligations" (*obligaciones*). Under that umbrella, civil legal duties and claims are either contractual or extra-contractual in nature. To the extent Mr. Ritchie has a civil claim against Sempra it would be extra-contractual.

The core extra-contractual civil liability claim found in Mexican law is a claim for "subjective liability" (*responsabilidad sujetiva*), also known as an "illicit acts" (*hecho ilícito*) claim. In Baja California, the subjective liability claim is found in Civil Code Article 1788. Paragraph 1 of that provision states:

> *He who acting illicitly or against good customs causes injury to another person is obligated to repair it, unless he demonstrates that the injury occurred as a consequence of the fault or inexcusable negligence of the victim.*

CCBC, Art. 1788.[3]

3.3 <u>Moral Damages claim</u>. In addition to the recovery of material damages, Mexican law provides for the recovery of compensation for moral injury – <u>i.e.</u>, intangible injury to one's feelings, decorum, honor, reputation, privacy or to how others view the person – by the payment of moral damages (*daños morales*). A moral damages claim is appropriate where one suffers defamation or damage to reputation.

In Baja California, moral damage claims are based on Civil Code Article 1794. That Article states, in part, that independent of the damages available under Article 1788, a judge can award a victim of an illicit act an equitable indemnification called "moral damages." CCBC, Art. 1794(¶ 1). Thus, a person who is injured as a

---

[3] Copies of the Mexican law provisions cited in this Declaration are set forth in **Exhibit 2**. An English translation of those provisions is set forth in **Exhibit 3**. The translator's certificate of the accuracy of the translation is set forth in **Exhibit 4**.

result of an illicit act can simultaneously pursue an Article 1788 subjective liability claim and an Article 1794 moral damages claim.

I understand that, as defined by California law, the tort of malicious prosecution is intended to compensate both for damage to reputation and to reimburse one for financial losses associated with his defense of the criminal proceeding. To accomplish these twin goals, in Mexico a civil litigant would pursue both Article 1788 and Article 1794 claims simultaneously. Thus, combined, those claims are the closest analog under Baja California law to the malicious prosecution claim at issue.

3.4  <u>Mechanics of Article 1788 and Article 1794 Claims</u>. To establish liability under these code provisions, a plaintiff must prove that the defendant "acted illicitly" or, in other words, committed an act or omission contrary to law. CCBC, Arts. 1788 & 1794. As noted Mexican legal scholar Manuel Bejarano Sánchez explains, the 3 elements of a Mexican illicit acts claim are: (1) an act or omission by the defendant that is contrary to law, (2) fault and (3) injury or damage to the plaintiff. <u>See</u> Manuel Bejarano Sánchez, <u>Obligaciones Civiles</u> 218 (6th ed. 2010).

<u>Act contrary to law</u>. To establish an illicit acts claim under the Civil Code, a plaintiff must show that the defendant's conduct breached a legal duty found in some other body of law. For example, a plaintiff injured in a car accident proves that the accident was caused by defendant speeding or violating some other provision of Mexican traffic laws. A plaintiff injured in an airplane crash proves that the crash was caused by the aircraft operator's violation of aircraft maintenance or safety regulations. The defendant's breach of a legal requirement is the illicit act that underlies plaintiff's illicit acts claim.

In this case, Mr. Ritchie would establish that Sempra committed an illicit act by showing that Sempra breached a legal duty found in a body of law (civil or criminal) other than the Civil Code. For example, the Criminal Code of Baja California (*Codigo Penal para el Estado de Baja California*) ("CPBC") defines acts committed in the state that are contrary to state criminal law. The Criminal Code

applies to crimes committed by natural persons as well as to crimes committed in the name of, under the protection of or for the benefit of a company or legal entity. CPBC, Art. 19.

It is illegal under Baja California law to commit the crime of slander (*calumnia*).  Slander includes the presentation of criminal complaints, charges or slanderous accusations by which the maker imputes a crime to a specific person, knowing that he is innocent or that he did not commit the crime. CPBC, Art. 191(II). It is illegal under Baja California law for one who has a legal duty to be truthful in acts before the government to provide false information to government authorities or to conceal the truth from them.  CPBC, Art. 320.  It is also illegal in Baja California to knowingly present false witnesses before public authorities in the exercise of their functions. CPBC, Art. 321.

Thus, if Mr. Ritchie had chosen to pursue malicious prosecution allegations in a civil case in Mexico, he would have established the "illicit act" element of Articles 1788 and 1794 by proving that Sempra and its associates acted contrary to the Criminal Code, for example.

<u>Fault and injury</u>.  The fact that Sempra and its associates committed acts or omissions in violation of law is a necessary but standing alone insufficient condition for the existence of Article 1788 and 1794 claims.  By definition, on a claim that Sempra's illicit acts led to criminal prosecutions of Mr. Ritchie that were malicious or wrongful, the element of "fault" would not exist until Mr. Ritchie prevailed in the criminal prosecutions on the merits and there was, in effect, a judicial determination that the prosecutions had no merit (and therefore Sempra's conduct was wrongful).

In Criminal Case No. 294, the court of first instance issued its first judgment (*Auto de Libertad*) on October 11, 2007.  The issue with this judgment as a basis for a civil claim is that it was appealed by the state prosecutor in November 2007 and vacated by the state supreme court in July 2008.  The effect of the appeal

was to render uncertain the court of first instance's determination of fault on the part of Sempra and the effect of the state supreme court's vacatur was to eliminate Mr. Ritchie's civil claims altogether, as of that point in time.

As to Criminal Case No. 294, Mr. Ritchie's "malicious prosecution" civil claims under Articles 1788 and 1794 did not exist in a full and final sense until the state supreme court entered its final ruling in the case on **April 17, 2009**. It was at that time that Mr. Ritchie obtained the final and binding (*firme*) judicial determination of fault essential to his civil claims against Sempra.

In Criminal Case No. 1197, the court of first instance issued its ruling voiding its April 2009 resolution on **May 24, 2010**. Thus, under Mexican law, Mr. Ritchie did not possess all essential elements of civil claims for "malicious prosecution" based on this proceeding until that date.

### IV. Limitations Under Mexican Law

4.1   What is the statute of limitations under Mexican law for Article 1788 and Article 1794 civil claims and when did limitations begin to run on Mr. Ritchie's claims?   Article 1812 of the Civil Code of Baja California provides that the limitations period for Article 1788 and Article 1794 claims is 2 years. In Criminal Case No. 294, limitations began to run on **April 17, 2009** when the state supreme court issued its final judgment in the case. In Criminal Case No. 1197, limitations began to run on **May 24, 2010** when the state court of first instance issued its final judgment in the case, voiding its prior resolution.

4.2   Book Two, Title Seven of the Civil Code of Baja California contains general provisions relating to limitations or what Mexicans call *prescripción*. These provisions define prescription, explain the difference between affirmative prescription (adverse possession) and negative prescription and set periods of prescription ranging from 2 years to 10 years.

Under Mexican law, the specific controls over the general and the provisions of the civil codes serve as gap fillers – when the civil code itself or another

body of law does not expressly provide an applicable statute of limitations, one defaults to the general provisions of the civil code.  Thus, the prescription rules set forth in Book Two, Title Seven control unless legislators supplied a specific prescription rule for the subject matter at hand.

4.3     Articles 1788 and 1794 are set forth in Book Four, Title One, Chapter V of the Civil Code.  The Baja California legislature provided a specific limitations period of 2 years for claims set forth in Chapter V.  Article 1812 of the Civil Code states, in relevant part:

> *The statute of limitations for an action for compensation of injuries as described in this chapter is two years starting from the day on which the injury was caused, or starting from the date on which it was discovered or should have been discovered by the victim.*

CCBC, Art. 1812(¶ 1).  Mexico's First Circuit Court of Appeals has clarified that 2 elements must be present for negative prescription to bar the assertion of a civil claim:  (i) the existence of an obligation and (ii) the mere passage of the time period provided for by law counting from when the action could be exercised.  See Banco Unión, S.A., Institución de Banca Múltiple, Direct amparo 128/2007, Ninth Era, Collegiate Circuit Courts, XXVI S.J.F. 1779, [TA] (Civil), I.3o.C.628.C [Registry No. 171674].

Thus, under Mexican law, limitations on Mr. Ritchie's civil claims began to run on the day on which all elements of those claims existed.  As explained above, Mr. Ritchie's claims premised on the malicious prosecution in Criminal Case No. 294 did not finally exist until April 17, 2009.  Mr. Ritchie's claims premised on the malicious prosecution in Criminal Case No. 1197 did not exist until May 24, 2010.  Applying the 2-year limitations period set forth in Article 1812, if Mr. Ritchie had not filed suit against Sempra, limitations on his "malicious prosecution" claims would have run on **April 17, 2011** and **May 24, 2012**, respectively.

This conclusion is consistent with the Criminal Code of Baja California provisions relating to slander that could underlie a Baja California civil action analogous to Mr. Ritchie's malicious prosecution claim. Article 194 of the Criminal Code is titled "suspension of the action" and, prior to September 22, 2010, provided in relevant part:

> *When an investigatory proceeding of a crime slanderously attributed to a person is pending, the exercise of the action for slander will be suspended until said proceeding terminates. ….*

CPBC, Art. 194.[4]

4.4   Sempra's Mexican law expert, Attorney Esteban Gorches, opines that "[t]he two year limitations period under Article 1812 during which Mr. Sanchez Ritchie could have brought his civil claim in Baja California for the alleged malicious prosecution of the criminal dispossession case would have been counted from October 11, 2007 at the latest." Declaration of Esteban C. Gorches in Support of Defendant Sempra Energy's Motion for Judgment on the Pleadings [hereinafter "Gorches Decl."] at ¶ 29.

I agree with Mr. Gorches that the statute of limitations on Mr. Ritchie's civil claims began to run when the criminal proceedings against him terminated in the sense that all elements of his causes of action existed. However, as explained above, under Mexican law Criminal Case No. 294 did not terminate until **April 17, 2009** when the state supreme court issued its final decision in the case and Criminal Case No. 1197 did not terminate until **May 24, 2010** when the state criminal court entered its final judgment in favor of Mr. Ritchie. Those are the dates, in my opinion, when the applicable 2-year statute of limitations period began to run.

---

[4] In its current form, Article 194 states, in relevant part: "*When an investigatory proceeding or investigation of a crime slanderously attributed to a person is pending, the exercise of the action for slander will be suspended until said proceeding terminates.*" CPBC, Art. 194 (as amended Sept. 22, 2010).

4.5     Mr. Gorches also opines that Article 1148 of the Baja California Civil Code applies to Mr. Ritchie's claim under Mexican law.  <u>See</u> Gorches Decl. at pp. 7-8.  Article 1148, which is one of Book Two, Title Seven's general limitations provisions, does not apply to Mr. Ritchie's civil claims for two reasons.  First, under the Mexican legal principle that the specific controls over the general, Article 1812 (which provides a limitations period) would apply in lieu of Article 1148(V) (which duplicates Article 1812's 2-year limitations period).  Second, Article 1148(V) expressly states that it applies only to illicit acts that "do not constitute crimes."  As explained above, Mr. Ritchie's "malicious prosecution" civil claim in Mexico would have been based on illicit acts by Sempra and its associates that constituted crimes under the Criminal Code of Baja California.

Mr. Gorches further opines that Article 1148(V) "applies to all wrongful acts, including malicious prosecution, <u>unless and until they have been considered by a criminal judge and ruled to be crimes</u>."  Gorches Decl. at ¶ 36 (emphasis added).  Mr. Gorches does not cite any authority for this opinion.  Moreover, his theory, if applied, would present a practical litigation problem for potential plaintiffs.  Assume that an illicit act occurs in 2010 that arguably is a crime under Baja California law but, due to delay attributable to appeals and multiple *amparos*, there is no adjudication until 2013 and the act is determined NOT to be a crime.  Under Mr. Gorches' view of Article 1148(V), the victim would finally know in 2013 that his civil claim is controlled by the 2-year limitations period set forth in Article 1148(V) but, because more than 2 years has passed since the illicit act occurred, the victim's claim would be barred by limitations.

A more logical interpretation of Article 1148(V) is that it does <u>not</u> apply if the illicit act at issue, if true, would constitute a crime (*delito*) at the time it is committed.  Mr. Ritchie's malicious prosecution claims premised upon Sempra's presentation of criminal complaints, charges or accusations that imputed a crime specifically to Mr. Ritchie but that Sempra knew were false is a good example.  The

facts he alleges about Sempra's illicit acts directly track the elements of a slander claim under Article 191 of the state's Criminal Code and, in that sense, "constitute crimes."

## V. Tolling of Limitations Under Mexican Law

5.1   Tolling.  In his expert declaration, Mr. Gorches states that "[t]here is no exception or other provision for tolling, delayed accrual or other 'savings' of the two-year time period in which to bring a claim governed by Civil Code Article 1812." Gorches Decl. at ¶ 28.  The assertion that there are no tolling provisions that apply to subjective liability claims under Mexican law is simply incorrect.

Although the Chapter in which one finds Articles 1788 and 1794 contains a specific statute of limitations provision (Article 1812), that Chapter does not contain provisions expressly providing for or prohibiting the suspension or interruption of the running of limitations – there is a "gap".  Thus, one would fill the gap by looking to the general prescription provisions of Book Two, Title Seven of the Civil Code.  Article 1155 of the Civil Code of Baja California – which is set forth in Title Seven – provides, in relevant part, that:

> *The statute of limitations is interrupted: . . .*
>
> *II. By a complaint or any other kind of judicial demand of which the possessor or debtor, as applicable, is notified. . . .*

CCBC, Art. 1155(II).  Tolling provisions identical or nearly identical to Article 1155 are present in the Federal Civil Code, Commercial Code (*Código de Comercio*) and the civil codes of other Mexican states and Federal District.  Mr. Gorches' opinion that there are no tolling provisions under Mexican law that apply to civil claims, and specifically civil claims based on illicit acts, is astounding.  Notably, Mr. Gorches does not cite any legal authority to support his opinion.  See Gorches Decl. at ¶ 28.

5.2   Tolling in Criminal Case No. 294.  As explained above, limitations under Article 1812 began to run on Mr. Ritchie's claims premised on Criminal Case No. 294 on April 17, 2009.  Pursuant to Article 1155(II), the California federal

Complaint filed in this lawsuit on July 20, 2010 qualifies as a "complaint" under Article 1155(II) that had the legal effect of tolling limitations as of that date. Moreover, the Mexican Supreme Court in binding jurisprudence issued in 2013 held that the phrase "any other kind of judicial demand" (*otro cualquier género de interpelación judicial*) is a "generic, indefinite and open-ended concept" that encompasses diverse actions which have as a common denominator that they are affirmative actions by the creditor to demand that the debtor fulfill its obligation. See Contradiction of Theses 147/2013, 1ª./J. 103/2013, Tenth Era, Supreme Court of Mexico, First Chamber, S.J.F. (Dec. 6, 2013) [Registry No. 2005046]; Contradiction of Theses 500/2012, 1ª./J. 57/2013, Tenth Era, XXVI (Vol. 1) S.J.F. 405 (Nov. 2013) [Registry No. 2004961].

5.3   Tolling in Criminal Case No. 1197.   As explained above, limitations began to run on Mr. Ritchie's claims based on Criminal Case No. 1197 when that case terminated on **May 24, 2010**. Also as explained above, limitations under Mexican law would have been tolled on July 20, 2010 when Mr. Ritchie filed this case.

## VI.   Final Matters

6.1   My fee for serving as an expert witness in this case on issues relating to Mexican law is $500 per hour. This is my current standard hourly rate. In no event is my expert witness fee contingent upon the substance of opinions rendered by me.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Antonio, Texas on January 10, 2014.

_____
DAVID LOPEZ