HULETT HARPER STEWART LLP
KIRK B. HULETT, SBN: 110726
DENNIS STEWART, SBN: 99152
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone:    (619) 338-1133
Facsimile:    (619) 338-1139

WILLIAMS & CONNOLLY LLP          LAW OFFICES OF LEONARD B.
PETER J. KAHN                         SIMON, P.C.
(admitted *pro hac vice*)            LEONARD B. SIMON, SBN: 58310
WILLIAM P. ASHWORTH              655 West Broadway, Suite 1900
(admitted *pro hac vice*)            San Diego, CA 92101
MEGHAN FERGUSON                  Telephone:   (619) 338-4549
(admitted *pro hac vice*)            Facsimile:    (619) 231-7423
JAMES GILLENWATER
(admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029

Attorneys for Plaintiff Ramon Eugenio
Sanchez Ritchie

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON EUGENIO SANCHEZ RITCHIE, | CASE NO. 10CV1513-CAB(KSC) |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY HULETT HARPER STEWART LLP** |
| v. | |
| SEMPRA ENERGY, a California Corporation, | DATE:     August 12, 2014 TIME:     1:30pm JUDGE:    Hon. Cathy Ann Bencivengo |
| Defendant. | CTRM:    4C (4th Floor - Schwartz) |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

      A.    Hulett Harper's Receipt of the Michelon Documents ........................ 2

      B.    Screening Review of the Documents.................................................. 3

      C.    Hulett Harper's Use and Production of the Michelon
            Documents........................................................................................... 4

      D.    Sempra's Knowledge of Hulett Harper's Possession of the
            Documents........................................................................................... 5

      E.    Sempra's Motion To Disqualify ........................................................ 7

III.  ARGUMENT ............................................................................................. 8

      A.    Legal Standard ................................................................................... 9

      B.    Hulett Harper Acted Appropriately and in Good Faith ..................... 10

      C.    Sempra Has Waived Any Disqualification Argument........................ 15

      D.    Sempra Cannot Show Prejudice from Hulett Harper's Mere
            Possession—as Opposed to Use—of the Allegedly Privileged
            Michelon Documents ......................................................................... 17

      E.    Sempra Has Not Established Privilege and Relevance for the
            Purportedly Privileged Documents It Attaches to its Motion............. 19

      F.    The Draconian Relief Sempra Seeks Is Not Justified Here................ 22

IV.   CONCLUSION ......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*FlatWorld Interactives, LLC v. Apple, Inc.*, 2013 WL 4039799 (N.D. Cal., Aug. 7, 2013) ....................................................................22, 23

*Gotham City Online, LLC v. Art.com, Inc.*, 2014 WL 1025120 (N.D. Cal. Mar. 13, 2014).........................................................14, 15, 18, 19

*Gomez v. Vernon*, 255 F. 3d 1118 (9th Cir. 2001) ...................................14

*Hicks v. Bush*, 452 F. Supp. 2d 88 (D.D.C. 2006)..................................11

*In re EXDS, Inc.*, 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005) ....................10, 22

*In re Grand Jury Proceedings*, 87 F.3d 377 (9th Cir. 1996).................................21

*In re Sealed Case*, Misc. Nos. 12-196, 12-197 (RCL) (D.D.C. May 3, 2012) ..........................................................................11

*Koloff v. Metro. Life Ins. Co.*, 2014 WL 2590209 (E.D. Cal. June 10, 2014) ..........................................................................16

*Layer2 Commc'ns Inc. v. Flexera Software LLC*, 2014 WL 2536993 (N.D. Cal. June 5, 2014)........................................9, 12, 14, 15, 24

*Marcum v. Channel Lumber Co.*, 1995 WL 225708 (N.D. Cal. Mar. 24, 1995)..........................................................................9, 25

*Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978 (N.D. Cal. Mar. 31, 2011) ........................................................16

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045 (9th Cir. 1985)..........................................................................9, 16

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, 2011 WL 2940313 (N.D. Cal. July 20, 2011) ............................................13

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) (Brennan, J., concurring)..........................................................................15, 16

*Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347 (9th Cir. 1988) ....................................................................................................9

*Syncora Guarantee Inc. v. EMC Mortg. Grp.*, 2013 WL 2552360 (N.D. Cal. June 10, 2013) .........................................................20, 21

*Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir. 1983) ..........................16

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122 (C.D. Cal. May 20, 2013) ..................................................14, 15, 18

*UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046 (C.D. Cal. 2007) ...................................................................................9

*United States v. Taylor*, 764 F. Supp. 2d 230 (D. Me. 2011) .................................11

*United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31 (D. Conn. 2002) ....................................................................................................11

*United States v. Winters*, 2006 WL 2789864 (S.D.N.Y. Sept. 27, 2006) ....................................................................................................11

**STATE CASES**

*Bates v. Granada Healthcare & Rehab. Ctr., LLC*, 2008 WL 4195954 (Cal. Ct. App. Sept. 15, 2008) ..............................................15, 16

*Baugh v. Garl*, 137 Cal. App. 4th 737 (2006) ...............................................9, 10

*Clark v. Superior Court*, 196 Cal. App. 4th 37 (Ct. App. 2011) ....................14, 18

*Cont'l Ins. Co. v. Super. Ct.*, 32 Cal. App. 4th 94 (1995) ....................................10

*Cooke v. Super. Ct.*, 83 Cal. App. 3d 582 (1978) ....................................12, 23

*Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725 (2009) ....................19, 20

*Crawford v. Los Angeles Cnty. Office of Educ.*, 2013 WL 1819100 (Cal. Ct. App. May 1, 2013) ..............................................23, 24

*Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294 (2001) .....................12

*Gregori v. Bank of Am.*, 207 Cal. App. 3d 291 (1989)..............................9, 22, 25

*Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010)..............................11

-iii-

*La Jolla Cove Motel & Hotel Apts., Inc. v. Super. Ct.*, 121 Cal. App. 4th 773 (2004) ...................................................................................20

*Liberty Nat. Enterprises, L.P. v. Chi. Title Ins. Co.*, 194 Cal. App. 4th 839 (2011)...........................................................................15, 16, 17

*MacDonald v. MacDonald*, 2003 WL 21744322 (Cal. Ct. App. July 29, 2003)..................................................................................10

*Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal. App. 3d 443 (1985)..................................................................................12

*Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831 (2002)....................................12, 25

*Proulx v. Super. Ct. of Los Angeles Cnty.*, 2012 WL 1956856 (Cal. Ct. App. May 31, 2012)...........................................................................23

*Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007)............................9, 17, 18

*River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297 (1987) ...............................15, 16

*Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210 (2007) ...................................9

*State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999) .............13, 18, 24

*Zurich Am. Ins. Co. v. Super. Ct.*, 155 Cal. App. 4th 1485 (2007) ........................21

## OTHER AUTHORITIES

ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 06-440 (2006)....................................................................................13, 14

ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 11-460 (2011)........................................................................................13

ABA Model Rule of Professional Conduct 4.4(b) ...........................................12, 13

Cal. Bus. & Prof. Code § 6068(e)(1)...............................................................12

Cal. Rule of Professional Conduct 3-100(a)......................................................12

Fed. R. Civ. P. 26(b)(5)(B)..........................................................................11

U.S. Attorneys' Manual § 9-13.420(E) (2012) ("Searches of Premises of Subject Attorneys")............................................................................11

## I.  **INTRODUCTION**

Sempra's motion to disqualify lead counsel for Plaintiff, Hulett Harper Stewart LLP ("Hulett Harper"), filed just as the first depositions were to be taken of Sempra witnesses, is the latest in a long line of tactical gambits designed to prevent this case from proceeding on the merits.  This Court has already rejected Sempra's motion to dismiss the Second Amended Complaint ("SAC") [Doc. No. 62], its motion to stay or dismiss [Doc. No. 73], its motion for sanctions [Doc. No. 56], two legally baseless counter-complaints [Doc. Nos. 96, 114], and most recently its motion for judgment on the pleadings [Doc. No. 127].  Sempra's ill-founded disqualification motion goes further, impugning counsel's ethics in order to throw another false roadblock in the way of this litigation.

The thrust of Sempra's motion is that Hulett Harper should be disqualified because it was given Sempra documents voluntarily by former Sempra accounting employee Rodolfo Michelon (the "Michelon documents"), some of which Sempra contends are privileged.  But Sempra has not demonstrated any wrongdoing by Hulett Harper.  As set forth in the declaration of ethics expert Professor Shaun P. Martin (the "Martin Declaration"), the firm acted in accordance with ethical standards when it received the Michelon documents in 2010 and undertook a screening review to sequester any privileged or potentially privileged documents from Mr. Ritchie's litigation team.  Sempra implicitly criticizes the screening process and claims that certain of the 40,000 pages of Michelon documents "slipped through the cracks" of the privilege review, but has not adequately shown that any such documents were both (i) privileged, and (ii) relevant to the case.  Indeed, Sempra's current assertion that documents from Mr. Michelon's files are relevant and thus potentially prejudicial is precisely the opposite of positions it has taken with Plaintiff's counsel and before Magistrate Judge Crawford regarding discovery, most notably its position that Sempra need not even search Mr. Michelon's files because he could not possibly have any relevant documents.

-1-

Sempra's unreasonable delay in bringing this motion also waives any disqualification argument and exposes Sempra's motion as the tactical ploy that it is. Sempra falsely claims that it did not know that Hulett Harper had possession of documents from Michelon's files until after May 2014. Mot. at 3. But the factual record demonstrates that Sempra had notice that Hulett Harper had possession of documents from Michelon (and that some of the documents were potentially privileged) more than <u>two years</u> before that, and took no action.

In straining to argue for disqualification, Sempra not only misrepresents the facts, repeatedly substituting innuendo for evidence, but it is wrong on the law, both in its articulation of the relevant ethical principles (which, as Professor Martin explains, are not what Sempra claims them to be), and its assertion that the cases support disqualification here, where Hulett Harper has made no use of any purportedly privileged documents. Sempra cannot demonstrate any prejudice from Hulett Harper's possession—as opposed to use—of the Michelon documents, let alone the irreversible, unmitigable prejudice the law requires for disqualification.

Nor can Sempra meet the high burden necessary to justify the extreme remedy of disqualification of Plaintiff's lead counsel. Sempra now has copies of all the documents that Hulett Harper obtained from Mr. Michelon. Hulett Harper has offered to destroy any privileged documents Sempra identifies. Even if the Court believes some action is necessary, many remedies that fall well short of disqualification can resolve Sempra's concerns, such as the entry of a protective order—the original remedy Sempra suggested it would pursue.

Simply stated, neither the facts nor law support the draconian remedy of disqualification here. Sempra's motion should be denied.

## II. FACTUAL BACKGROUND

### A. Hulett Harper's Receipt of the Michelon Documents

Hulett Harper has served as lead counsel for Mr. Ritchie on this matter since

its inception in 2010. Declaration of Kirk B. Hulett ("Hulett Decl.") ¶ 2.[1] In mid-2010, in connection with its investigation of Mr. Ritchie's claims, Hulett Harper met with former Sempra employee Rodolfo "Rudy" Michelon. *Id*. ¶ 5. Mr. Michelon identified himself as a former Sempra accountant who was terminated as a result of his efforts in uncovering illegal conduct by Sempra in the United States and Mexico, and he said he had information relevant to Mr. Ritchie's claims against Sempra. *Id*. During the meeting, Hulett Harper attorneys cautioned Mr. Michelon that he should not reveal any information that might be subject to the attorney-client or work product privileges, and he did not do so. *Id*. ¶ 6. Later in 2010, Mr. Michelon provided Hulett Harper with electronic copies of about 40,000 pages of documents that he said comprised a copy of his business files. *Id*. ¶ 7.

**B.    Screening Review of the Documents**

When Hulett Harper received the documents from Mr. Michelon, it undertook a screening process before reviewing any of them, with the goal of screening out any privileged or potentially privileged documents. *Id*. ¶¶ 9–11; Declaration of Katherine B. Gonzalez ("Gonzalez Decl.") ¶¶ 2–4.[2] Hulett Harper assigned Joe Villaseñor, a project attorney, to undertake the review. Hulett Decl. ¶ 9; Declaration of Joe Villaseñor ("Villaseñor Decl.") ¶ 7. Mr. Villaseñor reviewed the documents solely to assess whether they might be privileged. Villaseñor Decl. ¶ 8. Mr. Villaseñor spent over 90 hours reviewing the documents in September and October 2010, and sequestered any privileged or potentially privileged documents in a password-protected computer file. *Id*. ¶¶ 8–9; Gonzalez Decl. ¶¶ 2–3. After Mr. Villaseñor completed his review, he never again reviewed the

---

[1] By contrast, Mr. Ritchie's other counsel, Williams & Connolly and The Law Offices of Leonard B. Simon, previously represented counterclaim defendant Susumo Azano, and although they have appeared as additional counsel for Mr. Ritchie, Hulett Harper has continued to serve as lead counsel. Hulett Decl. ¶¶ 3–4.

[2] Ms. Gonzalez is a paralegal at Hulett Harper who helped facilitate the screening review. *See* Gonzalez Decl. ¶ 1.

-3-

documents or otherwise participated in Mr. Ritchie's case. Hulett Decl. ¶ 11; Villaseñor Decl. ¶ 13. Mr. Villaseñor received strict instructions not to discuss or disclose the content of any of the documents he reviewed with any member of Mr. Ritchie's litigation team, and he has not done so. Hulett Decl. ¶ 10; Villaseñor Decl. ¶ 8. Nor has any attorney at Hulett Harper or any other attorney for Mr. Ritchie ever spoken to Mr. Villaseñor about the substance of the case or reviewed any of the documents Mr. Villaseñor sequestered. Hulett Decl. ¶¶ 10–11.

Mr. Hulett has only substantively reviewed a very limited subset of the Michelon documents, as most of those deemed not privileged or questionable by Mr. Villaseñor were determined not to be relevant after a first-level review. *Id.* ¶ 13. Mr. Hulett does not recall reviewing any of the redacted, allegedly privileged documents Sempra attaches to its motion, or any other documents marked "privileged," "confidential," "attorney client," "work product," or the like. *Id.* Because of their limited involvement with the case, Mr. Ritchie's other counsel (Williams & Connolly LLP and the Law Offices of Leonard B. Simon) have not had access to or reviewed the Michelon documents, aside from the few cited in briefing in the case (discussed further below). *Id.* ¶ 11.

**C.    Hulett Harper's Use and Production of the Michelon Documents**

Hulett Harper has never used (or even reviewed) any Michelon documents that it understood to be privileged or potentially privileged. Hulett Decl. ¶¶ 13–14. Nor has Hulett Harper used any of the redacted documents Sempra attaches to its disqualification motion for any purpose. *Id.*

Hulett Harper has used a handful of non-privileged Michelon documents only twice—in connection with Mr. Ritchie's opposition to Sempra's baseless Rule 11 motion (to establish that Sempra's assertion that Mr. Ritchie had no basis for a particular allegation was false and contradicted by Sempra's own documents), *see* Doc. Nos. 43, 47; and in Mr. Ritchie's briefing related to his Joint Motion to

-4-

compel discovery (as examples of relevant documents dating after October 2007, in support of his motion to compel Sempra to provide discovery post-dating that date). Doc. Nos. 135, 135-1. Hulett Harper has not used any of the other Michelon documents. Hulett Decl. ¶¶ 14–16.

Sempra falsely contends that Mr. Hulett stated that he intended to use privileged documents during the upcoming depositions. Mot. at 16. What Mr. Hulett actually said was that he reserved the right to use <u>non-privileged</u> Michelon documents in depositions of Sempra witnesses given Sempra's refusal to produce any of the Michelon documents in discovery. Hulett Decl. Ex. 11.

On May 13, 2014, Hulett Harper produced the Michelon documents to Sempra, with the exception of those that had been sequestered as privileged or potentially privileged.[3] Hulett Decl. ¶ 21. Upon Sempra's request, the sequestered documents were also produced to Sempra on July 9, 2014. *Id*. ¶ 27.

### D. Sempra's Knowledge of Hulett Harper's Possession of the Documents

Sempra fired Mr. Michelon on March 10, 2010. Hulett Decl. Ex. 21 ¶ 7. Mr. Michelon sued Sempra for wrongful termination, alleging that he was terminated as a result of his knowledge of misconduct by Sempra, including payoffs to Mexican officials directly related to Sempra's illegal eviction of Mr. Ritchie from his land. *See id*. ¶ 7(A)(4). Mr. Michelon's claims subsequently proceeded in arbitration. REDACTED

---

[3] As a result of a misunderstanding with his staff, Mr. Hulett intended that the May 13, 2014 production include all of the Michelon documents—including those that were sequestered—but his staff did not understand his directions that way and produced only the non-sequestered documents. *See* Hulett Decl. ¶ 21; Gonzalez Decl. ¶¶ 5–7.

-5-

REDACTED

Sempra therefore knew by May 2011 that Mr. Michelon had a large volume of Sempra documents, including some Sempra claimed were privileged, and that he had disclosed them to "numerous" third parties.

As noted above, Hulett Harper cited a few Michelon documents in its response to Sempra's Rule 11 motion in 2012. Hulett Harper initially attached copies of the documents to a declaration that it filed *ex parte* and under seal on work product grounds, along with a motion to seal. *See* Doc. Nos. 47–49. Sempra opposed the motion , arguing that the documents came from Sempra and it was entitled to review them. Doc. No. 51. In accordance with instructions provided by the Court at a hearing on March 16, 2012, Hulett Harper sent the documents to Sempra's counsel on March 28, 2012. Hulett Decl. ¶ 18 & Ex. 2. The first document attached to the declaration is clearly identified as an e-mail from the files of Mr. Michelon. *Id*. Ex. 3. Therefore, by no later than March 2012, Sempra had actual notice that Mr. Michelon had provided documents to Hulett Harper.

Sempra further confirmed that it was aware that Hulett Harper had possession of the Michelon documents in briefing on discovery issues in early March of this year. *See* Doc. No. 135-2 at 1–2 (stating that "Plaintiff has obtained and used in litigation—including in this motion—confidential information that Sempra believes was stolen by one of Plaintiff's witnesses," and citing one of the Michelon documents cited in Plaintiff's brief), as well as in discovery

correspondence shortly thereafter.  *See* Hulett Decl. Ex. 6.[4]

This record makes clear that Sempra waited two years to make an issue of Hulett Harper's access to the Michelon Documents, and that Sempra's contention in its disqualification papers that it "did not learn until May 2014 that the Hulett Firm had obtained documents from Michelon," Mot. at 3, is demonstrably false.

## E.    Sempra's Motion To Disqualify

Despite knowing for years that Hulett Harper had possession of Michelon documents, and that Michelon's documents contained many allegedly privileged communications, Sempra did not take any action related to Hulett Harper's possession of the documents until June 17, 2014, just two weeks before the first deposition in the case was to be taken.  Hulett Decl. ¶ 23 & Ex.7.  In a June 17, 2014 letter, Sempra claimed that a 2012 order in the arbitration between Mr. Michelon and Sempra precluded Hulett Harper (a stranger to that proceeding) from possessing the documents, and that there were privileged documents among those produced on May 13, 2014.  Hulett Decl. Ex. 7.  It threatened to move for a protective order if Hulett Harper did not destroy or provide to Sempra all of its copies of the Michelon documents—privileged or not.  *Id*.  Hulett Harper responded that it was not aware that Mr. Michelon lacked a right to possess the documents or to provide them to Hulett Harper, and that it had no knowledge of the arbitration order.  Hulett Decl. Ex. 8.  Sempra then provided the arbitration

---

[4] Sempra derisively characterizes the documents as "stolen" in its letters and Motion, but it has offered no evidence that Mr. Michelon engaged in criminal activity by keeping a copy of his business records after he left Sempra.  In fact, REDACTED

order,[5] continued to demand the return or destruction of all of the documents (again, regardless of any claims of privilege), and threatened disqualification for the first time.  Hulett Decl. Ex. 9.

Hulett Harper responded by letter on June 26, 2014, offering to destroy any particular documents that Sempra identified as privileged, but declining to return or destroy non-privileged documents.  Hulett Decl. Ex. 11.  On July 9, 2014, Hulett Harper allowed Sempra to review the sealed boxes containing the sequestered documents and other electronic media reviewed only by Mr. Villaseñor, and to remove a hard copy set of the documents.  Hulett Decl. ¶ 27; Gonzalez Decl. ¶ 7.

Sempra did not respond to Hulett Harper's offer to destroy all documents Sempra claimed were privileged, but proceeded instead to file its motion.  Hulett Decl. ¶ 24.  In its motion, Sempra identified, for the first time, ten documents that it claimed were privileged but not sequestered by Mr. Villaseñor.  *Id*. ¶ 28.

## III.  __ARGUMENT__

Sempra's motion to disqualify Hulett Harper should be denied for several independent reasons.  First, as Professor Martin explains, Hulett Harper did nothing wrong.  Second, the Court need not even reach the merits of Sempra's motion, because Sempra waived any disqualification argument by waiting more than two years after notice that Hulett Harper had the Michelon documents to bring its motion.  Third, Sempra cannot show any prejudice—let alone the unmitigable prejudice required to justify disqualification—because Hulett Harper has not used any privileged documents.  Finally, even if Sempra could establish a non-waived ethical violation and some prejudice, the extreme remedy of disqualification is not warranted here, where no rule or case prohibited Hulett Harper's conduct, and other

---

[5]                                                                 REDACTED

lesser remedies are available to address Sempra's concerns.

### A.    Legal Standard

"An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity." *Layer2 Commc'ns Inc. v. Flexera Software LLC*, 2014 WL 2536993, at *5 (N.D. Cal. June 5, 2014) (internal quotation marks omitted). Because "[m]otions for disqualification are often tactically motivated and they tend to derail the efficient progress of litigation," the moving party "carries a heavy burden and must satisfy a high standard of proof." *Id*. (internal quotation marks omitted). Thus, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

California courts take a "functional" approach to motions to disqualify that is animated by "a keen sense of practicality," *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1063 (C.D. Cal. 2007) (internal quotation marks omitted), rather than "hypersensitivity to ethical nuances or the appearance of impropriety," *Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210, 219 (2007). "Mere exposure to an adversary's confidences is insufficient, standing alone, to warrant an attorney's disqualification." *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 819 (2007) (alteration and internal quotation marks omitted). Disqualification is appropriate only where misconduct is shown and where that misconduct "will have a continuing effect on the judicial proceedings before the court." *Marcum v. Channel Lumber Co.*, 1995 WL 225708, at *2 (N.D. Cal. Mar. 24, 1995); *accord Baugh v. Garl*, 137 Cal. App. 4th 737, 744 (2006); *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 308–09 (1989). "The purpose of disqualification is not to punish a transgression of professional ethics." *Baugh*,

-9-

137 Cal. App. 4th at 744; *accord MacDonald v. MacDonald*, 2003 WL 21744322, at *4 (Cal. Ct. App. July 29, 2003) ("[T]he issue of the extent of the judicial power to disqualify is different from questions of ethical duties imposed upon lawyers.").

### B.     Hulett Harper Acted Appropriately and in Good Faith

As Professor Martin explains in his declaration, Hulett Harper acted appropriately in its receipt and handling of the Michelon documents. *See* Martin Decl. ¶¶ 37–47. As an initial matter, Sempra has no basis to complain that Hulett Harper accepted information from Mr. Michelon. California law expressly permits counsel to have *ex parte* contact with his corporate adversary's former employees. *In re EXDS, Inc.*, 2005 WL 2043020, at *3 (N.D. Cal. Aug. 24, 2005) ("California cases have stressed that prohibiting attorneys from contacting an opponent's former employees would unfairly hinder litigants from investigating and pursuing factual evidence relevant to their case."); *Cont'l Ins. Co. v. Super. Ct.*, 32 Cal. App. 4th 94, 120 (1995) ("[P]rohibiting ex parte contact with former employees . . . unduly impedes the flow of information and unnecessarily increases the costs of litigation." (internal quotations marks omitted)).

Here, Hulett Harper did not obtain any Sempra work product or attorney-client communications from Mr. Michelon by improper means—indeed, it specifically asked Mr. Michelon not to disclose any privileged information. Hulett Harper then undertook appropriate precautions in a good faith attempt to ensure that it did not receive privileged materials from Mr. Michelon, utilizing a screening process to insulate the Ritchie litigation team from exposure to any potentially privileged documents, and then erecting a screen to prevent any transmission of privileged material between the filtering attorney and the litigation team.

In very similar circumstances, Judge Anello found that a screening review process was appropriate and denied a motion for sanctions against plaintiffs' counsel. *See In re Remec Incorporated Securities Litigation*, Case No. 04-CV-

-10-

1948-MMA, Order Denying Defendants' Motion for Sanctions [Doc. No. 379], at 6, 22–24 (S.D. Cal. Sept. 25, 2009) (attached to the Hulett Decl. as Ex. 18) (denying motion for sanctions where plaintiffs' counsel refrained from reviewing documents produced by defendants' former employee until they were reviewed by "law firm staff members (not the lawyers handling the case)" for privilege). The screening process undertaken by Hulett Harper also mirrors widely-accepted "taint team" procedures often utilized by the federal government to insulate prosecutors from privileged information. *See, e.g.*, *In re Sealed Case*, Misc. Nos. 12-196, 12-197 (RCL) (D.D.C. May 3, 2012); *United States v. Taylor*, 764 F. Supp. 2d 230, 233–35 (D. Me. 2011); *Hicks v. Bush*, 452 F. Supp. 2d 88, 102–03 (D.D.C. 2006); *United States v. Winters*, 2006 WL 2789864, at *2–3 (S.D.N.Y. Sept. 27, 2006); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 65 (D. Conn. 2002); U.S. Attorneys' Manual § 9-13.420(E) (2012) ("Searches of Premises of Subject Attorneys"), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/13mcrm.htm#9-13.420. *See also* Fed. R. Civ. P. 26(b)(5)(B) (stating that when a party receives information subject to a claim of privilege, it must "promptly return, <u>sequester</u>, or destroy the specified information and any copies it has" and "<u>must not use or disclose the information until the claim is resolved</u>" (emphases added)).

    In addition to this filtering review process, the ethical screen that Hulett Harper erected satisfied both of the necessary elements of an effective screen. *See Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 810 (2010). First, the screen was "timely imposed . . . when the [issue] first ar[ose]." *Id*. Second, Hulett Harper implemented specific "<u>preventive measures</u> to guarantee that information w[ould] not be conveyed." *Id*. For example, Mr. Villaseñor was separated from the Ritchie litigation team and was prohibited from transmitting any privileged information. Hulett Decl. ¶¶ 10–11; Villaseñor Decl. ¶¶ 8, 13. In addition, Hulett

-11-

Harper established rules and procedures preventing access to documents that Mr. Villaseñor determined to be potentially privileged. Hulett Decl. ¶ 10–12; Gonzalez Decl. ¶¶ 2–4; Villaseñor Decl. ¶¶ 7–10. Hulett Harper's actions not only fulfilled, but exceeded its ethical obligations. Martin Decl. ¶ 39.

Sempra makes much of Hulett Harper's failure to notify Sempra when it realized it had possession of potentially privileged documents. Mot. at 11, 15. However, as Professor Martin explains, while notice is required when counsel obtains privileged documents from its adversary through inadvertence, it is <u>not</u> required when potentially privileged information is provided to the attorney by a third party such as his adversary's former employee. Martin Decl. ¶¶ 13, 31. No California Rule of Professional Conduct requires such notice, and the clear weight of authority establishes that notice is not required under the circumstances present here. *See id.* ¶¶ 6–40; *Layer 2*, 2014 WL 2536993, at *10 (finding notice not required "where Layer2 allegedly received Flexera's confidential information not through the opposing counsel's inadvertent disclosure of documents, but through communications with one of [Flexera's former] employees"). *See also Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 833–34 (2002); *Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 300–04 (2001); *Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal. App. 3d 443, 449 (1985); *Cooke v. Super. Ct.*, 83 Cal. App. 3d 582 (1978) (same).[6] Two ABA Formal Opinions analyzing the issue under ABA Model Rule of Professional Conduct 4.4(b)[7] are to the same effect.

---

[6] In fact, counsel receiving documents from a former employee of an adversary such as Mr. Michelon may also have an ethical duty to his client <u>not</u> to voluntarily disclose information obtained during the course of investigation (or its source) to its adversary. *See* Martin Decl. ¶ 11 (citing Cal. Bus. & Prof. Code § 6068(e)(1); Cal. Rule of Prof. Conduct 3.100(a)).

[7] ABA Model Rule of Professional Conduct 4.4(b) provides that "A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender."

*See* ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 06-440 (2006), at 1–2 ("[I]f the providing of the materials is not the result of the sender's inadvertence, Rule 4.4(b) does not apply," even when "a lawyer . . . is offered or is provided, by a person not authorized to offer them, materials of an adverse party that the lawyer knows to be, or that on their face appear to be, subject to the attorney-client privilege of the adverse party."). *Accord* ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 11-460 (2011).[8]

Sempra's cases that require notice of the inadvertent production of documents by opposing counsel are therefore inapposite. *See* Mot. at 13–15; *Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, 2011 WL 2940313, at *6 (N.D. Cal. July 20, 2011) ("On its face, the [*State Fund/*]*Rico* rule applies only to <u>inadvertent</u> disclosures of confidential information. . . . [a] concern [that] is not present . . . where the documents were voluntarily sent before litigation began." (emphasis added)). *See also* Martin Decl. ¶¶ 7–36.

Indeed, as Professor Martin points out, ABA Model Rule 4.4(b), which articulates the key principle here, requires the receiving party to give notice of its possession of privileged documents only to the "<u>sender</u>," making clear that the notice requirement extends only to inadvertent disclosures by opposing counsel, rather than intentional disclosures by third parties. Surely Sempra does not fault Hulett Harper for not providing notice to Mr. Michelon that he had some privileged Sempra documents. *See* Martin Decl. ¶ 40. Sempra's attempt to misapply the notification requirement to the facts here simply does not work.

Sempra cites three cases in support of its position that a duty to notify can

---

[8] While not binding on California courts, "opinions of ethics committees . . . should be consulted by members for guidance on proper professional conduct. . . . Thus, the ABA Model Rules of Professional Conduct may be considered as a collateral source, particularly in areas where there is no direct authority in California and there is no conflict with the public policy of California." *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 655–56 (1999) (internal quotation marks omitted). *See also* Martin Decl. ¶ 10.

-13-

extend beyond inadvertent production situations— *Clark v. Superior Court*, 196 Cal. App. 4th 37 (Ct. App. 2011), *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122 (C.D. Cal. May 20, 2013), and *Gotham City Online, LLC v. Art.com, Inc.*, 2014 WL 1025120 (N.D. Cal. Mar. 13, 2014). As an initial matter, none of these cases had been decided when Hulett Harper received the documents from Mr. Michelon in 2010 (and thus could not possibly have imposed any ethical obligations on the firm at that time). And unlike the recent *Layer 2 Communications* decision, these cases did not squarely rule on the scope of any notice requirement (and are distinguishable for other reasons). In *Clark*, the issue was not before the court on appeal. *See* 196 Cal. App. 4th at 46. *Clark* also involved the provision of privileged documents by a former corporate officer, who had a fiduciary duty to his former employer that survived termination of his employment. *See id*. at 43; Martin Decl. ¶¶ 31–32.

Hartpence makes no mention of "inadvertence," and plaintiff's counsel never argued for any distinction in its brief opposing disqualification. *See id*.; Hulett Decl. Ex. 19. The *Hartpence* decision also relies on *Gomez v. Vernon*, 255 F. 3d 1118 (9th Cir. 2001)—a case that involved the "remarkable circumstance" of wrongdoing by the attorneys involved, who "secretly acquir[ed]" prison inmates' legal correspondence, and which relied on ABA Formal Opinions 92-368 and 94-382—opinions later withdrawn and repudiated by ABA Formal Opinion 06-440. *See Hartpence*, 2013 WL 2278122 at *2; *Gomez*, 255 F.3d at 1131. *Hartpence* also involved a complaint filed under seal in a *qui tam* case on behalf of the government—a factually distinguishable situation in which, as the Court noted, counsel have heightened duties of care and candor. *Id*. at *2 n.2.

*Gotham City* undertakes no independent analysis, merely citing to *Clark* and *Hartpence* as authority for the proposition that "courts have applied the [notice] rule . . . to situations where the production of privileged information is not

-14-

inadvertent." *Id.* at *3. As in *Hartpence* and *Clark*, Plaintiff's counsel never argued for any distinction between inadvertent and other types of productions, so the issue was not before the Court. *See* Hulett Decl. Ex. 20.

In contrast to these cases, *Layer 2 Communications*, the most recent of the decisions cited by either party on the issue, considered *Clark* and other relevant authorities, but squarely addressed and rejected an argument to impose a duty to notify outside the context of inadvertent productions. *See id.* at *10 & n.7. It therefore provides the best precedent. *See* Martin Decl. ¶¶ 35–36.

Hulett Harper therefore acted appropriately and in good faith (and unquestionably did not violate any ethical principle established by any California rule or case at the time it received the documents from Mr. Michelon).

## C. Sempra Has Waived Any Disqualification Argument

Sempra waived any disqualification argument by waiting for years to bring its motion. Sempra's motion, which it informed Plaintiff it would file the day before Plaintiff's first deposition of a Sempra witness, epitomizes a "deeply disturbing phenomenon in modern civil litigation"—the "tactical use of attorney-misconduct disqualification motions." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring). "[W]hen there is evidence of unreasonable delay in bringing the motion, causing prejudice to the [nonmovant], the motion for disqualification should not be granted." *Bates v. Granada Healthcare & Rehab. Ctr., LLC*, 2008 WL 4195954, at * 12 (Cal. Ct. App. Sept. 15, 2008) (internal quotation marks omitted). "[A]ttorney disqualification can be impliedly waived by failing to bring the motion in a timely manner." *Liberty Nat. Enterprises, L.P. v. Chi. Title Ins. Co.*, 194 Cal. App. 4th 839, 844 (2011).[9]

In *Liberty National Enterprises*, the Court found a motion to disqualify made

---

[9] Some courts addressing unreasonable delay in the context of a motion for attorney disqualification have invoked the doctrine of laches. *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987). However, "[i]n the Ninth Circuit, the equitable principle is stated in terms of waiver." *Id.*

-15-

after a two-year delay to be unreasonable where "the motion was made roughly midway through the case, which is a very bad time to have to change lawyers, especially in a case that involves the interplay of many documents and several witnesses." *Id.* at 847. *See also River West Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1313 (1987) (reversing a disqualification order after a two-year-plus delay where disqualification would have resulted in prejudice to plaintiffs' counsel that had engaged in "substantial discovery"); *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983). Many courts have denied motions for disqualification as a result of much shorter delays than the 28-month delay at issue here. *See, e.g.*, *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *6 (N.D. Cal. Mar. 31, 2011) (delay of four months unreasonable when disqualification motion filed "just two days after [nonmovant] sought leave to file for summary judgment"); *Bates*, 2008 WL 4195954, at *12–13 (delay of "at least one year" extreme and unreasonable, even though not "on the eve of trial or several years after an answer was filed" because counsel had already expended "substantial resources" in prosecuting the lawsuit). *See also Koloff v. Metro. Life Ins. Co.*, 2014 WL 2590209, at *5 (E.D. Cal. June 10, 2014) (four month delay "may be sufficient to warrant the denial of a motion for disqualification").

Here, Sempra knew no later than <u>March 2012</u> that Hulett Harper had possession of Mr. Michelon's business files. It also knew by May 2011 that Mr. Michelon had possession of a large quantity of Sempra documents, many of which Sempra claimed were privileged, and that Mr. Michelon had provided such documents to third parties. Yet only now does Sempra seek to deprive Mr. Ritchie of his lead counsel, just as depositions are scheduled to begin. This is the paradigmatic tactical disqualification motion, exactly the type decried by the Supreme Court, *see Koller*, 472 U.S. at 441, and the Ninth Circuit, *see Optyl Eyewear*, 760 F.2d at 1050. If Sempra's gamesmanship in bringing this motion is

-16-

rewarded, Mr. Ritchie would be deprived of the experience Hulett Harper has accumulated over four years of representation in this case—including significant motion practice, investigation, document discovery, and deposition preparation. Mr. Ritchie's other counsel did not appear as additional counsel until December 2013 and have not taken a lead role in litigating Mr. Ritchie's claims since that date. They could not replace Hulett Harper at this point in the case without extreme prejudice to Mr. Ritchie. *See* Hulett Decl. ¶ 4. Given the prejudice that Mr. Ritchie would suffer were Hulett Harper disqualified, this Court should find Sempra's motion barred by waiver.[10] At a minimum, Sempra's delay augurs in favor of action short of disqualification to address its concerns.

### D. Sempra Cannot Show Prejudice from Hulett Harper's Mere Possession—as Opposed to Use—of the Allegedly Privileged Michelon Documents

The cases Sempra cites in support of its motion all involve situations in which disqualified counsel extensively used privileged documents in an inappropriate manner—a situation not present here. For example, in *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007), plaintiffs' counsel came into possession of an attorney work product document at the deposition of plaintiffs' expert witness. *Id.* at 811–12. Plaintiffs' counsel copied, scrutinized, disseminated, and discussed the document with his co-counsel and experts and used the document while questioning a defense expert during a deposition. *Id.* at 812–13. In upholding the trial court's decision, the Court of Appeal noted that "disqualification [was] the proper remedy because of the <u>unmitigable damage</u> caused by [plaintiffs' counsel's] <u>dissemination and use of the document</u>." *Id.* at 819 (emphases added) (internal quotation marks omitted). The California Supreme

---

[10] Sempra's delay in bringing a disqualification motion "is significant not only from the perspective of prejudice to the nonmoving party, it is also an indication that the alleged breach of confidentiality was not seen as serious or substantial by the moving party." *Liberty Nat'l Enters.*, 194 Cal. App. 4th at 847.

Court agreed that "[w]ithout disqualification . . . the <u>damage caused by [the] use . . . of the notes was irreversible</u>." *Id*. (emphasis added).

The extensive use by counsel of privileged documents was also crucial to the holdings of other decisions cited by Sempra. In *Clark*, 196 Cal. App. 4th 37, plaintiff's counsel "used substantive information contained in privileged documents to question witnesses[,]to support [plaintiff's] claims, and . . . to craft a claim against [defendant]." *Id*. at 53–54. *See also State Fund*, 70 Cal. App. 4th at 647 (counsel distributed privileged documents to an expert witness and to another lawyer adverse to and pursuing a different claim); *Hartpence*, 2013 WL 2278122, at *2 (counsel quoted privileged documents in pleadings after AUSA informed it that the government would not consider the documents in its investigation because they were privileged); *Gotham City*, 2014 WL 1025120, at *1 (counsel used privileged documents to draft a "Proffer of Evidence" sent to the defendant as well as sections of plaintiff's complaint). Unlike counsel in those cases, Hulett Harper has never used any privileged documents. This key distinction renders Sempra's cases inapposite. *See also* Martin Decl. ¶ 48.

The most Sempra can muster by way of purported evidence of use of privileged documents by Mr. Ritchie's counsel is its speculation that a statement in a brief filed by Mr. Ritchie that "Plaintiff has reason to believe that in-house counsel played a role in the facts underlying Mr. Ritchie's malicious prosecution claim" must have come from a review of privileged Michelon documents. Mot. at 16. In fact, Mr. Ritchie's assertion had nothing to do with any privileged documents. Instead, it came from Mr. Michelon's publicly filed complaint against Sempra, which details the involvement of Sempra in-house counsel in illegal payments to Mexican officials directly related to Mr. Ritchie's property and his illegal eviction from it. *See* Hulett Decl. Ex. 21 ¶ 7(A)(4).

In fact, Sempra essentially admitted that it has no idea what documents

-18-

counsel for Ritchie has used when it sent an e-mail to counsel for Mr. Ritchie after it filed its motion asking counsel to identify all documents that Hulett Harper deemed "appropriate to use in this litigation." Hulett Decl. Ex. 17. One would have thought that Sempra might have asked such relevant questions before it filed such a serious motion, but it did not. Nor is Sempra even asking the right question for disqualification purposes. The question of which documents Mr. Ritchie believes are "appropriate to use" in this case underscores the fact that Sempra has no evidence of actual use, and is seeking only to protect against future use. As Professor Martin has explained, future problems can be addressed by prophylactic relief, and do not support disqualification. Martin Decl. ¶ 50.

**E.      Sempra Has Not Established Privilege and Relevance for the Purportedly Privileged Documents It Attaches to its Motion**

A key point of Sempra's motion is that, of the 40,000 pages of documents provided to Hulett Harper by Mr. Michelon, some of those not sequestered are in fact privileged. Setting aside the fact that any such "falling through the cracks," if it occurred, was obviously unintentional during the course of a good faith screening process, Sempra has not adequately shown that all of the documents it attaches to its motion are both privileged and relevant. If they are not privileged, Sempra's motion is without merit; and if they are privileged but irrelevant, this is a classic case of "no harm, no foul."

Sempra is the moving party, with the burden on all issues relevant to disqualification, including "'the burden of establishing the preliminary facts necessary to support' a prima facie claim of privilege." *Gotham City*, 2014 WL 1025120, at *3 (quoting *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 733 (2009)). Sempra attached to its motion redacted versions of ten documents that Sempra claims are examples of Sempra privileged documents that were not segregated by Mr. Villaseñor (hereinafter, the "Redacted Documents"). *See* Exs.

-19-

17–26 to the Haberny Decl. [Doc. No. 152-2].[11]  While it is very difficult to assess

Sempra's claims of privilege or relevance without reviewing unredacted versions

of the documents (something Mr. Ritchie's counsel has not done and will not do

unless the Court approves such a review), from the redacted versions it is not clear

that all of the documents Sempra cites are in fact privileged and relevant.

For example, one of the documents is an e-mail chain with the subject line

"Procurement Position in Mexico."  *See* Haberny Decl. Ex. 21.  The e-mail chain

contains no privilege headers, and the subject matter would seem to call for

business—as opposed to legal—advice from the Sempra attorneys involved in the

chain.  *See Costco*, 47 Cal. 4th at 735 (The privilege "does not attach to an

attorney's communications when the client's dominant purpose in retaining the

attorney was something other than to provide the client with a legal opinion or

legal advice"); *Syncora Guarantee Inc. v. EMC Mortg. Grp.*, 2013 WL 2552360,

at *2 (N.D. Cal. June 10, 2013) ("[T]he attorney-client privilege is inapplicable

where the attorney merely acts as a negotiator for the client, gives business advice

or otherwise acts as a business agent." (internal quotation marks omitted)).

Another e-mail chain starts with an email from Mr. Michelon (a non-lawyer)

to Michael Allman, an individual Sempra has not identified as an attorney.  *See*

Haberny Decl. Ex. 22.  The fact that an in-house attorney, Robert Borthwick, is

copied on the chain and responds to Mr. Michelon and Mr. Allman in an e-mail at

the top of the chain does not necessarily render the entire e-mail chain privileged.

"[A] communication which was not privileged to begin with may not be made so

by subsequent delivery to [an] attorney." *La Jolla Cove Motel & Hotel Apts., Inc.*

*v. Super. Ct.*, 121 Cal. App. 4th 773, 791 (2004) (internal quotation marks

omitted); *Syncora Guarantee Inc.*, 2013 WL 2552360, at *2 ("'[O]therwise

---

[11] Sempra makes the bold claim that "hundreds" of documents are privileged, but only cites and attaches ten specific "examples."  *See* Yablonka Decl. [Doc. No. 152-29] ¶ 8; Haberny Decl. Exs. 17–26.

routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda.'" (quoting *Zurich Am. Ins. Co. v. Super. Ct.*, 155 Cal. App. 4th 1485, 1504 (2007))).

Finally, a third e-mail chain involving both attorneys and non-attorneys appears to relate to invoices for an individual named "Monica Appel," who Sempra has not identified as an attorney. Haberny Decl. Ex. 25. It is not clear how communications regarding invoices submitted to Sempra by a non-attorney could contain attorney-client communications or legal advice.

Plaintiff highlights these examples to illustrate that Sempra cannot meet its burden to show that any privileged documents fell through the cracks simply by attaching redacted documents. Should the Court believe that it must determine whether or not these documents are privileged—which Plaintiff does not believe is necessary given the other infirmities in the motion—the Court may wish to review them *in camera*, with or without input from Plaintiff.[12]

Even setting aside the issue of privilege, the documents must be relevant in order for Sempra to suffer any prejudice. But Sempra's argument for relevance in its motion papers contradicts positions it has already taken in this case. Most importantly, Sempra has refused even to search the files of Mr. Michelon and Mark Fisher (an in-house Sempra accountant who was Mr. Michelon's supervisor and who appears to have authored several e-mails among the Redacted Documents) for documents in response to Mr. Ritchie's discovery requests, on the grounds that "Sempra does not agree that [Mr. Michelon and Mr. Fisher] have relevant or responsive documents, and Sempra therefore will not be collecting or

---

[12] As Mr. Ritchie has alleged and adduced evidence of criminal activity by Sempra in connection with its malicious prosecution of him, certain Sempra documents may also be subject to the crime-fraud exception to the attorney-client privilege. *See, e.g., In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996).

-21-

1  reviewing custodial ESI for them." Hulett Decl. ¶ 22; *Id.* Ex. 13. If no documents

2  in Mr. Michelon's files (or e-mails authored by Mr. Fisher) are relevant enough to

3  produce them in response to Mr. Ritchie's discovery requests, how can Sempra

4  possibly be prejudiced by Hulett Harper's review of them?[13]

5      In sum, given the fact that of the ten documents Sempra relies upon in its

6  motion papers, not all are clearly privileged and relevant, Sempra cannot even

7  begin to demonstrate the prejudice required for disqualification.

8         **F.    The Draconian Relief Sempra Seeks Is Not Justified Here**

9      As the purpose of a disqualification motion is "prophylactic, not punitive,"

10  "the significant question is whether there exists a genuine likelihood that the status

11  or misconduct of the attorney in question will affect the outcome of the

12  proceedings before the court." *Gregori*, 207 Cal. App. 3d at 308–09.

13  Accordingly, "[d]isqualification is inappropriate . . . simply to punish a dereliction

14  that will likely have no substantial continuing effect on future judicial

15  proceedings." *Id.* at 309. "[I]n the context of attorney disqualification . . .

16  California does have a 'no harm no foul' rule." *In re EXDS*, 2005 WL 2043020, at

17  *4 (emphasis omitted). *See also FlatWorld Interactives, LLC v. Apple, Inc.*, 2013

18  WL 4039799, at *7 (N.D. Cal., Aug. 7, 2013) (even when undisputed misuse of

19  privileged information occurs, disqualification is only appropriate when the

20  privileged documents are (a) pervasively used, (b) on core issues, and (c) in a

21  manner that is irreversible); Martin Decl. ¶ 48.

22  _____

23  [13] Sempra has also taken the position that it need not produce documents or provide information post-dating October 11, 2007 in response to Mr. Ritchie's discovery requests. *See* Doc. Nos. 135, 135-2. Yet several of the Redacted

24  Documents post-date that date. *See* Haberny Decl. Exs. 17, 20, 23, 24. Sempra has further asserted that discovery regarding properties other than Lot A-3 (Mr.

25  Ritchie's property) is *per se* irrelevant. *See* Doc. Nos. 135, 135-2. Yet the subject lines of several of the Redacted Documents indicate that they relate to properties

26  other than Lot A-3. *See* Haberny Decl. Exs. 17, 23. Still other documents among those Sempra attaches appear to relate to subjects irrelevant to the claims at issue

27  here—such as the "Procurement Position in Mexico" (*id.* Ex. 21), invoices from a Mexican law firm (Ex. 20), or the Monica Appel invoices (*id.* Ex. 25).

28

-22-

1      Sempra's motion meets no part of this standard.  In fact, Courts have denied

2      disqualification motions in circumstances involving egregious ethical violations by

3      counsel—a far cry from the facts here.  For example, in *Crawford v. Los Angeles*

4      *County Office of Education*, an inadvertent disclosure case, the Court of Appeals

5      held that disqualification was an inappropriate remedy even after counsel "read

6      [an] entire packet of [privileged] documents . . . made copies of the beneficial

7      documents, and used some of them and the information they contained in the

8      depositions she conducted."  2013 WL 1819100, at *2 (Cal. Ct. App. May 1,

9      2013).  Finding that the documents "did not implicate defendants' trial strategy nor

10     analyze the potential testimony of any witness" and that "defendants were unable

11     to articulate how they were prejudiced by the communications' disclosure to

12     plaintiff," the court declined to disqualify counsel, as the case did not involve

13     "<u>unmitigable, irreversible</u> damage to the defendants."  *Id.* at *3 (emphasis added).

14     Instead, the court issued an order "precluding plaintiff's use in any manner of the

15     information contained in the privileged documents."  *Id.* at *4.  *See also Proulx v.*

16     *Super. Ct. of Los Angeles Cnty.*, 2012 WL 1956856, at *13 (Cal. Ct. App. May 31,

17     2012) (reversing a trial court's disqualification order despite counsel's review of

18     privileged documents, as "[n]othing in the record shows a likelihood that [the

19     attorney's] review of the documents could substantially affect the outcome of the

20     proceeding—a finding essential to support disqualification"); *Cooke,* 83 Cal. App.

21     3d at 590 (denying motion to disqualify in a divorce proceeding where a family

22     butler made unauthorized copies of the husband's privileged documents and

23     transmitted those documents to the wife's attorneys, even though the wife's

24     attorneys had used those privileged documents in case filings).

25       Here, Sempra has not identified any prejudice resulting from Hulett Harper's

26     possession of the Michelon documents.  As a result of the screen it employed,

27     Hulett Harper has not used or even intentionally reviewed any privileged

28

                                    -23-

documents. Nor, even if it were required, can Hulett Harper's failure to notify Sempra of its possession of the documents justify disqualification, as any failure to give notice cannot itself support disqualification. *See Crawford*, 2013 WL 1819100, at *1 (concluding that "the interests of the defendants can be protected by remedies less draconian than disqualification of plaintiff's counsel").

Disqualification, or indeed the imposition of any sanction, would be particularly inappropriate in this case given that any obligation to notify counsel of receipt of potentially privileged documents outside the inadvertent production context—if it exists at all (and Mr. Ritchie and his expert do not believe it does)— is not clearly established by any California ethical rule or case. *See supra* pp. 12– 15; Martin Decl. ¶ 46; *Layer 2*, 2014 WL 2536993, at *10 ("[T]here is no applicable legal standard that supports disqualification of one party's attorney as a sanction for the disclosure by an ex-employee of the opposing party of the opposing party's confidential information." (internal quotation marks omitted)). As the *State Fund* Court held, it is inappropriate to sanction an attorney for conduct "not <u>clearly proscribed</u> [at the time] . . . . by any decision, statute or Rule of Professional Conduct applicable in this state." 70 Cal. App. 4th at 654–56 (emphasis added). As Sempra cites to no authority prohibiting the specific conduct engaged in by Hulett Harper, *see* Mot. at 10–15, it lacks support for disqualification.

As for the Redacted Documents (or others like them), even if Sempra's claims of privilege would withstand scrutiny by the Court after an *in camera* review, Sempra has not shown how Hulett Harper's mere possession of the documents in litigation files has or will prejudice it, particularly given Sempra's position that documents from Michelon's files could not be relevant.

Even if the Court finds that Hulett Harper or Mr. Villaseñor should have done something differently, there is a fully adequate remedy much less drastic than

-24-

disqualification—the remedy Sempra initially suggested in its first letter to Plaintiffs regarding the Michelon documents—the entry of a protective order. Hulett Harper has already offered to destroy any documents Sempra claims are privileged. This Court can enter a protective order that (1) requires Sempra to identify any documents among the Michelon documents it claims are privileged; and (2) requires Hulett Harper to return those documents to Sempra or destroy them.[14] Importantly, Sempra has not identified anything "in the [Redacted Documents that] revealed information which would confer an unfair advantage to the plaintiff." *Marcum*, 1995 WL 225708, at *2. Accordingly, there is no "genuine likelihood that the . . . misconduct . . . will affect the outcome of the proceedings before the court." *Gregori*, 207 Cal. App. 3d at 308–09. However, if indeed the documents have any negative impact, that impact can be fully mitigated by a protective order or such other remedies as the Court deems appropriate short of disqualification. *See, e.g.*, *Neal*, 100 Cal. App. 4th at 844 (noting that protective orders, orders limiting the admission of evidence, and sealed records can provide adequate substitutes for disqualification).

## IV.  **CONCLUSION**

While Hulett Harper acted appropriately and in good faith, Sempra delayed its motion for two years. Sempra suffered no prejudice from Hulett Harper's actions, and any errors can be remedied by actions short of disqualification. No basis exists for disqualification, and Sempra's motion should be denied.

---

[14] Should the Court be inclined to enter such an order, counsel for Mr. Ritchie would request that the Court further order Sempra to retain and log any documents it asks Mr. Ritchie to return or destroy, so counsel can challenge Sempra's privilege claims as appropriate.

-25-

DATED: July 29, 2014                    HULETT HARPER STEWART LLP
                                        KIRK B. HULETT


                                         /s/ Kirk B. Hulett
                                        KIRK B. HULETT

                                        225 Broadway, Suite 1350
                                        San Diego, CA 92101
                                        Telephone:  (619) 338-1133
                                        Facsimile:  (619) 338-1139
                                        Email:     kbh@hulettharper.com

                                        WILLIAMS & CONNOLLY LLP
                                        PETER J. KAHN (admitted *pro hac vice*)
                                        WILLIAM P. ASHWORTH
                                          (admitted *pro hac vice*)
                                        MEGHAN FERGUSON
                                          (admitted *pro hac vice*)
                                        JAMES GILLENWATER
                                          (admitted *pro hac vice*)
                                        725 Twelfth Street, N.W.
                                        Washington, DC 20005
                                        Telephone:  (202) 434-5000
                                        Facsimile:  (202) 434-5029
                                        Email:     pkahn@wc.com
                                                   washworth@wc.com
                                                   mferguson@wc.com
                                                   jgillenwater@wc.com

                                        THE LAW OFFICES OF LEONARD B.
                                          SIMON, P.C.
                                        LEONARD B. SIMON; SBN: 58310
                                        655 West Broadway, Suite 1900
                                        San Diego, CA 92101
                                        Telephone:  (619) 338-4549
                                        Facsimile:  (619) 231-7423
                                        Email:     lens@rgrdlaw.com

                                        Attorneys for Plaintiff Ramon Eugenio
                                        Sanchez Ritchie

-26-