# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ramon Eugenio Sanchez Ritchie,<br><br>                 Plaintiff,<br>vs.<br><br>Sempra Energy,<br><br>                 Defendant. | CASE NO. 10CV1513-CAB-KSC<br><br>ORDER DENYING MOTION TO DISQUALIFY LAW FIRM OF HULETT HARPER STEWART LLP<br><br>[Doc. No. 152] |

This matter is before the Court on Defendant Sempra Energy's ("Sempra") Motion to Disqualify Plaintiff Ramon Eugenio Sanchez Ritchie's lead counsel Hulett Harper Stewart LLP ("Hulett Harper"). The parties extensively briefed this issue, and the Court held a hearing on August 12, 2014, at which it **DENIED** the Motion. The purpose of this Order is to further explain the basis for the Court's ruling and lay out a procedure for handling any documents in Hulett Harper's possession that Sempra contends are privileged.

**I.    Background**

In 2010, a disgruntled former Sempra employee named Rudolfo Michelon gave Hulett Harper over 40,000 pages of documents (the "Michelon Documents") related to Michelon's work for Sempra. Michelon retained these documents in violation of

agreements to return all Sempra documents upon his termination. Since at least 2012, Sempra has been aware that Michelon retained these documents and that he had given them to third parties, though Sempra asserts that it did not know Michelon had given the documents to Hulett Harper.

Upon receipt of the Michelon documents, Hulett Harper instructed a contract attorney with no involvement in the instant litigation to review the documents and segregate any documents that appeared to contain Sempra's attorney-client privileged communications. Hulett Harper did not notify Sempra that it possessed Sempra's privileged documents. After the privilege review, Hulett Harper attorneys involved in this litigation reviewed the documents not designated as privileged for relevance and ultimately created a collection of approximately two binders worth of documents that Hulett Harper might possibly use in this litigation. In other words, aside from these two binders worth of documents, Hulett Harper claims that is has not used any of the over 40,000 pages of Michelon Documents in connection with its representation of Plaintiff. Hulett Harper does not dispute that the contract attorney conducting the privilege review may have missed some documents that are possibly privileged. However, at the hearing, Hulett Harper's counsel stated that only four of the documents in the relevant document binders were identified as privileged by Sempra in its motion papers here.

Now, four years into this litigation, Hulett Harper produced the Michelon Documents, including those segregated as privileged, to Sempra in response to discovery requests. Sempra claims that this production is when Sempra first learned that Hulett Harper was in possession of the Michelon Documents and, more importantly for this motion, documents Sempra considers to be privileged. Sempra argues that Hulett Harper's review and retention of these documents and failure to promptly notify Sempra was an ethical violation that has irreparably tainted Hulett Harper and requires its disqualification from representation of Plaintiff in this litigation.

## II. Legal Standard

This Court has the inherent power to disqualify counsel for ethical violations. *Crenshaw v. MONY Life Ins. Co.*, 318 F.Supp. 2d 1015, 1020 (S.D. Cal. 2004) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). "When deciding whether disqualification is warranted, the court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding. . . ." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004)(internal quotations omitted).

However, "[a]n order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity." *Layer2 Commc'n, Inc. v. Flexera Software LLC*, No. C-13-02131 DMR, 2014 WL 2536993, at *5 (N.D. Cal. June 5, 2014) (quoting *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000)); *see also Gotham City Online, Inc. v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014) ("Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny."). "Moreover, with regard to the ethical boundaries of an attorney's conduct, a bright line test is essential. As a practical matter, an attorney must be able to determine beforehand whether particular conduct is permissible; otherwise, an attorney would be uncertain whether the rules had been violated until ... he or she is disqualified. Unclear rules risk blunting an advocate's zealous representation of a client." *Snider v. Superior Court*, 113 Cal. App. 4th 1187, 1197-98 (Cal. Ct. App. 2003) (quoting *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp.,* 6 Cal.App.4th 1256, 1264 (Cal. Ct. App. 1992)).

## III. Discussion

In support of disqualification of Hulett Harper, Sempra cites to cases where a party received its adversary's privileged documents inadvertently, did not notify the adversary of the disclosure, and instead used the documents in the litigation. *See, e.g.,*

*Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007); *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-57 (1999). Sempra also relies on two more recent decisions disqualifying counsel where the allegedly privileged documents were obtained from someone other than the party asserting privilege and the production was not inadvertent. *See, e.g., Gotham City*, 2014 WL 1025120 (disqualifying plaintiff's counsel on account of their possession and use of defendant's privileged documents obtained from plaintiff's principals who were former employees of defendant);[1] *Clark v. Superior Court*, 196 Cal. App. 4th 37 (Cal. Ct. App. 2011) (disqualifying plaintiff's counsel on account of their possession and use of defendant's privileged documents that they had obtained from plaintiff who was a former employee of defendant).[2]

For its part, Hulett Harper contends that the ethical rules are far from clear with respect to an attorney's obligations when receiving documents intentionally provided by a third party that may contain privileged information, which is the specific circumstance here. In support, Hulett Harper cites to an even more recent case from the Northern District of California where the court denied a motion to disqualify the plaintiff's counsel who had obtained confidential privileged material from a former

---

[1] Although *Gotham City* does appear to support the concept of an ethical duty to disclose receipt of an adversary's privileged documents intentionally produced by a third party, one distinguishing factor is that the motion to disqualify in *Gotham City* was filed the day after the plaintiff filed its complaint, and the order of disqualification was issued just over a week later. This stands in stark contrast with the instant case, which has been pending for over four years. Therefore, putting aside whether an ethical violation even occurred, several of the factors relevant to the consideration of a disqualification motion, such as "a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding" (*Concat*, 350 F.Supp. 2d at 814), weigh much more strongly in favor of denying the motion here.

[2] Sempra also cites to various American Bar Association and California State Bar opinions, some of which Hulett Harper points out have been withdrawn or revised over the years. Regardless, considering the unsettled state of the law in this area, the Court declines to rely on such rules here. *Cf. State Fund*, 70 Cal. App. 4th at 657 ("The finding that an attorney has engaged in conduct contrary to an ABA formal opinion does not establish an obligatory standard of conduct imposed on California lawyers. Consequently it may not perforce be equated to a failure to act in good faith such that sanctions are warranted."); *Snider*, 113 Cal. App. 4th at 1197-98 ("[W]ith regard to the ethical boundaries of an attorney's conduct, a bright line test is essential.").

employee of the defendant. *See Layer2 Commc'n, Inc.*, 2014 WL 2536993, at *10 ("'[T]here is no applicable legal standard that supports disqualification' of one party's attorney as a sanction for the disclosure by an ex-employee of the opposing party of the opposing party's confidential information.") (quoting *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 843 (Cal. Ct. App. 2002)). Hulett Harper also offered an expert opinion from an ethics professor at the University of San Diego School of Law stating that Hulett Harper had no ethical duty to notify Sempra of its receipt of the Michelon Documents and that Hulett Harper acted "in a manner consistent with its ethical and professional obligations." [Doc. No. 162-26 at 2.]

Upon careful consideration of the facts and authority cited by the parties, the Court finds that the circumstances here do not support disqualification. The law is far from clear as to a law firm's obligations upon receipt of documents that include possibly privileged material from a third party ex-employee of its client's litigation opponent. This uncertainty is reflected by the two somewhat inconsistent opinions on this issue from the Northern District of California within the past sixth months. Moreover, the authority on this issue was even more sparse four years ago when Hulett Harper first received the Michelon Documents. Hulett Harper cannot be disqualified based on such unsettled law, particularly when the most recent opinion to consider the issue supports a holding that Hulett Harper actually did more than what was ethically required when it had the contract attorney conduct a privilege review before any Hulett Harper attorneys involved in this case reviewed the Michelon Documents.[3]

**IV. Disposition**

For the foregoing reasons, and for the reasons articulated by the Court at the August 12, 2014 hearing, Sempra's Motion [Doc. No 152] is **DENIED**. It is further **ORDERED** as follows:

---

[3] Nothing in this Order or that the Court said at the hearing should be construed as a ruling on whether Sempra waived privilege as to any particular Michelon document or whether Plaintiff shall be entitled to use any particular Michelon document at trial. Both sides shall be entitled to make waiver or exclusion arguments as appropriate when the time arises.

1. On or before **August 18, 2014**, Hulett Harper shall destroy all copies of the Michelon Documents that it had segregated as privileged;

2. On or before **August 18, 2014**, Sempra shall provide to Hulett Harper a list of all of the Michelon Documents not segregated as privileged by Hulett Harper that Sempra contends are privileged;

3. Within three business days of receipt of Sempra's list of privileged documents, Hulett Harper shall destroy all copies of such documents in its possession;

4. On or before **August 25, 2014**, Sempra shall provide a privilege log for all of the Michelon Documents identified in the list it provided to Hulett Harper;

5. If Hulett Harper disputes Sempra's privilege contentions with respect to any of the documents identified on the privilege log, it shall meet and confer with Sempra about those documents on or before **September 5, 2014**;

6. If the parties are unable to resolve a dispute about privilege concerning the Michelon Documents, they shall file a joint motion before Magistrate Judge Karen S. Crawford pursuant to Judge Crawford's chambers rules on or before **September 20, 2014**; and

7. On or before **August 29, 2014**, the parties shall file a joint motion before Judge Bencivengo with proposed discovery and scheduling deadlines for the remainder of this action.

It is **SO ORDERED**.

DATED: August 13, 2014

**CATHY ANN BENCIVENGO**
United States District Judge