1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4    RAMON EUGENIO SANCHEZ RITCHIE,   )
                                      )
5                     PLAINTIFF,      )   CASE NO. 10CV1513-CAB-KSC
                                      )
6              VS.                    )
                                      )
7    SEMPRA ENERGY, A CALIFORNIA      )
     CORPORATION,                     )
8                     DEFENDANT.      )
9

10

11

12

13

14       TRANSCRIPT OF PROCEEDINGS, MOTION TO DISQUALIFY COUNSEL
              BEFORE THE HONORABLE CATHY ANN BENCIVENGO
15              FRIDAY, AUGUST 12, 2014, 1:30 P.M.
                     SAN DIEGO, CALIFORNIA
16

17

18

19

20

21   PROCEEDINGS RECORDED BY STENOGRAPHY, TRANSCRIPT PRODUCED BY
     COMPUTER ASSISTED SOFTWARE
22   _____
23
                   MAURALEE RAMIREZ, RPR, CSR NO. 11674
24                  FEDERAL OFFICIAL COURT REPORTER
                      333 WEST BROADWAY, SUITE 420
25                    SAN DIEGO, CALIFORNIA 92101
                        ORDERTRANSCRIPT@GMAIL.COM

```
 1   FOR THE PLAINTIFF:

 2        LEONARD B. SIMON
          LAW OFFICE OF LEONARD B. SIMON
 3        665 WEST BROADWAY, SUITE 1900
          SAN DIEGO, CALIFORNIA 92101
 4
          WILLIAM P. ASHWORTH
 5        WILLIAMS & CONNOLLY LLP
          725 TWELFTH STREET, N.W.
 6        WASHINGTON, DC 20005

 7        KIRK B. HULETT
          HULETT HARPER STEWART LLP
 8        225 BROADWAY, SUITE 1350
          SAN DIEGO, CALIFORNIA 92101
 9
     FOR THE DEFENDANT:
10        JOHN C. HUESTON
          MARSHALL  A. CAMP
11        IRELL & MANELLA LLP
          840 NEWPORT CENTER DRIVE, SUITE 400
12        NEWPORT BEACH, CALIFORNIA 92660-6324

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      SAN DIEGO, CALIFORNIA; TUESDAY, AUGUST 12, 2014; 1:30 P.M.

2           THE CLERK:  AND WE ARE BACK ON THE RECORD, CALLING

3    MATTER NO. 2 ON CALENDAR, CASE NO. 10CV1513-CAB-KSC, RITCHIE

4    VERSUS SEMPRA ENERGY, ON CALENDAR FOR MOTION HEARING.

5           COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING WITH

6    PLAINTIFF'S COUNSEL.

7           MR. SIMON:  GOOD MORNING, YOUR HONOR.  LEONARD SIMON

8    FOR THE PLAINTIFFS.

9           MR. HULETT:  KIRK HULETT ALSO ON BEHALF OF THE

10   PLAINTIFFS.

11          MR. ASHWORTH:  WILL ASHWORTH ON BEHALF OF THE

12   PLAINTIFFS.

13          MR. HUESTON:  GOOD AFTERNOON, YOUR HONOR.  JOHN

14   HUESTON ON BEHALF OF SEMPRA ENERGY.

15          MR. CAMP:  MARSHALL CAMP ON BEHALF OF SEMPRA ENERGY.

16          THE COURT:  THANK YOU.  THERE ARE A NUMBER OF PEOPLE

17   HERE.  THESE MOTIONS WERE ALL FILED UNDER SEAL, AND MOST OF THE

18   MATERIALS FROM BOTH SIDES SUPPORTING OR OPPOSING CONTAIN

19   DOCUMENTS OR COMMENTS THAT PEOPLE HAVE INDICATED THEY THINK

20   ARE-- THE COURT HAS ACCEPTED AS FILING THEM UNDER SEAL.  I

21   DON'T KNOW WHO IS HERE OR WHY THEY'RE HERE, IF YOU WANT TO ASK

22   THEM TO LEAVE, OR IF YOU WANT THIS HEARING TO BE UNDER SEAL, OR

23   IF YOU WANT TO WAIT UNTIL I INADVERTENTLY SAY SOMETHING I

24   SHOULDN'T, AND THEN YOU'LL ALL GO, OH, NO, DON'T DO THAT.

25          MR. SIMON:  YOUR HONOR, I CAN IDENTIFY ONE OF THE

1    PEOPLE, PROFESSOR SEAN MARTIN SITTING BEHIND ME.  HE IS OUR

2    EXPERT WITNESS.  AND WE THOUGHT ABOUT THE ISSUE A COUPLE OF

3    HOURS AGO IN THE OFFICE, AND WE THINK THE ONLY THING THAT IS

4    RAISING THE SEAL ISSUE IS THE ARBITRATION RELATED MATERIAL.  SO

5    IT'S OBVIOUSLY SEMPRA'S CALL.  I IMAGINE I'LL TALK ABOUT THEM

6    FOR A GOOD MINUTE AND A HALF OR LESS, BUT NOT ALL DAY.  BUT

7    IT'S THEIR CALL.

8         MR. HUESTON:  WE HAVE SEVERAL CLIENT REPRESENTATIVES

9    HERE, SO I DON'T SEE ANY REASON TO ASK TO CLEAR THE COURTROOM

10   AT THIS TIME.

11        THE COURT:  OKAY.  THAT'S FINE.  ALL RIGHT THEN.  THIS

12   IS SEMPRA'S MOTION TO DISQUALIFY THE HULETT HARPER STEWART FIRM

13   IN THIS CASE.  I HAVE REVIEWED ALL THE MATERIALS THE PARTIES

14   HAVE PROVIDED AND THE PERTINENT CASE LAW ON THE SUBJECT.  I

15   SUPPOSE I'LL JUST GIVE YOU MY TENTATIVE RIGHT OFF THE TOP, AND

16   IT'S SEMPRA'S MOTION, SO YOU CAN RESPOND.

17        IT IS MY TENTATIVE TO DENY THE MOTION.  I THINK WE

18   NEED TO DISCUSS PROCEDURES FOR THE RETURN OF THE DOCUMENTS AND

19   THEN FACILITATE THE PRODUCTION OF A PRIVILEGE LOG FOR THOSE

20   DOCUMENTS THAT SEMPRA CONTENDS ARE PRIVILEGED IN THIS CASE, OR

21   THE IDENTIFICATION OF ANY OF THE DOCUMENTS THAT WILL BE

22   CONFIDENTIAL AND SHOULD BE UNDER A PROTECTIVE ORDER, AND THEN

23   ANY OPPORTUNITY FOR THE PLAINTIFFS TO CHALLENGE THE

24   ATTORNEY/CLIENT PRIVILEGE DESIGNATION.

25        THE REASON THAT I'M DENYING THE MOTION IS LARGELY, I

1   THINK, REFLECTED IN THE DECISION THAT IS SET FORTH IN THE *LAYER*

2   *2 COMMUNICATIONS* CASE.  THERE JUST DOESN'T APPEAR TO BE AN

3   APPLICABLE LEGAL STANDARD THAT SUPPORTS JUSTIFICATION BECAUSE

4   ONE PARTY'S ATTORNEY HAS BEEN EXPOSED TO CONFIDENTIAL

5   INFORMATION THAT WASN'T INADVERTENTLY PRODUCED BY THE OPPOSING

6   PARTY.  THIS WAS DOCUMENTATION THAT WAS GIVEN, AS I UNDERSTAND

7   IT, TO THE PLAINTIFFS BY A THIRD PARTY BY HIS OWN INITIATIVE.

8   IT WAS AN INTENTIONAL PRODUCTION BY HIM, AND I DON'T BELIEVE

9   THAT THE PROFESSIONAL RESPONSIBILITY SECTION THAT THE

10  DEFENDANTS ARE RELYING ON APPLIES IN THIS SITUATION.

11          IT FEELS AWKWARD AND UNCOMFORTABLE, BUT I DON'T THINK

12  IT'S AN ETHICAL VIOLATION, AND I THINK THERE ARE REMEDIES THAT

13  ARE FAR LESS DRACONIAN AND NECESSARY THAN THE DISQUALIFICATION

14  OF COUNSEL.

15          SO WITH THAT AS SORT OF AN OVERVIEW, GO AHEAD, CHANGE

16  MY MIND.

17          MR. HUESTON:  THANK YOU, YOUR HONOR.  IF I CAN JUST

18  HAVE ONE MOMENT.  YOUR HONOR, LET ME START WITH THE NOTION THAT

19  I THINK YOU ARE PROPERLY FEELING SOME DISCOMFORT HERE.  IF WE

20  STEP BACK FOR A MOMENT, WE HAVE, I THINK, A FACT BASIS THAT IS

21  REALLY NOT IN DISPUTE, AND THAT IS, THAT FOR FOUR YEARS THE

22  HULETT FIRM HAS HAD ACCESS TO HUNDREDS OF ATTORNEY/CLIENT

23  PRIVILEGED DOCUMENTS.

24          THEY WON'T DISPUTE THAT BECAUSE THEIR OWN CONTRACT

25  LAWYER WHO WAS DESIGNATED TO REVIEW THE DOCUMENTS LABELED A

1    GOOD PORTION OF THOSE DOCUMENTS AS ATTORNEY/CLIENT PRIVILEGE.

2    AND, IN FACT, THOSE CAME OUT IN OUR PRODUCTION.  WE THEN FOUND

3    HUNDREDS MORE THAT WERE VERY SIMILAR TO THOSE AND OTHERS EVEN

4    CLEARLY STAMPED ATTORNEY/CLIENT PRIVILEGE.

5            SO YOU HAVE, I THINK, THE DISTURBING FACT PATTERN OF A

6    FIRM THAT HAS REVIEWED AND USED A SUBSTANTIAL NUMBER OF

7    ATTORNEY/CLIENT PRIVILEGED DOCUMENTS, SOME OF WHICH IN A SHORT

8    PERIOD OF TIME, WE WERE ABLE TO IDENTIFY SEVERAL EXAMPLES ARE

9    CLEARLY RELEVANT TO LOT A3 PURCHASE AND THE SURROUNDING LOT

10   PURCHASES, WHICH THE COURT HAS DETERMINED WAS AN ISSUE OF

11   CENTRALITY IN THE CASE.  THESE DOCUMENTS, INCLUDING THE

12   HUNDREDS OF PRIVILEGED DOCUMENTS, WERE CHOSEN BY THE HULETT

13   FIRM AS RELEVANT AND TO BE PRODUCED IN THIS CASE, AND THAT WAS

14   ONLY DONE WHEN WE WARNED THEM THAT IF THEY DIDN'T PRODUCE THE

15   DOCUMENTS THEY INTENDED TO USE AT TRIAL, WE WERE GOING TO

16   PRECLUDE THEIR USE FULLY.  AND THEY CAME AND WERE PRODUCED.

17           SO WE HAVE A SUBSTANTIAL NUMBER OF ATTORNEY/CLIENT

18   PRIVILEGED DOCUMENTS OF MATERIAL USE TO THIS FIRM THAT WAS

19   REVIEWED BY MEMBERS OF HIS FIRM.  THERE WERE ARGUMENTS THAT

20   MR. HULETT, HE SAID IN A SELF—SERVING DECLARATION, DIDN'T

21   PERSONALLY REVIEW IT.  THAT'S IRRELEVANT.  ONE PERSON AT A FIRM

22   REVIEWING IT, IT'S IMPUTED TO ALL.

23           NOW THIS AREA IS ONE WHERE THE LAW HAS BEEN PRETTY

24   CLEAR THAT WE LOOK FOR PROPHYLACTIC SAFEGUARDS BECAUSE IT'S

25   REALLY HARD FOR THE AGGRIEVED PARTY TO SIT AND TRY TO FIGURE

1   OUT EXACTLY HOW A REVIEW BY ONE ATTORNEY THREE YEARS AGO MIGHT

2   HAVE PUT A PRIVILEGED FACT IN HIS MIND AND THAT IS GOING TO

3   SHOW UP IN A PARTICULAR EXAMINATION OF A DEPONENT THREE MONTHS

4   FROM NOW.  THAT IS AN IMPOSSIBLE TASK.  AND, OF COURSE,

5   OPPOSING COUNSEL EFFECTIVELY INVITES US TO DO THAT.

6          AND I THINK THE BODY OF JURISPRUDENCE IS PRETTY CLEAR,

7   WE NEED NOT DO SUCH A THING BECAUSE IT IS AN IMPOSSIBLE TASK

8   ONCE THEY HAVE HAD MORE THAN JUST EXPOSURE.  WE'RE NOT TALKING

9   ABOUT IT GETS DROPPED INTO THE MAILBOX, OOPS, WE'VE SEEN

10  SOMETHING, GOTCHA, TACTICALLY WE'RE LOOKING TO EXCUSE YOU FROM

11  THE CASE.  THIS IS USED FOR FOUR YEARS.  SO WE MOVE BEYOND THE

12  TECHNICAL TACTICAL GOTCHA SITUATION TO SOMETHING MUCH MORE

13  SERIOUS.

14         THE COURT:  BUT YOUR WHOLE ARGUMENT PRESUPPOSES THAT

15  THEY HAD SOME DUTY, AND THE PROBLEM THAT I HAVE IS THAT IN THIS

16  PARTICULAR -- AND I DIDN'T FIND ANY CASES IN ANY OF THE

17  MATERIALS CITED TO ME WHERE THIS ACTUAL FACT PATTERN WAS AT

18  ISSUE.  IT WAS EITHER INADVERTENT DISCLOSURE BY OPPOSING

19  COUNSEL, THE CLASSIC CASE OF WE DID DISCOVERY AND AN ENVELOPE,

20  A FOLDER, A DOCUMENT, SOMETHING ENDED UP IN THERE, IT WAS

21  EASILY IDENTIFIED AS PRIVILEGED, AND WE NOTIFIED YOU AND

22  RETURNED IT, OR WE DIDN'T, BUT WHATEVER, THE CLEARCUT CASE THAT

23  THE CODE OF CONDUCT SEEMS TO ADDRESS, OR THESE CASES TEND TO

24  ADDRESS WHERE THE CLIENT OF THE COUNSEL SEEKING TO BE

25  DISQUALIFIED HAD ACCESS IN THEIR FORMER CAPACITY AS AN EMPLOYEE

1   OR A LAWYER OR SOME OTHER ROLE WITH THE OTHER SIDE AND BROUGHT

2   THAT INFORMATION IN THEIR OWN PERSONAL KNOWLEDGE WITH THEM.

3          MR. HUESTON:  RIGHT.

4          THE COURT:  DISCLOSED TO THEIR LAWYER, PRIMARILY TO

5   PREPARE THEIR OWN CASE AGAINST THEIR FORMER EMPLOYER.  AND THE

6   COURTS HAVE SAID, IT'S AN IMPRACTICALITY TO SAY YOU CAN'T TELL

7   YOUR LAWYER STUFF THAT'S PRIVILEGED TO PREPARE YOUR OWN CASE

8   FOR TRIAL; OTHERWISE, YOU WOULD NEVER BE ABLE TO SUE.

9          MR. HUESTON:  I AGREE.

10         THE COURT:  YOU WOULD NEVER FIND A LAWYER.  OKAY.

11   THIS ONE IS IN THAT IN BETWEEN AREA WHERE THE PERSON WHO

12   PROVIDED THESE DOCUMENTS JUST DID SO.  HE'S A FORMER

13   DISGRUNTLED, APPARENTLY, EMPLOYEE OF SEMPRA.  HE GAVE THE

14   DOCUMENTS TO THE HULETT FIRM.  IT'S A LOT OF DOCUMENTS.  IT'S

15   NOT SOME SMALL AMOUNT OF DOCUMENTS.  IT'S 40,000 PAGES OR SO OF

16   DOCUMENTS, SOME OF WHICH ARE NOT PRIVILEGED, SOME OF WHICH ARE

17   NOT CONFIDENTIAL, AND I DON'T SEE THE ONUS ON THE FIRM TO

18   CONTACT YOU AS THE ATTORNEY OR YOUR CLIENT TO SAY, OH, GEE,

19   SOMEONE HAS VOLUNTARILY GIVEN US ALL THIS STUFF.

20          DON'T THEY HAVE AN OBLIGATION TO THEIR CLIENT IF

21   SOMEONE HANDS THEM THE SMOKING GUN, LET'S SAY, TO USE IT?  WHY

22   SHOULD THEY HAVE TO DISCLOSE THAT TO YOU, AND WHERE IS THE LAW

23   THAT SAYS THEY HAVE TO DISCLOSE IT?  WHO DO THEY HAVE TO

24   DISCLOSE THAT TO?  WHAT DO THEY HAVE TO DISCLOSE?  WE GOT SOME

25   40,000 DOCUMENTS, WE WON'T USE ANY OF THEM UNTIL YOU TELL US

1   WHICH ONES ARE PRIVILEGED?  IT CERTAINLY CAN'T BE THEIR ONUS TO

2   GO THROUGH THE 40,000 TO FIGURE OUT WHICH ONES ARE OR AREN'T

3   BECAUSE BY DOING THAT, YOU'VE ARGUABLY LOOKED AT TOO MANY.

4          AND WHAT IF SOMEONE JUST TO SET THEM UP SAID, OH,

5   LOOK, LET'S DELIVER A BOX OF DOCUMENTS TO PLAINTIFF'S COUNSEL

6   WITH SOME PRIVILEGED STUFF IN IT, AND IF THEY DON'T TELL YOU,

7   THEY GET DISQUALIFIED.  I'M NOT GETTING A FEELING THAT THAT'S

8   WHERE WE WANT TO GO EITHER.

9          MR. HUESTON:  RIGHT.  SO LET ME ADDRESS ALL THOSE

10  POINTS.  FIRST, YOU'RE ABSOLUTELY RIGHT, THAT THE CASES --

11  THERE IS ONE SET OF CASES, AND THEY ARE THE ONES EXCLUSIVELY

12  RELIED UPON BY THE HULETT FIRM THAT WHEN YOUR OWN CLIENT GIVES

13  YOU SUCH DOCUMENTS THAT'S AN EXCEPTION, AND THE LAW HAS BEEN

14  CONSISTENT THERE.  THAT'S DIFFERENT.  NOT ADDRESSING THOSE

15  CASES.

16          THEN THERE'S THE LINE OF CASES, AND YOU'VE CITED THEM,

17  THAT WHEN THERE'S INADVERTENT PRODUCTION, THEN THERE'S A SET OF

18  RULES IN PLACE.  AND THE RULES ARE PRETTY CLEAR.  IT PROVIDES A

19  PRETTY STRICT PROTOCOL.

20          WHEN YOUR HONOR SAID WHAT ARE THEY SUPPOSED TO DO AND

21  WHEN, I THINK WE WILL AGREE IN THE  INADVERTENT DISCLOSURE

22  SITUATION, THERE'S A PRETTY CLEAR SET OF STEPS.  FIRST, YOU'RE

23  NOT ALLOWED TO HAVE A GOTCHA THERE EITHER.  THERE HAS TO BE

24  ENOUGH OF REVIEW ALLOWED SO PEOPLE CAN FIGURE OUT WHETHER IT'S

25  ATTORNEY/CLIENT PRIVILEGE OR NOT.  MERELY PUTTING IT IN FRONT

1    OF SOMEONE'S EYES IS NOT ENOUGH TO CAUSE AN ISSUE.

2        WHAT'S SUPPOSED TO HAPPEN, THOUGH, AFTER SUFFICIENT

3    REVIEW TO DETERMINE WHETHER THERE'S AN ATTORNEY/CLIENT

4    PRIVILEGED DOCUMENT, THEN THERE'S A NOTICE REQUIREMENT AS SOON

5    AS POSSIBLE.

6        THE COURT:  TO THE SENDER.  YOU'RE NOT THE SENDER IN

7    THIS CASE.

8        MR. HUESTON:  THAT'S RIGHT.  YOU'RE RIGHT.  SO WE'RE

9    IN A DISTINGUISHABLE SITUATION.  BUT THE CASE LAW HAS ADDRESSED

10   THAT IN CALIFORNIA.  WE HAVE BEEN TALKING THE WORLD OF THE *RICO*

11   CASE, WHICH IS THE ONE WITH INADVERTENT DISCLOSURE.  BUT THEN

12   THE *GOTHAM CITY* CASE HELD, QUOTE "COURTS HAVE APPLIED THE RULE

13   ARTICULATED IN *RICO* TO SITUATIONS WHERE THE PRODUCTION OF

14   PRIVILEGED INFORMATION IS NOT INADVERTENT."

15       AND THEN MORE SPECIFICALLY, YOUR HONOR, THE *CLARK*

16   CASE, I THINK IS VERY MUCH ON POINT.  THAT'S 196 CAL APP. 437

17   AND 54, 56.  COUNSEL RECEIVED PRIVILEGED DOCUMENTS THAT QUOTE

18   "BORE OBVIOUS INDICIA OF THE PRIVILEGE HELD BY DEFENDANT."  AND

19   IT CAME FROM, YOUR HONOR, A FORMER, DISGRUNTLED, FORMER

20   EMPLOYEE.

21       THAT'S VERY MUCH AN ANALOGOUS FACTUAL SITUATION, AND

22   THE COURT DISQUALIFIED COUNSEL FOR BREACHING ITS DUTY QUOTE

23   "NOT TO REVIEW THESE DOCUMENTS MORE THAN WAS REASONABLY

24   NECESSARY TO MAKE THE DETERMINATION THAT THEY ARE PRIVILEGED

25   AND TO IMMEDIATELY NOTIFY THE HOLDER OF THE PRIVILEGE IN THIS

1   CASE THAT THEY WERE IN POSSESSION OF THOSE PRIVILEGED

2   DOCUMENTS."  THAT CASE, YOUR HONOR, FROM 2011, I THINK IS

3   DIRECTLY ON POINT.

4          RELATED CASES, *U.S. EX REL HARTPENCE V. KINETIC*

5   *CONCEPTS.*  THAT GRANTED A DISQUALIFICATION MOTION WHERE COUNSEL

6   OBTAINED ITS CLIENT'S ADVERSARY'S PRIVILEGED DOCUMENTS AND

7   DISSEMINATED THEM WITHOUT NOTIFYING THE ADVERSARY OR CONSULTING

8   THE COURT, DESPITE HAVING REASON TO BELIEVE THE DOCUMENTS WERE

9   PRIVILEGED.

10         AND THEN THERE'S BEEN THE STANDING STATE BAR OF

11  CALIFORNIA COMMITTEE ON PROFESSIONAL RESPONSIBILITY FORMAL

12  OPINION, 2013-188, WHICH HAS EXPRESSLY OPINED THAT *RICO* RULE

13  EXTENDS TO PRIVILEGED DOCUMENTS RECEIVED FROM A THIRD PARTY.

14         SO, YOUR HONOR, WE THINK THAT THERE IS LAW, AND WE

15  WOULD ASK -- WE REALIZE THAT HAVE YOU BEEN ASSAULTED BY

16  PAPERWORK.  WE ASK BEFORE YOU COME TO YOUR FINAL CONCLUSION

17  THAT YOU REVIEW THOSE CASES BECAUSE I DO BELIEVE THEY ARE ON

18  POINT.

19         AND, YOUR HONOR, IF WE THINK ABOUT, I THINK IT'S WHY

20  YOU BEGAN YOUR DISCUSSION WITH THE FACT THAT YOU WERE AT A

21  POSITION OF DISCOMFORT HERE.  IT DOES FEEL STRANGE THAT SOMEHOW

22  WHAT WAS PUT IN PLACE HERE CAN BE OKAY UNDER THE LAW.  LET'S

23  REVIEW WHAT HAPPENED HERE.  THE HULETT FIRM PUT SOMEONE THEY

24  CALL A LAW CLERK WITH VERY LITTLE LEGAL TRAINING FRESH OUT OF

25  LAW SCHOOL AND SAID --

1          THE COURT:  LET'S GO BACK TO WHAT HAPPENED HERE.  AN

2   EMPLOYEE LEFT SEMPRA.

3          MR. HUESTON:  RIGHT.

4          THE COURT:  AND HE TOOK DOCUMENTS WITH HIM THAT

5   ACCORDING TO HIS EMPLOYMENT AGREEMENT HE WASN'T SUPPOSED TO

6   TAKE WITH HIM WHEN HE LEFT.

7          MR. HUESTON:  RIGHT.

8          THE COURT:  HE THEN DISPERSED THEM TO OTHERS,

9   INCLUDING THE HULETT FIRM, AND IN 2011, SEMPRA WAS NOT ONLY

10  AWARE OF THE FACT THAT HE HAD TAKEN THOSE DOCUMENTS AND

11  DISPERSED THEM, BUT RECEIVED AN ORDER FROM THE ARBITRATOR THAT

12  HE WAS IN VIOLATION OF HIS EMPLOYMENT AGREEMENT, AND HE HAD TO

13  RETURN THEM.  THERE IS NO INDICATION ANYWHERE IN THAT ORDER,

14  WHICH SURPRISED ME, THAT SEMPRA DIDN'T ASK THAT HE HAVE TO BE

15  ASKED TO DISCLOSE AT THAT TIME EVERY PARTY HE MAY HAVE GIVEN

16  THOSE DOCUMENTS TO.

17          IF THOSE DOCUMENTS WERE SO IMPORTANT, SOME OF THEM

18  ALLEGED TO BE TRADE SECRET FINANCIAL INFORMATION, THAT ALONE IS

19  ENOUGH TO PRESERVE AND PROTECT YOUR TRADE SECRETS THAT WOULD

20  SUGGEST TO ME THAT SEMPRA SHOULD HAVE TAKEN SOME STEPS TO

21  ASCERTAIN FROM MR. MICHELON AND HIS COUNSEL WHO ELSE THEY GAVE

22  THE DOCUMENTS TO SO THAT YOU COULD HAVE AFFIRMATIVELY TAKEN

23  SOME STEPS AT THAT TIME TO CONTACT PEOPLE WHO HAD POSSESSION OF

24  THE DOCUMENTS, THESE WERE GIVEN TO YOU IN BREACH OF SOMEONE'S

25  EMPLOYMENT AGREEMENT.  IF YOU USE THEM FOR ANY PURPOSE,

1   LITIGATION, TRADE SECRET, WHATEVER THAT YOU MAY BE SUBJECT TO

2   PENALTIES.  THERE IS NO INDICATION THAT THAT STEP WAS EVER

3   TAKEN.

4          SO THAT MAKES ME ALSO A LITTLE UNCOMFORTABLE THAT

5   SEMPRA DIDN'T REALLY AFFIRMATIVELY GO OUT AND TRY TO RECAPTURE

6   THOSE DOCUMENTS, EVEN THOUGH THEY KNEW THAT MR. MICHELON HAD

7   GIVEN THEM OUT TO THIRD PARTIES.

8          MR. HUESTON:  I THINK -- I'M GOING TO GET A NOTE IN A

9   MOMENT -- THAT THERE WERE STEPS THAT SEMPRA TOOK TO TRY TO PUT

10  HUMPTY-DUMPTY BACK TOGETHER AGAIN, YOUR HONOR.  BUT I THINK FOR

11  PURPOSES OF THIS CASE, WHAT I WILL ASK THE COURT TO CONSIDER

12  IS, LET'S ASSUME THAT SEMPRA NOW IN HINDSIGHT COULD HAVE DONE A

13  FEW THINGS TO TRY TO GRAB DOCUMENTS FROM AS MANY PLACES AS IT

14  COULD.  IF THOSE DOCUMENTS END UP IN AN ATTORNEY'S HANDS, IT

15  CAN'T BE THAT THE ATTORNEY -- IT'S SORT OF A LOTTERY TICKET.

16  IF THEY GET THEM AND THERE ARE A BUNCH OF ATTORNEY/CLIENT

17  PRIVILEGED DOCUMENTS BUT THEY HAVEN'T ALREADY BEEN PUT ON

18  NOTICE BY, SAY, SEMPRA THAT THEY KNOW THE CACHE OF DOCUMENTS

19  STOLEN BY MR. MICHELON CONTAINED ATTORNEY/CLIENT PRIVILEGED

20  DOCUMENTS, THAT THEY GET TO HAVE THEM AND MAKE FREE USE OF

21  THEM.

22          THERE IS NO INDICATION IN THE RECORD, YOUR HONOR, AND

23  THEY POINTED TO NONE, THAT SEMPRA KNEW THAT HE STOLE

24  ATTORNEY/CLIENT PRIVILEGED DOCUMENTS OR THAT ATTORNEY/CLIENT

25  PRIVILEGED DOCUMENTS WENT TO THEM.  AND, IN FACT, FROM OUR

1   CORRESPONDENCE THAT WE HAVE ATTACHED ONTO OUR PLEADINGS, WE

2   KEPT ASKING, EXACTLY WHAT DO YOU HAVE?  WE WANT TO STRAIGHTEN

3   OUT WHAT YOU HAVE DONE AND TO WHAT DEGREE THAT YOU HAVE, IN

4   FACT, SEGREGATED DOCUMENTS.

5          AND WHAT WE HAD UNTIL THEY FILED THEIR OPPOSITION WAS,

6   FRANKLY, A DIFFERENT SET OF FACTS THAN WHAT RESULTED.  AND AT

7   THE END OF THE DAY, YOUR HONOR, GETTING BACK TO WHAT HAPPENED

8   HERE, HOW CAN IT BE A GOOD FAITH EXERCISE TO PUT A LITIGATION

9   CLERK WITH NO CHECKS AND BALANCES ON HIM, SIMPLY MAKE YOUR

10  DECISION AS YOU WILL, AND THEN THAT'S THE END OF THE

11  RESPONSIBILITY?  IF THERE ARE ATTORNEY/CLIENT DOCUMENTS LINKING

12  TO THE HUNDREDS IN THE GENERAL REVIEW OF THE OTHER ATTORNEYS IN

13  THE LITIGATION TEAM, THAT'S OKAY, WE'VE MADE A SUFFICIENT

14  SEGREGATION GOOD FAITH SHOWING THAT WOULD PROTECT US FROM

15  ANYTHING THAT MIGHT HAPPEN TO US SUBSEQUENTLY.  THEY JUST CAN'T

16  BE TRUE.

17         AND I THINK MORE EGREGIOUSLY HERE, YOUR HONOR, WHEN

18  YOU THINK ABOUT THE DEGREE OF SANCTIONS, WE'VE SHOWN A RECORD

19  OF TRYING TO GET AT THE ANSWER HERE -- WE HAVEN'T SAT ON OUR

20  HANDS -- OVER AND OVER AND OVER AGAIN, TO THE POINT WHERE WE

21  GOT A MISREPRESENTATION, SHOWED UP AT THE LAW OFFICES, NO ONE

22  WAS THERE TO ANSWER QUESTIONS.  REQUEST, PLEASE ANSWER

23  QUESTIONS.  MR. HULETT SAYING, YOU'LL SEE IT IN OUR PAPERWORK,

24  AND THEN WITHIN SEVEN DAYS, WE'RE DOING A REPLY.

25         THAT IS NOT A FACT PATTERN OF GOOD FAITH THAT DESERVES

1    FLEXIBILITY AND SHARING, YOUR HONOR.  IT IS A PATTERN OF

2    KNOWINGLY HOLDING AND TRYING TO TACTICALLY TAKE ADVANTAGE OF

3    THE HUNDREDS OF ATTORNEY/CLIENT PRIVILEGED DOCUMENTS THAT THEY

4    KNEW THEY HAD AND SHOULDN'T BE USING.

5          THE COURT:  I KNOW YOU SAY THERE'S HUNDREDS.  I HAVE

6    NO IDEA HOW MANY OF THEM ARE ATTORNEY/CLIENT PRIVILEGE AS

7    OPPOSED TO CONFIDENTIAL, BECAUSE I THINK THERE HAS BEEN A BIT

8    OF A BLUR IN THE MOTION PAPERS BETWEEN THE TWO, WHICH ARE

9    DISTINCTLY DIFFERENT.  I CAN'T TELL ANYTHING FROM THE REDACTED

10   VERSIONS I GOT, WHICH I UNDERSTAND YOU'VE REDACTED THEM SO THAT

11   NO ONE COULD GET THE CONTENT, BUT IT'S JUST A LIST OF NAMES.  I

12   HAVE NO IDEA FROM THOSE LINES WHO SENT WHAT TO WHOM AND WHO IS

13   CC'D, WHO THE ATTORNEYS ARE.  I DON'T KNOW.  IT GIVES ME NO

14   INFORMATION.

15         AND, YOU KNOW, I MEAN, IN ESSENCE, IT SETS UP THEY

16   WILL WANT TO SEE A PRIVILEGE LOG AS TO EACH AND EVERY DOCUMENT

17   YOU'VE NOW RECEIVED FROM THEM THAT YOU'VE IDENTIFIED WHO

18   RECEIVED IT, WHY IT IS A PRIVILEGED COMMUNICATION AS OPPOSED TO

19   A BUSINESS COMMUNICATION I COPIED A LAWYER.

20         SOME OF THEM TALK ABOUT LEASE PAYMENTS.  I DON'T KNOW

21   HOW PAYMENTS FROM ONE ENTITY TO ANOTHER ARE ATTORNEY/CLIENT

22   PRIVILEGE.  I MEAN, THERE'S LIKE GLOBAL EARNINGS MAY 2006 ON

23   ONE OF THEM.  OKAY.  HOW IS THAT PRIVILEGED?  IT MIGHT BE

24   CONFIDENTIAL.  IT MIGHT BE SUBJECT TO THE PROTECTIVE ORDER, BUT

25   IT DOESN'T NECESSARILY MAKE IT AN ATTORNEY/CLIENT PRIVILEGE.

1           I CAN'T TELL HOW MANY OF THESE DOCUMENTS ARE TRULY

2      ATTORNEY/CLIENT PRIVILEGED DOCUMENTS AS OPPOSED TO THINGS THAT

3      YOU WOULD WANT TO GO BACK AND HAVE DESIGNATED UNDER A

4      PROTECTIVE ORDER AS CONFIDENTIAL.  I'LL TAKE YOUR

5      REPRESENTATION FOR THE MOMENT THAT THERE'S, LET'S SAY, AT LEAST

6      A HUNDRED.

7           MR. HUESTON:  I'LL TAKE YOU UP ON YOUR CHALLENGE.  I'M

8      HERE TO TRY TO GIVE YOU THE FACTS NECESSARY FOR YOU TO MAKE --

9      TO BE COMFORTABLE WITH YOUR ULTIMATE DECISION.  I WOULD BE MORE

10     THAN HAPPY TO PROVIDE IN CAMERA --

11          THE COURT:  I AM NOT GOING TO LOOK AT 40,000

12     DOCUMENTS, AND I'M NOT GOING TO MAKE JUDGE CRAWFORD DO IT

13     EITHER.  IT WILL TAKE TWO YEARS BEFORE IT GETS DONE, AND THIS

14     CASE ISN'T GOING TO SIT AROUND THAT LONG.  THIS IS A HOMEWORK

15     ASSIGNMENT YOU NEED TO DO, NOT THE COURT.

16          MR. HUESTON:  ON THE RECORD, THOUGH, YOUR HONOR, THE

17     KIM MCDONNELL DECLARATION IDENTIFIES THOSE ATTORNEYS AND THEIR

18     TITLES.  SO WE HAVE IDENTIFIED WHO THEY ARE AND WHAT POSITION

19     THEY HAVE.  IN THE PROMOTIONS PAPERWORK, WE GAVE YOU THREE

20     EXAMPLES, JUST THREE, THAT ARE CLEARLY INVOLVING

21     ATTORNEY/CLIENT PRIVILEGE, DISCUSSIONS OF PERTINENT ISSUES.

22          ONE IS THE YABLONKA DECLARATION, PARAGRAPH 9, EXHIBIT

23     C, DOCUMENT 21388.  THAT CONTAINS COUNSEL INSTRUCTION GIVEN

24     SHORTLY AFTER SEMPRA PURCHASED LOT A3 CONCERNING THE

25     INDEPENDENT CONTRACTOR WHO BROKERED THE PURCHASE.

1           ANOTHER EXAMPLE, YOUR HONOR, SAME DECLARATION

2     PARAGRAPH 9, EXHIBIT 3.  IT'S DOCUMENT 23059.  THIS IS

3     DISCUSSED, I THINK IN OUR REPLY PAPER AS WELL.  THIS DISCUSSES

4     DETAILS OF THE PURCHASE OF LOT 37, WHICH IS ADJACENT TO LOT A3,

5     AND ACTUALLY GIVES LEGAL DECISIONS REGARDING TITLE DILIGENCE.

6           THEN THERE IS YET ANOTHER ONE, SAME PARAGRAPH OF THE

7     YABLONKA DECLARATION, DOCUMENT 44049.  THAT DETAILS ISSUES THAT

8     ECA ENCOUNTERED IN PURCHASING LOTS 28 AND 30, BOTH ADJACENT TO

9     A3, WITH AN ATTORNEY ANALYSIS OF THAT.

10          I THINK THOSE THREE ARE CLEARLY ATTORNEY/CLIENT

11    PRIVILEGED COMMUNICATIONS THAT ARE ON ISSUES THAT ARE MATERIAL

12    TO THE CASE, AND THERE ARE THREE EXAMPLES OF THAT.

13          YOUR HONOR, IT'S -- I ALSO WANT TO NOTE IN TERMS OF

14    THE -- YOU ASKED SOME SORT OF IDEA OF ATTORNEY/CLIENT

15    PRIVILEGE, YOUR HONOR.  REMEMBER THAT THE HULETT FIRM ITSELF

16    DESIGNATED AS ATTORNEY/CLIENT PRIVILEGE APPROXIMATELY 70 OF THE

17    ONES THAT WE FOUND THAT WERE SUPPOSED TO BE SEGREGATED.  THEY

18    THEMSELVES CALLED THEM ATTORNEY/CLIENT PRIVILEGE.  SO WE'LL GO

19    WITH THEIR ADMISSIONS OF ANOTHER 70 THAT THEY STAMPED

20    ATTORNEY/CLIENT PRIVILEGE.

21          PLUS THERE WERE ANOTHER 20 OR SO IN THERE THAT WERE

22    IDENTICAL TO OTHER DOCUMENTS THEY STAMPED OR DETERMINED TO BE

23    ATTORNEY/CLIENT PRIVILEGE THEMSELVES THAT CAME OUT OF THAT

24    PRODUCTION.  SO A GOOD 90 OR SO, THEY HAVE EFFECTIVELY CONCEDED

25    TO BE ATTORNEY/CLIENT PRIVILEGE WITHOUT US HAVING TO DEBATE IT.

1    PLUS, I'M GIVING YOU THE OTHER EXAMPLES.  SO THERE ARE A

2    SUBSTANTIAL NUMBER, I THINK, BEYOND DISPUTE ATTORNEY/CLIENT

3    PRIVILEGE.

4           THE COURT:  ALL RIGHT.

5           MR. SIMON:  GOOD AFTERNOON, YOUR HONOR.  LEONARD SIMON

6    FOR THE PLAINTIFFS.  YOUR HONOR, GIVEN YOUR TENTATIVE, I DON'T

7    KNOW THAT YOU WANT TO HEAR ALL OF THE REMARKS THAT I WOULD MAKE

8    IF YOUR TENTATIVE WAS GOING THE OTHER WAY.  I THINK IT IS

9    UNFORTUNATE THAT AS MUCH MUD HAS BEEN THROWN IN THIS CASE FROM

10   SEMPRA AGAINST MR. HULETT, WHO I HAVE KNOWN FOR MANY YEARS, AND

11   I CAN TRY TO STRAIGHTEN IT ALL OUT TO DEFEND HIS REPUTATION,

12   BUT ALMOST ALL OF IT IS NOT RELEVANT TO THE ISSUES.  WE CAN

13   TALK ABOUT --

14          THE COURT:  LET'S ROLL A LITTLE BIT ON THEIR BEHALF.

15   SO THEY GOT THESE DOCUMENTS FROM MR. MICHELON.  IF THERE WAS NO

16   OBLIGATION, NO DUTY TO CARE ABOUT WHERE THEY WERE FROM AND WHAT

17   THEY MIGHT HAVE BEEN, WHY EVEN DO THE INITIAL SCREENING?

18   WASN'T THAT AN ACKNOWLEDGMENT THAT THERE MIGHT HAVE BEEN

19   SOMETHING INAPPROPRIATE ABOUT THIS PRODUCTION?

20          MR. SIMON:  I'LL GIVE YOU TWO ANSWERS, YOUR HONOR.  I

21   THINK, FIRST OF ALL, THIS FITS INTO THE AREA OF NO GOOD DEED

22   GOES UNPUNISHED, BUT IT MAKES IT INTO THE AREA OF THE UNEASE

23   THAT YOUR HONOR HAS AND MR. HUESTON HAS AND THE UNCERTAINTY I

24   HAD WHEN I FIRST STARTED THINKING ABOUT THE ISSUE.  I'M FAIRLY

25   INACTIVE IN THIS CASE, YOUR HONOR, AS YOU MIGHT HAVE NOTICED,

1   AND MY FIRM IS NOT INVOLVED.  IT'S JUST ME, AND I WORK

2   PART-TIME, AND I'VE LEFT MOST OF THE HEAVY LIFTING TO MR.

3   HULETT, AND MR. ROZANO (PHONETIC) IN THE CASE, TO MR. ASHWORTH

4   AND HIS COLLEAGUES.  BUT I DO GET INVOLVED IN THE CASE.

5           TRICKY AREAS, SO I TALKED TO PROFESSOR MARTIN.  HE'S A

6   REAL PROFESSOR, AND I'M AN ADJUNCT PROFESSOR, AND HE TEACHES

7   LEGAL RESPONSIBILITY.  I THINK WE'RE IN AN AREA WHERE NO ONE

8   KNOWS PRECISELY WHAT THE LAW IS.  HE HAS EXPRESSED HIS OPINION

9   THAT THE LAW IS THAT THE HULETT FIRM ACTUALLY HAD NO OBLIGATION

10  TO GIVE NOTICE FOR THE VERY GOOD REASONS YOUR HONOR GAVE, THAT

11  WHERE WOULD THE SECOND WHISTLE BLOWER COME FROM IN THE WORLD

12  AFTER THE FIRST WHISTLE BLOWER WAS RATTED OUT BY MR. HULETT

13  CALLING MR. HUESTON AND SAYING, BY THE WAY, MR. MICHELON CAME

14  BY AND GAVE ME ALL THESE DOCUMENTS.

15          THAT CREATES ENORMOUS DISINCENTIVES TO WHISTLE BLOWERS

16  COMING FORWARD, AND, THEREFORE, BLOCKS THE DUTY YOUR HONOR

17  POINTED OUT AND PROFESSOR MARTIN POINTED OUT, UNREBUTTED, I

18  SHOULD SAY, AN UNREBUTTED DECLARATION, HIS DUTY TO MR. RITCHIE

19  WHEN MICHELON WALKS IN TO HULETT'S OFFICE WITH DOCUMENTS OR

20  WITH INFORMATION, THAT IS AN ASSET THAT MR. HULETT IS SUPPOSED

21  TO USE TO THE BEST OF HIS ABILITIES UNDER CALIFORNIA LAW.

22  THERE'S A STATUTE ON THAT, NOT JUST RULE OF PROFESSIONAL

23  CONDUCT, BUT A STATUTE REQUIRING HIM TO PROTECT CONFIDENCES HE

24  LEARNED OF, INFORMATION HE LEARNED OF DURING HIS REPRESENTATION

25  OF A CLIENT, WHETHER IT CAME FROM THE CLIENT OR NOT.

1            SO HE IS BALANCING TWO INTERESTS, THE INTEREST OF THE

2    CLIENT AND THE INTEREST OF JUSTICE, AND THE ATTORNEY/CLIENT

3    PRIVILEGE FOR SEMPRA.  IT MAKES PERFECT SENSE TO ME FOR HIM AS

4    AN OFFICER OF THE COURT, AS A RESPONSIBLE LAWYER, AND AS

5    SOMEONE WHO MIGHT HAVE BEEN CONCERNED THAT DOWN THE ROAD

6    SOMETIME SOMEONE WILL QUESTION HIS CONDUCT, THAT WHAT'S THE

7    PURPOSE OF HAVING THE ATTORNEY/CLIENT DOCUMENTS, THEY'RE NOT

8    GOING TO GET IN EVIDENCE ANYWAY.  ULTIMATELY YOUR HONOR IS

9    GOING TO RULE THAT AN ATTORNEY/CLIENT PRIVILEGED DOCUMENT

10   WITHOUT A WAIVER IS NOT GOING TO GET INTO YOUR TRIAL IN THIS

11   CASE.

12           SO THE COURSE OF MOST DISCRETION IS, DON'T CALL IRELL

13   & MANELLA AND TELL THEM, I GUESS IT WOULD HAVE BEEN MORRISON &

14   FOERSTER BACK THEN.  THAT BLOWS YOUR CONFIDENTIAL SOURCE WHO

15   YOU MIGHT NEED MORE INFORMATION FROM.  DON'T USE ALL THE

16   DOCUMENTS.  SCREEN THE DOCUMENTS FOR PRIVILEGE, WHICH IS DONE

17   ALL THE TIME, YOUR HONOR.  YOU KNOW THAT, I THINK.  WE KNOW

18   THAT.  WE DO IT IN MY LAW FIRM.

19           THE U.S. ATTORNEY'S OFFICE DOES IT ALL THE TIME.  THEY

20   DO A TAINT REVIEW, AND THEY DO IT BY PEOPLE WHO WORK FOR THEIR

21   LAW FIRM BUT ARE NOT GOING TO WORK ON THAT MATTER.  MR. HULETT

22   QUITE LOGICALLY DECIDED THAT EVEN HAVING NO OBLIGATIONS, IT WAS

23   BETTER NOT TO BE REVIEWING, POTENTIALLY USING PRIVILEGED

24   DOCUMENTS AND CREATE HEADACHES DOWN THE ROAD AND BEING SECOND

25   GUESSED, WHICH IS WHAT WE'RE DOING IS BEING SECOND GUESSED.

1        WHEN YOUR HONOR ASKED WHERE IS THE LAW, EVERY CASE

2   THAT MR. HUESTON CITED AND THERE WERE AN EQUAL NUMBER GOING THE

3   OTHER WAY, AS YOUR HONOR HAS POINTED OUT, INCLUDING JUDGE MEWS'

4   (PHONETIC) DECISION IN THE NORTHERN DISTRICT.  EVERY CASE HE

5   CITED IS FROM THE TIME AFTER MR. HULETT MADE HIS DECISION.

6   THESE DOCUMENTS CAME IN 2010.

7        SHOW ME THE CASE THAT SAYS HE HAS ANY OBLIGATIONS IN

8   2010.  IT DOESN'T EXIST.  THE CASES THAT SAY HE DOES AND THE

9   CONTRARY CASES THAT SAY HE DOESN'T ARE DECIDED IN 2012, 2013,

10  AND 2014.

11       AND THEY ARE STILL GOING BOTH WAYS.  WE HAVE THE

12  SPECTACLE OF THE AMERICAN BAR ASSOCIATION ISSUING AN OPINION,

13  LIKE THE ONE FROM CALIFORNIA THAT MR. HUESTON PUT IN THE RECORD

14  FROM 2013.  THE AG ISSUED AN OPINION THAT MR. HUESTON WOULD

15  LOVE, EXCEPT FOR IT WAS WITHDRAWN FIVE YEARS LATER BY THE ABA

16  AS BEING INCORRECT.  AND, YOUR HONOR, TWO OF THE CASES HE

17  RELIES UPON, THE *HARTPENCE* CASE AND THE *GOTHAM CITY* CASE CITE

18  CASES AND QUOTE FROM CASES THAT QUOTE THE ABA'S WITHDRAWN

19  OPINION ON THE SUBJECT.  SO THERE IS NO CLEAR ESTABLISHED RULE

20  THAT REQUIRED MR. HULETT TO DO ANYTHING.

21       HE TRIED TO DO THE RIGHT THING.  HE PUT A YOUNG LAWYER

22  ON IT, WHO I THINK PROBABLY ALL OF US WOULD AGREE, DID AN

23  IMPERFECT JOB OF REVIEWING THE DOCUMENTS, BUT I'M NOT SURE IT'S

24  NEARLY AS IMPERFECT AS MR. HUESTON SUGGESTS.

25       IF YOU WANT TO KNOW HOW MANY DOCUMENTS ARE AT ISSUE,

1    YOUR HONOR, THEN LET ME GIVE YOU A SIMPLE APPROACH TO THIS.

2    THE LAST DOCUMENT WE GOT FROM MS. YABLONKA ATTACHES ABOUT 135

3    DOCUMENTS THAT SHE SAYS ARE PRIVILEGED.  NOW THEY HAVE HAD AT

4    THIS FOR THREE OR FOUR WEEKS NOW.  I THINK WE GOT WHAT WE'RE

5    GOING TO GET.  MAYBE THEY'VE GOT MORE, BUT 300 IS MYTHICAL IN

6    MY MIND.  THE HUNDREDS OF PRIVILEGED DOCUMENTS, MYTHICAL IN MY

7    MIND.  THE HUNDREDS OF DOCUMENTS CONSPICUOUSLY EMBLAZONED WITH

8    THE WORD ATTORNEY/CLIENT PRIVILEGE AT THE TOP, YOUR HONOR,

9    THREE.  WE COULD ONLY FIND THREE.  BUT IT'S 135, 140 DOCUMENTS,

10   25 OF WHICH ARE DUPLICATES OF ONE ANOTHER, SO WE'RE DOWN TO 110

11   OR SOMETHING.

12        NOW OF THE 110, YOU HAVE TO LISTEN CAREFULLY TO WHAT

13   THESE PEOPLE SAY TO HEAR HOW TRICKY IT CAN BE.  MR. VILLASENOR

14   DIVIDED THE DOCUMENTS INTO PRIVILEGED, NONPRIVILEGED, AND

15   QUESTIONABLE.  THEIR POSITION IS, IF WE CALLED IT QUESTIONABLE,

16   IT MUST BE PRIVILEGED.  SO AMONG THE 110 WE'RE WORKING WITH NOW

17   ARE SEVERAL THAT SEMPRA HAS NEVER CLAIMED ARE PRIVILEGED OUT OF

18   THEIR OWN MOUTHS.  THEY'RE SAYING, WELL, PLAINTIFFS SAY THEY'RE

19   PRIVILEGED, THEY MUST BE.  AND THEY'RE MULTIPLE DOCUMENTS OF

20   THE SAME DOCUMENT.  WE HAVE THE REDACTED VERSIONS, SO YOU CAN

21   SYMPATHIZE HOW DIFFICULT IT IS FOR US TO RECONSTRUCT HOW

22   MR. VILLASENOR MADE A FEW MISTAKES OR A LOT OF MISTAKES.

23        WE'RE TRYING TO UNDERSTAND THAT.  BUT WE THINK THE

24   FOLLOWING MIGHT HAVE HAPPENED, HE SEES A DOCUMENT, HE SAYS, NOT

25   PRIVILEGED.  HE SEES IT AGAIN, HE SAYS, NOT PRIVILEGED.  HE

1    SEES IT A THIRD TIME, HE SAYS NOT PRIVILEGED.  BUT EITHER THE

2    FOURTH TIME HE SEES IT OR MAYBE THE FIRST TIME HE SAW IT, HE

3    LOOKS AT IT A LITTLE DIFFERENTLY.  HE SEES SOMETHING THAT LOOKS

4    LEGAL, AND HE CALLS IT QUESTIONABLE.  THAT'S THE HYPOTHETICAL.

5    WE THINK IT HAPPENED.

6         MR. HUESTON WOULD SAY, THAT'S FOUR PRIVILEGED

7    DOCUMENTS IN THE HANDS OF HULETT HARPER TO REVIEW

8    SUBSTANTIVELY.  IF YOU CALL IT INTO QUESTION, IT MUST BE

9    PRIVILEGED, AND THERE'S THREE HE CALLED NONPRIVILEGED.  HE IS

10   MAKING A DECISION YOUR HONOR IS GOING TO HAVE TO MAKE ABOUT THE

11   DOCUMENT.  HE IS ALSO DOUBLE COUNTING, TRIPLE COUNTING ON

12   RELEVANCE.

13        THE COURT:  LET ME ASK YOU ANOTHER QUESTION, A LITTLE

14   OFF CENTER, BUT I THINK IT MAY BE SIGNIFICANT.  I KNOW THIS

15   CASE WAS FILED IN 2010, AND IT WAS TRANSFERRED TO ME IN 2012,

16   AND THERE WAS A LOT OF MOTION PRACTICE UP FRONT, AND EVEN AFTER

17   I GOT IT, THERE WAS CONTINUING MOTION PRACTICE IN THE CASE

18   BEFORE WE GOT TO WHAT WOULD HAVE BEEN THE OBLIGATION TO HAVE A

19   RULE 26 MEETING AND DO RULE 26 DISCLOSURES.  BUT CERTAINLY

20   THERE WAS THE TIME WHEN THAT HAPPENED, AND I DON'T KNOW WHEN

21   THAT HAPPENED IN THIS CASE BECAUSE THINGS WERE IN A PLEADING

22   STAGE FOR A VERY LONG TIME.

23        YOU HAD THESE DOCUMENTS.  WERE THEY IDENTIFIED IN THE

24   RULE 26 DOCUMENTS AS TO WHAT DOCUMENTS THE PLAINTIFFS WERE

25   GOING TO BE RELYING ON TO PROVE THEIR CLAIMS IN THE CASE?

1          MR. SIMON:  I THINK MR. HULETT CAN GIVE YOU THE DIRECT

2     ANSWER, BUT MET ME START BY SAYING, THAT'S JUST WHERE I WAS

3     GOING.  THEY WERE ALL PRODUCED TO SEMPRA AT SOME TIME.

4          THE COURT:  THEY WERE PRODUCED IN RESPONSE TO A

5     DISCOVERY REQUEST.

6          MR. SIMON:  RIGHT.

7          THE COURT:  BUT WERE THEY INITIALLY IDENTIFIED ON

8     BEHALF OF THE PLAINTIFFS AS PART OF THE DOCUMENTS YOU WOULD BE

9     REQUIRED UNDER RULE 26 TO IDENTIFY AS DOCUMENTS THAT ARE GOING

10    TO SUPPORT YOUR THEORIES IN THE CASE?

11         MR. HULETT:  WITHOUT REVIEWING THE RULE 26 STATEMENTS,

12    WHAT IT SAYS -- I CAN'T REMEMBER IF IT SPECIFICALLY SAID

13    MICHELON DOCUMENTS.  I SUSPECT IT DID NOT.  I THINK IT PROBABLY

14    SAID DOCUMENTS FROM SEMPRA EMPLOYEES.  I HONESTLY DON'T

15    REMEMBER.

16         MR. SIMON:  IF I COULD TAKE IT A STEP FURTHER.  THE

17    DOCUMENTS THAT MR. VILLASENOR CALLED NONPRIVILEGED AND ALLOWED

18    TO GO FORWARD IN PROCESS WENT TO A GROUP OF YOUNGER LAWYERS WHO

19    REVIEWED THEM FOR RELEVANCE TO THE CASE.  THEY SENT THE ONES

20    THAT THEY THOUGHT LOOKED POSSIBLY RELEVANT TO MR. HULETT.  HE

21    HAS THEM IN HIS OFFICE.  HE SHOWED THEM TO ME.  IT'S TWO

22    BINDERS ABOUT THE SIZE OF MY BINDER HERE, MAYBE A LITTLE

23    SKINNIER.

24         THOSE ARE THE ONLY MICHELON DOCUMENTS HE'S EVER SEEN

25    BEFORE THIS MOTION WAS FILED, AND THE ONLY ONES HE WOULD

1   CONSIDER USING IN FURTHER PROCEEDINGS IN THE CASE.  HE COMPARED

2   HIS TWO WORKING BINDERS OF MICHELON DOCUMENTS WITH THE 135,

3   110, WHATEVER YOU WANT TO CALL IT, PRIVILEGED DOCUMENTS THAT

4   MS. YABLONKA HAS IDENTIFIED.  THE OVERLAP IS FOUR.  SO THERE

5   ARE FOUR DOCUMENTS THAT THE HULETT HARPER FIRM FINDS POSSIBLY

6   USEFUL IN THIS CASE THAT SEMPRA SAYS ARE PRIVILEGED.  IT'S A

7   VERY SMALL NUMBER OF DOCUMENTS.

8        MR. MICHELON DUMPED ON HULETT HARPER HIS ENTIRE E-MAIL

9   FILE.  HE DIDN'T, BY THE WAY, STEAL THE DOCUMENTS, WHICH WE

10  HEAR OVER AND OVER AGAIN.  WE ARGUE ABOUT RELEVANCE AND WE SAY,

11  HOW CAN THESE BE SO IMPORTANT MR. MICHELON HAS BEEN DECLINED TO

12  BE IDENTIFIED AS THE CUSTODIAN FOR ESI PURPOSES.  AND SEMPRA

13  SAYS, OH, NO, YOU'RE MISSING THE POINT.  MICHELON DIDN'T TAKE

14  HIS OWN DOCUMENTS HOME, HE STOLE OTHER PEOPLE'S DOCUMENTS.

15  WELL, JUDGE MILLIKEN IN THE ARBITRATION RULED PRECISELY TO THE

16  CONTRARY.  YOUR HONOR HAS IT IN FRONT OF YOU, THE RULING.  IT

17  SAYS THESE ARE DOCUMENTS HE GOT IN THE ORDINARY COURSE OF

18  BUSINESS.

19        THE COURT:  THIS TO ME IS A LITTLE BIT OF A SEMANTIC

20  GAME WHETHER YOU CALL IT STOLEN.  HE HAD THEM WHEN HE LEFT HIS

21  EMPLOYMENT INAPPROPRIATELY.  WHETHER HE GOT THEM INITIALLY IN

22  THE NORMAL COURSE OF BUSINESS, WHICH NO ONE IS HE SAYING SNUCK

23  IN IN THE DARK OF NIGHT AND DOWNLOADED THIS STUFF FROM A

24  COMPUTER.  THESE ARE DOCUMENTS HE GOT AS PART OF HIS JOB AS

25  CONTROLLER.  BUT WHEN HE WAS TERMINATED, HE WAS SUPPOSED TO

1   RETURN ALL HIS DOCUMENTS, AND HE DIDN'T.  SO THEY WERE

2   MISAPPROPRIATED, THEY WERE TAKEN WITHOUT PERMISSION, THEY WERE

3   STOLEN.  YOU CAN PUT WHATEVER LABEL YOU WANT.  HE WASN'T

4   SUPPOSED TO HAVE THEM, AND HE CERTAINLY WASN'T SUPPOSED TO GIVE

5   THEM TO A THIRD PARTY.

6         MR. SIMON:  YOUR HONOR, YOUR POINT IS PERFECTLY FAIR,

7   EXCEPT FOR THE PURPOSE I WAS MAKING THE POINT, SEMPRA IS

8   PLAYING GAMES WITH THE TERMINOLOGY BECAUSE WHEN WE ARGUED THAT

9   THESE DOCUMENTS CAN'T BE AS IMPORTANT AS THEY SUGGEST, AND I

10  DON'T THINK THEY ARE.  I REALLY THINK IF YOU LOOKED AT THE RAIL

11  LINES, THE RAIL LINES ARE THINGS LIKE MATTRESSES BECAUSE THEY

12  BUILT SOME MULTIMILLION DOLLAR PALACE DOWN THERE FOR THEIR

13  EMPLOYEES, THEIR EXECUTIVES TO GO DOWN ON WEEKENDS.  THEY SAY

14  PETTY CASH, THEY SAY JUST A WHOLE SERIES OF THINGS THAT HAVE

15  NOTHING TO DO WITH THIS CASE AT ALL.  EVEN THE THREE DOCUMENTS

16  MR. HUESTON IDENTIFIES, A DOCUMENT ABOUT AN INDEPENDENT

17  CONTRACTOR WHO HAD SOMETHING TO DO WITH A LODINEER (PHONETIC),

18  THE KEY LOD (PHONETIC) IN THE CASE MAY WELL HAVE NOTHING TO DO

19  WITH THE CASE.

20        THE POINT I'M MAKING IS, WHEN WE ASSERTED, HOW CAN YOU

21  BE SO EXCITED ABOUT THE MICHELON DOCUMENTS WE HAVE WHEN YOU

22  REFUSED TO PRODUCE DOCUMENTS, REFUSED TO PRODUCE ESI AND USE

23  HIM AS A CUSTODIAN UNDER ESI RULES, THEY SAID, OH, THESE AREN'T

24  MICHELON'S DOCUMENTS FROM THE ORDINARY COURSE OF BUSINESS,

25  THESE ARE STOLEN.  I TOOK THAT TO MEAN EXACTLY WHAT YOUR HONOR

1  JUST SAID, THAT HE WENT FURTHER, HE DIDN'T SIMPLY DOWNLOAD HIS

2  ORDINARY COURSE OF BUSINESS DOCUMENTS AND TAKE THEM WITH HIM,

3  HE DOWNLOADED OTHER STUFF THAT HE THOUGHT MIGHT EMBARRASS THE

4  COMPANY.  AND JUDGE MILLIKEN RULED TO THE CONTRARY.

5          SO I THINK, IN FACT, WHAT WE HAVE ARE A LARGE PILE OF

6  DOCUMENTS, MOST OF WHICH ARE JUNK.  THEY'RE NOT RELEVANT TO OUR

7  CASE.  16,000 DOCUMENTS FROM AN EMPLOYEE IN THE ACCOUNTING

8  DEPARTMENT OF SEMPRA IS GOING TO BE A LOT OF JUNK.  SO THE

9  NUMBER OF RELEVANT DOCUMENTS IS, IN OUR JUDGMENT, TINY, AND THE

10 NUMBER OF RELEVANT, PRIVILEGED DOCUMENTS IS ONE HAND OR ONE OR

11 TWO FINGERS.

12          BUT TO RETURN TO THE ISSUES, YOUR HONOR, I THINK THERE

13 ARE REASONS WHY THE MOTION CAN'T BE GRANTED, AND WE OUGHT TO BE

14 TALKING ABOUT PROPER RELIEF, WHERE YOUR HONOR STARTED.  FIRST

15 THERE IS NO ETHICAL REQUIREMENT AND CERTAINLY NONE THAT WAS

16 CLEARLY ESTABLISHED AT THE TIME THE DOCUMENTS CAME TO

17 MR. HULETT'S ATTENTION.

18          SECOND, THAT I BELIEVE SEMPRA WAIVED THIS CLAIM IN

19 2011 AND 2012.  AND, YOUR HONOR, THE FACTS ARE, IN FACT,

20 STARKER I THINK THAN YOUR HONOR HAS IN MIND BECAUSE SEMPRA WAS

21 AWARE THAT MR. MICHELON HAD WALKED OFF WITH DOCUMENTS,

22 INCLUDING ATTORNEY/CLIENT PRIVILEGED DOCUMENTS.  I THOUGHT I

23 HEARD MR. HUESTON DENY THAT, PERHAPS I MISHEARD IT.  THEY

24 ALLEGED IN THE ARBITRATION TO JUDGE MILLIKEN, HE LEFT WITH

25 16,000 DOCUMENTS, 8 GIGABYTES, INCLUDING MANY ATTORNEY/CLIENT

1   PRIVILEGED DOCUMENTS, AND THEY ALLEGED HE SHARED THOSE

2   DOCUMENTS WITH MULTIPLE THIRD PARTIES.  NOW THAT IS A START TO

3   INQUIRY NOTICE.  WE'RE NOT THERE YET.

4        BUT IN THIS CASE, YOUR HONOR WILL RECALL THE RULE 11

5   MOTION FILED BY SEMPRA BY MORRISON & FOERSTER, PREDECESSOR

6   COUNSEL, AND MR. HULETT PUT IN FIVE DOCUMENTS UNDER SEAL

7   BECAUSE HE WANTED TO PROTECT HIS WORK PRODUCT.  MR. ZEBROWSKI,

8   REPRESENTING SEMPRA, COMPLAINED ABOUT THE SEALING, AND YOUR

9   HONOR INSTRUCTED MR. HULETT TO PROVIDE THE DOCUMENTS TO

10  MR. ZEBROWSKI.  CAN I HAND UP ONE DOCUMENT, YOUR HONOR?

11        THE COURT:  SURE.

12        MR. SIMON:  THIS IS ONE DOCUMENT MARKED AS EXHIBITS 2

13  AND 3 TO THE DECLARATION OF MR. HULETT ATTACHED TO THE

14  OPPOSITION.  YOUR HONOR, ONE OF THE DOCUMENTS SENT TO

15  MR. ZEBROWSKI AT THE TIME HAS A CLEAR HEADER DESIGNATING THAT

16  IT CAME FROM RUDOLPH (SIC) MICHELON.  AT THE TIME, MICHELON WAS

17  BRINGING A WHISTLE BLOWER CASE AGAINST SEMPRA COMPLAINING ABOUT

18  THREE OR FOUR TRANSACTIONS HE WAS UNHAPPY ABOUT IN MEXICO AND

19  HE THOUGHT SEMPRA HAD HANDLED ILLEGALLY, IMPROPERLY, WHATEVER

20  YOU WANT TO CALL IT.  THE RITCHIE MATTER WAS ONE OF THE THREE

21  OR FOUR TRANSACTIONS.

22        THE COURT:  THE TWO THINGS YOU GAVE ME ARE THE SAME.

23        MR. SIMON:  YOU HAVE THE LETTER TO MR. ZEBROWSKI AND

24  THE ONE-PAGE ATTACHMENT?

25        THE COURT:  YES.

1          MR. SIMON:  THE ONE PAGE ATTACHMENT IS REALLY THE KEY,

2    YOUR HONOR.  THE POINT I'M MAKING IS, IN 2012, SEMPRA KNEW THE

3    FOLLOWING, IT KNEW THAT MICHELON HAD WALKED OFF WITH 16,000

4    DOCUMENTS.  THEY KNEW THAT AMONG THE DOCUMENTS THEY SAY WERE

5    MANY PRIVILEGED DOCUMENTS.  THEY KNEW THAT HE WAS LEAKING THEM

6    TO SEVERAL PEOPLE.  THESE ARE ALL ASSERTIONS THEY MADE IN THE

7    ARBITRATION.  THEY KNEW MICHELON WAS INTERESTED IN THE RITCHIE

8    MATTER.  IT WAS ONE OF THE MATTERS HE WAS CLAIMING SEMPRA

9    ENGAGED IN WRONGDOING.

10         KNOWING ALL THAT, SEMPRA MIGHT HAVE GUESSED THAT ONE

11   OF THE PEOPLE GETTING DOCUMENTS WAS RITCHIE.  BUT AFTER THEY

12   GOT THAT LETTER, THERE WAS NO MORE GUESSING.  THEY NOW KNEW

13   BASED ON THE HEADER IT WAS PRINTED OFF MICHELON'S COMPUTER.

14   AND SO THEY KNEW MR. HULETT HAS, AT LEAST, ONE MICHELON

15   DOCUMENT.

16         YOUR HONOR, THERE ARE CASES, THE EQUITABLE INSURANCE

17   CASE WE CITED WITH THE *LIBERTY INSURANCE* CASE WE CITED TO SAY

18   THAT INQUIRY NOTICE IS ENOUGH FOR WAIVER.  AND I THINK THEY'RE

19   ON INQUIRY NOTICE AT THAT POINT TO INQUIRE OF MR. HULETT BACK

20   IN 2012, DO HAVE YOU DOCUMENTS FROM MR. MICHELON?  AND

21   PRESUMABLY HE'S GOING TO ANSWER THAT QUESTION, OR HE'S GOING BE

22   IN YOUR COURT OR JUDGE CRAWFORD'S COURT ANSWERING THAT

23   QUESTION.  SO ALL OF THIS COULD HAVE BEEN WORKED OUT IN 2012 WE

24   BELIEVE SMOOTHLY.

25         AND ALL THE DEMAND MR. HUESTON MAKES FOR NOTICE, HE

1   HAD NOTICE RIGHT THERE.  HE KNEW MICHELON WAS LEAKING, HE KNEW

2   MICHELON HAD GIVEN US ONE DOCUMENT, AND HE SHOULD HAVE BEEN

3   ASKING WHAT WE GOT FROM MICHELON, AND HE WOULD HAVE FOUND OUT,

4   AND WE COULD HAVE WORKED THIS OUT IN A MORE RESPECTFUL MATTER.

5   BUT REALLY, NONE OF THIS CAME TO LIGHT UNTIL WE PRODUCED OUR

6   DOCUMENTS, AND WE PRODUCED THEM ALL.  WE DIDN'T HOLD ANYTHING

7   BACK ON MICHELON IN THE CASE OF RELEVANCE.  ANOTHER GOOD DEED

8   PUNISHED.

9           AND NOW HE SAYS THEY'RE ADMITTED RELEVANT BECAUSE WE

10  GAVE THEM TO THEM, AND THEY'RE ADMITTED BECAUSE THE YOUNG

11  LAWYER CALLED THEM QUESTIONABLY PRIVILEGED.  EVERYTHING IS

12  ADMITTED, ADMITTED, ADMITTED.  WHEN WE SAID OF THE TEN

13  DOCUMENTS HE PUT IN HIS FIRST MOTION THAT THREE OF THEM LOOKED

14  UNPRIVILEGED BASED ON THE REDACTIONS, HE SAID WE ADMITTED THE

15  OTHER SEVEN ARE PRIVILEGED.

16          AND IT'S JUST THIS KIND OF OVERREACHING ARGUMENT, YOUR

17  HONOR, THAT TROUBLES ME A LOT IN PROCEEDINGS LIKE THIS.  I

18  THINK THAT HIS MOTION IS GREATLY OVERWRITTEN, THE REPLY BRIEF

19  GREATLY OVERWRITTEN.  THEY KEEP SAYING MR. HULETT USED HUNDREDS

20  OF DOCUMENTS.  THEY KEEP SAYING HUNDREDS OF PRIVILEGED

21  DOCUMENTS.  WHAT DID HE DO WITH THEM?  HE HAD A HUNDRED

22  PRIVILEGED DOCUMENTS, MAYBE.  PROBABLY MORE LIKE 50 IF YOU HAD

23  THEM IN CAMERA AND HAD TO LOOK AT THEM.  AND THEY SAT IN FILE.

24          AND WE GOT A LETTER FROM MR. CAMP, SITTING AT COUNSEL

25  TABLE RIGHT THERE, ON JUNE 30 OF THIS YEAR JUST BEFORE THEY

1    BOTHERED YOUR HONOR WITH THIS MATTER.  AND IT SAYS TO

2    MR. HULETT, YOU AND YOUR FIRM'S ADMITTED EXPOSURE AND READY

3    ACCESS TO SEMPRA ENERGY'S PRIVILEGED AND CONFIDENTIAL

4    DOCUMENTS, IN ADDITION TO YOUR STATED INTENT TO USE THESE

5    MATERIALS IN THE FUTURE AT DEPOSITIONS.  AND THEN HE GOES ON TO

6    SAY, THAT'S WHY YOU'RE IN TROUBLE.  ADMITTED EXPOSURE.

7            YOUR HONOR, I'M SURE YOU'VE READ THE BRIEFS.  THERE

8    ARE 20 CALIFORNIA CASES THAT SAY EXPOSURE IS NOT ENOUGH.  ALL

9    THE CASES FOR DISQUALIFICATION ARE ABOUT USING THE DOCUMENTS TO

10   CRAFT A COMPLAINT, USING THE DOCUMENTS AT A DEPOSITION.  MANY

11   OF THE CASES ARE ABOUT AN ATTORNEY'S OWN ANALYSIS OF THE CASE.

12   LIFTING A DOCUMENT OUT OF A BRIEFCASE FROM AN ATTORNEY.  THOSE

13   ARE IRREMEDIABLE PRIVILEGES THAT CAN'T BE RECOVERED FROM.

14   THERE IS NOTHING IRREMEDIABLE ABOUT THESE FOUR PRIVILEGED

15   DOCUMENTS THAT PROBABLY WOULDN'T GET INTO EVIDENCE IF THEY WERE

16   NONPRIVILEGED.  THEY'RE ALL PERIPHERAL TO THE CASE.

17           SO I THINK WHAT SHOULD HAVE HAPPENED IN 2012 -- WE

18   COULD HAVE GIVEN THEM NOTICE IN 2010.  THEY COULD HAVE ASKED US

19   IN 2012, OR THEY COULD HAVE ASKED US NICELY IN JUNE OF THIS

20   YEAR, IN ANY OF THOSE CASES, THIS MATTER WOULD HAVE BEEN WORKED

21   OUT AMONG THE LAWYERS, OR IT WOULD HAVE BEEN RESOLVED BY THE

22   COURT WITH A LOG.  WE CAN GIVE THEM BACK THEIR 135 PRIVILEGED

23   DOCUMENTS, INCLUDING DUPLICATES, TOMORROW IF THEY'LL GIVE US A

24   LOG.  AND I DON'T KNOW WHAT OTHER RELIEF THEY NEED.  UNLESS

25   YOUR HONOR HAS ANY QUESTIONS ABOUT THE LAW OR ABOUT THE FACTS?

 1          THE COURT:  ALL OF THE DOCUMENTS THAT WERE PROVIDED TO

 2    THE HULETT FIRM BY MR. MICHELON HAVE BEEN PRODUCED TO SEMPRA,

 3    CORRECT?

 4          MR. SIMON:  YES.

 5          THE COURT:  THERE WAS THE INITIAL PRODUCTION THAT DID

 6    NOT INCLUDE THE SEGREGATED DOCUMENTS, ALTHOUGH YOU INDICATED

 7    THAT YOU THOUGHT IT DID, BUT THAT DID NOT TURN OUT TO BE

 8    CORRECT, AND THEN THERE WAS THE SUBSEQUENT PRODUCTION OF THE

 9    SEGREGATED DOCUMENTS.

10          MR. SIMON:  THAT IS CORRECT.  I'VE SPOKEN TO ALL OF

11    THE WITNESSES IN THE MATTER OVER THE LAST TWO OR THREE DAYS,

12    AND THERE WAS AN HONEST MISUNDERSTANDING BETWEEN MR. HULETT AND

13    HIS PARALEGAL WHO WAS TOLD, THOSE ARE THE SEGREGATED DOCUMENTS,

14    DON'T GIVE THEM TO ANYONE, WHEN MR. HULETT SAID, SEND THEM

15    MICHELON BACK AND SHE SENT THE ONES OTHER THAN THE SEGREGATED

16    ONES, THINKING SHE WAS DOING THE RIGHT THING.

17          THE COURT:  AND IT IS MY UNDERSTANDING THAT PLAINTIFFS

18    HAVE NO ARGUMENT THAT THEY SHOULD NOT KEEP -- CERTAINLY SHOULD

19    NOT KEEP POSSESSION OF THE SEGREGATED DOCUMENTS AND THAT IF

20    THEY HAVEN'T BEEN RETURNED AND YOU HAVE A SET, YOU WILL BE

21    WILLING TO DESTROY THEM?

22          MR. SIMON:  YES.  WE WOULD LIKE YOUR HONOR TO GET US A

23    LOG IN EXCHANGE FOR DESTROYING THEM, BUT WE HAVE MADE THAT

24    OFFER.  I THINK WE'VE MADE THAT OFFER TWICE.  WE COULDN'T

25    RETURN THEM UNTIL A DAY OR TWO AGO BECAUSE WE DIDN'T KNOW WHAT

1   ONES THEY THOUGHT WERE PRIVILEGED.

2        THE COURT:  I'M TRYING TO NARROW THE SCOPE OF WHAT

3   NEEDS TO BE DONE GOING FORWARD.  AND IF THE DOCUMENTS WERE

4   SEGREGATED AND NOBODY LOOKED AT THEM BUT THIS CONTRACT ATTORNEY

5   WHO IS LONG GONE FROM THE FIRM AND THEY WERE IDENTIFIED AS

6   PRIVILEGED, THEY SHOULD JUST BE DESTROYED.  THEY HAVE THOSE

7   DOCUMENTS NOW BACK IN THEIR POSSESSION?

8        MR. SIMON:  THEY DO.

9        THE COURT:  AND IN RESPONSE TO YOUR DISCOVERY

10  REQUESTS, IF THOSE DOCUMENTS ACTUALLY PROVE TO BE RELEVANT AND

11  RESPONSIVE BUT PRIVILEGED, THEY SHOULD GO ON A LOG.  I WOULD

12  NOT REQUIRE THEM TO LOG ALL OF THOSE FOR THE SAKE OF LOGGING

13  THEM.  ONLY THOSE WHICH WOULD BE RESPONSIVE TO JUST THE FOCUS

14  OF THIS LITIGATION, BECAUSE MR. MICHELON'S FILES COULD HAVE

15  BEEN, AS YOU POINTED OUT, RATHER BROAD AND WHILE THOSE ARE NOT

16  PRIVILEGED, NOT AT ALL RELEVANT TO THE ISSUE BEFORE THIS COURT,

17  WHICH IS A VERY NARROW ISSUE ABOUT THE ALLEGED BEHAVIOR OF

18  SEMPRA THAT WOULD GIVE RISE TO A MALICIOUS PROSECUTION CLAIM.

19       MR. SIMON:  I AGREE WITH EVERYTHING YOU SAID, YOUR

20  HONOR.

21       THE COURT:  WITH REGARD TO THE DOCUMENTS THAT WERE

22  SCREENED AND PUT IN A FILE BY THE FIRM, THEY ALSO HAVE THOSE,

23  AND SEMPRA CAN IDENTIFY FROM THOSE DOCUMENTS ANYTHING IN

24  ADDITION TO WHAT THEY HAVE ALREADY IDENTIFIED THAT THEY BELIEVE

25  IS PRIVILEGED.  THOSE DOCUMENTS SHOULD BE RETURNED.  A

1    PRIVILEGE LOG NEEDS TO BE PROVIDED, AND THEN YOU ARE WELCOME TO

2    ARGUE IN FRONT OF JUDGE CRAWFORD WHETHER, IN FACT, THOSE

3    DOCUMENTS ARE PRIVILEGED AND WHETHER OR NOT THE PRIVILEGE WAS

4    WAIVED IN SOME FASHION REGARDING THEM.  I'M NOT GOING TO RULE

5    ON THAT AT THIS POINT IN TIME.

6         AND ALL OF THAT I THINK NEEDS TO BE DONE PROMPTLY AND

7    DONE BEFORE YOU GO FORWARD WITH ANY DEPOSITIONS, BECAUSE THE

8    PLAINTIFFS WOULD BE PRECLUDED FROM USING ANY OF THE MICHELON

9    DOCUMENTS UNTIL THIS ISSUE IS RESOLVED.  I DON'T SEE ANY

10   EVIDENCE IN THIS CASE OF ANYTHING USED BY THE PLAINTIFFS UP TO

11   THIS POINT THAT WILL CAUSE PREJUDICE TO THE DEFENDANTS.

12        YOU CAN SIT DOWN, MR. SIMON.

13        MR. HUESTON:  YOUR HONOR.

14        THE COURT:  YOU WANT A CHANCE TO HAVE LAST WORD.

15        MR. HUESTON:  I WON'T GO ON LONG.

16        THE COURT:  GO AHEAD.  THAT'S FINE.  IT'S YOUR MOTION.

17        MR. HUESTON:  JUST A FEW POINTS BEFORE YOU MOVE

18   FORWARD.  YOUR HONOR, YOU ASKED A QUESTION AND YOU DIDN'T GET

19   AN ANSWER, AND I HAVE AN ANSWER TO IT.  IN TERMS OF THE RULE 26

20   DISCLOSURES, THAT'S WHEN WE ASKED, ARE YOU GOING TO USE THESE

21   MICHELON DOCUMENTS, AND THEY SAID IN THEIR RULE 26 DISCLOSURES

22   THAT IT -- THEIR RULE 26 DISCLOSURES DO NOT LIST MICHELON

23   DOCUMENTS AND DOCUMENTS IN PLAINTIFF'S POSSESSION THAT HE MAY

24   USE TO SUPPORT HIS CLAIMS.  THAT'S DECEMBER OF 2013.  THAT IS

25   WHAT THEY PUT THERE.  SO WE WERE NOT ON NOTICE THEY WERE GOING

1    TO BE USING THESE.

2           THE COURT:  THAT IS A SEPARATE ISSUE FOR EXCLUDING

3    THESE DOCUMENTS ULTIMATELY.  THEY OBVIOUSLY HAD THEM IN THEIR

4    POSSESSION.

5           MR. HUESTON:  RIGHT.

6           THE COURT:  SINCE 2010.

7           MR. HUESTON:  YEP.

8           THE COURT:  THEIR RULE 26 REQUIREMENTS IF THEY WERE

9    GOING TO RELY ON THEM WOULD REQUIRE THEY IDENTIFY THOSE

10   DOCUMENTS IN THEIR INITIAL DISCLOSURES.  IF THEIR INITIAL

11   DISCLOSURES ARE INADEQUATE WHICH RESULTED IN THE DELAY IN YOU

12   ALL DISCOVERING --

13          MR. HUESTON:  EXACTLY.

14          THE COURT:  -- THIS ISSUE, THEN I THINK THERE ARE

15   GROUNDS THERE FOR YOU TO BRING A MOTION UNDER RULE 26 TO

16   EXCLUDE THOSE DOCUMENTS AND TO SHOW PREJUDICE.  BUT, AGAIN,

17   THAT'S GOING TO GET US BACK TO WHICH OF THESE DOCUMENTS DO THEY

18   EVEN INTEND TO USE.  WE'RE TALKING ABOUT A LOT OF DOCUMENTS,

19   BUT IT SOUNDS LIKE THE ACTUAL NUMBER AT ISSUE MAY BE RELATIVELY

20   SMALL THAT MAY BE RELEVANT AND IMPORTANT TO THE CASE.

21          MR. HUESTON:  LET ME ADDRESS THAT FOR A MOMENT, YOUR

22   HONOR.  WE ACTUALLY SUBMITTED SWORN DECLARATIONS THAT LAID OUT

23   NUMBERS WELL INTO THE HUNDREDS.  I HEARD TODAY MR. SIMON JUST

24   TALKING ABOUT NUMBERS THAT ISN'T IN ANY DECLARATION, HE'S JUST

25   TALKING NUMBERS.  THAT'S TERRIFIC.  I HAVE NO REASON TO IMPEACH

1   MR. SIMON'S CREDIBILITY, BUT THERE IS NOTHING UNDER OATH, AND I

2   HAVEN'T SEEN THIS MATH.   THERE IS NO EVIDENCE MR. HULETT SIMPLY

3   LOOKED AT FOUR.

4          WHAT WE DO KNOW FROM MR. HULETT'S OWN DECLARATION AND

5   HIS OWN DOCUMENT IS THAT HIS TEAM -- IT WAS MORE THAN THE

6   SEGREGATION EXERCISE WITH THIS FIRST-YEAR CLERK.   HIS TEAM

7   LOOKED AT, AND IT'S BEYOND DISPUTE, LOOKED AT AND REVIEWED AND

8   ASSESSED FOR RELEVANCE THE 14,000, NOT 16,000 DOCUMENTS WHICH

9   INCLUDES HUNDREDS, INCLUDING CLOSE CLEARLY LABELED

10  ATTORNEY/CLIENT PRIVILEGE.   THAT'S WHAT WE HAVE HERE AND HAVE

11  DONE SO.   THIS IS A FOUR-YEAR PERIOD.

12         WHAT THE LAW HAS SAID, YOUR HONOR, BECAUSE I SAW YOU

13  SCRATCHING YOUR HEAD, AND I THINK IT'S A NATURAL RESPONSE,

14  WELL, HOW DO I KNOW HOW MUCH THEY REALLY USED IT, AND HAS

15  SEMPRA CARRIED SOME SORT OF BURDEN IN SHOWING USE.   THE LAW

16  WHEN WE LOOK AT IT, AND I WILL CITE A CASE IN A MOMENT, YOUR

17  HONOR, THE LAW THERE GIVES A VERY MINIMAL BURDEN ON SHOWING

18  RELEVANCE, MERELY QUOTE "NATURE OF INFORMATION AND ITS MATERIAL

19  RELATIONSHIP TO THE PRESENT PROCEEDINGS."

20         AND THERE'S A REASON FOR THAT IN THE CASE LAW BECAUSE

21  IT IS ALMOST AN IMPOSSIBLE EXERCISE IN ANY SITUATION LIKE THIS

22  WHEN COUNSEL IS CAUGHT HAVING A NUMBER OF ATTORNEY/CLIENT

23  PRIVILEGED DOCUMENTS IN HIS POSSESSION AND POTENTIALLY USING TO

24  FIGURE OUT WHERE IN THEIR HEADS THIS IS GOING TO BE USEFUL TO

25  THEM AND HOW IT MAY PLAY OUT IN STRUCTURING AN OUTLINE FOR

1   EXAMINATION, USING IT TO FORM TRIAL STRATEGIES.   IT'S

2   IMPOSSIBLE TO FIND IT.   NEVER GOING TO BE ABLE TO SAY, WELL,

3   THERE'S A QUOTE FROM A DOCUMENT, YOUR HONOR, WE'VE GOT THEM.

4   IT'S AN IMPOSSIBLE EXERCISE.

5         WHAT I HEARD MR. SIMON SAY, YOUR HONOR, WHICH I

6   THOUGHT WAS SIGNIFICANT, HE'S NOT SAYING THE LAW WE CITED, THE

7   *CLARK* CASE, WHICH I PLEASE ASK YOUR HONOR TO LOOK AT AGAIN IF

8   YOU WILL BEFORE YOU MAKE YOUR FINAL JUDGMENT HERE, AND THE

9   *GOTHAM* CASE, THAT'S NOT BAD LAW.   THAT'S GOOD LAW.   WHAT THEY

10  SAY, YOUR HONOR, IS, OH, BUT THIS CAME OUT AFTER THEY FIRST GOT

11  THESE DOCUMENTS IN 2011.   THAT ALLOWS MR. HULETT TO PRANCE

12  ABOUT IN WHATEVER WAY HE WANTS WITH THOSE ATTORNEY/CLIENT

13  PRIVILEGED DOCUMENTS BECAUSE THOSE CASES WEREN'T OUT AT THE

14  TIME HE FIRST GOT POSSESSION.

15        YOUR HONOR, OF COURSE, THAT'S NOT THE LAW.   UNDER THE

16  LAW OF THIS STATE, YOU HAVE A CONTINUING ETHICAL OBLIGATION.

17  WHEN THERE IS A NEW OPINION ISSUED BY A COURT, YOU HAVE TO PAY

18  ATTENTION TO THAT.   AT THE VERY LEAST, THE OBLIGATION RESTED

19  SQUARELY ON HIS SHOULDER WHEN THE *CLARK* OPINION CAME OUT AND

20  WHEN THE *GOTHAM* OPINION CAME OUT OVER A YEAR AGO, AND THERE HAS

21  BEEN NO EFFORT TO ABIDE BY THOSE CASES.

22        IN FACT, WHAT I'VE DESCRIBED, YOUR HONOR, AND THEY

23  HAVE NOT ATTEMPTED TO DISPUTE IS AN EFFORT TO KIND OF KEEP US

24  IN THE DARK UP THROUGH THE OPPOSITION FILING CLAIMING THEY JUST

25  DIDN'T HAVE ANYTHING, AND THERE'S NOTHING TO DISCLOSE.

1           IN LIGHT OF THAT EGREGIOUS CONDUCT, YOUR HONOR, WE DO

2    THINK THAT DISQUALIFICATION IS APPROPRIATE.  WE WOULD ASK THAT

3    IF YOU PLEASE REVIEW THOSE CASES BEFORE A FINAL JUDGMENT AND

4    ALSO OUR DECLARATIONS WHICH SET FORTH THE TRUE MATH HERE AND A

5    SIGNIFICANT NUMBER OF PRINCIPAL DOCUMENTS.

6           THE COURT:  ALL RIGHT.  THANK YOU.  I KNOW YOU WANTED

7    THE LAST WORD, BUT I DIDN'T ASK YOU ABOUT *CLARK*.  I THINK THAT

8    THE *GOTHAM CITY* CASE IS THE ONE CASE THAT WOULD SUPPORT THE

9    PLAINTIFF'S POSITION THAT THE DISCLOSURE OF PRIVILEGED

10   INFORMATION IS MORE BROAD WHEN IT'S PROVIDED BY SOMEONE AND

11   USED NOT IN THEIR OWN LITIGATION BY COUNSEL BUT IS USED TO

12   SUPPORT A CLAIM OF ANOTHER PARTY, BECAUSE IN *GOTHAM*, THE

13   PRINCIPALS PROVIDED INFORMATION TO COUNSEL THAT THEY USED ON

14   BEHALF OF THE CORPORATION IN A SEPARATE LITIGATION, AND JUDGE

15   WHITE THOUGHT THAT THAT WAS A VIOLATION.

16          NOW I KNOW THAT SUBSEQUENT TO THAT, IN THE *LAYER 2*

17   CASE, MAGISTRATE JUDGE RYU DID THE SUMMARY OF THESE CASES AND

18   REACHED THE CONCLUSION THAT THERE IS NO DUTY.  IF YOU GET --

19   THE ETHICAL OBLIGATION APPLIES TO AN INADVERTENT DISCLOSURE

20   MADE BY COUNSEL TO LET THE SENDER OF THE DOCUMENTS KNOW THAT

21   YOU HAVE BEEN GIVEN PRIVILEGED DOCUMENTS AND THAT THERE IS NO

22   LEGAL STANDARD THAT SUPPORTS DISQUALIFICATION FOR JUST HAVING

23   CONFIDENTIAL INFORMATION.  OF COURSE, THE CONTEXT OF THAT CASE,

24   AGAIN, IS VERY SPECIFICALLY ABOUT A CLIENT WHO DISCLOSED

25   CONFIDENTIAL INFORMATION TO HIS OR HER OWN ATTORNEY THE PURPOSE

1    FOR PROSECUTING HIS OR HER OWN LAWSUIT AGAINST THE DEFENDANT.

2          *CLARK*, YOU KNOW, IS A CLIENT THAT DISCLOSED

3    CONFIDENTIAL INFORMATION TO THE HIGGS FIRM, AND THE COURT FOUND

4    THAT THE HIGGS FIRM JUST MADE EXCESSIVE USE OF IT AND SHOULDN'T

5    HAVE AND DISQUALIFIED THEM.

6          MR. SIMON:  LET ME SAY A COUPLE THINGS, BECAUSE THERE

7    ARE A LOT OF QUESTIONS ROLLED UP IN THERE, BUT I'LL TRY TO BE

8    BRIEF.  THE CLIENT DISSENTION DOESN'T REALLY HOLD WATER BECAUSE

9    I THINK, AS I SAID EARLIER, THERE ARE CLIENTS IN THE CASES THAT

10   MR. HUESTON LIKES, CLIENTS DISCLOSING DOCUMENTS TO THEIR OWN

11   LAWYERS, AND THERE ARE CLIENTS IN THE CASES THAT WE LIKE, AND

12   IT ISN'T THE BASIS UPON DIVIDING THE CASES.

13         THE BASIS TO DIVIDE THE CASES IS, SOME JUDGES WANT TO

14   EXTEND THE RULE OF *STATE FUND* AND *RICO* TO THIRD-PARTY

15   DISCLOSURES AND SOME COURTS DON'T, JUST AS SOME LAWYERS WANT TO

16   EXTEND THE RULE TO SIT ON THE COMMITTEES OF THE ABA OR THE

17   COMMITTEES, THE COPRAC, THE CALIFORNIA COMMITTEE.  THIS IS A

18   MATTER STILL BEING DEBATED IN 2014.  MAYBE IF WE WERE HERE IN

19   2020, YOUR HONOR, WE COULD SAY THERE WAS A CLEAR RULE AND SOME

20   LAWYER JONES IN 2020 MIGHT VIOLATE IT INTENTIONALLY AND STAND

21   SOME CHANCE OF BEING DISQUALIFIED IF HE USED THE DOCUMENTS

22   PERVASIVELY.  BUT THIS ISSUE IS UP IN THE AIR.

23         *CLARK* IS A CASE WHICH JUDGE RYU, IF THAT'S HOW YOU

24   PRONOUNCE IT, AND PROFESSOR MARTIN BOTH DISTINGUISH THE EXACT

25   SAME WAY.  CLARK WAS A CORPORATE OFFICER WHO HAD A FIDUCIARY

1    DUTY TO THE COMPANY.  AND THERE ARE CASES THAT SAY THE

2    CORPORATE OFFICER WHO HAS A FIDUCIARY DUTY TO THE COMPANY, A

3    LAWYER IN MR. HULETT'S POSITION WILL BE AIDING AND ABETTING A

4    BREACH OF FIDUCIARY DUTY BY TAKING DOCUMENTS FROM A CORPORATE

5    OFFICER.  AND, AGAIN, THAT'S NOT THE SITUATION THAT WE HAD

6    HERE.  WE JUST HAVE AN EMPLOYEE.

7         I WOULD ALSO LIKE TO GO BACK TO THIS CLIENT POINT,

8    YOUR HONOR, JUST TO SHOW HOW EXTREME THE POSITION IS BEING

9    TAKEN BY SEMPRA IN THIS CASE.  WE RELIED ON THE *COOKE* CASE.

10   THE *COOKE* CASE IS THE FIRST CALIFORNIA CASE ON THE SUBJECT.

11   IT'S STILL GOOD LAW.  I MEAN, YOUR LAW CLERKS CAN SHEPARDIZE IT

12   OR WHATEVER THEY DO THESE DAYS.  THEY PROBABLY DON'T KNOW WHAT

13   SHEPARD IS ANYMORE, AND THEY WILL SEE IT'S NOT DISTINGUISHED,

14   IT'S NOT OVERRULED, IT'S NOT QUESTIONED, IT'S NOT CRITICIZED,

15   IT'S THE LAW.

16        IN THE *COOKE* CASE, THE BUTLER, THE FAMILY BUTLER,

17   OVERHEARD A CONVERSATION BETWEEN THE HUSBAND AND HIS LAWYER,

18   CORE ATTORNEY/CLIENT COMMUNICATION WORK PRODUCT ABOUT

19   LITIGATION STRATEGY.

20        THE COURT:  HE APPARENTLY LIKED THE WIFE BETTER.

21        MR. SIMON:  HE LIKED THE WIFE BETTER.  HE GAVE THE

22   DOCUMENTS TO THE WIFE, WHO GAVE THE DOCUMENTS TO HER LAWYER.

23   SO SEMPRA SAYS, OH, THAT'S A CASE ABOUT GIVING THE DOCUMENTS TO

24   YOUR OWN LAWYER, NOT A CASE ABOUT A THIRD PARTY.

25        YOUR HONOR, THAT'S INSANE.  THAT WOULD MEAN THAT IF

1   MR. MICHELON IN THIS CASE HAD GIVEN THE DOCUMENTS TO

2   MR. RITCHIE AND THEN MR. RITCHIE HAD BROUGHT AND GIVEN THEM TO

3   MR. HULETT, I GUESS SEMPRA IS SAYING THEY WOULD GO HOME WITH

4   THEIR TAIL BETWEEN THEIR LEGS BECAUSE THEY DON'T HAVE A LEG TO

5   STAND ON.  IT MAKES NO SENSE.  IT'S A DISTINCTION WITHOUT A

6   DIFFERENCE.

7         PROFESSOR MARTIN UNREBUTTED HAS REALLY DESCRIBED THE

8   MATTER AS NEUTRALLY AS HE CAN.  IT'S A MATTER UPON WHICH

9   REASONABLE MEN AND WOMEN CAN DIFFER, AND THEY'RE CONTINUING TO

10  DIFFER BETWEEN A 2013 DECISION IN *GOTHAM* AND A 2014 DECISION IN

11  *LAYER 2*.

12        THE COURT:  I THINK THEY'RE BOTH 2014 ACTUALLY.

13        MR. SIMON:  I'M SORRY, YOUR HONOR.  I COULDN'T HEAR

14  YOU, BUT I TAKE IT, IT WASN'T A QUESTION FOR ME.

15        THE COURT:  *GOTHAM* WAS MARCH 15TH, 2014, AND *LAYER 2*

16  WAS JUNE 5TH, 2014.

17        MR. SIMON:  AND I DO WANT TO REITERATE, YOUR HONOR,

18  THAT *GOTHAM* AND THE OTHER CASES AND *HARTPENCE* DO RELY ON

19  DIRECTLY OR INDIRECTLY A QUOTE FROM THE ABA OPINION, WHICH HAS

20  BEEN WITHDRAWN.  SO THIS IS NOT EVEN A BODY OF CHANGE INVOLVED

21  THAT IS GRADUALLY CHANGING IN THE DIRECTION SEMPRA WANTS.  IT

22  IS A BODY OF LAW THAT IS OSCILLATING BETWEEN TWO THEORIES,

23  DEPENDING ON WHICH LAWYER OR WHICH JUDGE HAS THE PEN IN THEIR

24  HAND.  THAT'S NOT A CASE FOR DISQUALIFICATION.  THAT'S A CASE

25  FOR PROTECTIVE ORDERS, RETURN THE DOCUMENTS, PRIVILEGE LOGS,

1  AND THE LIKE.

2          THE COURT:  ALL RIGHT.

3          MR. SIMON:  IN CASE YOU HAVE ANY QUESTIONS, I

4  APPRECIATE YOUR TIME.

5          THE COURT:  YOU HAVE TWO MINUTES.

6          MR. HUESTON:  OKAY.  YOUR HONOR, I ASK IF YOU REVIEW

7  THOSE CASES IT'S NOT OSCILLATING, AND I FINISH WITH THIS, WHICH

8  IS NOT THE ABA OPINION WHICH DOESN'T COUNT WHEN YOU HAVE A

9  CONTRARY CALIFORNIA RULE ON POINT, AND THAT'S WHAT YOU HAVE

10  HERE NO. 2013-188 EXPRESSLY OPINE THAT THE *RICO* RULE EXTENDS TO

11  PRIVILEGED DOCUMENTS RECEIVED FROM A THIRD PARTY, QUOTE "IN OUR

12  HYPOTHETICAL, ATTORNEY DID NOT RECEIVE COMPANY'S DOCUMENT FROM

13  OPPOSING COUNSEL THROUGH THE COMPANY'S INADVERTENCE.  RATHER,

14  THE ATTORNEY RECEIVED COMPANY'S DOCUMENTS FROM SENDER, AN

15  UNKNOWN THIRD PARTY, WHO INTENTIONALLY TRANSMITTED IT.

16  HOWEVER, GIVEN THE STRONG PUBLIC POLICIES UNDERLYING *STATE FUND*

17  AND *RICO*, WE CONCLUDE THE ETHICAL DUTIES SET FORTH IN *STATE*

18  *FUND* AND *RICO* APPLY BOTH WHEN IT IS REASONABLY APPARENT THAT

19  THE MATERIALS WERE PROVIDED OR MADE AVAILABLE THROUGH

20  INADVERTENCE BY THE PRIVILEGE HOLDER'S COUNSEL THEMSELVES OR

21  WHEN A THIRD PARTY INTENTIONALLY SENDS PRIVILEGED MATERIALS TO

22  ANOTHER ATTORNEY, AND IT IS REASONABLY APPARENT THAT THOSE

23  MATERIALS WERE SENT WITHOUT THEIR OWNER'S AUTHORIZATION," END

24  QUOTE.  THAT'S CLEAR, YOUR HONOR.  THAT'S WHAT WAS CITED.

25          MR. SIMON:  I'M SORRY, YOUR HONOR.  10 SECONDS.  IT'S

1   QUITE IMPORTANT.  LOCAL RULES ARE WRITTEN BY THE CALIFORNIA

2   SUPREME COURT.  THEY HAVE TO BE FOLLOWED.  IT WAS A 2013.  IT'S

3   STILL A LITTLE LATE FOR THIS CASE, BUT IT'S NOT A RULE, IT'S

4   NONBINDING.  IT'S NONBINDING ON ANYONE.  LAWYERS FOLLOW OR

5   DON'T FOLLOW IT AT THEIR OWN RISK, AND AS WE SAW IN THE ABA,

6   THESE OPINIONS, NONBINDING CHANGE FROM YEAR TO YEAR.  SO RULE

7   IS A VERY INEFFICIENT WORD TO USE IN THAT SENTENCE.

8           THE COURT:  I HAVE TO JUST ON MY OWN THOUGHTS TO WRAP

9   UP, I MEAN, IT IS, THE CITATION TO THE DISCOVERY RULE THAT

10  TALKS ABOUT INADVERTENT DISCLOSURE AND RETURNING TO THE SENDER

11  IS BEING APPLIED IN THESE CASES BY DIFFERENT JUDGES POSSIBLY IN

12  TERMS OF WANTING TO REACH AN OUTCOME DEPENDING ON THE FACTS OF

13  THE CASE, BUT IT'S NOT CLEAR FROM THE CONTEXT OF THAT RULE THAT

14  IT WAS MEANT TO APPLY TO THIRD PARTIES.  BECAUSE IF IT SIMPLY

15  WANTED TO SAY, A LAWYER WHO FINDS HIMSELF IN POSSESSION OF

16  ATTORNEY/CLIENT DOCUMENTS NOT SENT INTENTIONALLY BY THE HOLDER

17  OF THE PRIVILEGE MUST CONTACT THE HOLDER AND LET THEM KNOW,

18  THEY COULD HAVE SIMPLY SAID THAT.  AND THE RULE DOESN'T ADDRESS

19  THAT AT ALL.

20          THE RULE WAS ADDRESSED AND I THINK WRITTEN INTENDED TO

21  RESPOND TO THE MULTITUDE OF DISCOVERY WE SEE IN CASES WHERE

22  INADVERTENT DISCLOSURE HAPPENS FOR A LIMITED NUMBER OF

23  DOCUMENTS IN A SMALL WORLD, AND YOU DON'T GET TO JUST SAY, OH,

24  GOTCHA AND CAN KEEP THEM BECAUSE SOMEONE PUT THE WRONG FILE

25  FOLDER IN THE BOX OF PRODUCTION OR THE WRONG ELECTRONIC FILE

1   FOLDER IN THE DISC.

2          AND I DON'T THINK THE RULE WAS WRITTEN AS BROADLY AS

3   THE DEFENDANTS WANT IT TO SAY.  I DO ACKNOWLEDGE THAT COURTS

4   HAVE APPLIED IT THAT BROADLY, BUT THERE ARE SIMILARLY COURTS

5   WHO SAY IT SHOULDN'T BE APPLIED THAT BROADLY.  AND, WELL,

6   YOU'LL GET MY WRITTEN DECISION, BUT GOING FORWARD, I DON'T

7   THINK THAT THE ULTIMATE CONCLUSION THAT THE FIRM HAS TO BE

8   DISQUALIFIED IS NECESSARY.  I THINK THERE CAN'T BE AN

9   ASSUMPTION OF A WAIVER ON THE PART OF SEMPRA.  THEY HAVE TAKEN

10  WHATEVER STEPS THEY COULD TAKE TO TRY TO RECOVER THESE

11  DOCUMENTS.  THEY SHOULD BE GIVEN THE OPPORTUNITY TO DO THAT.

12         WE'LL DRAFT UP THE REQUIREMENT THAT YOU HAVE TO

13  PROVIDE THE DOCUMENTS BACK TO THEM.  YOU HAVE TO DO A LOG FOR

14  ANY THAT ARE RELEVANT AND WOULD OTHERWISE HAVE BEEN PRODUCED IN

15  THE CASE.  YOU'RE NOT PRECLUDED FROM BRINGING THIS UP UNDER

16  RULE 26 IF THESE DOCUMENTS WERE CLEARLY IN THEIR POSSESSION AND

17  THEY INTEND TO USE ANY OF THEM, WHETHER THEY'RE PRIVILEGED OR

18  NOT, IN THE CASE AND HAVE NOT PREVIOUSLY IDENTIFIED THEM.  YOU

19  CAN GO DOWN THAT ROAD WITH JUDGE CRAWFORD.  I HAVEN'T SEEN YOUR

20  RULE 26 DISCLOSURE.  I DON'T KNOW HOW BROAD IT IS.

21         SO FOR PURPOSES OF THIS MOTION, THE DEFENDANT'S MOTION

22  IS DENIED.  I THINK IT'S A CLOSE CALL, BUT I THINK UNDER THE

23  CIRCUMSTANCES OF THIS CASE AND WITHOUT CLEAR DIRECTIVE THAT

24  THEY VIOLATED AN ETHICAL DUTY HERE BY NOT LETTING YOU KNOW THAT

25  A THIRD PARTY GAVE THEM DOCUMENTS THAT CONTAIN PRIVILEGED

1   INFORMATION, AND IN LIGHT OF THE STEPS THEY TOOK TO TRY TO

2   AVOID USING PRIVILEGED INFORMATION, EVEN IT WAS IMPERFECT,

3   DISQUALIFICATION IS TOO DRACONIAN IN RESULT, AND I'M NOT GOING

4   TO TAKE THAT STEP.

5        WE WILL GIVE YOU SPECIFIC INSTRUCTIONS TO FOLLOW, AND

6   YOU CAN CERTAINLY MEET AND CONFER AS TO THE TIMING FOR DOING

7   THAT TO GET THE DOCUMENTS BACK TO SEMPRA, SO THEY CAN DO THE

8   LOG, AND YOU CAN PROCEED FROM THERE.  THAT'S ALL FOR TODAY.

9        MR. SIMON:  THANK YOU, YOUR HONOR.

10        MR. CAMP:  CAN I RAISE ONE TIMING ISSUE?  IN TERMS OF

11   YOUR HONOR'S ORDER, AS YOUR HONOR PROBABLY KNOWS, THERE IS AN

12   OCTOBER FACT DISCOVERY CUTOFF THAT THE MAGISTRATE JUDGE HAS

13   SET.

14        THE COURT:  IN LIGHT OF THIS, WE CAN CONTINUE THAT.

15        MR. CAMP:  OKAY.

16        THE COURT:  I'D LIKE YOU TO TRY TO DRAFT A JOINT

17   REQUEST TO CONTINUE DATES, AND I THINK DEPOSITIONS THAT WERE

18   NOTICED MAY NEED TO BE CONTINUED UNTIL THIS IS RESOLVED SO

19   THEY'RE NOT HAMPERED FROM USING SOMETHING THAT REPERCOLATES

20   THIS ISSUE.  I KNOW THIS CASE HAS BEEN AROUND FOR A LONG TIME,

21   AND I WOULD LIKE TO SEE IT MOVE FORWARD, BUT HOPEFULLY YOU CAN

22   PUT SOME REASONABLE TIMEFRAMES ON CONTINUING YOUR CUTOFFS.

23        MR. SIMON:  YOUR HONOR, TO ME, THERE IS AN EXTRA LONG

24   PERIOD BETWEEN THE END OF DISCOVERY AND THE FINAL PRETRIAL

25   ORDER, SO I THINK WE MAY BE ABLE TO EXTEND THE DISCOVERY DATE

1    WITHOUT INTERFERING WITH OTHER DEADLINES.  I REMEMBER LOOKING

2    AT SCHEDULE AND THINKING, WELL, DISCOVERY IS TIGHT, AND THEN

3    EVERYTHING ELSE IS KIND OF LOOSE.

4              THE COURT:  THAT'S FINE.

5              MR. SIMON:  IT WILL KIND OF CATCH UP.

6              THE COURT:  FRANKLY, IF MORE DISPOSITIVE MOTION

7    PRACTICE HAPPENS, THEN THAT WILL PROBABLY TO SOME EXTENT DERAIL

8    YOUR TRIAL DATE STUFF, BECAUSE GETTING YOU ON CALENDAR TO HAVE

9    MOTIONS AND HAVING THEM HEARD AND DECIDED MIGHT NOT FIT IN THE

10   SCHEDULE THAT WE GAVE YOU.  SO I'LL LET YOU WORK ON THAT, BUT I

11   THINK IT'S APPROPRIATE TO GIVE YOU SOME RELIEF FROM THOSE

12   DISCOVERY CUTOFFS, GIVEN THAT OCTOBER IS JUST AROUND THE CORNER

13   NOW, BELIEVE IT OR NOT.  OBVIOUSLY THIS NEEDS TO GET UNRAVELED.

14   SO YOU CAN SUBMIT A JOINT PROPOSAL TO ME, I'LL REVIEW IT, AND

15   I'LL HAVE JUDGE CRAWFORD PUT IT IN EFFECT.

16             MR. SIMON:  JOINT PROPOSAL?

17             THE COURT:  ON CHANGING YOUR DEADLINES HERE, YOUR

18   SCHEDULING ORDER.

19             MR. HUESTON:  THANK YOU, YOUR HONOR.

20        (COURT IN RECESS AT 2:40 P.M.)

21        *** END OF REQUESTED TRANSCRIPT ***

22

23

24

25

1                   CERTIFICATE OF OFFICIAL REPORTER

2           I, MAURALEE RAMIREZ, FEDERAL OFFICIAL COURT REPORTER,

3    IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

4    DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO

5    SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS

6    A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

7    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

8    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

9    OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

10

11          DATED THIS 19TH DAY OF AUGUST 2014.

12

13          /S/ MAURALEE RAMIREZ_____
            MAURALEE RAMIREZ, CSR NO. 11674, RPR
14          FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25