HULETT HARPER STEWART LLP
KIRK B. HULETT, SBN: 110726
DENNIS STEWART, SBN: 99152
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone:    (619) 338-1133
Facsimile:    (619) 338-1139

WILLIAMS & CONNOLLY LLP
PETER J. KAHN
(admitted *pro hac vice*)
WILLIAM P. ASHWORTH
(admitted *pro hac vice*)
MEGHAN FERGUSON
(admitted *pro hac vice*)
JAMES GILLENWATER
(admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029

Attorneys for Plaintiff Ramon
Eugenio Sanchez Ritchie

JOHN C. HUESTON; SBN: 164921
MARSHALL A. CAMP; SBN: 231389
SANDRA L. HABERNY; SBN: 260977
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:    (949) 760-0991
Facsimile:    (949) 760-5200

Attorneys for Defendant SEMPRA
ENERGY

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON EUGENIO SANCHEZ RITCHIE,<br><br>Plaintiff,<br><br>v.<br><br>SEMPRA ENERGY, a California Corporation,<br><br>Defendant. | CASE NO. 10CV1513-CAB(KSC)<br><br>**REDACTED COPY OF SEALED JOINT MOTION CONCERNING DISPUTE REGARDING SEMPRA'S PRIVILEGE LOG AND SEMPRA'S IMPROPER WITHHOLDING OF DOCUMENTS**<br><br>DATE:     TBD<br>TIME:      TBD<br>JUDGE:   Hon. Cathy Ann Bencivengo<br>CTRM:    4C (4th Floor - Schwartz) |

# I.     INTRODUCTORY STATEMENTS

## A.     Plaintiff's Introductory Statement

Sempra has produced a total of approximately 2,356 documents to Plaintiff. Sempra's privilege log identifies over 3,100 entries reflecting communications that have been withheld on a purported claim of privilege or work-product.[1]   In a November 3, 2014 meet and confer, Sempra represented that these 3,000 log entries in fact reference 500-600 communications, and following this meet and confer, Sempra produced a revised log and produced several previously withheld documents – documents which, as Plaintiff suspected, had absolutely no colorable claim of privilege or work product.   Due to this conduct and the remaining inadequacies of Sempra's revised privilege log, Plaintiff seeks *in camera* review of the documents withheld by Sempra to determine whether (as Plaintiff still expects) many of these documents have been wrongfully withheld on a claim of privilege or work product, or alternatively, are subject to the crime-fraud exception to the privilege.[2]

Sempra's revised privilege log remains inadequate for numerous reasons:

1.     The descriptions provided as the basis for withholding the documents are vague and generic, rendering it impossible to evaluate the validity of the claim of privilege or work product.[3]   Plaintiff suspects that such entries refer to documents for which there is no colorable claim of privilege whatsoever, or that the entries reference a document where an attorney is involved in dispensing *business* advice rather than *legal* advice, or that an attorney has been added as a

---

[1]   *See* Ex. A to the Declaration of Kirk B. Hulett ("Hulett Decl."), Sempra's Revised Privilege Log Installments 1-8.

[2]   Plaintiff's counsel has proceeded in accordance with the Court's August 4, 2014 Order, § V, governing disputes concerning privilege.

[3]   Nowhere does the log indicate which authors or recipients are purportedly attorneys.  Sempra only provided a list of titles of certain individuals referenced in the log entries on October 31, 2014.

"cc" recipient to an email thread in an effort to "cloak" the communication with the privilege.

Of the approximately 2,356 documents produced by Sempra, the vast majority constitute nothing more than a "document dump" of documents offering little insight into the allegations of this case. Yet every one of the 3,159 communications *withheld* by Sempra and listed on its privilege log appears to be highly relevant to Mr. Ritchie's claims. As such, it seems that Sempra has attempted to "cloak" non-privileged communications with the attorney-client privilege or work product doctrine simply by listing an attorney on an email thread. As set forth in the authorities discussed in § II(A) below, this is impermissible.

Plaintiff's property, referred to by Sempra as Lot A-3, is central to this litigation. In its privilege log, Sempra has identified hundreds of documents relating to Lot A-3 that Sempra has withheld. Oddly, however, only approximately 118 documents were produced in this litigation that contain the term "Lot A-3" or "Lote A-3" and of those, 34 *documents were produced by Plaintiff, not Sempra*, and hence Sempra has only produced approximately 84 documents containing this key term while withholding hundreds that refer to Lot A-3. This oddity is suspicious and further indicates that Sempra is abusing its claims of attorney-client privilege and application of the work product doctrine. This fact indicates that Sempra is improperly attempting to shield business communications by simply passing such discussions through an attorney. How can it be that a corporation involved in a property acquisition necessary to its billion dollar LNG operation, an unlawful seizure of that property, and ongoing discussions about operations with and without the property, are found in vast numbers on its "privilege" log, but barely referenced at all in its "business" files?

Plaintiff has also caught Sempra playing fast and loose with its claims of privilege. For example, in Original Privilege Log Installment 4, Entry #1030, Sempra indicated that it had withheld an email dated August 11, 2006 from

2

Ricardo Moreno to Don Felsinger and 62 cc recipients.  According to Sempra's original log, the document was withheld based on "Attorney/Client Privileged; Work Product."  *See* Hulett Decl., Ex. B.  The "Document and Privilege Description" stated, "Confidential email between attorney and client transmitting research for the purpose of providing legal advice relating to litigation involving Sanchez Ritchie."  This same document, however, was produced by Mr. Ritchie at RTCH015028-015033.  Hulett Decl., Ex. C.  The subject line of the email is "Sempra Energy and Market News in Mexico & Latin America" and *the document is a circulation of publicly published news articles*!  Even under the most liberal interpretation of the attorney-client privilege and work product doctrine, there was absolutely *no grounds for withholding this document*.  After Plaintiff confronted Sempra with this, Sempra produced the document.  However, the fact that Sempra would withhold such a document on a claim of privilege raises grave concerns that Sempra is withholding documents any time an attorney has been cc'd on an email, a wildly perverse interpretation which turns the attorney-client privilege and work product doctrine upside down.  In numerous other instances of Sempra's gross over-reaching, Plaintiff confronted Sempra and Sempra ultimately produced the documents.  *Compare* Ex. D, *excerpting* original log entries 73, 137, 513, 514, 898-99, 903, 921, 922, 938, 968, 1006, 1068, 1630, 1634, 1636, 1637, 1688, 1690, 1708, 1755, 2098, 2248, 2462, 2822, 2929, 2932, 3066 *with* Ex. E, reflecting the ultimate production of several of these documents and their obviously not privileged nature.

Similarly, Sempra initially withheld Ex. G to the Hulett Decl. as privileged.  *See* log entries 466, 1035, 1820, excerpted as Ex. F to the Hulett Decl.  The email thread is dated August 8, 2006 and is from Gilbert Moya to Raul Smith (an attorney), Robert Borthwick (an attorney), Sergio Bustamante, Julio Henao, Darcel Hulse, Alejandro Rios (individuals who have not been identified as attorneys).  The text of the email states:

3

**REDACTED**

Although there is absolutely no colorable claim of privilege or work product whatsoever, Sempra has withheld this document.  Sempra withheld it on the basis of "Attorney/Client Privileged" and "Work Product" and gave a revised Privilege Description of:  "Confidential email between attorney and client transmitting information for the purpose of requesting legal advice relating to security of Lot A-3."  Clearly this communication is not designed to seek legal advice and is not privileged.[4]

Similarly, Sempra initially withheld an August 14, 2006 e-mail (Hulett Decl., Ex. G), SEMPRA_0051335, as privileged.  *See* Original Log entries 466, 1035, 1820, excerpted as Ex. F to the Hulett Decl.  On the eve of the Moya deposition, Sempra produced the document.  At his deposition on October 24, 2014, Gilbert Moya read the document into the record, translating it.  Hulett Decl., Ex. H, Deposition Transcript of Gilbert Moya taken October 24, 2014 ("Moya Tran.") at 134:1-136:21.  Clearly the document was not privileged, and yet Sempra had withheld it as such, further raising Plaintiff's concern that Sempra has made other improper claims of privilege.

Additionally, Sempra earlier stated that it had "inadvertently or unintentionally produced to Sanchez Ritchie a document subject to attorney-client

---

[4]   In another example of its game-playing in this litigation, Sempra ultimately produced this and other previously withheld documents the day before the deposition of Gilbert Moya just before 5:00 p.m.  When counsel for Plaintiff attempted to use the document in Mr. Moya's deposition, Sempra's counsel attempted to "claw back" the document, changing their mind once again and renewing the unfounded assertion that the document is somehow privileged.

On October 29, 2014 Sempra produced numerous other documents previously withheld as privileged, but Sempra has not identified which log entries these newly produced documents correspond to.

privilege" and identified that document as SEMPRA_0020601.  *See* Hulett Decl., Ex. I (email from Sandra Haberny to Kirk Hulett dated June 25, 2014).  An examination of that document, however, makes it clear that it does not communicate any legal advice and does not involve any client confidences.  *See* Hulett Decl., Ex. J (SEMPRA_0020601).

Furthermore, although Mr. Moya testified that he never sought legal advice [Moya Tran. at 93:11-94:18], the log contains dozens of entries where the document is withheld because the communication purportedly constitutes a request for legal advice by Mr. Moya.  Hulett Decl., Ex. H.  *See, e.g.*, Hulett Decl., Ex. A, log entries 40, 47, 49, 55, 421, 465-66, 666, 731-32, 735, 878, 901, 935, 946, 948-49, 981-83, 990-91, 1170, 1172, 1731-32, 1806, 1819-20, 1824-25, 1830, 1940-41, 2108, 2257, and 3146.  This further demonstrates the likelihood that Sempra is improperly withholding documents.

2.     Many entries on their face indicate that the document is most likely *not* privileged or subject to the work product doctrine.  For example, Privilege Log Installment Five, Entry #1091, is a March 27, 2004 document from Carlos Loyola (who is not identified as an attorney) to Alex Rios Rippa (who is not identified as an attorney) and previously described as "Confidential email and attachment that reflects litigation strategy relating to litigation involving Lot A-3," and now described as "Confidential email attaching draft of Government Affairs report transmitting strategy of counsel for case involving Sanchez-Ritchie to Government Affairs Committee."  *See* Hulett Decl., Ex. A.  As another example, Privilege Log Installment Two, Entry #126 has no date, author or recipient but is nevertheless withheld on the basis of "Attorney/Client Privilege; Work Product."  The privilege description states, "Information provided at direction of counsel in litigation binder of Raul Smith for the purposes of providing legal advice and serving as legal research regarding litigation involving Sanchez Ritchie."

3.     Sempra is unlawfully attempting to use the attorney-client privilege

5

as both a sword and a shield.  It has become apparent during discovery that Sempra intends to rely, at least in part, on an advice-of-counsel defense.  As set forth in Section II.A, *infra*, however, Sempra cannot invoke the attorney-client privilege to deny Plaintiff access to the very information on which it relies for its advice-of-counsel defense.

4.     Plaintiff has reasonable cause to believe that many of the documents listed on Sempra's privilege logs are subject to the crime-fraud exception to the attorney-client privilege.  The crux of Plaintiff's claims are that Sempra engaged in a pattern of unlawful and illegal conduct, including the malicious prosecution of Mr. Ritchie, in order to unlawfully seize the Property at issue in this case.  Plaintiff alleges that Sempra engaged in a multitude of acts involving fraud, deceit, and criminal conduct.  Sempra's privilege log now makes it clear that in the course of this unlawful conduct, Sempra likely engaged the advice of its in-house counsel as well as outside lawyers.  *See generally* Hulett Decl., Ex. A.  As set forth in the authorities in § II.A.1.c., *infra*, however, the protection afforded by the attorney-client privilege does not extend to communications in furtherance of illegal acts. Based upon the allegations of Plaintiff's Second Amended Complaint, combined with the entries in Sempra's privilege log, Plaintiff has reasonable cause to believe that attorneys' services were utilized in furtherance of Sempra's ongoing unlawful scheme against Plaintiff.  As such, an *in camera* review of the documents withheld by Sempra is necessary.

The parties have met and conferred concerning the inadequacies of Sempra's privilege log and no resolution of the foregoing issues can be achieved.  Plaintiff needs the Court's intervention as soon as possible given the tardiness of Sempra's completion of its log.  Plaintiff seeks an *in camera* hearing at which this Court reviews a sampling of the withheld documents and a determination of whether the documents are indeed subject to the attorney-client privilege or attorney work product doctrine.  Alternatively, Plaintiff requests the appointment of a Special

1  Master to review *all* of the documents *in camera* and rule on whether or not they
2  have been properly withheld.  As set forth in the authorities in § II.A.1.e., *infra*, an
3  *in camera* review is appropriate and necessary.

4  **B.    Defendant's Introductory Statement**

5  Sempra has produced approximately 57,780 pages of documents to Plaintiff
6  during discovery in this action – a production so voluminous that Plaintiff
7  characterizes it as a "document dump."   By contrast, Sempra has withheld as
8  privileged a far smaller universe of approximately 600 documents,[5] most of which
9  consist of email chains that were sent by, to, or "cc'd" to Sempra attorneys
10  (primarily internal and external litigation counsel) for the purpose of seeking legal
11  advice ***after*** Sempra's dispute with Plaintiff arose in 2006.  *See* Declaration of
12  Katie M. Yablonka ("Yablonka Decl."), ¶¶ 2-3.

13  Plaintiff now asks this Court to take the extraordinary step of reviewing *in*
14  *camera* all (or nearly all) of the documents reflected on Sempra's privilege log, but
15  Plaintiff offers no factual justification or legal authority for why such a review is
16  warranted here.  It is not.

17  Plaintiff contends that the Court should review all of the documents listed on
18  Sempra's privilege log because Sempra previously asserted privilege over a
19  handful of documents that Sempra later agreed to (and did) produce.  Specifically,
20  after meeting and conferring with Plaintiff, Sempra concluded that it had
21  inadvertently withheld a handful of documents that were not subject to the
22  privilege, and has remedied that by turning over those documents.  Those facts do
23  not remotely provide a basis for the Court to order the review of all of Sempra's
24  privileged documents.

---

25  [5]   Where a particular document includes multiple discrete emails as to which
26  Sempra is asserting privilege, Sempra has separately logged each individual email
27  on its privilege log.  As a result of Sempra going to the trouble and expense of
separately logging each individual privileged email, Sempra's log contains over
28  3,000 entries.

Plaintiff likewise argues that all of Sempra's privilege designations are suspect because Sempra inadvertently produced a communication that included two lawyers, Raul Smith and Robert Borthwick, and then attempted to "claw back" that document.  Plaintiff argues that the document in question is not privileged, and that Sempra's attempt to assert privilege over it renders all of Sempra's other privilege designations to be suspect.  Plaintiff is wrong.  The attorney-client privilege in this diversity action is governed by California state law, and the California Supreme Court has unequivocally stated that the attorney-client privilege is not determined based on reviewing each individual communication, but rather based on the *dominant purpose of the relationship between the speakers*. *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 739-740 (2009); *see also KL Group v. Case, Kay, & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987); *Fay Ave. Props. v. Travelers Prop. & Cas. Co. of Am.*, No.11-2389-GPC, 2014 U.S. Dist. LEXIS 46185, at *30-31 (S.D. Cal. Apr. 2, 2014) (applying California law and holding that where the primary purpose of a relationship is to provide legal advice, "all documents and communications are protected by the privilege without the necessity of having to make individualized showing as to each communication or document"); *Swortwood v. Tenedora de Empresas*, Case No. 13-cv-362-BTM, 2014 U.S. Dist. LEXIS 29247, at *28 (S.D. Cal. Mar. 6, 2014).  During the period at issue, the two attorneys copied on the communication that Plaintiff cites – Mr. Smith and Mr. Borthwick – respectively had the titles of "Senior Counsel" and "Assistant General Counsel – Litigation," and were directly involved in providing legal advice to Sempra personnel about Sempra's legal dispute with Plaintiff. Yablonka Decl., ¶ 4.  Plaintiff has absolutely no evidence that either attorney was acting in a "business capacity," or that they were not involved in providing legal advice to Sempra personnel about Plaintiff.

Plaintiff also contends that Sempra's privilege log is facially defective.  That contention is incorrect as matter of law.  Sempra's log clearly identifies: (a) the

8

date of each document over which privilege is being claimed, (b) the author of each such document, (c) the recipients (including cc's) of each document, (d) a description of each document, and (e) the particular privilege being claimed. Yablonka Decl., ¶¶ 2, 6, Ex. A (Sempra's revised privilege log).  In addition, as Plaintiff concedes at n. 3 of his brief, Sempra has also provided Plaintiff with: (f) a list identifying all of the individuals named in the log.  Yablonka Decl., ¶ 7, Ex. B (10/31/2014 Letter from Haberny to Hulett).  The information provided by Sempra in connection with its privilege log is all that is required by governing case law.[6] *Khasin v. Hershey Co*., Case No. 5:12-cv-08165-EJD, 2014 U.S. Dist. LEXIS 23886, at *7 (N.D. Cal. Feb. 21, 2014).  In fact, the descriptions of the privileged documents that Sempra has provided to Plaintiff are unusually detailed and certainly are adequate in the context of a privilege log.  *See id.*

Plaintiff also argues that Sempra's privilege log appears to be suspicious because (according to Plaintiff) very few of the 57,780 pages produced to date by Sempra are relevant to this action, and many of the documents listed on Sempra's privilege log appear to be relevant.  This argument fails for multiple reasons.  First, Plaintiff has offered no evidence to support his conclusory assertion that very few of the documents produced to date by Sempra are relevant to this action, and Sempra disputes Plaintiff's contention.[7]   Second, the fact that many of the

---

[6]   Further, to the extent that Plaintiff disagreed that the information provided in Sempra's revised privilege log was adequate to carry Sempra's burden under Fed. R. Civ. P. 26(b)(5), Plaintiff had an obligation to meet and confer with Sempra before bringing this discovery motion.  As explained in the Yablonka Decl., Plaintiff did not meaningfully meet and confer with Sempra prior to serving this motion, which is a separate reason to deny his motion.  Yablonka Decl., ¶¶ 8, 10.

[7]   Plaintiff contends that only 118 documents produced in this action contain the keywords "Lot A-3" or "Lote A-3," and argues that this number is somehow "suspicious."  Sempra has, however, produced many additional documents that relate to Lot A-3, but that do not use the words "Lot A-3" or "Lote A-3." Yablonka Decl., ¶ 11.

1  documents listed on Sempra's privilege log appear from their descriptions to be
2  relevant to this case is completely irrelevant to the question of whether or not they
3  are privileged.  The fact that privileged documents are relevant does not somehow
4  convert them into non-privileged documents.  Third, as noted above, the vast
5  majority of the documents listed on Sempra's log are email communications to,
6  from, or cc'd to various Sempra attorneys *after* Sempra's dispute with Plaintiff
7  arose in 2006.  It is far from "suspicious" that Sempra employees had privileged
8  communications with both in-house Sempra attorneys and outside counsel about
9  Lot A-3 after the parties' dispute arose.

10  Plaintiff also argues that the Court should review all of the documents listed
11  on Sempra's privilege log under the "crime fraud exception."  Plaintiff bears the
12  burden of demonstrating that the crime fraud exception applies, and Plaintiff has
13  offered no evidence whatsoever to support this conclusion.  Plaintiff's conclusory
14  assertion that he believes that Sempra was engaged in some unspecified criminal
15  activity is not remotely sufficient to trigger the crime fraud exception to the
16  attorney client privilege, or to warrant *in camera* review of Sempra's privileged
17  documents.

18  Simply put, Plaintiff has not carried his burden of demonstrating that *in*
19  *camera* review is warranted.  Under *Costco*, the California Supreme Court has
20  determined that the attorney-client privilege is determined by considering the
21  relationship between the parties, not by reviewing individual communications, and
22  that *in camera* review is not appropriate under California law.  As to work product
23  protection, most of the communications at issue were created during – and because
24  of – Sempra's legal dispute with Plaintiff.  Plaintiff has made no showing that
25  Sempra's in-house counsel were only dispensing "business advice" (as Plaintiff
26  falsely claims), or that the documents at issue were not created because of
27  litigation.

28

## II.   ISSUES IN DISPUTE

### A.   The Inadequacy of Sempra's Privilege Logs

#### 1.   Plaintiff's Statement

##### a.   Sempra Has Failed to Satisfy Its Burden of Establishing the Privileged Nature of the Communications

Federal Rule of Civil Procedure 26(b)(5)(A) states that

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)   expressly make the claim; and
>
> (ii)   describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, *will enable other parties to assess the claim.*

*Id.* (emphasis added).   A party who withholds discovery materials on a claim of privilege must provide sufficient information to enable the other party to evaluate the applicability of the privilege or protection.   *See Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005).   "Failure to provide sufficient information may constitute a waiver of the privilege."   *Id.*

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441 (N.D. Cal. 2010).

"'[A] party asserting the attorney-client privilege has the burden of establishing [the existence of an attorney-client] relationship *and* the privileged nature of the communication.'"   *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citing *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) and quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)) (emphasis and

11

brackets in original).  *See also Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (same); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (same); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005) (same); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d. 1065, 1069 (N.D. Cal. 2002) (same). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Graf*, 610 F.3d at 1156 (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

"A party seeking to withhold discovery based upon the attorney-client privilege must prove that all of the communications it seeks to protect were made '*primarily* for the purpose of generating legal advice.'"  *Griffith*, 161 F.R.D. at 697 (citing *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990)) (emphasis in original).  "'No privilege can attach to any communication as to which a business purpose would have served as a *sufficient cause*, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice.'"  *Id*.

The court's findings in *United States v. ChevronTexaco Corp.*, are instructive here.  There the court stated,

> [U]nlike outside counsel, in-house attorneys can serve multiple functions within the corporation.  In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decision or activities.  Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters.  *The privilege does not protect an attorney's business advice.  Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys*.  Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.
>
> With respect to internal communications involving in-house counsel [the party claiming privilege] must make a "clear showing" that the

"speaker" made the communications for the purpose of obtaining or providing legal advice.  In order to show that a communication relates to **legal** advice, the proponent of the privilege must demonstrate that the "primary purpose" of the communication was securing legal advice.

241 F. Supp. 2d at 1076 (citations omitted, emphasis in italics added).

Furthermore, the mere fact that an attorney is copied with an email "will not shield communications not made for the purpose of securing legal advice." *Id.* at 1075.  Similarly, a party cannot prevent disclosure of investigative work by having its litigation counsel or an agent of that litigation counsel conduct the investigation. *Griffith*, 161 F.R.D. at 697.   Also, "'[w]here a privileged document has attachments, each attachment must individually satisfy the criteria for falling within the [attorney-client] privilege.'"   *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) (citation omitted).  "Merely attaching something to a privileged document will not, by itself, make the attachment privileged.'" *Id.* (citation omitted).

Based on the foregoing authorities, Plaintiff challenges the following entries on Sempra's revised privilege log: 1, 28, 29, 40, 47, 49, 55, 62-64, 72, 74, 77, 78, 80, 85-86, 88, 90, 101, 103, 106-07, 109, 110, 126, 142, 144, 157, 180-81, 185, 187-89, 215-18, 231, 254, 270-71, 273, 285-86, 288, 306, 314, 324, 327, 329, 336-41, 345-49, 406-07, 409, 413, 415, 417, 419-21, 429, 431, 463-66, 478-79, 482, 484, 516, 528, 530, 534-37, 540-42, 544-47, 549, 551, 553-54, 561, 568-69, 577, 587-95, 597, 601-03, 605, 608, 615-17, 625-32, 646, 660, 666, 699-701, 725-32, 735-36, 740-42, 751, 756, 759, 762-63, 768-71, 774-75, 786, 788, 791-94, 796, 800-01, 813-14, 819-21, 825, 838, 849-51, 855-62, 871-74, 878, 884-85, 889, 901, 904-08, 915, 918-20, 923, 926, 929, 932-35, 937, 939, 941-42, 946, 948, 950, 952-53, 956, 962, 966-67, 971, 978, 980-83, 985-88, 990, 991, 993, 995, 1001, 1004, 1007-08, 1011, 1015, 1017, 1019-20, 1025-26, 1029, 1031-35, 1040-41, 1045-47, 1067, 1069, 1073-79, 1091-93, 1097-98, 1100-03, 1106, 1108, 1111-16, 1119-21,

13

1123, 1135-40, 1145-50, 1152, 1154-56, 1159-62, 1164-66, 1170, 1172, 1175-78, 1201-03, 1208-10, 1214, 1226, 1231-34, 1237, 1240, 1244-45, 1266, 1319-20, 1325, 1329, 1332, 1341, 1344, 1348, 1351, 1359, 1373, 1376-77, 1384, 1388-89, 1391-94, 1412, 1421, 1423, 1427-29, 1434-36, 1439, 1441, 1458, 1466, 1484, 1487, 1503, 1558, 1576, 1581, 1586-87, 1591, 1622, 1635, 1639, 1660, 1662, 1669, 1676, 1679-81, 1692, 1698-702, 1704, 1731-32, 1744, 1754, 1756, 1757, 1760, 1769, 1771, 1806, 1808, 1812, 1813, 1815-16, 1819-20, 1824-25, 1830, 1834-37, 1839, 1844, 1866, 1873, 1880-81, 1898, 1899, 1903-04, 1921, 1926, 1933, 1940-41, 1977, 2004, 2055, 2064, 2068, 2070, 2080, 2082, 2092, 2097, 2099, 2108, 2110, 2112-13, 2118, 2121, 2124, 2128, 2132-37, 2139-40, 2142, 2144, 2147-48, 2154, 2156, 2158, 2161-69, 2172, 2177, 2197, 2198, 2201-02, 2212-14, 2216-18, 2222, 2225-27, 2230, 2237-38, 2244, 2247, 2249, 2257, 2260, 2266, 2268, 2270, 2272-74, 2277-85, 2288, 2291-96, 2322, 2334-35, 2339, 2340, 2348, 2358-59, 2368, 2381-82, 2385, 2406, 2437, 2441, 2446, 2447, 2453, 2473, 2498, 2501-02, 2513-14, 2540, 2649, 2656, 2676, 2731-33, 2746-47, 2790-91, 2794-95, 2812-13, 2821, 2847, 2881-83, 2885-86, 2938, 2953, 2960, 2972, 3016-22, 3024-25, 3027, 3030-33, 3044, 3046, 3048-49, 3052, 3056, 3065, 3067-68, 3085-86, 3100, 3102-08, 3110, 3113-14, 3116-117, 3120-21, 3124-25, 3128, 3134, 3141-42, 3146, and 3159.

**b.**     **Sempra Has Failed to Satisfy Its Burden of Demonstrating That the Work Product Doctrine Applies to Any of the Documents at Issue**

As with the attorney-client privilege, the party claiming work product immunity has the burden of proving the applicability of the work product doctrine. *See Syncor*, 229 F.R.D. at 644; *ChevronTexaco Corp.*, 241 F. Supp. 2d. at 1080-81.

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which protects from discovery "'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'"  *Lewis*, 266 F.R.D. at 439 (citation omitted).  "The work

14

product doctrine provides qualified protection from disclosure for documents and other tangible things 'prepared in anticipation of litigation or for trial.'"   *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 283-84 (S.D.N.Y. 2001) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).   "Unless the privilege is overcome, it bars discovery 'where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation.'"   *Id.* (citation omitted).   "Thus, '[t]he collection of evidence, without any creative or analytic input by an attorney or his agent, *does not qualify as work product.*'"   *Id.* (emphasis added, citation omitted).

On the issue of whether material was prepared "in anticipation of litigation," the proper inquiry is "'[w]hether the documents were prepared "because of" existing or expected litigation.'"   *Id.* at 284 (citation omitted).   "The Ninth Circuit has adopted the 'because of' standard for determining whether a document was prepared 'in anticipation of litigation.'"   *Lewis*, 266 F.R.D. at 440 (citing *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004)).

> "This formulation states that a document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'"

*Lewis*, 266 F.R.D. at 440 (citation omitted).

> "The work product doctrine does not protect materials assembled in the ordinary course of business.   Rather the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation.   That is, work product protection applies only to material "*that would not have been generated but for the pendency or imminence of litigation.*"

*Griffith*, 161 F.R.D. at 698-99 (citation omitted and emphasis in original).   Also, due to the vague, generic nature of the descriptions in Sempra's privilege logs, it is

15

often unclear whether the lawyers at issue were acting as lawyers or lobbyists.

> "If a lawyer happens to act as a lobbyist, matters conveyed to the
> attorney for the purpose of having the attorney fulfill the lobbyist role
> do not become privileged by virtue of the fact that the lobbyist has a
> law degree or may under other circumstances give legal advice to the
> client, including advice on matters that may also be the subject of the
> lobbying efforts."

*In re Grand Jury Subpoenas,* 179 F. Supp. 2d at 285 (citation omitted).

Based on the foregoing authorities, Plaintiff challenges the following entries on Sempra's revised privilege log: 40, 47, 49, 63, 74, 77-78, 80, 88, 107, 109, 110, 126, 142, 144, 147, 148, 153, 155, 157, 159-60, 164, 166-67, 169, 171, 176-79, 182, 185, 189, 190, 208-13, 215-18, 231, 234, 251, 254, 270-71, 273, 286, 288, 306, 324, 329, 336-37, 339, 347, 348, 406, 409, 413, 415, 419-21, 429, 431, 463-64, 482, 484, 516, 528, 534-37, 540-42, 545-47, 549, 551, 553-54, 561, 568-69, 577, 587-95, 597, 601-03, 605, 608, 615-17, 625-27, 629-30, 646, 660, 699-701, 727-28, 736, 751, 768-71, 774-75, 801, 813-14, 819-20, 824, 838, 850-51, 855, 858, 860-62, 871-74, 878, 901, 904, 906, 915, 919-20, 923, 926, 929, 932-35, 937, 939, 941-42, 946, 948-50, 952-53, 956, 962, 966-67, 971, 981-83, 985-87, 991, 993, 995, 1001, 1004, 1007-08, 1011, 1015, 1017, 1019-20, 1025-26, 1029, 1031-33, 1040-41, 1045-47, 1067, 1069, 1073-79, 1091-93, 1097-98, 1100-03, 1106, 1108, 1111, 1113-16, 1119-21, 1123, 1135-40, 1145, 1147-50, 1152, 1154-56, 1159-62, 1164-66, 1170, 1172, 1175-78, 1233, 1344, 1351, 1391, 1393, 1412, 1423, 1427-28, 1434-36, 1441, 1458, 1466, 1487, 1503-04, 1558, 1576, 1581, 1586-87, 1591, 1635, 1660, 1662, 1669, 1676, 1679-81, 1692, 1698-702, 1704, 1731-32, 1744, 1754, 1756-57, 1760, 1769, 1771, 1808, 1812-13, 1815-16, 1820, 1834-37, 1839, 1844, 1866, 1873, 1880-81, 1903-04, 1921, 1933, 1977, 2004, 2064, 2068, 2070, 2080, 2082, 2099, 2108, 2110, 2113, 2121, 2124, 2132, 2134-37, 2139-40, 2142, 2144, 2147-48, 2154, 2156, 2158, 2161-64, 2166-67, 2169, 2172, 2177, 2201-02, 2212, 2225-27, 2230, 2237-38, 2244, 2247, 2249, 2257,

16

2260, 2266, 2268, 2270, 2272-74, 2277-85, 2288, 2291-92, 2294-96, 2322, 2385, 2406, 2437, 2441, 2446, 2447, 2473, 2498, 2501-02, 2514, 2540, 2649, 2656, 2731-32, 2746, 2790-91, 2794-95, 2812-13, 2821, 2847, 2881-83, 2885-86, 2938, 2953, 2972, 3016-22, 3024-25, 3027, 3030, 3032-33, 3046, 3048, 3065, 3067-68, 3085-86, 3105-08, 3110, 3113-14, 3116-117, 3120-21, 3128, 3134, 3141-42, and 3146.

        **c.**      **There Is Reasonable Cause to Believe that the Crime Fraud Exception Applies to Many of Sempra's Claims of Privilege**

"The protection afforded by the attorney-client privilege does not extend to any communication 'in furtherance of intended, or present, continuing illegality.'" *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (citation omitted). A party seeking to challenge a claim of attorney-client privilege under the crime-fraud exception must satisfy a two-part test. First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." *Id.* (internal quotation marks and citation omitted). Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *Id.* at 382-83. *See also In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1091 (9th Cir. 2007) (same).

"'It is the purpose of the crime-fraud exception . . . to assure that the "seal of secrecy" between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.'" *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997) (citing *United States v. Zolin*, 491 U.S. 554, 563 (1989)). For the district court to apply the crime-fraud exception to the attorney-client privilege, the court must find ""'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing

unlawful scheme."'" *Id*. (quoting *In re Grand Jury Proceedings*, 87 F.3d at 381). *See also In re Napster*, 479 F.3d at 1094 (same); *In re Icenhower*, 755 F.3d 1130, 1141 (9th Cir. 2014) (crime-fraud exception applied where communications with counsel contributed to client's understanding of violations of Mexican law and decision to file amparo).  While it is not enough for a party "merely to allege that it has a sneaking suspicion" that the opposing party was engaging in or intending to engage in a crime or fraud when it consulted the attorney, Plaintiff here has demonstrated much more than a mere "sneaking suspicion" that Sempra's attorneys were consulted to further a fraud.  Here, Plaintiff has alleged a continuing pattern of unlawful conduct, including the malicious prosecution of Plaintiff by Sempra and its co-conspirators involving, among other things, the unlawful seizure and improper, but profitable and lengthy use by Sempra of Plaintiff's property.  Plaintiff has alleged that in order to obtain and unlawfully possess Plaintiff's property, Sempra engaged in a multitude of acts of fraud, deceit and criminal activities.   Plaintiff alleges that Sempra and its agents furthered their scheme through the creation of sham land agreements, knowing such agreements were based on false pretense.  *See, e.g.*, Second Amended Complaint dated October 3, 2011 at ¶¶ 2; 20-33; 72-89.

An examination of Sempra's revised privilege log reveals hundreds of communications regarding Plaintiff and his Property – Lot A-3.  Many of these communications were with lawyers, and were likely made pursuant to Sempra's ongoing scheme to maliciously prosecute Mr. Ritchie and unlawfully oust him from the Property.  *See generally* Hulett Decl., Ex. A.

Based upon the foregoing authorities, *in camera* review of every document withheld by Sempra is necessary.

Courts are aware "that the party challenging the privilege often lacks sufficient evidence to establish the exception because this evidence is likely to be in the hands of whoever is invoking the privilege." *New Amsterdam Project Mgmt.*

18

*Humanitarian Found. v. Laughrin*, No. 07-00935, 2009 WL 102816, at *3 (N.D. Cal. Jan. 14, 2009).   "Where a plaintiff has made *some showing* of the client's criminal or fraudulent scheme, and its *possible* relation to the privileged communications sought, courts have engaged in *in camera* review of the privileged materials."  *Id.* (emphasis added).

### d.  Sempra Cannot Use the Attorney-Client Privilege as Both a Sword and Shield

"The privilege which protects attorney-client communications may not be used both as a sword and a shield."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (citing *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991)).   "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."  *Id.*[8]   Under this doctrine of implied waiver, the court must give the holder of the privilege the choice between litigating its defense or maintaining its privilege.  *See Radware Ltd. v. A10 Networks, Inc.*, No. C-13-02021, 2014 WL 116428, at *1 (N.D. Cal. Jan. 10, 2014).

The Ninth Circuit provides a three factor test for determining when attorney-client privilege has been waived under the fairness principle: "(1) 'the party is asserting the privilege as the result of some affirmative act, such as filing suit,' (2) 'through this affirmative act, the asserting party puts the privileged information at issue,' and (3) 'allowing the privilege would deny the opposing party access to information vital to its defense.'"  *Id*. at *2 (citations omitted).  *See also Coleman v.*

---

[8]   In *United States v. Bilzerian*, 926 F.2d 1156 (9th Cir. 1992) the defendant's intent was in issue because he thought his actions were legal, and had discussed the allegedly fraudulent transactions with his attorney.  According to the court, this "'would have put his knowledge of the law and the basis for his understanding of what the law required in issue.  His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.'"  *Chevron Corp.*, 974 F.2d at 1162 (citing *Bilzerian*, 926 F.2d at 1292).

*Sterling*, No. 09-cv-1594, 2011 WL 1099793, at *4 (S.D. Cal. Mar. 24, 2011) (injection of the advice of counsel waives "the attorney-client privilege as to communications and documents relating to the advice") (citation omitted); *Hydranautics v. Filmtec Corp.*, No. 93-cv-0476, 2003 WL 23358187, at *3 (S.D. Cal. July 23, 2003) (malicious prosecution case holding that: "Having placed the advice of counsel defense at issue, Defendant cannot have it both ways.  Defendant cannot hand-pick documents to its benefit for limited production during discovery, and hold back similarly dated documents relating to the same issues. . . . Defendant cannot conveniently rely on previously produced documents and then seek to withhold others which may implicate the heart of Plaintiff's malicious prosecution claims . . . .").

It is clear from the evidence adduced in this case thus far that Sempra intends to assert an advice of counsel defense.  *See, e.g.*, Hulett Decl., Ex. K, excerpts from the Deposition of Darcel Hulse, President and CEO of Sempra LNG, dated October 28, 2014:

> Q:  Did you direct anyone to perform a title search on lot A-3?
>
> A:  All of the lots that we required –or we eventually acquired, we went through a process of title search, but that was attorneys that were doing that.  (29:18-23).
>
> Q:  Do you know who was involved in doing the title search for lot A-3?
>
> A:  I don't know, you know.  That was under the legal group.  I do not know who actually did all of that search.  (30:6-10).
>
> * * *
>
> A:  I think they were mostly Mexican firms that were hired by our legal department, and I was not involved.  And it's never the business unit's involvement as to who the legal team figures they're the best legal sources to conduct that work.  (30:16-21).
>
> A:  I don't speak Spanish and so, you know, I'm just relying on a – basically, an attorney to tell me that the things are appropriate to sign, because I have no power to read what's in – inside of them.  (33:23-34:1).

20

A:  Okay.  Then I will just simply answer it, it was based on – on legal advice.  (48:11-12).

A:  [T]he securing of that property was pretty much in the hands of the legal team.  And that's a –you know, I think that's all I need to say on that.  (59:3-6).

Q:  Well, who within the Sempra organization back in that time, 2006-2008 time frame, would have been the person, if not you, to be making decisions about what litigation strategies were employed?

[Objection].

A:  I believe our legal team would be ones (sic) that would make the recommendation and the course of action as to what – what we should take, all right?   I would rely totally upon their expertise and understanding . . . Like, I'm not an expert in Mexican law.  I don't understand Mexican law.  I don't understand all of the ins-and-outs.  It's a lot different than other countries that I've operated in.  And so, you know, from my position, I would be relying on legal experts.  (71:16-72:9).

   This reliance on counsel defense is also evidenced in Defendant Sempra Energy's Responses and Objections to Plaintiff's First Set of Interrogatories.  *See, e.g.*, Hulett Decl., Ex. L, naming attorneys Sergio Fillad Fahme, Robert J. Borthwick, and Raul Smith in partial Response to Interrogatory No. 1, "Identify every person who has knowledge concerning any allegation or averment in the SAC . . . ."; *see also* Response to Interrogatory No. 2, naming attorneys Sergio Fillad Fahme and Robert J. Borthwick in partial response; Response to Interrogatory No. 4, naming attorney Sergio Fillad Fahme in partial response).

        **e.**    **Given These Log Deficiencies and Sempra's Gross Over-reaching with Its Claims of Privilege, *In Camera* Review is Necessary**

   In light of these obvious deficiencies and gross overreaching by Sempra with respect to its claims of privilege and work product, *in camera* review is the

only fair remedy.[9]   *In camera* review of allegedly privileged attorney-client communications may also be used to determine whether those communications fall within the crime-fraud exception to the privilege.  *United States v. Zolin*, 491 U.S. 554, 565 (1989).  Upon "'a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," *in camera* review is appropriate.  *Id*. at 572 (citation omitted).  In *In re Napster,* 479 F.3d 1078, the Ninth Circuit recognized that "the party challenging the privilege may lack sufficient evidence to prove crime or fraud to a liability standard, particularly given the fact that the best evidence is likely to be in the hands of the party invoking the privilege."  *Id*. at 1090.  For that reason, a party seeking *in camera* review, rather than outright disclosure of attorney-client communications, must meet a threshold showing that is "considerably lower than that for fully disclosing documents"  *Id*. at 1092 (internal quotation marks omitted).  *See also Roe v. White*, No. 03-cv-04035, 2014 WL 842790, at *2 (N.D. Cal. Feb. 28, 2014) (noting the "low threshold showing" required to warrant *in camera* review); *Dollar Tree Stores, Inc. v. Toyama Partners LLC*, No. CV 10-0325, 2011 WL 5117565, at *2 (N.D. Cal. Oct. 28, 2011) (where party seeks to trigger only a preliminary *in camera* review of documents to determine whether the crime-fraud exception applies to the documents, the showing required "need not be a stringent one") (citation omitted).

In the event that the Court deems the burden of an *in camera* review excessive, given the number of communications withheld by Sempra, then

---

[9]   Courts routinely conduct an *in camera* review in order to resolve disputes concerning claims of privilege and work product.  *See, e.g., Richey*, 632 F.3d at 568; *Lewis*, 266 F.R.D. at 435; *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1068.

appointment of a Special Master to conduct the *in camera* review is appropriate.[10]

## B.    Defendant's Statement

### 1.    Sempra's Privilege Log Fully Complies With Fed. R. Civ. P. 26(b)(5)

In diversity actions, the Ninth Circuit requires courts to look to state law when determining issues concerning the attorney-client privilege. *KL Group v. Case, Kay, & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987); *Swortwood v. Tenedora de Empresas*, Case No. 13-cv-362-BTM, 2014 U.S. Dist. LEXIS 29247, at *28 (S.D. Cal. Mar. 6, 2014); *see also* Fed. R. Evid. 501.  The attorney-client privilege is an issue of substantive law; it is not procedural.  *Johnson v. Allstate Ins. Co*, No. 2:11-cv-00927, 2012 U.S. Dist. LEXIS 28838, at *3 (W.D. Wash. Mar. 5, 2012).

In California, the California Supreme Court has determined that it is not appropriate to conduct an *in camera* review of documents to determine whether the communications are privileged.  *Costco*, 47 Cal. 4th at 737.  Rather, the Supreme Court held that is the relationship between the parties that determines whether the privilege attaches to communications, i.e. the dominant purpose of the relationship between the parties.  *Id.* at 739-740.

Plaintiff's brief argues that one email between Sempra personnel that was cc'd to two Sempra attorneys – Robert Borthwick and Raul Smith – somehow proves that these attorneys were not acting in a legal capacity, but rather were being copied merely to shield information from discovery.  This bald accusation has no evidence to support it.  Mr. Borthwick is a former AUSA in the Central District of California, and was, at the time of the communication, the Assistant General Counsel – Litigation for Sempra Energy.  Yablonka Decl., ¶ 4.  Raul

---

[10]  *See* Fed. R. Civ. P. 53, giving court authority to appoint a Special Master to perform various tasks, such as reviewing documents for privilege.  Adv. Comm. Notes to 2003 Amendments to Fed. R. Civ. P. 53(a)(1); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1094 (9th Cir. 2010).

Smith, at that time, had worked as a litigation attorney for the company and its predecessor for a decade, and his title was "Senior Counsel."  Yablonka Decl., ¶ 4 Both of these individuals were acting as Sempra's lawyers, providing legal advice on legal proceedings regarding Lot A-3.  *Id.*  Based on the dominant purpose test, communications between Sempra personnel and Mr. Borthwick and/or Mr. Smith concerning those legal proceedings are protected by the attorney-client privilege. *See Costco*, 47 Cal. 4th at 739-740.

In this regard, the vast majority of the documents listed on Sempra's privilege log consist of either (a) communications between Sempra personnel and Sempra's outside litigation counsel for the purpose of obtaining legal advice, or (b) communications between Sempra personnel and in-house Sempra attorneys for the purpose of obtaining legal advice concerning Sempra's dispute with Plaintiff. Yablonka Decl., ¶ 2.  Such documents are indisputably privileged and not subject either to production or to *in camera* review.  *E.g., id.*; *Fay Ave. Props. v. Travelers Prop. & Cas. Co. of Am.*, No.11-2389-GPC, 2014 U.S. Dist. LEXIS 46185, at *30-31 (S.D. Cal. Apr. 2, 2014) (applying California law and holding that where the primary purpose of a relationship is to provide legal advice, "all documents and communications are protected by the privilege without the necessity of having to make individualized showing as to each communication or document").

Fed. R. Civ. P. 26(b)(5) provides that a party claiming privilege over documents must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Cases have interpreted this requirement to mean that a party claiming privilege over documents must produce a privilege log that lists the following information:  the date of each document; the identity of the author and all recipients; a brief description of the document; and the particular privilege being claimed.  *E.g., In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.

24

1992); *Franco-Gonzalez v. Holder*, No. cv-10-2211-DMG, 2013 U.S. Dist. LEXIS 186499, at *24 (C.D. Cal. May 3, 2013 ).

Sempra's privilege log fully complies with these requirements.  Sempra's log clearly identifies: (a) the date of each document over which privilege is being claimed, (b) the author of each such document, (c) the recipients (including cc's) of each document, (d) a description of each document, and (e) the particular privilege being claimed.  Yablonka Decl., ¶ 6, (Ex. B, Sempra's revised privilege logs).  In addition, Sempra has also provided Plaintiff with: (f) a list identifying all of the individuals named in the log.  Yablonka Decl., ¶ 7, Ex. B (10/31/2014 Letter from Haberny to Hulett).  Notably, Sempra has also gone to the burden and expense of separately logging each individual email over which it is claiming privilege, as opposed to aggregating each email chain as a single entry.  Yablonka Decl., ¶ 2.

Plaintiff's motion suggests that the descriptions contained in Sempra's log are somehow insufficient to support a claim of privilege, and identifies a laundry list of log entries that Plaintiff asserts − without any explanation − are defective.  However, even a cursory review of Sempra's log demonstrates that Plaintiff's claim lacks merit, and that Sempra's descriptions of the privileged documents are unusually lengthy and detailed.  Simply by way of example, Plaintiff asserts that each of the following detailed descriptions is somehow inadequate:

"Confidential email and attachment with handwritten attorney notes between attorney and client requesting legal advice and discussing legal strategy about litigation involving [Plaintiff] Sanchez Ritchie."  Log Entry No. 157.

"Confidential email between attorney and client prepared at the direction of counsel for the purposes of providing and requesting legal advice pertaining to proceeding relating to Lot A-3."  Log Entry No. 347.

"Confidential email between attorney and client transmitting research for the purpose of providing legal advice relating to litigation involving [Plaintiff] Sanchez Ritchie."  Log Entry No. 1032.

As Rule 26(b)(5) makes clear, a privilege log need only provide enough information to allow other parties to "assess the claim" and should not reveal any privileged information.  The descriptions quoted above, and many others like them in Sempra's log, clearly satisfy Rule 26(b)(5)'s requirements.  Indeed, descriptions such as these could not be meaningfully expanded without revealing privileged contents of the communications at issue.

Plaintiff also argues at length that the Court should inspect all documents that were sent to, from, or cc'd to Sempra's in-house counsel, and contends that such communications are likely to be unprotected "business" communications.  Plaintiff's conclusory argument ignores the fact that the vast majority of the communications listed on Sempra's log were created **after** the commencement of the dispute between Plaintiff and Sempra in 2006.[11]   Yablonka Decl., ¶ 3. Specifically, in July 2006, after Sempra learned that Plaintiff was claiming an adverse interest in real property located in Mexico that Sempra had already purchased from another party, Sempra filed a criminal complaint against Plaintiff relating to his unauthorized trespass on the property.   Once there was a legal dispute between Plaintiff and Sempra, it is far from surprising or "suspicious" that Sempra employees sought legal advice from Sempra attorneys (both in-house and external counsel) about issues relating to Plaintiff.   In this regard, Plaintiff's citations to cases such as *United States v. Texaco*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) are irrelevant, as those decisions involved parties who were attempting to shield communications with in-house counsel concerning business transactions that pre-dated any dispute with the opponent.

It is also important to emphasize that while *in camera* review of privileged documents is exceedingly rare for any federal court, the California Supreme Court has found that such review is not permitted under California law because the

---

[11]   Most of the documents created prior to 2006 relate to other litigation proceedings in which Sempra was a party.  Yablonka Decl., ¶ 3.

determination of attorney-client privilege turns on the dominant purpose of the relationship – not on review of individual communications. Federal courts have recognized this limitation on *in camera* review of attorney-client communications under California law. *E.g., Swortwood v. Tenedora de Empresas*, Case No. 13-cv-362-BTM, 2014 U.S. Dist. LEXIS 29247, at *28 (S.D. Cal. Mar. 6, 2014) (applying California privilege law to dispute brought in diversity); *Amco Ins. Co. v. Madera Quality Nut LLC*, 1:04-cv-06456-SMS, U.S. Dist. LEXIS 21205, at *29 (E.D. Cal. Apr. 11, 2006) (applying California law to hold that "it is not permissible to require disclosure of privileged material" to adjudicate a crime-fraud challenge to the attorney-client privilege); *State Farm Fire & Casualty Co. v. Superior Court,* 54 Cal. App. 4th 625, 645 (1997) ("[W]e conclude that the Legislature does not contemplate disclosure of privileged material in ruling on the crime/fraud exception.").

Simply put, Sempra's privilege log fully complies with Rule 26(b)(5), and Sempra has demonstrated that the communications at issue are between Sempra personnel and Sempra attorneys for the purpose of obtaining legal advice. The documents at issue are therefore privileged, and Plaintiff's "kitchen sink" motion should be denied.

### 2. Work Product Protection Applies to Documents Created By Or At the Request of Sempra Attorneys After Sempra's Dispute with Plaintiff Arose

In addition to asserting the attorney-client privilege, Sempra has asserted that many of the documents listed on its privilege log are also protected under the work product doctrine. Plaintiff argues that hundreds of documents listed on Sempra's privilege log do not qualify for work product protection because they were purportedly not created in anticipation of litigation. This argument fails because the overwhelming majority of Plaintiff's identified documents (*see* pp. II (A)(1)(a) *supra*) were created *after* a legal dispute had already arisen between Plaintiff and Sempra in 2006, and thus were created *because of existing litigation*.

As Plaintiff concedes, documents created because of existing litigation are protected under the work product rule.  *See* pp. II(A)(1)(b) *supra*.  Moreover, as discussed above, Sempra has provided Plaintiff with detailed descriptions of the documents as to which it is claiming work product protection, and those descriptions demonstrate that the documents at issue were created by or at the request of Sempra attorneys in connection with litigation.  This is unlike the situation in *ChevronTexaco*, where there was no active dispute at the time the documents were created.  Thus, Sempra has more than carried its burden of establishing that work product protection applies.

### 3.      Plaintiff Has Not Carried His Burden of Establishing that the Crime Fraud Exception Applies

Plaintiff bears the burden of establishing that the so-called "crime fraud exception" to the attorney-client privilege applies.  *E.g., UMG Recording, Inc., v. Betelsmann AG (In re Napster Copyright Litigation)*, 479 F.3d 1078, 1088 (9th Cir. 2007); *Swortwood v. Tenedora de Empresas*, Case No. 13-cv-362-BTM, 2014 U.S. Dist. LEXIS 29247, at *37 (S.D. Cal. Mar. 6, 2014).  To carry this burden, Plaintiff must offer *factual evidence* that supports the *reasonable* conclusion that the privileged communications at issue were in furtherance of a crime or fraud. *United States v. Zolin*, 491 U.S. 554, 572, 574-575 (1989); *Swortwood v. Tenedora de Empresas,* U.S. Dist. LEXIS 29247, at *38 (holding that the standard for disclosure of privileged documents under the crime-fraud exception is "preponderance of the evidence" and explaining that "mere assertion of fraud is insufficient"); *State Comp. Insurance Fund v. Superior Court*, 91 Cal. App. 4th 1080, 1090 (2001) (explaining that the proponent must make a "prima facie case" for a court to invoke the crime-fraud exception to privileged documents); *UMG Recording, Inc.*, 479 F.3d at 1095 (explaining that the standards of "prima facie case" and "preponderance of the evidence" in invoking the crime-fraud exception are "not inconsistent").

28

Plaintiff has not come close to meeting his burden here.  Rather, Plaintiff merely cites to his own *allegations* – not to any competent evidence – that Sempra has supposedly engaged in a "pattern of unlawful conduct, including the malicious prosecution of Plaintiff."  (*Supra* at pp. II(A)(1)(C)).  Likewise, Plaintiff also offers the conclusory, unsupported, and completely false assertion that many of the documents listed in Sempra's log "were likely made pursuant to Sempra's ongoing scheme to maliciously prosecute Mr. Ritchie and unlawfully oust him from the Property."  (*Supra* at pp. II(A)(1)(C)).  These generalized and unsupported allegations of wrongdoing are insufficient as a matter of law to trigger the crime fraud exception.  *United States v. Zolin*, 491 U.S. 544, 575 (1989) (requiring competent evidence to meet threshold for *in camera* review); *Swortwood v. Tenedora de Empresas,* U.S. Dist. LEXIS 29247, at *38 ("Mere assertion of fraud is insufficient").  Indeed, if a party could invoke the crime fraud exception simply by *alleging* that the opposing party might have engaged in misconduct, the attorney-client privilege would provide no meaningful protection.  That is not the law.  *E.g., UMG Recording, Inc.*, 479 F.3d at 1095 (reversing district court's finding that the crime fraud exception applied, and holding that "requiring a moving party to establish the existence of the crime-fraud exception by a preponderance of the evidence is consonant with the importance of the attorney-client privilege" and that "where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure"); *Zolin*, 491 U.S. at 490 ("A blanket rule allowing in camera review as a tool for determining the applicability of the crime-fraud exception. . . would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk.").

Plaintiff also incorrectly argues that the Court should apply a relaxed standard when a party is "only" seeking to force an *in camera* review, rather than seeking to immediately compel production of privileged documents.  As the

1    Supreme Court's decision in *Zolin* makes clear, the burden on the party seeking *in*

2    *camera* review is substantial.  *E.g., Zolin*, 491 U.S. at 571.  Contrary to Plaintiff's

3    self-serving assertion that *in camera* review of privileged documents is routine, it

4    is in fact highly unusual for a federal court to review privileged documents *in*

5    *camera* to determine whether privilege has been properly asserted.  *See, e.g.*, *In re*

6    *Grand Jury Investigation*, 974 F.2d at 1073 (upholding district court's refusal to

7    inspect documents *in camera* where the government had insufficient factual

8    evidence to meet the *Zolin* standard); *UMG Recording, Inc.*, 479 F.3d at 1095

9    (reversing district court and holding that *Zolin* standard had not been met).

10   Moreover, as explained above, federal courts applying California law have held

11   that *in camera* review is forbidden.  *E.g., Amco Ins. Co.,* U.S. Dist. LEXIS 21205,

12   at *29 (holding that "it is not permissible to require disclosure of privileged

13   material" to adjudicate a crime-fraud challenge).

14          **4.      Sempra Is Not Asserting An Advice of Counsel Defense**

15          Plaintiff also incorrectly asserts that Sempra has waived privilege over all or

16   most of the documents listed on its privilege log because Sempra has supposedly

17   invoked an advice of counsel defense.  In fact, however, Sempra has not pled or

18   otherwise asserted an advice of counsel defense.   Rather, as the deposition

19   questions and answers Plaintiff cites in his brief make clear, Sempra has truthfully

20   stated in response to questions posed by Plaintiff that Sempra attorneys were

21   involved in certain events relating to this dispute, such as decisions about litigation

22   strategy.   But the fact that attorneys were involved in certain decisions does not

23   equate to an advice of counsel defense, nor does it constitute a waiver of privilege.

24   Nor has Sempra put privileged advice at issue by affirmatively asserting that

25   attorneys approved any particular course of action.  Simply put, the "at issue" cases

26   cited by Plaintiff are inapplicable because Sempra is not using the privilege as a

27   sword, but rather only as a shield.

28

**5.    The Fact that Sempra Voluntarily Produced a Handful of Documents That Had Previously Been Logged as Privileged Does Not Support Plaintiff's Motion**

Plaintiff also argues that Sempra's entire privilege log is suspect, and that all of Sempra's privileged documents must be reviewed by the Court, because Sempra voluntarily agreed to produce a handful of documents that had previously been listed on its log after the parties met and conferred.  This argument is specious. After Sempra produced its privilege log to Plaintiff, Plaintiff identified a handful of the more than 3,000 log entries as to which Plaintiff had particular concerns. Yablonka Decl., ¶ 8.  The parties met and conferred, and Sempra ultimately agreed to produce – either in full, or in redacted format – almost all of the specific documents about which Plaintiff had raised concerns.   Yablonka Decl., ¶ 9. Plaintiff did not raise concerns about any other specific documents listed on Sempra's log during the meet and confer process.  Yablonka Decl., ¶¶ 8-10.

This handful of documents that Sempra produced as a result of the parties' meet and confer constituted substantially less than 1% of the more than 3,000 listed on Sempra's privilege log.  The fact that Sempra initially claimed privilege over a tiny percentage of documents that it later voluntarily determined should be produced (many in redacted format) does not render the rest of Sempra's privilege log suspect.  Nor does it suggest that *in camera* review of the remaining 3,000+ log entries is either necessary or appropriate.  To the contrary, it demonstrates both that Sempra's privilege log is sufficiently detailed to allow Plaintiff to raise specific challenges, and that Plaintiff should have further met and conferred with Sempra rather than filing this motion if Plaintiff had concerns about any other documents listed on Sempra's log.

**6.    Sempra's Conclusion**

Sempra's privilege log fully complies with the requirements of Fed. R. Civ. P. 26(b)(5) and applicable case law.  Sempra's outside counsel has reviewed each

of the documents on Sempra's privilege log, and has determined that Sempra has a good faith basis for asserting that all such documents are either attorney-client privileged communications and/or protected work product.  Yablonka Decl., ¶ 2. In addition, Sempra has met and conferred in good faith with Plaintiff as to Plaintiff's concerns about a handful of specific documents listed on Sempra's log, and has addressed the specific concerns raised by Plaintiff.  Plaintiff's contention that the Court should now nonetheless order Sempra to produce all, or nearly all, of its privileged documents for *in camera* inspection based upon Plaintiff's unsupported assertions is totally without merit, is directly contradicted by applicable case law, and should be rejected.

DATED: December 18, 2014

HULETT HARPER STEWART LLP
KIRK B. HULETT


  *s/Kirk B. Hulett*
KIRK B. HULETT

225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:  (619) 338-1133
Facsimile:  (619) 338-1139
Email:        kbh@hulettharper.com

WILLIAMS & CONNOLLY LLP
PETER J. KAHN (admitted *pro hac vice*)
WILLIAM P. ASHWORTH
 (admitted *pro hac vice*)
MEGHAN FERGUSON
 (admitted *pro hac vice*)
JAMES GILLENWATER
 (admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
Email:        pkahn@wc.com

1

2

3

washworth@wc.com
mferguson@wc.com
jgillenwater@wc.com

4

5

6

7

8

9

THE LAW OFFICES OF LEONARD B.
   SIMON, P.C.
LEONARD B. SIMON; SBN: 58310
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (619) 338-4549
Facsimile:   (619) 231-7423
Email:        lens@rgrdlaw.com

10

11

Attorneys for Plaintiff Ramon Eugenio
Sanchez Ritchie

12

13

14

DATED: December 18, 2014        IRELL & MANELLA LLP
JOHN C. HUESTON
MARSHALL A. CAMP
SANDRA L. HABERNY

15

16

17

 s/Katie M. Yablonka
KATIE M. YABLONKA

18

19

20

840 Newport Center Drive, Suite 400
Newport Beach, California  92660-6324
Telephone:  (949) 760-0991
Facsimile:   (949) 760-5200

21

22

Attorneys for Defendant SEMPRA
ENERGY

23

24

25

26

27

28