1  HULETT HARPER STEWART LLP
2  KIRK B. HULETT, SBN: 110726
   DENNIS STEWART, SBN: 99152
3  225 Broadway, Suite 1350
4  San Diego, CA  92101
   Telephone:   (619) 338-1133
5  Facsimile:   (619) 338-1139
6
   WILLIAMS & CONNOLLY LLP
7  PETER J. KAHN
8  (admitted *pro hac vice*)
   WILLIAM P. ASHWORTH
9  (admitted *pro hac vice*)
10 MEGHAN FERGUSON
   (admitted *pro hac vice*)
11 JAMES GILLENWATER
12 (admitted *pro hac vice*)
   725 Twelfth Street, N.W.
13 Washington, DC  20005
14 Telephone:   (202) 434-5000
   Facsimile:   (202) 434-5029
15
16 Attorneys for Plaintiff Ramon Eugenio
   Sanchez Ritchie
17

HUESTON HENNIGAN LLP
JOHN C. HUESTON, SBN: 164921
MARSHALL A. CAMP, SBN: 231389
LEE LINDERMAN, SBN: 280743
523 West 6th Street, Suite 400
Los Angeles, CA  90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Defendant Sempra Energy

18              **IN THE UNITED STATES DISTRICT COURT**

19              **SOUTHERN DISTRICT OF CALIFORNIA**

20 RAMON EUGENIO SANCHEZ
21 RITCHIE,
22              Plaintiff,
23
24 v.
25 SEMPRA ENERGY, a California
26 Corporation,
27              Defendant.
28

CASE NO. 10CV1513-CAB(KSC)

**SUPPLEMENTAL JOINT MOTION
REGARDING DISCOVERY
DISPUTE**

JUDGE:   Magistrate Karen S. Crawford
CTRM:    10th Floor (Annex)

# I.   <u>JOINT MOTION</u>

## A.   Plaintiff's Introductory Statement

The parties previously submitted a Joint Motion regarding Plaintiff's motion to compel the production of certain additional documents and supplementation of interrogatory responses.  [Dkt. No. 135].  By Order dated March 30, 2015, the Court directed the parties to meet and confer further and submit a supplemental pleading in the event the dispute could not be otherwise resolved consistent with the Court's stated concerns and observations.  The parties have met and conferred, and despite the offers of compromise by Plaintiff's counsel, as outlined below Defendant Sempra is unwilling to supplement its document production or interrogatory response.  Of the 18 document requests made by Plaintiff, he has narrowed his motion to compel a further production to just five requests.  They are Document Request Nos. 2, 5, 10, 13, and 14.

Plaintiff also moves to compel a supplemental answer to Interrogatory No. 4.

Set forth below are the requests, Sempra's responses and Plaintiff's offered temporal and scope compromises and reasons why additional documents are required.

## B.   Sempra's Introductory Statement

This nearly five year-old case is finally approaching a conclusion: Fact and expert discovery ended months ago. The parties produced more than 100,000 pages of documents and conducted numerous depositions of fact witnesses.  Expert discovery has likewise ended—numerous reports were prepared and exchanged, and five expert depositions were held. Summary judgment motions are due to be filed by June 1, 2015, and a final pretrial conference is scheduled for May 20, 2015. Plaintiff nevertheless seeks to delay this case even longer by bringing yet another meritless motion to compel.

In his latest motion, Plaintiff seeks (for the third time) to compel further

responses to various requests for production and interrogatories regarding information post-dating October 11, 2007. This dilatory motion is based on an incorrect view of the District Court's prior order, a mistaken understanding of the law of malicious prosecution (Plaintiff's sole remaining claim), and an apparent lack of knowledge regarding what has already been produced by Sempra during this five year-old case.

In its March 30, 2015 Order, this Court observed that the document requests and interrogatories at issue are "all overly broad and unduly burdensome on their face." [Doc. No. 208 at 6.] To the extent Plaintiff insisted on bringing a third motion to compel regarding these requests, the Court directed that Plaintiff must "explain the potential relevance" of the "very broad range of discovery" he seeks "on a request-by-request basis." [Doc. No. 208 at 5.] Plaintiff has failed to do so, and the Court should deny his motion.

The crux of Plaintiff's argument is that the additional discovery he seeks relates to a "second" alleged malicious prosecution of Plaintiff by Mexican authorities that began in April 2009. But the District Court already has ruled that this "second" prosecution was terminated on statute of limitations grounds, and thus that it cannot form the basis of a "second" malicious prosecution claim. [Doc. No. 73 at 1–2]. The District Court's ruling constitutes "law of the case," and Plaintiff offers no reason that it can or should be disregarded by this Court.

Plaintiff also misunderstands the type of evidence that may be relevant to a malicious prosecution claim. To prove such a claim, Plaintiff must show that the alleged prosecution was (1) ***commenced*** by or at the direction of Sempra, (2) ***initiated*** without probable cause, and (3) ***brought*** with malice. The underlying Mexican criminal prosecution at issue in this case was commenced, initiated, and brought in 2006. The cutoff date Sempra employed in responding to Plaintiff's overbroad requests, October 11, 2007, is the date on which that action was ***terminated***. This cutoff was thus more than sufficient to cover the universe of

2

potentially relevant documents and information.

Accordingly, and for the additional reasons explained below, the Court should deny Plaintiff's motion.

## II.   SPECIFIC REQUESTS AT ISSUE

### REQUEST NO. 2:

All documents that contain any information relating to any fact referenced in the SAC.

### RESPONSE TO REQUEST NO. 2:

Defendant Sempra incorporates herein by reference all of the general responses and continuing objections set forth above. Sempra further objects to this request for production as vague, overbroad, and unduly burdensome, particularly as to the term "**any** information relating to **any** fact," (emphasis added).  As phrased, the request is so vague and broad that compliance is impossible. In addition, many of the "facts" alleged in the SAC are incorrect, false, or otherwise inaccurate.

Sempra further objects to this request as overly broad and unduly burdensome to the extent it seeks the production of documents beyond the scope of Request number 3, which requests "[a]ll documents relating to the claim for malicious prosecution alleged in the SAC," including because the request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  That is particularly true to the extent it seeks information related to claims that have been dismissed from the SAC and not related to the sole remaining claim for malicious prosecution in the SAC. Sempra further objects to the requests on the ground that they are not temporally limited in any way. Sempra will interpret the requests as seeking documents that came into existence before October 11, 2007, as documents created after that date are not relevant nor reasonably calculated to lead to admissible evidence. Sempra also objects to this request for production as unduly burdensome, particularly to the extent it seeks information that is more easily ascertainable by Sanchez Ritchie than by Sempra, or information that is publicly available or equally accessible to Sanchez Ritchie. Sempra further objects to this request to the extent that it calls for the production of documents protected by the attorney-client privilege, attorney work product doctrine, joint defense or common interest doctrine, or any other applicable privilege or protection.

3

1
2
3
4

> Subject to, and without waiving, the foregoing general and specific objections, *Sempra will produce relevant, non-privileged documents that relate to Sanchez Ritchie's claim for malicious prosecution alleged in the SAC to the extent such documents are in Sempra's possession, custody or control and are located after a reasonable search.*

5    **Plaintiff's Statement Regarding Request No. 2**

6    As the Court observed, in its March 30, 2015 Order, Request No. 2 is broad.
7    As a consequence, Plaintiff has offered to accept Sempra's limitation of the scope
8    of production as it offered above, except with one caveat – that the production
9    include documents which post-date October 2007.  That is, the documents Plaintiff
10   asks Sempra to produce include only those types of documents it has already
11   agreed to produce, but extended from *its* proposed temporal date limit of
12   October 11, 2007 to June 2009.

13   In other words, Sempra should produce, as it has already agreed,
14   "documents that relate to Sanchez Ritchie's claim for malicious prosecution
15   alleged in the SAC . . . ."  However, the SAC specifically pleads that the malicious
16   prosecution claim rises not only from a July 2006 Sempra complaint, but also the
17   malicious and false complaint Sempra filed against Ritchie in April 2009, the
18   documents agreed upon by Sempra in its response to the request should be
19   produced up through at least the filing of the second criminal prosecution initiated
20   by Sempra in April 2009.  Plaintiff proposed June 2009 as the temporal cut-off
21   date to capture any documents discussing Sempra's Complaint filed in April 2009.

22   Despite Plaintiff's offer of compromise to limit the request to document types
23   to those Sempra has already agreed to produce, Sempra still refuses to produce
24   documents and information post-dating October 11, 2007 even though the SAC
25   plainly and repeatedly alleges that Sempra is liable for malicious prosecution for the
26   second criminal complaint initiated in April 2009.  *See* SAC ¶¶ 31-32, 76 and 78.

27   Sempra's relevance objection to producing documents and providing
28   information post-dating October 11, 2007 is wholly unfounded for multiple

4

reasons.

First, Plaintiff alleges that Sempra instigated *two* malicious prosecutions in Mexico, the second of which commenced in April 2009 and which did not conclude until 2010. *See* Second Amended Complaint ("SAC") [Dkt. No. 34], ¶¶ 31-32, 76, and 78.[1] Discovery post-dating October 11, 2007 is clearly justified

---

[1]   Below are the relevant paragraphs of the SAC which set forth Plaintiff's allegations relating to the Malicious Prosecution claim as they relate to the April 2009 time frame:

> Later, in 2009, based on Sempra Energy's and its agent's further abuse of process and malicious prosecution of Plaintiff and knowingly false assertions and material omissions, the Attorney General instituted a second criminal prosecution against Plaintiff relating to Sempra's frivolous claims of possession of the property. Sempra Energy and its co-conspirators again maliciously presented knowingly false evidence purporting to establish that Plaintiff was not the lawful possessor of the Property. The trial court rejected these claims and dismissed the charges in Plaintiff's favor. Sempra caused an appeal of the ruling.

SAC ¶ 31.

> Thereafter, on March 10, 2010, the Superior Court for the Tenth District of Baja California, Mexico, affirmed the trial court's dismissal of charges and again found as had the Court in October 2007, that Plaintiff was the legal possessor of the Property and absolved him of any criminal liability relating to ECA's allegation of dispossession and eviction. The Court re-iterated and again found that Plaintiff is the owner and had been in lawful possession of the Property since at least 1983 and that Sempra Energy, Sempra Energy México, and ECA knew as early as July 18, 2001 that Plaintiff, and not Peña, Gutierrez or Castañon, was in lawful possession of the Property. It further ordered that possession of the Property be restored to Plaintiff. As a result of Sempra Energy's failure to comply with the court's order, on May 24, 2010 the court ordered that Plaintiff's Property be restored to him within 24 hours of the issuance of the Order. The Mexican authorities executed the Order on May 25, 2010, and thereafter restored possession of the Property to Plaintiff. However, because there now exists an LNG Plant and dangerous natural gas pipeline within walking distance of Plaintiff's Property, Plaintiff no longer has quiet use and enjoyment of his Property.

SAC ¶ 32.

> Thereafter, in April 2009, having just been told by the Court of Appeals what Sempra had earlier been told by the trial court in October 2007 that Plaintiff as the rightful possessor and owner, Sempra initiated a second and equally frivolous criminal complaint against Plaintiff arising from the same earlier asserted, but rejected, alleged crimes of trespass. These already rejected allegations were frivolous and malicious. Sempra's malicious intent arose

1  and necessary to support of Mr. Ritchie's claim arising from Sempra's second

2  malicious prosecution action initiated in 2009.

3  Sempra claims that the second malicious prosecution cannot form the basis

4  for a claim because it did not result in a favorable termination on the merits.

5  Sempra is wrong.   The second malicious prosecution was dismissed by the

6  Mexican Court in part because it violated double jeopardy principles.  *See* Pl.'s

7  Mem. of Points and Authorities in Opp. to Def.'s Mot. for Judgment on the

8  Pleadings [Dkt. No. 124], at 4.  *See* Mexican Court Order May 12, 2010.

9  (Attached as Exhibit A to Hulett Decl.)  Under Mexican or California law, a

10  dismissal based even in part on double jeopardy grounds constitutes a resolution on

11  the merits.  *See* Decl. of David Lopez [Dkt. No. 124-1] at 7 (attached without

12  exhibits as Exhibit B to Hulett Decl.); *Jackson v. Beckham*, 217 Cal. App. 2d 264,

13  270 (1963) ("An element in determining whether the complaint is dismissed on its

14  merits would be whether or not a second complaint could be issued on the same

15  charges, or if the defendant could, in such event, claim the defense of double

16  jeopardy.").

17  Even if one does not read the Court's August 29, 2012 [Dkt. No. 73] order to

---

18  from its knowledge that it needed to neutralize Plaintiff and his claims of
19  possession and ownership in order to insure the timely opening of its
    expected to be hugely profitable operation of its LNG Plant.   Delay,
20  deception and confusion was a strategy employed by Sempra in the belief
    that the longer the LNG Plant operated, thus creating jobs and money for the
21  local economy, the more political pressure it would be able to exert to insure
    continued operations with or without Plaintiff's Property.

22  SAC ¶ 76.

23  As Sempra expected when it initiated the prosecution of Plaintiff in 2006 and
    the renewed prosecution of Plaintiff in April 2009, there would be long
24  delays before the courts would be able to, as Sempra knew would happen,
    exonerated Plaintiff. Indeed, despite an early and predictable loss at the trial
25  court level by Sempra in October 2007, the subsequent and frivolous appeal
26  Sempra caused to be filed was rejected on March 13, 2009. Despite Sempra
    having been told by the trial court in October 2007 that Plaintiff and not
27  Sempra was the person entitled to possession, Plaintiff did not receive
    possession back from Sempra until May 2010.

28  SAC ¶ 78.

6

have decided the issue of whether the second malicious prosecution was favorably terminated on the merits, Sempra cannot preclude discovery of information and documents on the ground that such discovery does not conform to its position on a disputed legal issue that has never been validated by the Court.   Relevance for purposes of discovery is defined much more broadly than that.  *See Millenium Labs., Inc. v. Allied World Assurance Co.,* No. 12cv2280-H(KSC), 2014 WL 197744, at *1 (S.D. Cal. Jan. 15, 2014) ("There is no requirement that the information sought relate directly to a particular issue in the case. Rather, relevance encompasses any matter 'that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978)).

The documents sought are relevant to the probable cause element of Mr. Ritchie's malicious prosecution claim.   "'When, as here, the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime.'"  *Greene* v. *Bank of Am.,* 216 Cal. App. 4th 454, 465 (2013) (citation omitted).

Moreover, Plaintiff has already identified specific documents post-dating October 11, 2007 that are relevant to his malicious prosecution claim and responsive to his discovery requests.  For example, Sempra documents obtained by Plaintiff and cited in his Opposition to Defendant's Rule 11 Motion for Sanctions, [Dkt. No. 47], post-date October 11, 2007 and explain in detail why Sempra needed and still needs Lot A-3 for its LNG Facility. *See, e.g.,* Dkt. No. 47 at 7.  As these documents make clear, Sempra employees continued to generate communications clearly relevant to Mr. Ritchie's malicious prosecution claim well after the date cut-off Sempra seeks to impose. Sempra's proposed temporal limitation would exclude these documents (and presumably many others along the same lines).

7

Fourth, documents post-dating October 11, 2007 are relevant to the appeals and *amparos* from the October 11, 2007 order, which were not finally resolved until 2010.  SAC ¶¶ 2, 31-32.  For the reasons described in Plaintiffs Opposition to Sempra's Motion for Judgment on the Pleadings and the Declaration of Plaintiff's Expert David Lopez in support, evidence related to the appeals and *amparos* from the October 11, 2007 order is clearly relevant to Mr. Ritchie's malicious prosecution claim.  *See* Pl.'s Mem. of Points and Authorities in Opp. to Def.'s Mot. for Judgment on the Pleadings [Dkt. No. 124]; Decl. of David Lopez [Dkt. No. 124-1].  (Attached as Exhibits A and B to Hulett Decl.)  The SAC further charges that Sempra made intentional misstatements to the Mexican authorities and courts in its effort to overturn the 2007 Order after October 11, 2007.  SAC ¶ 30.  Finally, Sempra has moved to dismiss the claims by three separate motions.  None of the malicious prosecution claim, including the one arising from the April 2009 prosecution has been dismissed.

## Sempra's Statement Regarding Request No. 2

Plaintiff's reliance on what he alleged in the SAC and other pleadings regarding the April 2009 "second" prosecution is legally irrelevant and a red herring. On Sempra's prior motion to dismiss, the District Court took judicial notice of the May 12, 2010 Mexican court order, carefully considered its substantive content, and held that the April 2009 prosecution was terminated "***because the period granted by law to do so had expired***." [Doc. No. 73 at 1–2 (emphasis added).] Although the District Court permitted Plaintiff's malicious prosecution claim to proceed based on his allegations relating to the *first* criminal proceeding, it unequivocally ruled as to the *second* proceeding that "the Mexican courts held that the time to prosecute Plaintiff based on additional evidence had run and dismissed the criminal case in its entirety." *Id.* at 2. As a matter of law, a dismissal based on a lapse of time is not a "favorable termination" for purposes of malicious prosecution. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 342

8

1  (2004).

2        The District Court's ruling is now the "law of the case." The law of the case

3  doctrine is "designed to ensure judicial consistency and to prevent the

4  reconsideration, during the course of a single continuous lawsuit, of those

5  decisions which are intended to put a particular matter to rest." *Pit River Home and*

6  *Agr. Co-op. Ass'n v. U.S.*, 30 F.3d 1088, 1097 (9th Cir. 1994). "Under the doctrine,

7  a court is generally precluded from reconsidering an issue previously decided by

8  the same court, or a higher court in the identical case." *Milgard Tempering, Inc. v.*

9  *Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). It applies to decisions that

10  have been decided "explicitly or by necessary implication." *Id.* (citation omitted).

11  A court should not reconsider issues it has already decided unless (1) the first

12  decision was clearly erroneous and would result in a manifest injustice; (2) an

13  intervening change in the law has occurred; or (3) the evidence on remand was

14  substantially different. *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.

15  1989).

16        Here, the District Court's order could not have been more explicit: the April

17  2009 prosecution was terminated "because the period granted by law to do so had

18  expired." [Doc. No. 73 at 2.] Plaintiff has not even attempted to justify why this

19  Court should (or even could) reconsider that ruling. Nor could he: there has been

20  no intervening change in law, this case is not on remand, and the District Court's

21  decision was not "clearly erroneous." Indeed, the Mexican court orders confirm the

22  District Court's holding: the May 12, 2010 Mexican court order held that "by April

23  22 two thousand nine . . . the 6-month period had already expired, so the legal

24  period for the technical body of accusation to promote efficien[c]y had elapsed,

25  which denotes its lateness, and therefore the appropriateness of the dismissal of the

26  case for the defendant." [Doc. No. 65-19 at 163–64.] And on May 24, 2010,

27  pursuant to the May 12, 2010 order, the Criminal Court in Mexico confirmed that

28  the Attorney General's request to prosecute was "presented in an untimely manner,

because the term of six months . . . ha[d] already elapsed." [Doc. No. 65-21 at 15.] The fact that Plaintiff previously argued (and once again argues herein) that the April 2009 prosecution was dismissed on Double Jeopardy grounds is irrelevant in light of the District Court's holding, and Plaintiff's allegations regarding the April 2009 prosecution need not be accepted as true because they are "inconsistent with the Court's prior findings in this case." *Hays v. Transp. Sec. Admin.*, No. CV 11-3198-DMG, 2014 WL 1512252, at *1 n.1 (C.D. Cal. Mar. 11, 2014). Accordingly, to the extent Plaintiff seeks documents and information related to this "second" prosecution from April 2009, the Court should deny the Joint Motion.

Even if the District Court's order had not already established that documents post-dating October 11, 2007 are not relevant, Plaintiff has otherwise failed to establish that they are. He argues they are relevant to the "probable cause" element of his malicious prosecution claim, yet fails to explain ***why*** such documents would be relevant or reasonably calculated to lead to the discovery of admissible evidence. Nor could he, as documents created after the first prosecution terminated in Plaintiff's favor would have nothing to do with an action allegedly (1) commenced by or at the direction of Sempra, (2) brought without probable cause, and (3) initiated with malice in 2006. *E.g. Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740 (2007); SAC ¶ 73. The "probable cause" element focuses on facts "known to the defendant ***at the time the underlying action was filed***." *Walsh v. Bronson*, 200 Cal. App. 3d 259, 264 (1988) (emphasis added). Probable cause has nothing to do with documents created after the proceeding commenced, let alone terminated.

Plaintiff next asserts that he has "already identified" documents postdating October 11, 2007, that he contends are relevant to his malicious prosecution claim—specifically, documents that purport to show that Sempra "needed" Lot A-3 to operate the LNG Terminal. Once again, Plaintiff does not attempt to explain ***why*** those documents, if they exist, would be relevant to his claim. And, Plaintiff is

incorrect on the facts.[2] First, the e-mail he cites does not say Lot A-3 was needed to build or operate the LNG terminal; it addressed the reasons for purchasing 10 different lots, some of which were for 'potential expansion' of the facility, and notes that "control of the land '. . . will help avoid any potential issues that could arise from the existing land owners.'" [Doc. No. 47 at 7, Ex. A thereto.] The witness who wrote the email referenced in Plaintiff's portion of the joint motion— Mark Fisher, a CPA who worked in accounting and was not involved in the decisions to purchase property—testified that he did not know why Lot A-3 was purchased. [Declaration of Lee Linderman ("Linderman Decl.") ¶ 5 Ex. D (Fisher depo.) at 17:11-22]. The person actually responsible for signing off on land purchases, Sempra LNG CEO Darcel Hulse, testified that ECA had purchased all necessary land to operate the LNG Terminal in 2003—years before ECA purchased Lot A-3. [*Id.* ¶ 4 Ex. C (Hulse depo.) at 13:3-5, 14:21-23, 15:5-8.] Likewise, Sempra's 30(b)(6) witness testified that Lot A-3 was not needed to obtain any environmental or operational permits for the LNG Terminal. [*Id.* ¶ 3 Ex. B (30(b)(6) depo.) at 124:14-16, 125:2-7, 268:23–269:1.] This testimony is consistent with the permits themselves, which were issued by June 2005, more than six months before ECA purchased Lot A-3. [*Id.* at 121:17-21, 124:14-23, 125:4-7.][3]

Finally, Plaintiff argues that documents post-dating October 11, 2007 are relevant to various *amparos* and appeals from the October 2007 ruling that were not resolved until 2010. But by asking for documents only through the commencement of the second prosecution in mid-2009, Plaintiff implicitly acknowledges that appeals from the October 2007 ruling are ***not*** relevant. Indeed,

---

[2] Although this is a discovery motion, Sempra cites to certain deposition testimony and documents produced in discovery to help the Court understand misleading and outright false statements in Plaintiff's portion of the Joint Motion.

[3] Plaintiff has acknowledged in a sworn Mexican pleading that Lot A-3 was ***not*** part of any "setback" requirements despite his false allegations to the contrary. [Doc. No. 35-7 at 6, 23–24.]

11

they are not. First, Plaintiff has previously admitted that the July 10, 2008 ruling resulting from the Attorney General's appeal of the October 2007 order was **not** favorable to him. [*See, e.g.*, Doc. No. 124 at 3 ("[O]n July 10, 2008, a three-judge panel . . . renewed the incarceration order [against Plaintiff].").] Second, Plaintiff claims Sempra made certain misstatements in connection with his *amparo* relating to the October 2007 ruling, but he never explains how any such statements would be relevant to a case that was commenced, initiated, and brought in 2006. And, Plaintiff has not established and cannot establish that Sempra had any involvement in the *amparo* that **Plaintiff** filed against the Mexican courts.

This Court held that it would not compel Sempra "to provide further responses to any and all of plaintiff's overly broad discovery requests when [Sempra] has already made a reasonable attempt to provide a substantive response to each request, along with an explanation as to why it believes the scope of documents and information provided are appropriate under the circumstances." [Doc. No. 208 at 6.] For the third time, Plaintiff has failed to establish relevance or reasonableness for the documents he seeks. The Court should deny the Joint Motion as to this request.

**REQUEST NO. 5:**

All documents relating to any efforts at surveillance of Mr. Ritchie, his family, or others involved in the prosecution of Mr. Ritchie's lawsuit in the United States or in defending Mr. Ritchie against the prosecution in Mexico, including any of Mr. Ritchie's attorneys, and Mr. Jose Susumo Azano Matsura and his family or his attorneys.

**RESPONSE TO REQUEST NO. 5:**

Defendant Sempra incorporates herein by reference all of the general responses and continuing objections set forth above. Sempra objects that the request is vague and ambiguous to the extent it refers to unidentified "others involved in the prosecution of Mr. Ritchie's lawsuit in the United States or in defending Mr. Ritchie against the prosecution in Mexico." Sempra also objects to this request as vague and ambiguous, particularly in its use of the term "efforts at surveillance." Sempra further objects to this request to the extent that

12

it calls for the production of documents protected by the attorney-client privilege, attorney work product doctrine, joint defense or common interest doctrine, or any other applicable privilege or protection. Sempra further objects to the requests on the ground that they are not temporally limited in any way. Sempra will interpret the requests as seeking documents that came into existence before October 11, 2007, as documents created after that date are not relevant nor reasonably calculated to lead to admissible evidence. Sempra additionally objects to this request as overly broad and unduly burdensome to the extent it seeks documents concerning this lawsuit, as such documents are not relevant to any claim or defense in the case.

Subject to, and without waiving the foregoing general and specific objections, Sempra responds as follows:

*Sempra will produce relevant, non-privileged documents regarding any observations of Sanchez Ritchie or others who appeared to be acting on his behalf before or during the proceedings on which the alleged malicious prosecution claim is based to the extent such documents exist and are in Sempra's possession, custody or control and are located after a reasonable search.*

**Plaintiff's Statement Regarding Request No. 5**

Sempra has re-written Plaintiff's document request in a manner suitable to Plaintiff.  Sempra concedes the relevance of the requested documents, except for the limit as to the October 2007 proposed cut-off.  Plaintiff seeks only to have Sempra produce any such documents that are dated between October 2007 and May 2010.  May 2010 was when Sempra was forced by the Mexican courts to return possession to Mr. Ritchie after he had been excluded from possession by Sempra since September 2006.  SAC ¶¶ 2, 31-32.

The surveillance of Mr. Ritchie and what Sempra learned about Mr. Ritchie is relevant to Sempra's knowledge of Mr. Ritchie, its harassment and intimidation of Mr. Ritchie and Sempra's alleged use of Mexican officials in furtherance of its prosecution of Mr. Ritchie.  *See* SAC ¶ 29 – specific allegation that in April-June 2008 Sempra hired Private Investigator Jaime Niebla to chase, harass, and

13

1  intimidate Plaintiff on Sempra's behalf.

2  **Sempra's Statement Regarding Request No. 5**

3  As established above, the April 2009 prosecution terminated on statute of

4  limitations grounds and therefore cannot form the basis of Plaintiff's malicious

5  prosecution claim as a matter of law. Once again, Plaintiff fails to explain how

6  documents regarding alleged surveillance conducted after the first prosecution

7  terminated would be relevant to an action allegedly (1) **commenced** by or at the

8  direction of Sempra, (2) **brought** without probable cause, and (3) **initiated** with

9  malice in 2006 and terminated in October 2007. *E.g. Mittlesteadt*, 41 Cal. 4th at

10  740. Allegations of "harassment" and "intimidation" postdating commencement

11  (and even termination) of the prosecution bear no relevance to these questions.

12  Plaintiff has failed to meet his burden of establishing relevance of this category of

13  documents as required by the Court's Order, and the Joint Motion should be

14  denied. [Doc. No. 208 at 6.]

15  **REQUEST NO. 10**:

16  Copies of any briefs, filings, motions, memoranda, pleadings, orders,
   or judgments in any judicial, administrative, regulatory,

17  environmental, municipal, or other similar process or proceeding in

18  Mexico relating to the Property.

19  **RESPONSE TO REQUEST NO. 10**:

20  Defendant Sempra incorporates herein by reference all of the general
   responses and continuing objections set forth above. Sempra also

21  objects to this request as duplicative and unduly burdensome to the

22  extent that it seeks documents that fall within the scope of other
   requests. Sempra objects to this request as vague and ambiguous. For

23  example, the terms "Property" and "process or proceeding in Mexico
   relating to the Property" are vague and ambiguous. Sempra objects to

24  this request as overly broad, including as to the term "any judicial

25  administrative, regulatory, environmental, municipal, or other similar
   process or proceeding" without limitation as to time, relevance, or

26  burden. Sempra further objects to this request to the extent that it

27  seeks documents that are equally accessible to Sanchez Ritchie.
   Sempra further objects to this request to the extent that it calls for the

28

14

production of documents protected by the attorney-client privilege, attorney work product doctrine, joint defense or common interest doctrine, or any other applicable privilege or protection. Sempra further objects to the requests on the ground that they are not temporally limited in any way. Sempra will interpret the requests as seeking documents that came into existence before October 11, 2007, as documents created after that date are not relevant nor reasonably calculated to lead to admissible evidence. Sempra further objects to this request to the extent it seeks additional documents or information that are not relevant to any claim or defense in this action, nor reasonably likely to lead to the discovery of information relevant to any claim or defense in this action, particularly to the extent it seeks documents that do not relate to Sanchez Ritchie's cause of action for malicious prosecution.

Subject to, and without waiving the foregoing general and specific objections, Sempra responds as follows:

Sempra *will produce relevant, non-privileged documents relating to Lot A-3 or to the proceedings underlying Sanchez Ritchie's cause of action for malicious prosecution, to the extent they are in Sempra's possession, custody, or control, and are located after a reasonable search.*

**Plaintiff's Statement Regarding Request No. 10**

Again, Plaintiff is satisfied with Sempra's statement as to what the proposed scope of production of documents will be in response to Document Request No. 10, so long as it is expanded to include documents of the sort that, as Sempra describes, "relates" to "Lot A-3 or to the proceedings underlying cause of action for malicious prosecution," and so long as it produces those type of documents are dated between October 2007 and May 2010.

Plaintiff has limited the scope of the request to only those created before May 2010, which is the end of the period during which the parties were actively pursuing and defending the Ritchie criminal charges. It was in May 2010 when the courts of Mexico again found Mr. Ritchie not guilty and again ordered the return of his property to Mr. Ritchie, which was wrongly then occupied by Sempra.

15

1    **Sempra's Statement Regarding Request No. 10**

2        Given that the April 2009 prosecution cannot form the basis of Plaintiff's

3    claim, Sempra has already produced all "relevant, non-privileged documents

4    relating to Lot A-3 or to the proceedings underlying Sanchez Ritchie's cause of

5    action for malicious prosecution." Plaintiff's Joint Motion as to this request is

6    therefore moot and should be denied.

7        To the extent Plaintiff argues that documents through May 2010 are relevant

8    because that is when the property was allegedly returned to him, the District Court

9    and this Court have repeatedly held that "[t]his action is not about determining

10   plaintiff's property rights." [Doc. No. 73 at 3; *see also* Doc. No. 62 at 8–15, 20;

11   Doc. No. 155 at 14.] The May 2010 order and related civil proceedings have

12   nothing to do with the underlying criminal *despojo* prosecution.

13       In addition, Plaintiff fails to explain why Sempra should be compelled to

14   produce documents regarding legal proceedings which Plaintiff either possesses or

15   to which he has equal access. *E.g. Gray v. Virga*, No. 2:12–cv–3006 KJM, 2015

16   WL 1509082, at *8 (E.D. Cal. Apr. 1, 2015) ("Since plaintiff has access to [the

17   documents sought], the court will not require defendants to produce those files.").

18   Requiring Sempra to produce documents that Plaintiff has equal access to is

19   unreasonable and unnecessarily burdensome.

20       Finally and fundamentally, Plaintiff once again fails to explain why court

21   filings or even court orders post-dating October 11, 2007 would be relevant to his

22   claim that was commenced, initiated, and brought in 2006, let alone those relating

23   to "any . . . administrative, regulatory, environmental, municipal, or other similar

24   process or proceeding in Mexico related to the Property."

25       **REQUEST NO. 13**:

26       All documents relating to any communications between Sempra or
27       ECA on the one hand, and any employees or agents of the Office of
28       the Attorney General of the State of Baja California relating to Mr.

Ritchie or to the Property.

**RESPONSE TO REQUEST NO. 13**:

Defendant Sempra incorporates herein by reference all of the general responses and continuing objections set forth above. Sempra further objects to this request for production as unduly burdensome, particularly to the extent it seeks documents and information that are contained in public records and/or equally available to Sanchez Ritchie.  Sempra further objects to the requests on the ground that they are not temporally limited in any way. Sempra will interpret the requests as seeking documents that came into existence before October 11, 2007, as documents created after that date are not relevant nor reasonably calculated to lead to admissible evidence. Sempra also objects to this request for production to the extent it seeks additional documents or information that are not relevant to any claim or defense in this action, nor reasonably likely to lead to the discovery of information relevant to any claim or defense in this action. Sempra further objects that this request is vague and ambiguous in its use of the term "Property." Sempra further objects to this request for production as overbroad and unduly burdensome, particularly to the extent it seeks documents relating to "**any** communications between Sempra or ECA on the one hand, and **any** employees or agents of the Office of the Attorney General of the State of Baja California relating to Mr. Ritchie or to the Property." (emphasis added). As phrased, the request for production is so vague and broad that compliance is impossible.

Subject to, and without waiving the foregoing general and specific objections, Sempra responds as follows:

Sempra *will produce relevant, non-privileged documents relating to communications between Sempra or ECA and employees or agents of the Office of the Attorney General of the State of Baja California relating to proceedings underlying Sanchez Ritchie's malicious prosecution claim or relating to Lot A-3 as it pertains to such claim, to the extent such documents are in Sempra's possession, custody or control and are located after a reasonable search.*

**Plaintiff's Statement Regarding Request No. 13**

Plaintiff has agreed to limit this Request as expressed by Sempra in its

17

response, except that Sempra should produce these documents to the extent any exist which post-date October 2007.  Plaintiff has agreed to limit the time frame to May 2010, since that was when Mr. Ritchie was again exonerated and given back his land.

These documents are relevant because they will show the extent of influence and *ex parte* communications Sempra had with Mexican investigators and prosecutors which is relevant to Plaintiff's allegations that the criminal investigation and prosecution was corrupted and unlawfully influenced through such communications.  *See* SAC ¶ 82.

To date, there has been substantial evidence of such corruption and unlawful influence in connection with the first prosecution in 2006-2007, but Sempra refuses to provide any such evidence regarding the 2009 prosecution communications.

**Sempra's Statement Regarding Request No. 13**

Plaintiff claims there has been "substantial evidence" of corruption and unlawful influence in connection with the 2006 prosecution produced during discovery. Plaintiff notably ***identifies no support*** for this inflammatory assertion, notwithstanding that he has had ample discovery, and in fact concedes that Sempra has fully responded to this request in connection with the 2006 prosecution. Indeed no such evidence exists. The Court should not credit Plaintiff's unsubstantiated and false statement.

Moreover, Plaintiff concedes that his demand now is for documents relating to the alleged "second" prosecution. However, that proceeding is not relevant to Plaintiff's claim as a matter of law, and the Court should deny the Joint Motion as to this request.

Finally, Plaintiff questioned several of Sempra's witnesses about any and all contacts with Mexican officials without any temporal limitation. Sempra's witnesses testified at length regarding communications with the Attorney General's

18

office of Baja California and with other governmental officials. [Linderman Decl. ¶ 2, Ex. A (Rios depo.) at 42:22–43:19, 87:22–96:3, 121:4-13, 122:25–125:7, 211:16–213:17; *id.* ¶ 3, Ex. B (30(b)(6) depo.) at 139:5–148:11.] At no point did Sempra's counsel instruct any witness not to respond based on a date limitation, nor did any witness refuse to respond on that basis. [*E.g. id.* ¶ 3, Ex. B (30(b)(6) depo.) at 150:9–152:10.] Despite having questioned numerous witnesses about this subject, Plaintiff cannot identify any basis upon which communications with Mexican officials post-dating October 2007 could be relevant to the sole claim remaining in this case. Plaintiff therefore has not met his burden of establishing relevance and his Joint Motion should be denied.

**REQUEST NO. 14**:

All documents relating to any communications between Sempra or ECA on the one hand, and any employee or agent of the judicial, executive, or legislative branch of any city, municipal, state, or federal government or administrative agency of Mexico, relating to Mr. Ritchie or to the Property.

**RESPONSE TO REQUEST NO. 14**:

Defendant Sempra incorporates herein by reference all of the general responses and continuing objections set forth above. Sempra further objects to this request for production as unduly burdensome, particularly to the extent it seeks documents and information that are contained in public records and/or equally available to Sanchez Ritchie. Sempra further objects that this request is vague and ambiguous, particularly in its use of the term "Property." Sempra further objects to the requests on the ground that they are not temporally limited in any way. Sempra will interpret the requests as seeking documents that came into existence before October 11, 2007, as documents created after that date are not relevant nor reasonably calculated to lead to admissible evidence. Sempra also objects to this request for production to the extent it seeks additional documents or information that are not relevant to any claim or defense in this action, nor reasonably likely to lead to the discovery of information relevant to any claim or defense in this action.  Sempra further objects to this request for production as overbroad and unduly burdensome,

19

particularly to the extent it seeks documents relating to "**any** communications between Sempra or ECA on the one hand, and **any** employees or agents of the **judicial, executive, or legislative** branch of **any city, municipal, state, or federal government or administrative agency** of Mexico relating to Mr. Ritchie or to the Property." (emphasis added). As phrased, the request for production is so vague and broad that compliance is impossible. Sempra further objects to this request to the extent that it calls for the production of documents protected by the attorney-client privilege, attorney work product doctrine, joint defense or common interest doctrine, or any other applicable privilege or protection.

Subject to, and without waiving the foregoing general and specific objections, Sempra responds as follows:

Sempra *will produce relevant, non-privileged documents relating to 1) communications between Sempra or ECA and or agents of the Office of the Attorney General of the State of Baja California relating to the proceedings underlying Sanchez Ritchie's malicious prosecution claim or relating to Lot A-3 as it pertains to such claim; and 2) communications between Sempra or ECA and the Secretaria de Medio Ambiente y Recursos Naturales relating to ECA's Manifestación de Impacto Ambiental, or environmental impact authorization, to the extent such documents are in Sempra's possession, custody or control and are located after a reasonable search*.

## Plaintiff's Statement Regarding Request No. 14

Plaintiff has agreed to limit this Request as expressed in Sempra's italicized response above, except that Sempra should produce these documents to the extent any exist which post-date October 2007.  Plaintiff has agreed to limit the time frame to May 2010, since that was when Mr. Ritchie was again exonerated and given back his land.

These documents are relevant because they will show the extent of influence and *ex parte* communications Sempra had with Mexican investigators and prosecutors which is relevant to Plaintiff's allegations that the criminal investigation and prosecution was corrupted and unlawfully influenced through

20

such communications.

To date, there has been substantial evidence of such corruption and unlawful influence in connection with the first prosecution in 2006-2007, but Sempra refuses to provide any such evidence regarding the 2009 prosecution communications.

**Sempra's Statement Regarding Request No. 14**

Sempra incorporates by reference its statement regarding Request No. 13 herein. In addition to those arguments, which apply equally to this request, Sempra's witnesses testified at length about communications as recently as 2014 with the lieutenant governors of the state of Baja California and representatives of the Department of Agrarian Reform. [*E.g.* Linderman Decl. ¶ 2, Ex. A (Rios depo.) at 121:4-13, 122:25–125:7, 197:11–211:8; *id.* ¶ 3, Ex. B (30(b)(6) depo.) at 139:5–148:11.] There is simply no relevance to communications in 2008 and beyond regarding a prosecution commenced, initiated, and brought in 2006.

## INTERROGATORY NO. 4:

Identify and describe in detail any communications (including the date, time, location, other persons present, and substance) between you or ECA and any employees or agents of the Office of the Attorney General of the State of Baja California or any other prosecutor's office related to Mr. Ritchie or the Property.

## RESPONSE TO INTERROGATORY NO. 4:

Defendant Sempra incorporates herein by reference all of the general responses and continuing objections set forth above. Sempra further objects to this interrogatory as unduly burdensome, particularly to the extent it seeks information that is contained in public records and/or equally available to Sanchez Ritchie.  Sempra also objects to this interrogatory to the extent it seeks documents or information that are not relevant to any claim or defense in this action, nor reasonably likely to lead to the discovery of information relevant to any claim or defense in this action. Sempra additionally objects to this interrogatory as vague and ambiguous, and to the extent it lacks foundation, particularly as to communications with "any other

21

prosecutor's office."

Subject to, and without waiving the foregoing general and specific objections, Sempra responds as follows:

In or around July 2006, Alejandro Rios Rippa submitted a criminal complaint to the Office of the Attorney General of the State of Baja California regarding an incident in which Sanchez Ritchie entered Lot A-3 without ECA's permission, aimed a gun at Mr. Rios Rippa, and threatened to kill him.

In or around August 2006, Alejandro Rios Rippa and Gerardo Ranero submitted a criminal complaint with the Office of the Attorney General of the State of Baja California relating to Sanchez Ritchie's unauthorized cutting of ECA's fence at the perimeter of Lot A-3 and attendant forcible entry onto Lot A-3.

Alejandro Rios Rippa and Sergio Fillad Fahme met at various times with employees or agents of the Office of the Attorney General of the State of Baja California, including Attorney General Antonio Martinez Luna, and others within the Attorney General's Office in connection with a request for a provisional order based on Sanchez Ritchie's forcible entry onto Lot A-3, which was issued in September 2006 by the Attorney General's Office, and with the investigation related thereto.

Discovery is at a very early stage, and Sempra's investigation is ongoing. Sempra reserves the right to amend, supplement, and/or correct its response to this interrogatory as additional information becomes available to Sempra during the course of its discovery and investigation.

**Plaintiff's Statement Regarding Interrogatory No. 4**

Plaintiff seeks a supplemental answer to this Interrogatory as it relates to Sempra's communications with the office of the Attorney General and prosecutor's office leading to the 2009 prosecution.  Sempra has limited its response to just those communications in 2006, but the case involves not just that alleged malicious prosecution, but the one Sempra initiated in 2009 as well.  *See* SAC ¶¶ 31-32, 76, and 78.

These communications are relevant to Plaintiff's claim that Sempra corrupted and unlawfully influenced Mexican officials to prosecute Ritchie.  *See* SAC ¶ 82.   Moreover, as revealed by the short three-paragraph response to Interrogatory No. 4, Sempra cannot reasonably claim undue burden in having to answer the question.

**Sempra's Statement Regarding Interrogatory No. 4**

Sempra incorporates by reference its statement regarding document request No. 13 herein. Plaintiff's sole basis for seeking a supplemental response to this interrogatory is that it does not contain information regarding the April 2009 prosecution. As established above, the District Court has already ruled as a matter of law that the April 2009 prosecution was dismissed on statute of limitations grounds. The April 2009 prosecution therefore has no relevance to Plaintiff's claim, and this portion of Plaintiff's Joint Motion should be denied.

DATED: April 30, 2015

HULETT HARPER STEWART LLP
KIRK B. HULETT
DENNIS STEWART


 _/s/ Kirk B. Hulett_____
KIRK B. HULETT

225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:  (619) 338-1133
Facsimile:   (619) 338-1139
Email:        kbh@hulettharper.com

23

1                           WILLIAMS & CONNOLLY LLP
PETER J. KAHN (admitted *pro hac vice*)
2    WILLIAM P. ASHWORTH
  (admitted *pro hac vice*)
3    MEGHAN FERGUSON
  (admitted *pro hac vice*)
4    JAMES GILLENWATER
  (admitted *pro hac vice*)
5    725 Twelfth Street, N.W.
Washington, DC  20005
6    Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029
7    Email:        pkahn@wc.com
            washworth@wc.com
8                mferguson@wc.com
            jgillenwater@wc.com

9

10   THE LAW OFFICES OF LEONARD B.
  SIMON, P.C.
11   LEONARD B. SIMON; SBN: 58310
655 West Broadway, Suite 1900
12   San Diego, CA 92101
Telephone:  (619) 338-4549
13   Facsimile:   (619) 231-7423
Email:        lens@rgrdlaw.com

14

15   Attorneys for Plaintiff Ramon Eugenio
Sanchez Ritchie

16

17   DATED: April 30, 2015         HUESTON HENNIGAN LLP
JOHN C. HUESTON
18   MARSHALL A. CAMP
LEE LINDERMAN

19

20    */s/ Lee Linderman*
LEE LINDERMAN

21

22   523 West 6th Street, Suite 400
Los Angeles, CA  90014
23   Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

24

25   Attorneys for Defendant Sempra

26

27

28

                                 24