# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON EUGENIO SANCHEZ RITCHIE,<br><br>                        Plaintiff,<br><br>    vs.<br><br>SEMPRA ENERGY, a California corporation,<br><br>                       Defendant. | CASE NO. 10cv1513-CAB(KSC)<br><br>ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (SEMPRA'S PRIVILEGE LOG)<br><br>[Doc. No. 196.] |

Before the Court is the parties' Joint Motion Concerning Dispute Regarding Sempra's Privilege Log and Sempra's [Alleged] Withholding of Documents. [Doc. No. 196.] In the Joint Motion, plaintiff argues that the Court must conduct an *in camera* review of a sampling of the documents listed on defendant Sempra's privilege log, or, in the alternative, appoint a special master to review all of the documents on the privilege log to ensure that defendant's privilege claims are valid. [Doc. 196, at pp. 7-8.] Plaintiff seeks an *in camera* review because he "suspects" that defendant does not have a valid claim of privilege as to many of the documents listed on its privilege log. [Doc. No. 196, at p. 2.] In opposing plaintiff's request, defendant contends that it has made a valid claim of attorney-client privilege and/or work product protection as to all of the documents listed on its privilege log, and there is no factual or legal basis to review any of these documents *in camera*. [Doc. No. 196, at pp. 7-10.] For the reasons

outlined below, the Court finds that plaintiff's request for an *in camera* inspection of some or all of the documents on defendant's privilege log must be DENIED.

### *Background*

In the operative Second Amended Complaint, it is alleged that plaintiff is a citizen of Mexico. [Doc. No. 34, at p. 4.] Defendant Sempra Energy is a California energy services corporation headquartered in San Diego, California, that "owns, controls, and operates" a number of subsidiaries, including Sempra LNG, and two wholly-owned subsidiaries based in Mexico known as Sempra Energy Mexico and Energia Costa Azul, S. De R.I. de C.V. (collectively, "Sempra"). [Doc. No. 34, at p. 4.] Sempra also allegedly owns, operates, and controls Energia Costa Azul, a receipt terminal for liquid natural gas ("LNG Plant") that is located in Mexico about 28 miles north of Ensenada. [Doc. No. 34, at p. 4.]

The remaining causes of action in the operative Second Amended Complaint are for malicious prosecution.[1] [Doc. No. 62, at pp. 11-14, 20.] Plaintiff generally alleges in the Second Amended Complaint that he had ownership rights in land and real property near Ensenada, Mexico, that defendant needed to purchase in order to build and operate the LNG Plant.[2] In or about 2001, defendant began to negotiate and acquire properties that it needed to build the LNG Plant. [Doc. No. 34, at p. 7.] In July 2001, defendant's representative met with plaintiff and his neighbor to negotiate the

---

[1] A claim for malicious prosecution under California law requires proof that: "'the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.' *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989) (quoting *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 50 (1974))." [Doc. No. 62, at p. 16.] "There are two ways a plaintiff can show a defendant lacked sufficient probable cause to justify bringing an action: 'A litigant will lack probable cause for his action either if he [1] relies upon facts which he has no reasonable cause to believe to be true, or [2] if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation omitted.] The standard is an objective one and inquires 'whether any reasonable attorney would have thought the claim to be tenable.' [Citation omitted.]" *Xcentric Ventures, L.L.C. v. Borodkin*, 908 F.Supp.2d 1040, 1047 (D. Ariz. 2012).

[2] In the Joint Motion, the parties generally refer to this property as "Lot A-3." [Doc. No. 196, at pp. 3, 6, 10, 19, 21, 25-26.]

10cv1513-CAB(KSC)

purchase of their lands. At this time, plaintiff presented defendant's representative with documentation showing he was in lawful possession of the property. [Doc. No. 34, at p. 7.] However, plaintiff claims that defendant knowingly entered into a fraudulent transaction in or about 2005 to acquire title to his property from others who were not the true owners of the land. [Doc. No. 34, at pp. 7-8.]

Defendant then allegedly treated plaintiff as a squatter, sought judicial intervention in 2006 to oust him from his land, knowingly submitted false documents to the Mexican courts, forcibly removed him and his family from the land, and destroyed his home and other real property that was located on the land. [Doc. No. 34, at pp. 8-10.] Later, in 2009, plaintiff alleges that defendant pursued a second criminal prosecution against him as part of a fraudulent scheme to maintain possession of his land. [Doc. No. 34, at p. 11.] However, plaintiff claims that he prevailed in both proceedings, and the land was restored to his possession on May 24, 2010 by the Mexican court system. [Doc. No. 34, at pp. 6-20.]

### *Discussion*

### *I.    Meet and Confer Requirements.*

Federal Rule of Civil Procedure 37(a)(1) states that: "[A] party may move for an order compelling discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court order." Fed.R.Civ.P. 37(a)(1). Local Rule 26.1(a) further states that: "The court will entertain no motion pursuant to Rules 26 through 37, Fed.R.Civ.P., unless counsel will have previously met and conferred concerning *all disputed issues*." CivLR 26.1(a) (emphasis added). Chambers' Rules also state that: "Counsel must meet and confer on *all issues* before contacting the Court." Chambers' Rule V.B (emphasis added). Plaintiff's counsel submitted a Declaration stating the parties met and conferred concerning the issues raised in the Joint Motion. [Doc. No. 197-1, at p. 3.] However, defense counsel's Declaration states that during the parties' only meet and confer about

defendant's privilege log, plaintiff's counsel merely expressed concern that descriptions in defendant's privilege log were "overly general." [Doc. No. 197-2, at p. 4.] Plaintiff's counsel did not even identify "the hundreds of documents that he challenges" in the present Joint Motion. [Doc. No. 197-2, at p. 4.] Defendant was not aware of the entries being challenged until it was served with plaintiff's briefing for the current Joint Motion. [Doc. No. 197-2, at p. 4.] Therefore, the Court finds that plaintiff failed to satisfy the meet and confer requirements before filing the instant Joint Motion.

## II. *Protective Order.*

On or about March 7, 2014, the parties agreed to all but one of the terms of a Proposed Order Regarding Document Production and Discovery of Electronically Stored Information ("Proposed Order"). [Doc. No. 137, at p. 2.] In a Joint Motion filed on March 7, 2014, the parties sought the Court's assistance in resolving a dispute over paragraph 28 of their Proposed Order. The parties' dispute involved the scope of documents to be included on the parties' respective privilege logs. This Court issued an Order on August 4, 2014 resolving the parties' dispute over paragraph 28. [Doc. No. 172, at pp. 1-5.]

On August 4, 2014, this Court also entered an Order Regarding Document Production and Discovery of Electronically Stored Information ("ESI Order"). [Doc. No. 174.] With the exception of paragraph 28, the terms of the ESI Order are the same as the terms the parties agreed to on or about March 7, 2014. [Doc. No. 137, at pp. 2-11; Doc. No. 172, at pp. 1-5.] The purpose of the ESI Order is to "manage the production of documents and data, including [ESI]." [Doc. No. 174, at p. 1.] Section V of the Order is entitled "Inadvertent Disclosure" and governs the production or disclosure of documents or information that a party "later claims should not have been produced due to a privilege . . . including . . . any attorney client privilege." [Doc. No. 174, at pp. 11.] Section V further states as follows:

> 33. When a Producing Party or Recipient Party identifies such privileged or protected information, the Recipient Party: (1) shall not use, and shall immediately cease any prior use of, such information; (2) shall take reasonable steps to retrieve the information from others to which the

Party disclosed the information; (3) shall within five (5) business days of the Producing Party's request return to the Producing Party or destroy the information and destroy all copies thereof; and (4) shall confirm to the Producing Party the destruction, under (3) above, of all copies of the information not returned to the Producing Party.... *Within fourteen (14) days after a Producing Party or Recipient Party identifies the information, and not thereafter, the Recipient Party may file a motion to compel the production of the information* on the basis that (a) the information was never privileged or protected from disclosure; or (b) any applicable privilege or immunity has been waived by some act other than the production of the information in this action. The Producing Party and the Recipient Party shall meet and confer in accordance with applicable law or Court rules regarding any such motion to compel. ...

[Doc. No. 174, at p. 12 (emphasis added).]

On June 25, 2014, defendant's outside counsel notified plaintiff's counsel that an attorney-client privileged document with Bates No. SEMPRA_0020601 had been produced inadvertently. Citing Section V of the ESI Order, which the parties had agreed to as of March 7, 2014, defense counsel requested the return or destruction of this document. [Doc. No. 196-5, at pp. 15-16; Doc. No. 137, at pp. 2-11 *et seq.*; Doc. No. 172, at pp. 1-5.]

Despite the terms of the ESI Order entered on August 4, 2014, which required plaintiff, as the "Recipient Party," to pursue a motion to compel within fourteen days to challenge the privilege claim, plaintiff instead waited until December 18, 2014, long after the deadline had passed, to submit this document as an exhibit in connection with the instant Joint Motion and to argue that the document is not privileged. [Doc. No. 196-5, at pp. 15-16.] Plaintiff's counsel also represented in a Declaration that the parties "have met and conferred concerning the issues raised in this Joint Motion ...." [Doc. No. 196-1, at p. 3.] However, for the reasons outlined above and in the previous section of this Order, the Court finds that plaintiff failed to abide by the terms of the ESI Order or to satisfy the meet and confer requirements before filing the instant Joint Motion. The Court will therefore order plaintiff to destroy any and all copies of Bates No. SEMPRA_0020601 and prohibit plaintiff from using this document at any time for any purpose. For the same reasons, the Court will not specifically address plaintiff's challenge to defendant's privilege claim as to this particular document.

### III. *Attorney-Client Privilege.*

#### A. *California Law.*

Jurisdiction in this case is based on diversity of citizenship of the parties. In diversity cases, the Court must decide privilege issues in accordance with state law. Fed.R.Evid. 501. Therefore, California law applies to the determination of privilege issues in this case. Plaintiff briefed the issues raised in the Joint Motion with reference to Federal law.

Under California law, the "client" is considered "the holder" of the attorney-client privilege and may "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . ." Cal. Evid. Code § 954. A "client" is "a person who, directly or through an authorized representative, consults a lawyer for the purpose of . . . securing legal service or advice from him in his professional capacity. . . ." Cal. Evid. Code § 951.

The phrase "confidential communication between client and lawyer" is defined broadly to refer to "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and include a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952.

"The attorney-client privilege covers all forms of communication, including transactional advice and advice in contemplation of threatened litigation." *Titmas v. Superior Court*, 87 Cal.App.4th 738, 744 (2001). "Without the privilege, it is theorized, the client would not freely speak, thereby limiting the attorney's ability to provide sound legal advice." *Id.* citing *Southern Cal. Gas Co. v. Public Utilities Comm'n.*, 50 Cal.3d 31, 37 (1990) ("If a lawyer could not promise to maintain the

- 6 -

10cv1513-CAB(KSC)

confidentiality of his client's secrets, the only advice he or she could provide would be, 'Don't talk to me'").

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, *i.e.*, a communication made in the course of an attorney-client relationship. [Citation omitted.] Once that party establishes facts necessary to support a *prima facie* claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply. [Citations omitted.]" *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 733 (2009).

Under California law, a party objecting to requests for production of documents based on a claim of privilege must respond with "sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log." *Bank of America, N.A. v. Superior Court*, 212 Cal.App.4th 1076, 1098 (2013). "The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not in fact privileged." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 130 (1997). A privilege log "identifies each document for which a privilege is claimed, with its author, date of preparation, all recipients and the specific privilege claimed." *Hernandez v. Superior Court*, 112 Cal.App.4th 284, 291 n.5 (2003). Information included in a privilege log *may* satisfy a party's burden to establish preliminary facts necessary to invoke a privilege.[3] *Bank of America v. Superior Court*, 212 Cal.App.4th at 1099-1101.

///

---

[3]    Likewise, Federal Rule of Civil Procedure 26(b)(5) provides as follows: "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P.26(b)(5).

**B.    _Evidence Submitted in Support of Defendant's Privilege Claims._**

In support of its claims of attorney-client privilege, defendant submitted a copy of its privilege log. Defendant's privilege log is attached as Exhibit A to the Declaration of Katie M. Yablonka, an attorney who works as defense counsel in this action. According to Ms. Yablonka's Declaration, defendant's in-house attorneys were "directly involved in providing legal advice to [defendant's] personnel concerning [defendant's] dispute with plaintiff and other issues." [Doc. No. 197-2, at p. 3.] Defendant also obtained legal advice about the land dispute with plaintiff from outside counsel. [Doc. No. 197-2, at p. 3.] Ms. Yablonka personally reviewed all of the documents listed on defendant's privilege log. [Doc. Nos. 197-2, at p. 2; 197-2, at pp. 7-364.] Based on her personal review of the documents, Ms. Yablonka states in her Declaration that she believes defendant "has a good faith basis for asserting that all of the withheld documents are either protected attorney-client privileged communications and/or protected attorney work product." [Doc. No. 197-2, at p. 2.]

**1.    _The Privilege Log._**

Plaintiff complains that defendant's privilege log is inadequate because the descriptions provided as the basis for withholding the documents are "vague and generic." [Doc. No. 196, at p. 2.] Based on a review of a sampling of the entries, this Court cannot agree with plaintiff's contention. Each entry identifies the author, date, recipients, and the specific privilege(s) claimed. Each entry also includes a document description that is specific enough to aid plaintiff in assessing the claim of privilege without revealing privileged information.

**2.    _Entries on the Privilege Log._** Although Sempra's privilege log includes some 3,000 entries, Ms. Yablonka explains in her Declaration that defendant is actually withholding about 600 documents based on the attorney-client privilege and/or the work product doctrine. There are about 3,000 entries on the privilege log because the documents being withheld include a number of e-mail chains, and defendant separately logged each complete e-mail chain as well as each individual e-mail. [Doc. No. 197-2,

at p. 2.] In her Declaration, Ms. Yablonka states as follows:

> [E]ach of the documents listed on defendant's privilege log appears to either:
>
> (a)    include one or more communications to or from a Sempra attorney concerning legal advice,
>
> (b)    have been prepared by a Sempra attorney, or at the request of a Sempra attorney in connection with Sempra's dispute with plaintiff or in connection with other legal proceedings and/or, for a small minority of documents,
>
> (c)    confidentially forward information meeting the criteria set forth in (a) and/or (b) to Sempra personnel.

[Doc. No. 197-2, at p. 2.]

**3.** *__Documents on the Privilege Log Dated After 2006.__* The Joint Motion and Ms. Yablonka's Declaration indicate that the legal dispute between the parties began in or about July 2006, when defendant learned plaintiff was claiming an adverse interest in real property it had already purchased from another party. [Doc. No. 196, at p. 27; Doc. No. 197-2, at pp. 2-3.] According to Ms. Yablonka's Declaration, the majority of documents listed on defendant's privilege log were created in or after 2006 and involve communications between defendant's personnel and defendant's attorneys concerning legal advice about the dispute with plaintiff. [Doc. No. 197-2, at pp. 2-3.]

**4.** *__Documents on the Privilege Log Dated Before 2006.__* Mr. Yablonka's Declaration further states that most of the documents on the privilege log that pre-date defendant's dispute with plaintiff "pertain to a separate set of environmental litigations in which [defendant] was a party relating to the permitting of [defendant's] liquefied natural gas terminal in Mexico." [Doc. No. 197-2, at p. 3.]

**5.** *__Identities of Individuals Named on the Privilege Log.__* Attached as Exhibit B to Ms. Yablonka's Declaration is a chart identifying the individuals involved in the communications listed on the privilege log. On this chart, each of the individuals involved in the communications is identified as an in-house attorney, an outside attorney, or a non-attorney employee. [Doc. No. 197-2, at pp. 365-376.]

Based on all of the information made available for consideration, the Court finds that defendant provided enough evidence to support a *prima facie* claim of attorney-client privilege as to the documents listed on the privilege log. As a result, the burden has shifted to plaintiff to show that the attorney-client privilege does not apply.

### C. *Challenges to Defendant's Claims of Attorney-Client Privilege.*

For several reasons, each of which is discussed separately below, plaintiff argues that many of the documents listed on the privilege log "have been wrongfully withheld on a claim of privilege . . . ." [Doc. No. 196, at p. 2.] Plaintiff suspects that defendant is withholding many documents even though there is "no colorable claim of privilege whatsoever. . . ." [Doc. No. 196, at p. 2.]

### 1. *Number of Documents Produced and Withheld.*

Based on the number of documents produced and withheld by defendant, plaintiff suspects defendant is attempting to "cloak" non-privileged communications with the attorney-client privilege. According to plaintiff, defendant produced approximately 2,356 documents that offer "little insight into the allegations of this case," and only 84 of the documents produced by defendant include the key term "Lot A-3." [Doc. No. 196, at pp. 2-3.] By contrast, defendant withheld as privileged some 3,159 communications that appear to be "highly relevant" to the matters at issue in this lawsuit, because the privilege log indicates these documents directly relate to Lot A-3. [Doc. No. 196, at p. 3.]

As outlined above, Ms. Yablonka's Declaration explains the reason for the large number of entries on the privilege log and represents that only about 600 documents are being withheld as privileged. [Doc. No. 197-2, at p. 2.] Ms. Yablonka's Declaration also states that she has "personally reviewed most of [defendant's] 57,000+ page production in this action, and many documents produced by [defendant] relate to Lot A-3 but do not use the words 'Lot A-3' or 'Lote A-3.'" [Doc. No. 197-2, pp. 4-5.] Based on the information submitted by the parties, the Court finds nothing suspicious about the number of documents produced compared to the number of documents

10cv1513-CAB(KSC)

withheld as privileged and disagrees with plaintiff's argument that these numbers suggest defendant is "abusing its claims of attorney-client privilege." [Doc. No. 196, at p. 3-4.]

The volume of documents withheld as privileged does not appear unusual under the circumstances. It is certainly not surprising that attorneys would be heavily involved in providing legal advice about the parties' land dispute. For example, Darcel Hulse, President and CEO of Sempra LNG, testified in his deposition that title searches were performed for all of the land needed to build the LNG Plant, and he believes most of this work was done by Mexican firms hired by the legal department. [Doc. No. 196, at p. 21; Doc. No. 196-5, at p. 21; Doc. No. 197-2, at p. 368.] It is also not difficult to envision that the parties' land dispute would have generated a significant number of attorney-client privileged communications. In any event, plaintiff's speculation about the number of documents produced and withheld by defendant does not meet his burden of establishing that any of the documents listed on defendant's privilege log fail to qualify for protection under the attorney-client privilege.

### 2. *Factual Information and Attachments.*

Plaintiff challenges numerous entries on defendant's privilege log that refer to attachments. According to plaintiff, an attachment to a privileged document cannot be withheld unless the attachment separately and independently qualifies as a privileged document, and defendant cannot withhold factual and investigative documents by attaching them to a privileged document. Essentially, plaintiff speculates that defendant is withholding non-privileged attachments containing factual and investigative materials that are relevant to his claims. [Doc. No. 196, at p. 14.] For example, plaintiff challenges Document No. 29 on the privilege log, which is described as follows: "Confidential email and attachment between attorney and client for the purposes of providing requested factual information necessary to render legal advice regarding ECA environmental permit." [Doc. No. 197-2, at p. 11.]

/ / /

Under the facts and circumstances presented thus far, California law does not support petitioner's contention that defendant cannot withhold documents attached to a privilege communication that do not independently qualify for protection under the attorney-client privilege. Under California law, it is true that the attorney-client privilege may not be used to shield facts, as opposed to privileged communications, from discovery. *Palmer v. Superior Court*, 231 Cal.App.4th 1214, 1226 (2014). For example, "documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." *Wellpoint v. Superior Court*, 59 Cal.App.4th 110, 119 (1997).

"Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. [Citation.] Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney. [Citation.] While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney. Thus, a litigant may not silence a witness by having him reveal his knowledge to the litigant's attorney. . . ." *Costco v. Superior Court*, 47 Cal.4th at 735 (internal quotations and citations omitted).

On the other hand, the attorney-client privilege may attach to an entire communication regardless of whether it includes unprivileged material. "[B]ecause the privilege protects the transmission of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means." *Id.* at 735. In this regard, the California Supreme Court in *Costco v. Superior Court*, 47 Cal.4th 725 stated as follows:

> The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material. [Citation omitted.] '[T]he privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client. In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy.' [Citation omitted.] . . . . 'Neither the statutes articulating the attorney-client privilege nor the cases which have

interpreted it make any differentiation between 'factual' and 'legal' information. . . .' [Citation omitted.] [B]ecause the privilege protects the transmission of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means.

*Id.* at 734-735. For example, the attorney-client privilege would attach "to copies of cases and law review articles transmitted by an attorney to the attorney's client." *Id.* at 734.

As noted above, the California Supreme Court in *Costco v. Superior Court*, 47 Cal.4th 725, instructed that the "proper procedure" to determine whether the attorney-client privilege applies is to consider "the dominant purpose *of the relationship*" rather than the dominant purpose of a particular communication. *Id.* at 734-740. If "communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means. If . . . the dominant purpose of the relationship was not that of attorney and client, the communications would not be subject to the attorney-client privilege and therefore would generally be discoverable." *Id.* at 740.

In *Costco v. Superior Court*, 47 Cal.4th 725, for example, employees filed a class action against their employer alleging the employer mis-classified them as exempt employees and had therefore failed to pay them overtime wages. *Id.* at 731. Several years prior to the lawsuit, the employer retained an attorney to provide legal advice as to whether certain employees were exempt from wage and overtime laws. *Id.* at 730. The attorney provided legal advice to the employer in the form of an opinion letter. To prepare the opinion letter, the attorney conducted confidential interviews with two of the employer's managers. *Id.* at 730. In the class action lawsuit against the employer, the employees sought to compel production of this opinion letter. *Id.* at 731. The employees argued that disclosure should be ordered because the letter included unprivileged information, and the employer waived the privilege by placing the contents of the letter in issue. *Id.* at 739.

The trial court in *Costco v. Superior Court*, 47 Cal.4th 725, ordered the employer to produce a redacted version of the letter which revealed "factual information about various employees' job responsibilities" on the ground that this information was not protected by the attorney-client privilege or the work product doctrine. *Id.* at 740. The California Supreme Court reversed, holding that the attorney-client privilege attached to the entire opinion letter regardless of whether the letter included unprivileged material. *Id.* at 736. The California Supreme Court expressly rejected the plaintiff employees' contention that the relationship between the employer and the attorney was not one of attorney-client, because the interviews of the warehouse managers "was simple fact gathering that could have been done by a non-attorney." *Id.* at 735. The employees had not submitted any evidence to dispute the employer's representation that it retained the lawyer, who was an expert in wage and hour law, for the purpose of obtaining legal advice. *Id.* at 736. There was no evidence to support a conclusion that the "dominant purpose" in retaining the attorney was "to obtain her services as a fact gatherer." *Id.* at 736. As a result, the California Supreme Court concluded that the entire communication, including the summary of factual material, was privileged and could not be disclosed, even though the factual material referenced therein was "discoverable by some other means." *Id.*

Similarly, in *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, the plaintiff sued his former employer for employment discrimination and/or a hostile employment environment. *Id.* at 114-115. Prior to the litigation, the employer retained an attorney to investigate the plaintiff's discrimination claims. *Id.* at 117. The attorney performed an investigation, which included interviewing plaintiff's supervisors. *Id.* Later, during the lawsuit, the plaintiff requested production of all documents and communications related to the attorney's investigation, but the defendant employer refused to produce them based on the attorney-client privilege. *Id.* at 118. The employee argued that the attorney was acting as a fact finder and investigator, so the attorney-client privilege did not apply. *Id.* at 123.

The employer in *Wellpoint v. v. Superior Court*, 59 Cal.App.4th 110, presented enough facts "to support a prima facie claim of privilege," so the burden then shifted to the employee to show that the attorney-client privilege did not apply. *Id.* at 123-124. "At a minimum, [the employee] needed to present evidence concerning his employer's normal method of dealing with internal employee discrimination complaints and whether they were routinely assigned to outside counsel to investigate and deal with. It might then have been urged that [the attorney] was engaged in routine fact-finding on behalf of the company's personnel department rather than legal work." *Id.* at 124. In the absence of any such evidence, the employee could not meet the burden of establishing that the attorney-client privilege did not apply. *Id.*

Here, there are no facts from which this Court could conclude that defendant is "over-reaching" by withholding non-privileged attachments or withholding relevant factual and investigative materials by attaching them to privileged documents. As noted above, defendant submitted enough information to support a *prima facie* claim of privilege as to all of the documents on the privilege log. Plaintiff has offered nothing but speculation that defendant has no viable claim of privilege as to any or all of the attachments listed on the privilege log. In addition, as noted above, the Court finds that plaintiff did not satisfy the meet and confer requirements as to each and every challenged entry on the privilege log before initiating the instant Joint Motion.

### 3. *Routine Business Communications.*

Plaintiff argues that in-house attorneys serve multiple purposes within a corporation and may be involved in day-to-day business activities, such as making business decisions, and the attorney-client privilege does not attach to communications made because of a business purpose or simply because a copy of an e-mail or some other attachment is sent to an attorney. In the Joint Motion, plaintiff challenges numerous documents listed on defendant's privilege log based on speculation that the purpose of these communications was routine business rather than securing legal advice. Plaintiff believes defendant would have had some type of ongoing business

10cv1513-CAB(KSC)

communications about the acquisition of property necessary to build its "billion dollar LNG operation" in Mexico that would be relevant to his claims against defendant but would not qualify for protection as privileged. [Doc. No. 196, at pp. 3, 13-14.]

As plaintiff contends, California courts have recognized that "otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1504 (2007). "It is [also] settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Chicago Title Ins. Co. v. Superior Court*, 174 Cal.App.3d 1142, 1151 (1985). In *Chicago Title Ins. v. Superior Court*, 174 Cal.App.3d 1142, for example, in-house counsel was involved in business operations, such as quality control of escrow accounts and monitoring of checks going into and being disbursed from accounts. As a result, in-house counsel's observations and conversations with other employees about these business operations could not be protected under the attorney-client privilege. *Id.* at 1151-1153.

Plaintiff did submit as exhibits some examples of communications that defendant initially withheld as privileged and later produced on its own initiative or after plaintiff challenged some entries on the privilege log. Since plaintiff believes these exhibits are non-privileged business communications that defendant initially withheld them as privileged but then produced, plaintiff speculates there are "numerous other instances of [defendant's] gross over-reaching" based on a "wildly perverse interpretation" of the attorney-client privilege. [Doc. No. 196, at p. 3.] The following is a description of the relevant exhibits:

### a. *Exhibits C and E.*

Exhibits C and E include a series of e-mails from two non-attorney employees (Ricardo Moreno and Don Felsinger). [Doc. No. 197-2, at 374, 369.] According to

plaintiff, the e-mail was copied to 62 recipients and some of the recipients were attorneys. The subject line of the e-mail is "Sempra Energy and Market News in Mexico and Latin America." [Doc. No. 196, at p. 4.] The information either included in the e-mail or attached thereto is, according to plaintiff, a circulation of publicly published news articles. [Doc. No. 196, at p. 4.] As plaintiff contends, there are no apparent grounds for withholding these documents based on the attorney-client privilege.

### b. *Exhibit G.*

Exhibit G is an e-mail dated August 14, 2006 from Sergio Bustamante, a non-attorney-employee whose title is procurement coordinator. The e-mail is addressed to Gilbert Moya. Mr. Moya is a "non-attorney employee" [Doc. No. 197-2, at p. 370] who apparently has some knowledge of or involvement in the alleged eviction of plaintiff from the property he refers to as Lot A-3.[4] [Doc. No. 196-5, at pp. 10-14.] Copies of this e-mail were sent to three non-attorney employees: Julio Henao, Humberto Gonzalez, and Alejandro Rios. [Doc. No. 196-5, at pp. 5-6; 197-2, at pp. 366, 370, 371.] Julio Henao's title is director of construction for the LNG Plant. [Doc. No. 196-5, at p. 12.] The subject of the e-mail is "Seguridad en el lote A3." [Doc. No. 196-5, at pp. 5-6.] Although the e-mail is in Spanish and no translation was provided, it appears to discuss arrangements being made to retain security guards to work at Lot A-3. [Doc. No. 196-5, at p. 6.] As noted above, defendant has stated that the land dispute between the parties began in or about July 2006. [Doc. No. 197-2, at pp. 2-3.] Thus, the date of this e-mail indicates it was distributed shortly after the dispute commenced. It is unclear why this document was withheld as privileged and then produced.

/ / /

/ / /

---

[4] The Second Amended Complaint alleges that Mr. Moya was involved in forcibly removing or evicting plaintiff from the land referred to herein as Lot A-3. [Doc. No. 34, at pp. 9-10.]

10cv1513-CAB(KSC)

### c. _Exhibit H._

Exhibit H is an excerpt from the deposition of Mr. Moya. [Doc. No. 196-5, at pp. 8-14.] During the deposition, Mr. Moya read the contents of an e-mail into the record. The e-mail is dated "August the 14th" and is addressed to Mr. Moya (a non-attorney employee) and Julio Henao (a non-attorney employee who held the title of director of construction for the LNG Plant). The e-mail is from Sergio Bustamante (a non-attorney employee who held the title of contract procurement coordinator). Mr. Bustamante was responsible for paying the bills at Sempra's Ensenada office. [Doc. Nos. 196-5, at p. 12; 197-2, at pp. 370, 371, 375.] Although Mr. Moya's job title and responsibilities as a non-attorney employee are unclear from the deposition excerpt, Mr. Moya's e-mail discusses the retention of security personnel at Lot A-3. [Doc. No. 196-5, at pp. 12-14.] Based on Mr. Moya's testimony that the e-mail is dated "August the 14th," it appears that this e-mail was also distributed shortly after the parties' land dispute commenced. [Doc. No. 197-2, at pp. 2-3.] It is unclear why this document was initially withheld as privileged and then produced.

Plaintiff also argues that excerpts from Mr. Moya's deposition show that some documents on defendant's privilege log listing Mr. Moya as the author and/or recipient do not qualify for protection under the attorney-client privilege. [Doc. No. 197, at pp. 5-6; Doc. No. 196-1, at p. 3; Doc. No. 196-5, at pp. 10-14.] According to plaintiff, Mr. Moya indicated during his deposition that he "never sought legal advice," but there are a number of privilege log entries "where the document is withheld because the communication purportedly constitutes a request for legal advice by Mr. Moya." [Doc. No. 196, at p. 6.] For example, Document No. 40 is an e-mail authored by Mr. Moya and addressed to two non-attorney employees [Doc. No. 197-1, at pp. 366, 371] with copies sent to several individuals, including two attorneys, Raul Smith, Sempra's Senior Litigation Counsel, and Robert Borthwick, Sempra's Assistant General Counsel for Litigation. [Doc. No. 197-2, at p. 12.] Document No. 40 is described as: "Confidential e-mail chain between client and attorney for the purpose of _requesting_

*legal advice* regarding parcels of land adjacent to Lot A-3." [Doc. No. 197-2, at p. 12 (emphasis added).]

Mr. Moya was asked the following question by plaintiff's counsel during his deposition: "If you had a question about doing something legally or whether it had a legal question relating to your activities at the property down in Mexico, to whom would you ask?" [Doc. No. 196-5, at 10.] Mr. Moya responded, "Alex Rios." [Doc. No. 196-5, at 10.] Alex Rios has been identified as a non-attorney employee. [Doc. No. 197-2, at p. 366.] Plaintiff's counsel then asked Mr. Moya if he ever asked other attorneys, including Mr. Fillad, for legal advice. Mr. Moya then said, "Normally, in the course of performing my duties, I had no communication up to them. There was no – I did not have any questions. [¶]Typically, they gave me direction and I fulfilled those directions. I don't recall a single incident where I needed advice or I had a question regarding something. My duties were fairly well laid out, and I don't recall ever going to them for advice." [Doc. No. 196-5, at p. 11.] The next question was whether Mr. Moya recalled "receiving any legal advice or statements about what would be proper or improper under the law?" [Doc. No. 196-5, at p. 11.] However, Mr. Moya's response to this question was not included in the excerpts submitted with the Joint Motion.

From the fact that defendant first withheld the above-described documents as privileged and then later produced them, plaintiff would have the Court infer that defendant is "gross[ly] over-reaching" and has "absolutely no colorable claim of privilege" with respect to numerous entries on its privilege log. [Doc. No. 196, at p. 4-5.] However, the Court finds this argument unconvincing. In this Court's view, defendant's conduct suggests that the privilege log is serving its intended purpose – to allow opposing parties an opportunity to assess and challenge claims of privilege. Defendant's conduct also shows a willingness to re-consider challenged entries on the privilege log and to then amend those entries as it deems necessary. In a case involving a large volume of documents, such as this one, there are bound to be some documents

that deserve a second look when challenged and a willingness on the part of the party who prepared the privilege log to re-classify and produce documents that were mis-classified in an initial review.

The Court is also not convinced by the cited excerpts from Mr. Moya's deposition that documents on defendant's privilege log showing Mr. Moya as the author and/or recipient do not qualify for protection under the attorney-client privilege. First, Mr. Moya's comments during his deposition are too ambiguous and equivocal to defeat any of defendant's attorney-client privilege claims. Contrary to plaintiff's argument, Mr. Moya did not say that he "never sought legal advice." [Doc. No. 196, at p. 6.] He said he "typically" followed directions and did not "recall" needing advice or "going to them for advice." [Doc. No. 196-5, at p. 11.]

Second, defendant is the holder of the privilege, not Mr. Moya, and defendant submitted a detailed Declaration in support of its privilege claims, and, for the reasons outlined more fully above, this evidence is sufficient to support a *prima facie* claim of attorney-client privilege as to the documents listed on the privilege log. Pursuant to the California Supreme Court's decision in *Costco v. Superior Court*, 47 Cal.4th at 725, and despite the ambiguous comments of a non-attorney employee during his deposition, this Declaration is also enough to establish that the dominant purpose of the relationship between defendant's attorneys and its employees during the time in question was for the purpose of providing legal services and advice concerning the land dispute with plaintiff. [Doc. No. 197-2, at p. 370.] Theses circumstances make it highly likely that most communications among employees and attorneys concerning the land dispute qualify for protection under the attorney-client privilege.

Plaintiff's argument that defendant is improperly withholding routine business communications based on the attorney-client privilege is also unconvincing because it overlooks the broad protection afforded by the attorney-client privilege under California law. Under California law, "[a] corporate client, like other artificial entities, can only receive communications from its attorney by means of human agency officers,

agents, and employees of the corporation selected by the corporation's directors and officers to act on its behalf. A corporation, like a natural person, is entitled to the full benefit of the attorney-client privilege." *Insurance Company of North America v. Superior Court*, 108 Cal.App.3d 758, 763 (1980). In a corporate setting, such as the one at issue here, California courts have acknowledged that "the attorney-client privilege may extend to communications involving middle- and lower-level employees" and that "in order to implement the advice of lawyers, the advice must be communicated to others within the corporation." *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1497-1499 (2007). Thus, the attorney-client privilege extends to lower level employees who reasonably need to know of a confidential communication in order to act for the organization or implement legal advice, even if they had no direct contact with the attorney. *Id.* at 1495, 1499-1504.

In *Zurich v. Superior Court*, 155 Cal.App.4th at 1485, for example, the issue was whether "corporate communications not directly involving an attorney, but which discuss legal advice, come within the [attorney-client] privilege." *Id.* at 1495. The documents in question were internal communications among an insurer's employees in the insurer's claim file discussing legal advice or counsel's litigation strategy. The California Court of Appeal concluded the documents were protected by the attorney-client privilege as long as the insurer could establish that the involvement of the employees was reasonably necessary to further the purpose for which counsel was consulted. *Id.* at 1495-1503. *See also Insurance Company of North America v. Superior Court*, 108 Cal.App.3d at 770 (stating that confidential communications relayed to officers or employees who did not personally attend a legal briefing are protected by the attorney-client privilege when dissemination of legal advice is "reasonably necessary to accomplish the purpose of the legal consultation").

In a more recent case entitled *County of Los Angeles Board of Supervisors v. Superior Court*, 235 Cal.App.4th 1154, 1168 (2015), the California Court of Appeal held that communications between an attorney and client arising in the course of the

10cv1513-CAB(KSC)

representation that are related to the purpose for which the client sought legal advice "need not include a legal opinion or advice to qualify as a privileged communication." The plaintiff in *County of Los Angeles v. Superior Court*, 235 Cal.App.4th at 1154, filed a lawsuit claiming inappropriate conduct by certain attorneys who were retained to defend the County against inmate lawsuits alleging the use of excessive force in the County's jails. The plaintiff made a request under the California Public Records Act for access to the attorneys' billing records. *Id.* at 1160. The County argued that the billing records were protected by the attorney-client privilege because they contained detailed descriptions of attorney strategy, tactics, thought processes, and analysis. *Id.* Essentially, the plaintiff argued that billing records were not protected by the attorney-client privilege to the extent they did not contain legal advice or opinions and that any privileged information could be redacted. *Id.* at 1161, 1168-1169. In support of this argument on appeal, the plaintiff cited the final clause of the definition of "confidential communication" in California Evidence Code Section 952: "and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." *Id.* at 1169. According to the plaintiff, this phrase means that "only communications containing legal advice or opinion qualify as confidential communications." *Id.* However, the Court of Appeal agreed with the County's interpretation of this phrase—"that a confidential communication includes, but is not limited to, a communication incorporating the lawyer's legal opinions or advice," and the cited phrase in Section 952 was not intended to limit the privilege to communications "containing a legal opinion." *Id.* at 1169-1174.

The Court of Appeal in *County of Los Angeles v. Superior Court*, 235 Cal.App.4th at 1154, reasoned that the purpose of the attorney-client privilege is to "safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters," and the plaintiff's interpretation of Section 952 would lead to absurd results when, for example, a communication originated with the client but did not include legal

opinion or advice. *Id.* at 1170-1171. According to the Court of Appeal, the purpose of the attorney-client privilege "would not be furthered if clients and attorneys were uncertain whether their communication contained sufficient advice or opinion to qualify as confidential communications. Such a constricted view of Evidence Code Section 952 would chill, rather than encourage, robust discussion between clients and their lawyers." *Id.* at 1171. In addition, the Court of Appeal noted that the plaintiff's interpretation of Section 952 was in conflict with the California Supreme Court's decision in *Costco v. Superior Court*, 47 Cal.4th at 734, which held that an attorney's opinion letter is privileged in its entirety "irrespective of whether it includes unprivileged material." *Id.* at 1166.

In *Costco v. Superior Court*, 47 Cal.4th at 731, the California Supreme Court stated as follows: "[B]ecause the privilege protects a *transmission* irrespective of its content, there should be no need to examine the content in order to rule on a claim of privilege." *Id.* at 739 (emphasis in original). According to the Court of Appeal in *County of Los Angeles v. Superior Court*: "*Costco* teaches that the proper focus in the privilege inquiry is not whether the communication contains an attorney's opinion or advice, but whether the relationship is one of attorney-client and whether the communication was confidentially transmitted in the course of that relationship. *Costco* did not state, when describing the requisite preliminary showing, that the party claiming the privilege had to show the communication contained an opinion, advice, or indeed any particular content: rather, the preliminary facts necessary were 'a communication made in the course of an attorney-client relationship.'" *County of Los Angeles v. Superior Court*, 235 Cal.App.4th at 1174. Thus, the California Court of Appeal concluded the defendant's billing records were protected by the attorney-client privilege, because there was no dispute about the defendant's *prima facie* showing, and the records qualified as "confidential communications between attorney and client within the meaning of Evidence Code Section 952." *Id.* at 1175.

///

As defendant points out, "the vast majority" of the communications listed on defendant's privilege log "were created after the commencement of the dispute between plaintiff and [defendant] in 2006."[5] [Doc. No. 196, at p. 27.] "Once there was a legal dispute between plaintiff and [defendant], it is far from surprising or 'suspicious' that [defendant's] employees sought legal advice from [defendant's] attorneys (both in-house and external counsel) about issues relating to plaintiff." [Doc. No. 196, at p. 27.] It is also not surprising or suspicious that defendant initially withheld and then produced documents related to the retention of security personnel around the time the parties' land dispute commenced. On the one hand, these documents appear to relate to the parties' land dispute, and the employees who distributed the communications could have done so as part of efforts to implement the advice of attorneys with respect to the land dispute. Since California law defines attorney-client privileged communications broadly, it is at least arguable that all of the exhibits plaintiff submitted with the Joint Motion could have been withheld by defendant as privileged. On the other hand, the information transmitted in these e-mails only appears to have a superficial relevance to the parties' land dispute and could, therefore, qualify as non-privileged business communications. In other words, these communications appear to fall into a gray area under current case law. As a result, it is not surprising or suspicious that defendant withheld these documents as privileged and then later produced them.

Based on the foregoing, this Court concludes that plaintiff has not submitted enough evidence to meet his burden of establishing that the attorney-client privilege does not apply to the documents listed on defendant's privilege log. As noted above, defendant submitted enough evidence to support a *prima facie* claim of attorney-client

---

[5] The Second Amended Complaint alleges that defendant executed a "sham" purchase agreement for the land in question on January 31, 2006 and then presented "knowingly false documents" to the Mexican government as proof of ownership of the land so that it could obtain the permit to operating its LNG Plant. [Doc. No. 34, at pp. 8-9.] Defendant then allegedly used "unlawful self-help" to "forcibly evict[]" plaintiff from the land. [Doc. No. 34, at p. 9.]

10cv1513-CAB(KSC)

privilege as to the documents listed on the privilege log. Plaintiff has not offered anything more than speculation that defendant is withholding many documents even though there is "no colorable claim of privilege whatsoever. . ." [Doc. No. 196, at p. 2.] In addition, as outlined above, the Court finds that plaintiff did not satisfy the meet and confer requirements as to each and every challenged entry on the privilege log before initiating the instant Joint Motion.

### D. *In Camera Review.*

Plaintiff also argues that some or all of the documents on defendant's privilege log should be reviewed *in camera* by the Court or by a special master to determine whether they have been properly withheld. [Doc. No. 196, at pp. 7-8.] Once again, however, California law does not support plaintiff's argument.

Subject to certain exceptions, California law provides that a judicial officer "may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege. . . ." Cal. Evid. Code § 915(a). "[W]hile the prohibition of Evidence Code Section 915 is not absolute in the sense that a litigant may still have to reveal *some* information to permit the court to evaluate the basis for claim of privilege, it does not follow that courts are free to ignore the section's prohibition and demand *in camera* disclosure of the allegedly privileged information itself for this purpose." *Costco v. Superior Court*, 47 Cal.4th at 737 (internal citation omitted). In ruling on a claim or privilege, trial courts are generally limited to evaluating information such as whether the privilege is actually held by the person asserting it; whether an attorney-client relationship existed at the time a confidential communication was made; whether the client intended the communication to remain confidential; and whether the communication came from the client. *Id.* at 737.

As outlined above, these basic facts are not in dispute, and defendant has submitted enough information to establish a *prima facie* claim of attorney-client privilege. Plaintiff has not met his burden to establish that the attorney-client privilege does not apply. Under these circumstances, "courts are not free to ignore [Section

10cv1513-CAB(KSC)

915's] prohibition and demand *in camera* disclosure of the allegedly privileged information itself" to evaluate the basis for the claim. *Id.* Therefore, this Court must deny plaintiff's request to review some or all of the documents on defendant's privilege log *in camera* to determine whether defendant's attorney-client privilege claims are valid.

### E. *Crime Fraud Exception.*

Plaintiff argues that the Court should conduct an *in camera* review of documents listed on defendant's privilege log, because the crime fraud exception to the attorney-client privilege applies. According to plaintiff, he has reason to believe that many of the documents listed on defendant's privilege log fall within the crime-fraud exception to the attorney-client privilege. [Doc. No. 196, at pp. 18-20.] In support of this argument, plaintiff refers the Court to the allegations in the Second Amended Complaint that defendant engaged in a pattern of unlawful and illegal conduct, including the malicious prosecution of plaintiff in order to seize his property. [Doc. No. 196, at p. 19.]

Plaintiff also refers to the fact that defendant's privilege log includes "hundreds of communications" about plaintiff and Lot A-3. [Doc. No. 196, at p. 19.] Plaintiff then speculates that many of the communications listed on defendant's privilege log include evidence that defendant "likely engaged the advice of its in-house counsel as well as outside lawyers" in a "multitude of acts involving fraud, deceit, and criminal conduct." [Doc. No. 196, at pp. 7, 19.] As a result, plaintiff contends that the Court should undertake an *in camera* review of "every document" withheld by defendant based on the attorney-client privilege. [Doc. No. 196, at p. 19.]

California Evidence Code Sections 956 through 962 "enumerate eight exceptions to the attorney-client privilege." *Palmer v. Superior Court*, 231 Cal.App.4th 1214, 1227 (2014). "Where none of these exceptions apply, 'the privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' [Citation]" *Id.* at 1227, citing *Costco v. Superior*

10cv1513-CAB(KSC)

*Court*, 47 Cal. 4th at 732. The crime-fraud exception to the attorney-client privilege is codified at California Evidence Code Section 956. Section 956 states as follows: "There is no [attorney-client] privilege . . . if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." Cal. Evid. Code § 956. "This is a very limited exception to the privilege." *Geilim v. Superior Court*, 234 Cal.App.3d 166, 175 (1991). The proponent of the exception has the burden of proving the existence of crime or fraud. *Id.* "[M]ere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact." *BP Alaska Exploration Inc. v. Superior Court*, 199 Cal.App.3d 1240, (1988).

For the exception to apply, the proponent must make a *prima facie* showing that an attorney was retained and utilized to commit a crime or fraud and that privileged material is "factually related" to the subject matter of the crime or fraud. *BP Alaska v. Superior Court*, 199 Cal.App.3d at 1262, 1268. A *prima facie* showing is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence. In other words, evidence from which reasonable inferences can be draw to establish the fact asserted, *i.e.*, the fraud." *Id.* at 1262. Evidence Code Section 915 does not permit an *in camera* review of attorney-client privileged materials to rule on the crime-fraud exception to the attorney-client privilege. *Id. See also U.S. v. Zolin*, 491 U.S. 554, 574-575 (1989) (stating that under federal common law "*in camera* review may be used to determine whether allegedly privileged attorney-client communications fall with the crime-fraud exception" but "before the district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. . . . [T]he threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.").

Here, plaintiff has not made a *prima facie* showing that the crime fraud exception applies. In support of his argument, plaintiff cites only his own speculation and the

allegations in his Second Amended Complaint. There is no actual evidence from which the Court could reasonably infer that defendant retained and utilized any attorney to commit a crime or fraud. Nor is there any evidence indicating that any privileged material could be factually related to the subject matter of any alleged crime or fraud. Therefore, the Court finds that the crime fraud exception to the attorney-client privilege does not apply and that an *in camera* review of defendant's privileged documents is therefore prohibited by California Evidence Code Section 915.

## F. *Advice of Counsel Defense.*

Based on an excerpt from the deposition of Darcel Hulse, President and CEO of Sempra LNG, plaintiff claims that defendant intends to assert advice of counsel as a defense in this action. According to plaintiff, Mr. Hulse's testimony shows that defendant has "implicitly waived" the attorney-client privilege by relying on advice of counsel as a defense and therefore cannot withhold documents based on the attorney-client privilege. Given defendant's alleged waiver of the attorney-client privilege, and the alleged deficiencies in plaintiff's privilege log discussed above, plaintiff contends that *in camera* review of the documents on defendant's privilege log is warranted. [Doc. No. 196, at pp. 20-23.]

In his deposition, Mr. Hulse testified that title searches were performed for all of the land that was acquired to build the LNG Plant, that the title searches were performed by the legal department and/or outside counsel, and that acquiring the land "was pretty much in the hands of the legal team." [Doc. No. 196, at pp. 21-22.] Mr. Hulse also testified that he relied on the legal team to make recommendations "about what litigation strategies were employed." [Doc. No. 196, at p. 22.] In addition, when defendant was asked in interrogatories to identify individuals with knowledge about the allegations in the Second Amended Complaint, defendant named several attorneys. [Doc. No. 196, at p. 22.]

Under California law, there is an implied waiver of the attorney-client privilege if the client deliberately injects the advice of counsel into a case and specifically puts

10cv1513-CAB(KSC)

into issue "the decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters." *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 1053 (1987). Waiver is established based on proof that 'the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action.' [Citation omitted.]" *Wellpoint v. Superior Court*, 59 Cal.App.4th at 128. For example, if an employee files an action against an employer alleging the employer knew about but failed to correct a hostile work environment, and the employer elects to defend the action by showing it investigated an employee's complaint and took appropriate corrective actions, the adequacy of the employer's investigation is "directly at issue." *Id.* If the investigation was conducted by an attorney, the employer "cannot stand on the attorney-client privilege or the work product doctrine to preclude a thorough examination of the adequacy. The defendant cannot have it both ways. If it chooses this course, it does so with the understanding that the attorney-client privilege and the work product doctrine are thereby waived." *Id.*

"[S]ection 915 prohibits disclosure of information claimed to be privileged in order to determine if a communication is privileged. But after the court has determined the privilege is waived or an exception applies generally, the court to protect the claimant's privacy may conduct or order an *in camera* review of the communication at issue to determine if some protection is warranted notwithstanding the waiver. . . ." *Costco v. Superior Court*, 47 Cal.4th at 740.

In the Joint Motion, defendant has expressly stated that it has not pled or otherwise asserted advice of counsel as a defense in this action. [Doc. No. 196, at p. 31.] The statements made in Mr. Hulse's deposition are inconclusive on this point and are not enough to prove that defendant intends to rely on advice of counsel as a defense to the allegations in plaintiff's Second Amended Complaint. As a result, there is insufficient evidence at this time to show defendant has deliberately injected an advice of counsel defense into this case. Therefore, there is no basis for the Court to conclude

that defendant has impliedly waived the attorney-client privilege or that *in camera* review of defendant's privileged documents would be appropriate under California law.

### *III.* *Work Product.*

Plaintiff argues that defendant has not satisfied its burden of establishing that the work product doctrine is applicable to numerous documents listed on the privilege log. As to numerous documents listed on defendant's privilege log, plaintiff claims that the descriptions are too "vague" and "generic" to show that the work product doctrine is applicable. [Doc. No. 196, at pp. 16-17.] For example, plaintiff contends that the following description of Document No. 147 is insufficient: The description of Document No. 147 reads as follows: "Articles with handwritten notes in litigation binder of Raul Smith reflecting mental impression of attorney gathered by attorney as research for use in litigation involving [plaintiff]." [Doc. No. 197-2, at p. 30.] Plaintiff does not explain why he believes this or any of the other document descriptions are too vague or generic. Rather, plaintiff simply argues that the Court should conduct an *in camera* review of all documents being withheld as work product because of the alleged "deficiencies" in defendant's privilege log. [Doc. No. 196, at p. 22.]

"In California, an attorney's work product is protected by statute."[6] *Coito v. Superior Court*, 54 Cal.4th 480, 485 (2012). Work product is entitled to "two levels of protection . . .–absolute protection and qualified protection." *Citizens for Ceres v. Superior Court*, 217 Cal.App.4th 889, 911 (2013). In this regard, California Code of Civil Procedure Section 2018.030 states as follows:

> (a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.

---

[6] There is some authority indicating that federal law applies to matters of attorney work product because it "involves a procedural consideration and not application of a substantive privilege." *California Earthquake Auth. v. Metro. West Sec.*, 285 F.R.D. 585, 589 (2012). However, since it is codified in California and sometimes referred to by California courts as the "work product privilege," this Court will assume for purposes of analysis that California law applies as provided in Federal Rule of Evidence 501. *See, e.g., Citizens for Ceres*, 217 Cal.App.4th at 911-912; *Melendrez v. Superior Court*, 215 Cal.App.4th 1343, 1353 (2013).

(b)     The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice.

Cal. Code Civ. Proc. § 2018.030.

"The attorney is the holder of this privilege." *Citizens for Ceres*, 217 Cal.App.4th at 911. The purpose of the work product privilege is to: "(a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts." Cal. Code Civ. Proc. § 2018.020.

Unlike the attorney-client privilege, there is no statute in California specifically prohibiting *in camera* review of documents to determine whether the work product privilege applies. Nor is there anything to indicate a party is entitled to an *in camera* review without a showing of need. The California Supreme Court has indicated that *in camera* review may be appropriate "if necessary" to determine whether a particular document is entitled to qualified or absolute protection. *Coito*, 54 Cal.4th at 502. In other words, it might be appropriate to conduct an *in camera* review after an attorney resisting discovery makes "a preliminary or foundational showing that answering the [discovery request] would reveal the attorney's tactics, impressions, or evaluation of the case, or would result in opposing counsel taking undue advantage of the attorney's industry or efforts." *Id.* If it is determined that the document at issue is only entitled to qualified protection under the work product privilege, it would be subject to disclosure "if the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." Cal. Code Civ. Proc. § 2018.020.

Based on the fact and circumstances presented, however, the Court finds that an *in camera* inspection of documents being withheld by defendant under the work

product privilege is not necessary. Plaintiff has not explained why he believes defendant's document descriptions on the privilege log are too vague or generic to evaluate defendant's work product claims. In addition, as noted above, plaintiff failed to meet and confer with opposing counsel about each of the challenged entries before initiating the Joint Motion with the Court. A review of the challenged entries on the privilege log indicates defendant has satisfied its burden to provide document descriptions that include enough factual information for plaintiff to evaluate the merits of defendant's work product claims. Many of the challenged entries have also been withheld based on the attorney-client privilege, and, as outlined above, attorney-client privileged communications are not subject to *in camera* inspection "in order to rule on the claim of privilege. . . ." Cal. Evid. Code § 915(a). Accordingly, the Court finds it unnecessary to conduct an *in camera* review of numerous documents being withheld by defendant under the work product privilege based on alleged "deficiencies" in defendant's privilege log. [Doc. No. 196, at p. 22.]

### *Conclusion*

Based on the foregoing, plaintiff's request for an order requiring an *in camera* review of some or all of the documents on defendant's privilege log is DENIED. Plaintiff is ordered to destroy any and all copies of Bates No. SEMPRA_0020601 and to provide written confirmation of this destruction to defense counsel within ten days of the date of this order. Plaintiff is also prohibited from using, disclosing, or disseminating Bates No. SEMPRA_0020601 at any time for any purpose.

IT IS SO ORDERED.

Date: ___*June 10*___, 2015

KAREN S. CRAWFORD
United States Magistrate Judge

10cv1513-CAB(KSC)