1                   UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4    RAMON EUGENIO SANCHEZ RITCHIE,  )
                                     )
5                    PLAINTIFF,      )
                                     )
6         VS.                        )  CASE NO. 10CV1513-CAB
                                     )
7    SEMPRA ENERGY, A CALIFORNIA     )  SAN DIEGO, CALIFORNIA
     CORPORATION,                    )
8                                    )  MARCH 16, 2012
                     DEFENDANT.      )
9

10               REPORTER'S TRANSCRIPT OF PROCEEDINGS
                             MOTION HEARING
11           BEFORE THE HONORABLE CATHY ANN BENCIVENGO
                 UNITED STATES DISTRICT COURT JUDGE
12

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:

15        KIRK B. HULETT
          DEREK EMGE
16        HULETT HARPER STWEART LLP
          525 "B" STREET, SUITE 760
17        SAN DIEGO, CALIFORNIA 92101

18   FOR THE DEFENDANT:

19        MARK C. ZEBROWSKI
          MORRISON & FOERSTER LLP
20        12531 HIGH BLUFF DRIVE, SUITE 100
          SAN DIEGO, CALIFORNIA 92130
21

22   COURT REPORTER:          MAURALEE A. RAMIREZ
                              OFFICIAL COURT REPORTER
23                            UNITED STATES DISTRICT COURT
                              333 WEST BROADWAY, SUITE 420
24                            SAN DIEGO, CALIFORNIA 92101
                              TEL.  619-994-2526
25                            ORDERTRANSCRIPT@GMAIL.COM

1          SAN DIEGO, CALIFORNIA; FRIDAY, MARCH 16, 2012; 2:30P.M.

2              *THE CLERK:*  YOUR HONOR, WE ARE BACK ON THE RECORD AS

3    TO MATTER NO. 4 ON OUR CALENDAR, 10CV1513-CAB-WVG, RITCHIE

4    VERSUS SEMPRA ENERGY.  WE ARE ON CALENDAR FOR A MOTION HEARING.

5              AND IF I COULD HAVE COUNSEL PLEASE STATE THEIR

6    APPEARANCES, BEGINNING WITH PLAINTIFF'S COUNSEL.

7              *MR. HULETT:*  GOOD AFTERNOON, YOUR HONOR.  KIRK HULETT

8    FOR MR. RITCHIE.  I ALSO WITH MY TODAY IS MY COLLEAGUE DEREK

9    EMGE.

10             *THE COURT:*  THANK YOU, MR. HULETT.

11             *MR. ZEBROWSKI:*  MARK ZEBROWSKI FOR SEMPRA ENERGY.

12             *THE COURT:*  THANK YOU, MR. ZEBROWSKI.  AS A

13   PRELIMINARY MATTER, AMONGST THE MANY CASES WE HAVE GOT, WE HAVE

14   BEEN TRYING VERY HARD TO GET OUR ARMS AROUND AND KIND OF CAME

15   IN THE MIDDLE OF A BUNCH OF STUFF, AND SO WE HAVE REVIEWED MUCH

16   OF THE DOCKET IN TERMS OF THE PRIOR MOTIONS, THE PRIOR

17   COMPLAINTS, THE MOTIONS TO DISMISS, THE ORDERS BY THE COURT,

18   THE ORDERS THAT JUDGE SAMMARTINO ISSUED.

19             THIS WAS ORIGINALLY SCHEDULED ON A DEFENDANT'S MOTION

20   REGARDING RULE 11 SANCTIONS, BUT IN LOOKING AT THAT, WHICH

21   CAUSED US TO LOOK AT THE COMPLAINT, WE DECIDED TO PUT

22   EVERYTHING ON FOR, AT LEAST, ARGUMENT TODAY TO TRY TO SEE IF

23   ANYTHING SORT OF ECLIPSED OTHER THINGS.

24             I WILL START, HOWEVER, WITH THE MOTION REGARDING

25   SANCTIONS AND ASK MR. ZEBROWSKI ON BEHALF OF THE DEFENDANTS,

1  AND PERHAPS YOU CAN GIVE ME SOME -- MAYBE I'M MISSING

2  SOMETHING, BUT I'M KIND OF MISSING THE SIGNIFICANCE OF WHY THIS

3  PARTICULAR FACTUAL ELEMENT REGARDING THE SETBACK AND THE

4  ALLEGATIONS THAT AT LEAST IN 2001, THERE WAS A REQUIREMENT FOR

5  SEMPRA WITH THIS PROPERTY TO HAVE -- THE POTENTIAL TO HAVE THE

6  PLAINTIFF'S PROPERTY, BECAUSE IT FELL WITHIN THE SETBACK

7  PROVISIONS, AND BY THE END OF JUNE 2005, THAT SETBACK PROVISION

8  OR REQUIREMENT MAY HAVE BEEN LEGALLY REMOVED.  BUT IN THE

9  CONTEXT OF THE COMPLAINT, THERE SEEMS TO AT LEAST HAVE BEEN

10  SOME HISTORICAL BASIS TO ARGUE IT WAS NEEDED AT ONE TIME.  AM I

11  MISSING SOMETHING THERE?

12       MR. ZEBROWSKI:  NO, I THINK THAT'S CORRECT, YOUR

13  HONOR.  BUT WHEN WE FAST-FORWARD TO THE RELEVANT TIME PERIOD

14  WHEN THINGS ACTUALLY HAPPENED HERE, SO THERE'S THIS IDEA OF

15  BUILDING THIS ENERGY FACILITY, THERE IS A SETBACK REQUIREMENT

16  THAT MAY REQUIRE ACQUIRING OTHER PARCELS AROUND THERE.  BY JUNE

17  OF 2005, THAT SETBACK REQUIREMENT IS ELIMINATED, AND IT'S NOT

18  UNTIL JANUARY OF 2006 THAT SEMPRA ENERGY ALLEGEDLY THEN ENTERS

19  INTO A SHAM PURCHASE AGREEMENT AND PRESENTS IT TO THE MEXICAN

20  GOVERNMENT AND DOES ALL THESE OTHER THINGS ALLEGEDLY BECAUSE IT

21  MUST HAVE THESE THIS PROPERTY TO SATISFY THE SETBACK

22  REQUIREMENT.

23       SO BY THE TIME SEMPRA DID ANYTHING RELEVANT TO THE

24  LAYOUT, THE SETBACK WAS NO LONGER THERE, YET IT IS THE LYNCHPIN

25  ALLEGATION IN THE LAWSUIT, GEE, OF COURSE, YOU GUYS DID ALL

1  THESE THINGS TO ME AND YOU STOLE MY PROPERTY AND HAD ME

2  ARRESTED AND ALL THESE OTHER THINGS BECAUSE YOU HAD TO HAVE MY

3  PROPERTY IN ORDER TO LEGALLY OPERATE YOUR PLANT.  AND IT'S JUST

4  NOT TRUE.

5       AND WE'LL BE IN HERE -- I THINK IT ALSO STARTS TO TIE

6  INTO WHEN I READ THE RULE 11 OPPOSITION AND THE ACT OF STATE

7  DOCTRINE, WHICH IS PART OF OUR MOTION TO DISMISS, WHAT'S GOING

8  ON IN MEXICO, AND ARE WE GOING TO SIT IN THIS COURT AND ARGUE

9  ABOUT WHAT'S GOING ON IN MEXICO, AND WORSE THAN THAT, ARE WE

10  GOING TO SIT IN THIS COURT WITH ALLEGATIONS THAT ARE CONTRARY

11  TO WHAT'S GOING ON IN MEXICO.

12       *THE COURT:*  THAT'S A BIGGER ISSUE, AND THAT'S THE

13  MOTION TO DISMISS THAT THE COURT WANTS TO ADDRESS BECAUSE WE

14  HAVE SERIOUS CONCERNS ABOUT WHETHER THERE WOULD BE POTENTIALLY

15  FINDINGS IN THIS COURT THAT COULD BE CONTRARY TO FINDINGS TO

16  MEXICO IF THE ENTIRE QUESTION OF OWNERSHIP AND POSSESSION AND

17  TRESPASS IS STILL IN ONGOING LITIGATION THERE.

18       BUT I GOT THE SENSE, PERHAPS, AND MAYBE IT'S BECAUSE

19  YOU'VE BEEN LITIGATING THIS FOR SO LONG, YOU OVERREAD THE

20  COMPLAINT IN A WAY THAT THE COURT ON ITS FACE REALLY DIDN'T

21  READ IT AND APPRECIATE IT.  BECAUSE IN PARAGRAPH 20, WHICH IS

22  THE ONLY PLACE WHERE THERE IS A SPECIFIC REFERENCE TO THE

23  SETBACK REQUIREMENTS, THE PLAINTIFF IS TALKING ABOUT A TIME

24  PERIOD SPECIFIC TO 2001 WHEN HE ALLEGES THAT ON BEHALF OF

25  SEMPRA SOMEONE CAME TO SEE HIM TO NEGOTIATE PURCHASE OF THE

1   PROPERTY.  AND THEN THAT'S IN 20 AND 21, AND THEN IN 25 EVEN

2   STILL TALKING ABOUT JANUARY 2005 WHERE IT WOULD BE MY

3   UNDERSTANDING THAT ANY REFERENCE THERE TO NEED MIGHT STILL

4   RELATE TO THE SETBACK PROVISIONS.

5        AND IT GOES ON AND ON.  AND THEN 23, IT'S IN OR ABOUT

6   2005, AND SO IT'S KIND OF NOT NECESSARILY AFTER JULY.  BUT AT

7   SOME POINT, THE FACTS THAT ARE ALLEGED CERTAINLY WOULD SUPPORT

8   A GOOD FAITH ARGUMENT, I THINK, ON BEHALF OF THE PLAINTIFF THAT

9   THERE WAS AN ONGOING ACTIVITY ON THE PART OF SEMPRA TO GET THIS

10  PROPERTY.  IF YOU DIDN'T NEED IT FOR THE SETBACK, YOU NEEDED IT

11  FOR SOMETHING, BECAUSE OTHERWISE, WHY WOULD YOU HAVE GONE TO

12  THE ALLEGED -- AND, AGAIN, THESE ARE ALLEGATIONS, EXTREMES TO

13  REMOVE HIM FROM THE PROPERTY AND TAKE IT?

14        MR. ZEBROWSKI:  RIGHT.  AND I THINK OF THAT ISSUE A

15  LITTLE BIT LIKE I WOULD THINK OF THE MOTIVE FOR THE MURDER

16  CASE, WELL, IT WAS THE INSURANCE POLICY.  WELL, MAYBE THERE WAS

17  AN INSURANCE POLICY FOUR YEARS EARLIER, AND MAYBE IT EXPIRED

18  TWO YEARS BEFORE THE DEATH.  WELL, THEN WHY ARE YOU CONTINUING

19  TO CLAIM THAT I KILLED THIS PERSON FOR THE INSURANCE?  THAT'S

20  REALLY THE WAY I WAS LOOKING AT THIS.

21        YES, WE CAME AND TALKED TO YOU IN 2001 IN ANTICIPATION

22  OF A SETBACK REQUIREMENT, BUT WE'RE NOT GETTING SUED FOR

23  APPROACHING AND TALKING TO YOU IN 2001 TO TRY TO BUY YOUR

24  PROPERTY.  WE'RE GETTING SUED FOR THINGS WE STARTED TO DO IN

25  2006.  THAT'S WHY WE BROUGHT THE MOTION, YOUR HONOR.  WE TRIED

1  TO GET THAT REMOVED, AND IF WE GO INTO ANOTHER ROUND OF

2  PLEADING, WE HOPE IT'S REMOVED THEN.  IF THE CASE COMES TO AN

3  END HERE TODAY, OBVIOUSLY IT'S OF MUCH LESS CONCERN.

4      *THE COURT:*  WELL, OKAY, THANK YOU.

5      LET ME HEAR FROM THE PLAINTIFF ON THIS ISSUE.

6      *MR. HULETT:*  WELL, I THINK YOU'VE IDENTIFIED WHAT WE

7  TRIED TO ARTICULATE IN OUR RESPONSE IN WHICH WE PLED IN THE

8  COMPLAINT.  SEMPRA ADMITS IN THEIR OWN DOCUMENTS, WHICH WERE

9  SUBMITTED TO YOU IN CAMERA, THAT THEY NEED THE DOCUMENTS FOR

10  THE LNG PLANT, AND THEY ALSO ADMIT THAT THEY NEEDED IT BEFORE

11  THEY GOT THESE ALLEGED AMENDMENTS IN 2005.  AND AS PLED IN THE

12  COMPLAINT, WE'RE NOT TRYING TO TRICK ANYBODY.

13      WE PLEAD IN THE COMPLAINT THAT THAT LICENSE IS THE

14  SUBJECT OF THE DISPUTE AS TO WHETHER IT WAS PROCURED PROPERLY

15  OR NOT.  I MEAN, THE MEXICAN GOVERNMENT CONTINUES TO

16  INVESTIGATE WHETHER THAT LICENSE IS VALID OR NOT VALID.  AND

17  SEMPRA KNEW IN 2005, 2006, AND EVEN TODAY, KNOWS THAT THE

18  VIABILITY OF THAT LICENSE AMENDMENT CONTINUES TO PUT THEM AT

19  RISK OF BEING SHUT DOWN.

20      *THE COURT:*  OKAY.  SO LET'S MOVE ON WITH THAT AS A

21  POINT, BECAUSE THAT'S A CONCERN THAT I HAVE IF PART OF THE

22  ALLEGATION IS THAT THE LICENSE THAT NO LONGER REQUIRES THE

23  SETBACKS WAS FRAUDULENT OR UNLAWFULLY OR IMPROPERLY OBTAINED,

24  ARE YOU ASKING THIS COURT TO MAKE A DETERMINATION THAT THE

25  MEXICAN GOVERNMENT DID SOMETHING ILLEGAL WITH SEMPRA TO GET RID

```
1    OF THAT SETBACK REQUIREMENT?
2           MR. HULETT:  NO.
3           THE COURT:  BUT WOULDN'T THAT ESSENTIALLY BE YOUR
4    FINDING --
5           MR. HULETT:  NO.
6           THE COURT:  -- THAT YOUR FINDING THAT THEIR NEED THAT
7    THEY WERE ILLEGALLY OPERATING THE PLANT, WOULDN'T WE HAVE TO
8    MAKE A FINDING OF THAT NATURE?
9           MR. HULETT:  ABSOLUTELY NOT.
10          THE COURT:  WELL, THEN HOW DO YOU GET THERE?  I MEAN,
11   IF YOU AGREE THAT IN JULY OF 2005 THAT REQUIREMENT NO LONGER
12   EXISTED, I'M NOT SAYING IT COULDN'T BE OTHER BUSINESS
13   NECESSITIES THAT MIGHT HAVE INSPIRED OR ENCOURAGED OR MADE
14   SEMPRA WANT, DESIRE, NEED, COVET, WHATEVER THE PROPERTY AT
15   ISSUE, BUT IF THAT LEGAL NECESSITY BASED ON THE SETBACK YOU
16   AGREE AS OF JULY 2005 DID NOT EXIST ANYMORE, THEN WE'RE NOT
17   GOING TO DISCUSS IT ANYMORE.  THAT'S JUST GOING TO BE A FACT IN
18   THE CASE, AND THAT'S GOING TO BE TRUE.  AND THIS COURT IS NOT
19   GOING TO UNDO THAT.  WE'RE NOT GOING TO LOOK AT THAT --
20          MR. HULETT:  OF COURSE NOT.
21          THE COURT:  -- AND SAY MEXICO DID SOMETHING WRONG
22   THERE.
23          MR. HULETT:  OF COURSE NOT.
24          THE COURT:  OKAY.
25          MR. HULETT:  WE WOULD NEVER PRETEND TO SUGGEST THAT
```

1    WOULD BE APPROPRIATE FOR THIS COURT TO ENTERTAIN.

2         THE COURT:  BUT THERE WOULDN'T BE ANY TESTIMONY ABOUT

3    THAT, THERE WOULDN'T BE ANY EVIDENCE ABOUT IT, THERE WOULDN'T

4    BE ANY ALLEGATIONS THAT THERE WERE SOME SORT OF BRIBES PAID OR

5    BAD BEHAVIOR.

6         MR. HULETT:  FOR PURPOSES OF PROCURING THAT LICENSE,

7    THAT'S TRUE.  THIS REALLY, AS I SAID IN OUR PAPERS, SEMPRA'S

8    NEED OR LACK OF NEED FOR THE PROPERTY IS REALLY SUPERFLUOUS TO

9    THE CLAIMS THAT ARE BEING ASSERTED.  WE DON'T HAVE TO PROVE

10   SPECIFIC INTENT WITH RESPECT TO THE TRESPASS.

11        IT'S CLEAR WHY THEY DID WHAT THEY DID, BUT WE DON'T

12   HAVE TO PROVE TO THE JURY OR TO THE TRIER OF FACT THAT SEMPRA

13   OCCUPIED THIS LAND ILLEGALLY FOR ANY PURPOSE, FOR ANY MOTIVE.

14   IT MIGHT GO TO THE ISSUE OF DAMAGES AS TO WHETHER THEY USED THE

15   PROPERTY FOR PURPOSES OF OPERATING ITS FACILITY, DID THEY USE

16   IT FOR PROFITABLE OPERATIONS AND THINGS OF THAT SORT.  THAT MAY

17   BE RELEVANT, BUT IT HAS NOTHING TO DO WITH WHETHER IT'S A

18   TRESPASS CLAIM OR NOT.

19        THE COURT:  ALL RIGHT.  THE COURT WILL ISSUE AN ORDER

20   ON THE RULE 11 SANCTIONS, BUT THEY'RE GOING TO BE DENIED.  BUT

21   I THINK WITH REGARD TO WHETHER THERE IS AN OPPORTUNITY TO AMEND

22   AGAIN, AND I'M NOT CERTAIN THAT'S GOING TO HAPPEN, THE

23   PLAINTIFF WOULD BE ADVISED IN FUTURE PLEADINGS THAT IT'S CLEAR

24   THERE IS NO ALLEGATION THAT WOULD SUGGEST ANY INTEREST ON THE

25   PART OF SEMPRA IN OBTAINING THE LAND AFTER JULY OF 2005 WAS TO

1    SATISFY THOSE SETBACK PROVISIONS, UNLESS YOU THINK THERE IS A

2    REASON HERE WHY THE COURT WOULD HAVE ANY BASIS FOR CHALLENGING

3    THE LEGALITY OF THAT.

4         AND AS WE'VE JUST DISCUSSED AND YOU'VE JUST

5    ACKNOWLEDGED, THIS COURT IS NOT GOING TO BE ASKED TO CHALLENGE

6    THE LEGALITY OF THE LICENSING THAT REMOVED THOSE SETBACK

7    REQUIREMENT.  SO IF YOU FEEL YOU NEED TO PLEAD OR ALLEGE GOING

8    FORWARD THAT THERE WAS A NECESSITY ON THE PART OF SEMPRA TO

9    OBTAIN THAT LAND, IT CAN'T BE BASED ON THAT LEGAL OBLIGATION.

10   IT HAS TO BE BASED ON SOME OTHER -- AND I DON'T KNOW THAT YOU

11   EVEN NEED TO ALLEGE NEED, WHICH IS WHY THIS JUST SEEMS TO A

12   TEMPEST IN THE TEAPOT.

13        *MR. HULETT:*  AND THE ONLY REASON I STOOD BACK UP IS SO

14   THERE WOULDN'T BE CONFUSION DOWN THE LINE.  I THINK THAT IT

15   WOULD BE FAIR FOR US TO SUGGEST THAT SEMPRA CONTINUES TO

16   PERCEIVE A NEED FOR THAT PROPERTY BECAUSE THE POTENTIAL THAT

17   LICENSE MIGHT NOT BE ULTIMATELY SUSTAINED.  I THINK THAT IS NOT

18   QUESTIONING WHETHER THE LICENSE IS VALID OR INVALID, BUT IT

19   DOES SUPPORT IF SEMPRA BELIEVED, BECAUSE OF CHALLENGES OR

20   WHATNOT, THAT TO ELIMINATE THE RISK THAT WOULD INURE TO THEIR

21   DETRIMENT, HUGE DETRIMENT, THAT THEY WANTED THIS PROPERTY TO

22   ELIMINATE THAT RISK, I THINK THAT WOULD BE THE FAIR THING TO

23   PRESENT TO THE TRIER OF FACT.

24        *THE COURT:*  AND THAT WOULD BE A BUSINESS STRATEGY AS

25   OPPOSED TO A LEGAL NECESSITY.

1          *MR. HULETT:*  CORRECT.

2          *THE COURT:*  YOUR ARGUMENT IS, TODAY IT'S NOT REQUIRED

3    I HAVE THIS, BUT THAT CHANGED ONCE, AND IT COULD CHANGE AGAIN,

4    SO IT WOULD IN OUR BUSINESS INTEREST TO LOCK THIS IN AND NOT

5    HAVE THIS BE AN ISSUE LATER, AND YOU CAN ALLEGE THAT IN GOOD

6    FAITH.  THEN THAT'S DIFFERENT THAN SAYING THAT IT WAS NOT A

7    LEGALLY PERMISSIBLE CHANGE AND THAT YOU'RE CHALLENGING THE

8    LEGALITY OF IT.

9          *MR. HULETT:*  I THINK YOU HAVE READ THE COMPLAINT

10   ACCURATELY.  WE'VE NEVER SAID THAT THE 2005 LICENSE DOESN'T

11   EXIST.

12         *THE COURT:*  ALL RIGHT.  I WANT TO MOVE ON TO THE

13   NOTION DISMISS.  AND THERE'S A LOT GOING ON HERE.  WE'VE READ

14   OBVIOUSLY THE REVISED SECOND AMENDED COMPLAINT THAT

15   ADDRESSED -- THAT ATTEMPTED TO ADDRESS THE ISSUES RAISED BY

16   JUDGE SAMMARTINO IN HER MOTION TO DISMISS, SPECIFICALLY WITH

17   REGARD TO CALIFORNIA CIVIC CODE SECTION 47(B) AND THE

18   LITIGATION PRIVILEGE, AND I'M LOOKING FOR INFORMATION HERE NOW

19   TO HELP US GET TO A DECISION ON WHETHER OR NOT YOU'VE OVERCOME

20   THE CONCERNS THAT JUDGE SAMMARTINO HAD PREVIOUSLY RAISED.  AND

21   IT APPEARS THAT THE SIGNIFICANT CHANGE IN THE LANGUAGE OF THE

22   COMPLAINT IS THAT YOU'RE NOW SAYING THAT THE ORDER, WHICH YOU

23   CHARACTERIZE AS A PROVISIONAL ORDER, THAT THE DEFENDANTS

24   OBTAINED DID NOT PROVIDE OR ALLOW THEM TO HAVE SELF-HELP TO

25   REMOVE MR. RITCHIE FROM THE PROPERTY IN 2006.

1           *MR. HULETT:*  2006, CORRECT.

2           *THE COURT:*  AND SO THAT CAN'T COME WITHIN THE

3    PRIVILEGE BECAUSE THE ORDER DIDN'T ALLOW FOR THAT.  IS THAT A

4    FAIR ASSESSMENT?

5           *MR. HULETT:*  I DON'T THINK THAT -- I DON'T THINK THAT

6    THAT IS FUNDAMENTALLY THE CHANGE.  I THINK THAT IS A CHANGE,

7    BUT I THINK THE FUNDAMENTAL CHANGE IS THAT THE POINT UNDER

8    47(B) THAT JUDGE SAMMARTINO WAS ARGUING WAS THAT THEY WERE

9    PRIVILEGED TO PETITION THE GOVERNMENT, PETITION THE COURTS TO

10   GET AN ORDER SECURING POSSESSION OF THE LAND.  AND THAT ORDER

11   WAS DATED IN 2006, AND THE EXECUTION OF THAT ORDER IS PART OF

12   THE PRIVILEGED PROCESS.  IF YOU EXECUTE A COURT ORDER, THE

13   EXECUTION OF THAT ORDER WOULD BE CONSIDERED A PRIVILEGED

14   COMMUNICATION OR ACT.

15           AND I THINK WHEN WE FIRST PLED THIS CASE, THERE WERE

16   ASSERTIONS THAT WAS WITH THE ASSISTANCE OF MEXICAN OFFICIALS,

17   AND BECAUSE OF THAT ALLEGATION, THAT CAUSED THE JUDGE TO

18   BELIEVE THAT IT WASN'T SELF-HELP, BUT IT WAS RATHER ACTIONS OF

19   THE GOVERNMENT, AGAIN, ANOTHER PRIVILEGED ACTIVITY.

20           ALLEGATIONS LATER MATERIALIZED THAT THERE WERE BRIBES

21   PAID, AND THAT'S WHAT'S IN THE SECOND AMENDED COMPLAINT, THAT

22   GOVERNMENT OFFICIALS WERE BRIBED TO GO TO THE PROPERTY TO OUST

23   MY CLIENT.  AND THAT DOES TAKE IT OUT OF THE GOVERNMENT'S ACTS

24   AS A PRIVILEGED ACT.

25           BUT I THINK MORE FUNDAMENTALLY, MORE FUNDAMENTALLY

1    THAN ALL OF THAT IS, THE *CHACON* CASE, AND THAT CASE CAME DOWN

2    IN 2010, HERE IN CALIFORNIA COURT OF APPEALS.  WE CITE IT IN

3    OUR BRIEF.  AND BASICALLY THE DIFFERENCE IN THIS COMPLAINT FROM

4    THE ORIGINAL AND FIRST AMENDED COMPLAINT IS THAT THERE WAS AN

5    ORDER ENTERED IN MR. RITCHIE'S FAVOR, THE PLAINTIFF'S FAVOR IN

6    OCTOBER 2007, AND THAT ORDER ELIMINATED SEMPRA'S ENTITLEMENT TO

7    THE PRIVILEGE OF POSSESSION.

8         SO IN 2006, THERE WAS AN ORDER THIS PROVISIONAL ORDER,

9    WHICH I GUESS WOULD BE MORE AKIN TO AN INJUNCTION PROCEEDING IN

10   MEXICO TELLING SEMPRA THEY WERE ENTITLED TO THE PROPERTY.  THEN

11   WE HAD THIS SELF-HELP, AND, AGAIN, I WOULD LIKE TO MOVE PAST

12   THAT FOR NOW.  THEN THERE WAS LITIGATION CRIMINAL LITIGATION

13   THAT CULMINATED IN OCTOBER OF 2007 WITH THE COURT FINDING THAT

14   MR. RITCHIE WAS NOT CRIMINALLY LIABLE AND THAT, IN FACT, SEMPRA

15   WAS NOT THE LEGAL POSSESSOR OF THE PROPERTY AND THAT, THAT

16   EVENT IS LIKE THE *CHACON* EVENT.

17        THE *CHACON* EVENT WAS, THERE WAS INITIALLY AN ORDER

18   DIRECTING THE EVICTION.  THE TENANTS WERE EVICTED PURSUANT TO

19   THIS ORDER.  THE ORDER WAS PROVISIONAL.  THERE WAS A DATE BY

20   WHICH THE ORDER WOULD LAPSE.  AND ACCORDINGLY, ONCE THAT

21   TIMEFRAME WAS ELIMINATED, ESSENTIALLY THE PRIVILEGE, THE COURT

22   PRIVILEGE WAS TERMINATED BY A SUBSEQUENT LEGAL PRINCIPLE AND

23   LEGAL AUTHORITY, THE COURT FINDS THAT CONTINUED POSSESSION OF

24   THE PROPERTY BY A LANDLORD WAS NO LONGER A PRIVILEGED ACT UNDER

25   47(B).

1          AND THAT'S EXACTLY WHAT WE HAVE HERE.  WE HAVE A

2     SITUATION WHERE COURTS IN MEXICO GAVE POSSESSION TO SEMPRA.  WE

3     CONTEST THE VALIDITY OF THAT, BUT YOU DON'T HAVE TO RULE THAT.

4     WE'RE NOT ASKING FOR ANY RULINGS THAT THAT WAS AN ERRONEOUS

5     FINDING.  THEN IN OCTOBER OF '07, THERE WAS AN ORDER FROM THE

6     COURT FINDING MR. RITCHIE WAS THE LEGAL POSSESSOR THAT

7     TERMINATED SEMPRA'S ALLEGED PRIVILEGED POSSESSION OF THAT

8     PROPERTY, AND ALL ACTIONS TAKEN THEREAFTER BY SEMPRA WOULD

9     BECOME A TRESPASS.  I THINK THE *CHACON* CASE IS ON ALL FOURS.

10          AND THAT'S, I WOULD SAY, THE FUNDAMENTAL DIFFERENCE

11     BETWEEN THE FIRST AMENDED COMPLAINT AND THE SECOND AMENDED

12     COMPLAINT IS THAT FUNDAMENTAL FACT, AND NOT SO MUCH THE

13     FUNDAMENTAL FACT OF CHANGING THE ALLEGATIONS THAT THE MEXICAN

14     OFFICIALS WHO HAD UNIFORMS ON WERE, IN FACT, PAID TO BE THERE

15     BY SEMPRA.

16          *THE COURT:*  OKAY.  AND ON YOUR ANALYSIS THEN, IF THEY

17     HAD POSSESSION BY AN ORDER IN 2006, AND, AGAIN, WE'LL LOOK PAST

18     THE SELF-HELP ISSUE AND THE ACTS THEY TOOK THAT JUDGE

19     SAMMARTINO ALREADY FOUND WERE WITHIN THE SCOPE OF THAT ORDER,

20     BUT THEN SUBSEQUENTLY THERE WAS AN ORDER SAYING, NO, ACTUALLY

21     THE PROPERTY BELONGS TO MR. RITCHIE.  IS THAT SOMEHOW A NUNC

22     PRO TUNC KIND OF ORDER?  DOES THAT VOID?

23          IF WHAT THEY DID THEY DID WHILE THEY HAD POSSESSION

24     AND IN A GOOD FAITH BELIEF THEY HAD, AT LEAST, PRIVILEGED

25     POSSESSION, THEN WE'RE NOT GOING TO REACH BACK TO 2006 AND

1    CREATE LIABILITY FOR ANYTHING THAT HAPPENED BETWEEN 2006 AND

2    2007.  ARE WE STARTING THEN AT 2007 AND SAYING ACTS THAT

3    OCCURRED AFTER THE 2007 ORDER THAT RETURNED TO THE PROPERTY TO

4    MR. RITCHIE, THEN THEY BECAME THE TRESPASSERS, AND ANYTHING

5    THEY DID FROM THEN ON WOULD BE SUBJECT TO THIS ACTION?  YOU

6    CAN'T GO BACK AND UNDO WHAT THEY DID.

7         *MR. HULETT:*  CORRECT.  THE ANSWER TO YOUR QUESTION

8    DOES GO TO BACK TO YOUR FIRST QUESTION ABOUT THE SELF-HELP

9    ISSUE.  THAT ACTION ITSELF WOULD NOT BE A PRIVILEGED ACTION,

10   AND THAT OCCURRED IN 2006.  WE'RE NOT GOING TO CONTEST THE

11   PRIVILEGED NATURE OF THE 2006 ORDER OF THE COURT.  WE HAVE

12   ALLEGED HOW WE THINK THAT WAS PROCURED.

13        WE'VE ALLEGED ALL SORTS OF THINGS THAT JUDGE

14   SAMMARTINO BELIEVES ARE PRIVILEGED ACTS UNDER 47(B), AND SO WE

15   HAVE TAKEN THAT AND WE'VE TRIED TO PLEAD THAT THERE WERE ACTS

16   TAKEN BY SEMPRA, EVEN IN RELIANCE UPON THAT ORDER, THAT WERE

17   OUTSIDE THE PROPER EXECUTION AND PRIVILEGED EXECUTION OF THAT

18   ORDER.

19        AND THEN NOT ONLY THAT, BUT ALSO THAT IN OCTOBER OF

20   2007, EVEN THEIR ARGUMENT ABOUT BEING ENTITLED TO POSSESSION BY

21   PRIVILEGED PROCESS, THEY LOST THAT PRIVILEGE ONCE THE COURT

22   ORDERED POSSESSION DELIVERED TO MR. RITCHIE.  AND THEN FOR

23   THREE YEARS THEREAFTER, SEMPRA REFUSED TO GIVE POSSESSION TO

24   MR. RITCHIE.  AND AT EVERY STEP OF THE WAY FROM 2007 UNTIL 2010

25   WHEN SEMPRA WAS FORCIBLY EVICTED BY PUBLIC OFFICIALS BECAUSE OF

1    THEIR REFUSAL TO GIVE BACK THE PROPERTY VOLUNTARILY DURING THAT

2    ENTIRE PERIOD OF TIME, SEMPRA WAS IN POSSESSION DESPITE COURT

3    ORDERS TELLING THEM THAT THEY WERE NOT THE PROPER POSSESSOR OF

4    THE PROPERTY.

5         AND THAT, I THINK, IS EXACTLY WHAT *CHACON* SAYS IS

6    UNPRIVILEGED ACTIONS NOT ENTITLED TO PRIVILEGE OF 47(B).

7         *THE COURT:*  AND WHY IS IT APPROPRIATE FOR THIS COURT

8    TO MAKE FINDINGS REGARDING THEIR ALLEGED TRESPASS FROM 2007 TO

9    2010 ON PROPERTY LOCATED IN MEXICO AND OWNED BY A MEXICAN

10   CITIZEN?  WHY SHOULD THAT BE HERE?  WHY IS THAT NOT BEING

11   LITIGATED IN MEXICO?

12        *MR. HULETT:*  THE QUESTION OF POSSESSION HAS ALREADY

13   BEEN LITIGATED, AND THAT IS WHY YOUR HONOR DOESN'T HAVE TO MAKE

14   ANY FINDINGS OF POSSESSION OR WHAT.  THE ORDERS OF FOREIGN

15   JURISDICTION ARE ALREADY BINDING ON THE PARTIES.  THE ONLY

16   THING THE TRIER OF FACT HERE IS GOING TO HAVE TO DECIDE ARE

17   DAMAGES RESULTING FROM THAT TRESPASS.

18        I THINK THE CASES THAT WE'VE CITED IN THE BRIEF TALK

19   ABOUT THIS SORT OF THING WHEN THEY TALK ABOUT CONTRACTS AND

20   NIGERIA, AND THEY TALK ABOUT PROPERTIES OUTSIDE THE UNITED

21   STATES.  SO LONG AS THIS CASE IS NOT GOING TO HAVE TO INTERPRET

22   THE RULES AND LAWS OF MEXICO IN DECIDING WHO THE PROPER

23   POSSESSOR OR OWNER OF THE PROPERTY IS, THERE IS NO STATE OF ACT

24   DOCTRINE THAT WOULD PROHIBIT THIS COURT FROM ADJUDICATING THE

25   ISSUE OF DAMAGES RELATING TO THE TRESPASS.

1          *THE COURT:* ALL RIGHT.  THERE'S PROBABLY MORE, BUT LET

2     ME GET THAT BECAUSE I HAVE A FEELING MR. ZEBROWSKI IS GOING TO

3     TELL ME THAT HE DOES NOT AGREE THAT THE ISSUE OF WHO OWNS THE

4     LAND WAS DECIDED IN OCTOBER OF 2007 AND THAT WE DON'T HAVE TO

5     FIND THAT LIABILITY FOR TRESPASS.

6          *MR. ZEBROWSKI:* YOUR HONOR, I WOULD EVEN SAY THAT

7     PLAINTIFFS DON'T AGREE THAT THE ISSUE OF WHO OWNS THE LAND WAS

8     DECIDED IN OCTOBER OF 2007.  IF YOU LOOK AT THE ALLEGATIONS OF

9     THEIR SECOND AMENDED COMPLAINT, PARAGRAPHS 30 AND 31 BASICALLY

10    RECITE THE IDEA THAT THERE WERE ACTIONS TAKEN IN 2007 -- LET ME

11    STEP BACK.  COUNSEL SAYS, WE DON'T HAVE TO DECIDE THE VALIDITY

12    OF A MEXICAN ORDER.

13         A, I THINK WE DO, BUT MAYBE MORE IMPORTANT, AND THIS

14    WOULD GO TO THE ACT OF STATE DOCTRINE, WE HAVE TO DECIDE WHAT

15    MEXICAN LAW IS.  COUNSEL SAYS IF YOU GET THIS JUDGMENT,

16    WHATEVER IT HAPPENED TO BE, WHENEVER YOU HAPPEN TO GET IT IN

17    MEXICO, WHEN IS IT FINAL?  WHAT DOES IT MEAN?  DO YOU OR DO YOU

18    NOT HAVE SELF-RIGHTS, ET CETERA?

19         JUST BY WAY OF EXAMPLE, THERE IS THE ALLEGATION THAT

20    THE MEXICAN POLICE WERE BRIBED.  IT'S MY UNDERSTANDING THAT TO

21    GET EXECUTION IN MEXICO, YOU PAY A FEE AND THEN THE POLICE SHOW

22    UP, BUT WHATEVER.  YOU WOULD HAVE TO GET INTO MEXICAN LAW.

23         BUT GOING BACK TO THE ISSUE OF WHAT WAS HAPPENING IN

24    MEXICO, JUST SIMPLY WHAT WAS HAPPENING, COUNSEL IN HIS SECOND

25    AMENDED COMPLAINT, DOESN'T AGREE WITH HIS ARGUMENT.  IF WE READ

 1  PARAGRAPH 31, IT SAYS IN 2009 BASED ON SEMPRA ENERGY'S FURTHER

 2  ABUSE OF PROCESS, ET CETERA, THE ATTORNEY GENERAL EXECUTED A

 3  SECOND CRIMINAL PROSECUTION.

 4        THEN WE GO ON TO PARAGRAPH 32.  ON MARCH 10TH, THE

 5  SUPERIOR COURT, WHICH I GUESS IS AN APPELLATE COURT DOWN THERE,

 6  AFFIRMED THE TRIAL COURT'S DISMISSAL, AND AGAIN FOUND ...

 7        AND THEN WE GO ON TO LINE 10.  ON MAY 24, 2010, THAT

 8  COURT ORDERED THE PROPERTY BE RESTORED WITHIN 24 HOURS, AND

 9  LINE 12 AND 13, IT WAS RESTORED THE NEXT DAY.

10        SO WHAT REALLY HAPPENED DOWN THERE, WE DON'T KNOW.  WE

11  DO KNOW WHAT'S ALLEGED TO HAVE HAPPENED DOWN THERE.  WHAT IS

12  ALLEGED TO HAVE HAPPENED DOWN THERE IS NOT ONE BUT TWO

13  PROSECUTIONS.  AND AT THE END OF THE SECOND PROSECUTION, AN

14  ORDER OF POSSESSION WAS ISSUED, AND IT WAS EXECUTED AND

15  POSSESSION WAS RESTORED.

16        SO I DON'T THINK IT'S A MATTER OF NECESSARILY

17  DISAGREEING WITH WHAT HAPPENED.  I THINK WHAT HAPPENED IS

18  ALLEGED IN THE COMPLAINT.  AND IF WE LOOK AT CIVIL CODE SECTION

19  47(B), IT DOESN'T SEEM LIKE THERE IS ANY DISPUTE AT ALL THAT

20  SECTION 47(B) APPLIES TO EVERYTHING HERE EXCEPT FOR A MALICIOUS

21  PROSECUTION CLAIM.  THEY'RE LEGALLY WITHIN THE SCOPE WHETHER

22  THEY HAPPENED WITHIN OR WITHOUT THE UNITED STATES, WHETHER THEY

23  HAPPENED IN COURT OR WITH A LAW ENFORCEMENT OFFICER OR AN

24  ADMINISTRATIVE AGENCY GETTING PERMITS OR WHAT HAVE YOU.

25        WHEN COUNSEL SAYS, WE DON'T HAVE TO WORRY ABOUT

1    WHETHER ANY OF STUFF IS VALID OR INVALID.  IF IT'S VALID, THERE

2    IS NO LAWSUIT HERE.  SEMPRA DID EVERYTHING IT WAS SUPPOSED TO

3    DO PURSUANT TO ITS LICENSES, AND THERE'S NO TRESPASS.

4         SEMPRA HAD A JUDGMENT AGAINST MR. RITCHIE FOR A WHILE.

5    SEMPRA RESTORED POSSESSION AFTER THE SECOND JUDGMENT.  SEMPRA

6    IS LEGALLY OPERATING ITS FACILITY PURSUANT TO A PERMIT IT HAS.

7         AND THEN WE HEAR THAT ALL THIS STUFF IS STILL BEING

8    DUKED OUT IN MEXICO; YET THIS COURT IS SUPPOSED TO COME IN AND

9    MAKE ASSUMPTIONS ABOUT WHAT WAS VALID AND WHAT PEOPLE'S RIGHTS

10   WERE WHEN UNDER MEXICAN LAW IN MATTERS THAT ARE STILL BE

11   CONTESTED.

12        SO FIRST OF ALL, IT BUMPS US INTO THE CIVIL CODE

13   PRIVILEGE.  I THINK ALL THIS IS PRIVILEGED.  TO ME, IT'S ALL

14   COMMUNICATIVE ACTS.  BUT IN THE *RUSHEEN* CASE IT SAYS, CIVIL

15   CODE PRIVILEGE ALSO APPLIES TO NONCOMMUNICATIVE ACTS IN

16   FURTHERANCE OF A PRIVILEGED ACTION.  *RUSHEEN* HAPPENED TO BE A

17   LAWSUIT, BUT THE CONCEPT APPLIES EQUALLY TO ACTS IN FURTHERANCE

18   OF PETITIONING FOR A LICENSE OR A PERMIT OR A PROSECUTION OF

19   SOMEONE AND THE LIKE.

20        AND THEN WHEN I LOOK AT WHAT THIS LAWSUIT IS ABOUT, I

21   DON'T KNOW WHAT WOULD BE LEFT.  IT COUNSEL WERE TO TRY TO AMEND

22   HIS COMPLAINT CONSISTENT WITH THE CONCESSIONS HE'S MADE HERE

23   THIS AFTERNOON, I DON'T KNOW WHAT'S LEFT BECAUSE THE

24   FUNDAMENTAL ALLEGATIONS THAT I SEE ARE PARAGRAPHS 25, SEMPRA

25   FILED A SHAM PURCHASE AGREEMENT WITH THE MEXICAN OFFICIALS TO

1    ILLEGALLY OBTAIN TITLE AND POSSESSION, SUBMITTED FALSE

2    DOCUMENTS TO MEXICAN COURTS, FALSE TESTIMONY AT TRIAL, FALSE

3    REPORTS TO THE ATTORNEY GENERAL AND THE POLICE TO GET THIS

4    GENTLEMAN PROSECUTED, FRAUDULENTLY CONCEALED INFORMATION FROM

5    THE COURTS, ET CETERA, BRIBED POLICE OFFICERS.  THERE IS

6    NOTHING IN THIS CASE WITHOUT THOSE ALLEGATIONS, AND SO I DON'T

7    SEE WHAT'S LEFT OTHER THAN PRIVILEGED INFORMATION.

8         THE *CHACON* CASE, I THINK, DEMONSTRATES EXACTLY WHY

9    THIS CASE IS WITHIN THE PRIVILEGE.  IN *CHACON*, SOMEBODY HAD THE

10   JUDGMENT FOR TEMPORARY POSSESSION, TRIED TO USE IT FOR

11   PERMANENT POSSESSION THEREAFTER.  NEVER HAD THE JUDGMENT FOR

12   PERMANENT POSSESSION.

13        SEMPRA HAD, FIRST OF ALL, CONTESTED POSSESSION AND

14   OWNERSHIP, THEN IT HAD THE JUDGMENT EVICTING MR. RITCHIE FROM

15   THE PREMISES.  AND THEN, AFTER THAT, MR. RITCHIE GOT A JUDGMENT

16   IN HIS FAVOR, AFFIRMED ON APPEAL, POSSESSION WAS RESTORED.  TWO

17   DIFFERENT PROCEEDINGS, TWO DIFFERENT ORDERS.  EACH GOT CARRIED

18   OUT ACCORDING TO THEIR FINAL RESULT.

19        THE COMMENTS YOUR HONOR STARTED WITH, THE -- WITH THE

20   CIVIL CODE PRIVILEGE, BUT I THINK THEY TRICKLED OVER OR MAYBE

21   POURED OVER INTO THE ACT OF STATE DOCTRINE.  AND WHEN I LOOKED

22   AT ACT OF STATE, I DON'T KNOW IF WE COULD FIND ONE MUCH MORE

23   WITHIN THE ACT OF STATE THAN THAT CASE.  THE *KIRKPATRICK* CASE

24   THAT BOTH OF US CITED SAYS THIS ON PAGE 406 "ACT OF STATE

25   ISSUES ARISE WHEN THE OUTCOME OF THE CASE TURNS UPON THE EFFECT

1  OF OFFICIAL ACTIONS BY A FOREIGN SOVEREIGN."  THAT'S ON PAGE

2  406.

3  AND IN *KIRKPATRICK*, ACTUALLY THE HOLDING IN THAT CASE

4  WAS THAT THOSE CLAIMS WERE BARRED BY THE ACT OF STATE DOCTRINE.

5  WE HAVE ALREADY SEEN HERE THAT PLAINTIFF HIMSELF INITIATED AT

6  LEAST SEVEN DIFFERENT LEGAL PROCEEDINGS IN DIFFERENT COURTS AND

7  VENUES IN MEXICO.  HIS OPPOSITION TO THE RULE 11 MOTION STATES

8  THAT THE VALIDITY OF THE OPERATING LICENSE CONTINUES TO BE

9  LITIGATED IN MEXICO.

10  THE DISPUTE OVER THE VALIDITY OF THE LICENSING PROCESS

11  AND THE SCOPE OF OPERATIONS ARE THE SUBJECT OF ONGOING LEGAL

12  AND LEGISLATIVE CONTESTS IN MEXICO.  THE ISSUE OF THE VALIDITY

13  OF THE SETBACK AMENDMENT IS THE SUBJECT OF LEGISLATIVE

14  INVESTIGATION BY MEXICO'S CONGRESS AND THE SUBJECT OF

15  CONTINUING ONGOING LITIGATION AS TO THE VALIDITY AND SCOPE OF

16  SEMPRA'S LICENSE.  AND HE SAYS, INVESTIGATION INTO SEMPRA'S

17  SETBACK NEEDS ARE ONGOING IN MEXICO, AND LITIGATION IS ALSO

18  PROCEEDING CONCERNING SEMPRA'S NEED OF MR. RITCHIE'S PROPERTY

19  TO OPERATE.  ALL IN MEXICO, ALL IN MR. RITCHIE'S OPPOSITION TO

20  OUR RULE 11 MOTION.  THAT'S WHERE IT BELONGS.

21  THIS COURT IS NOT HERE TO SIT AS SOME KIND OF SECOND

22  GUESS OR ALTERNATIVELY WAIT TO SEE IF SOMETHING HAPPENS IN

23  MEXICO AND THEN TRY TO FIGURE IT OUT.  COUNSEL REFERRED TO THE

24  IDEA, GOSH, ONCE I HAVE A JUDGMENT, THEN I HAVE A TRESPASS

25  CLAIM UP HERE.  IT'S THE "UP HERE" THAT'S THE PROBLEM.  NOW WE

1   GET INTO THE LOCAL ACTION ISSUE WHICH A TRESPASS CLAIM BELONGS

2   IN MEXICO.  THAT'S THE ONLY PLACE THIS CLAIM CAN BELONG.  IT

3   CAN'T BE BROUGHT HERE.

4        AND I LOOKED AT ANOTHER CASE THAT WE HAD REFERRED TO

5   ACTUALLY IN OUR MALICIOUS PROSECUTION DISCUSSION.  IT HAPPENS

6   TO TRICKLE OVER, AGAIN, POUR OVER INTO THE ACT OF STATE, THE

7   *NOCULA* CASE DISMISSED THE MALICIOUS PROSECUTION CASE STEMMING

8   FROM FOREIGN PROSECUTION BECAUSE IT SAID "THE DECISION OF A

9   FOREIGN SOVEREIGN TO EXERCISE ITS POLICE POWER THROUGH THE

10   ENFORCEMENT OF ITS CRIMINAL LAWS PLAINLY QUALIFY AS AN ACT OF

11   STATE."

12        SO THAT CASE WAS NOT SOMEONE COMING UP HERE AND

13   SAYING, I WANT TO SUE UP HERE TO BE ACQUITTED, IT'S SAYING, I

14   WANT TO SUE FOR MALICIOUS PROSECUTION BASED ON HAVING BEEN

15   PROSECUTED IN A FOREIGN COUNTRY.  AND THE COURT SAID, YOU CAN'T

16   DO THAT.  THAT INHERENTLY VIOLATES THE ACT OF STATE DOCTRINE

17   BECAUSE YOU'RE CALLING INTO QUESTION HOW THAT COUNTRY EXERCISED

18   ITS POLICE POWERS.

19        SO TO ME, THESE ALL SORT OF COME TOGETHER INTO MASHED

20   POTATOES, BECAUSE THE FUNDAMENTAL IDEA IS THIS CASE DOESN'T

21   BELONG IN THIS UNITED STATES COURT.  AND THERE'S A VARIETY OF

22   REASONS.  NO. 1, IT'S ENTIRELY BASED ON PRIVILEGED CONTACT

23   UNDER THE CIVIL CODE.  THAT DOES NOT APPLY TO THE MALICIOUS

24   PROSECUTION CLAIM.  THE ACT OF STATE DOES*, NOERR-PENNINGTON*

25   DOES, THE LOCAL ACTION DOCTRINE DOES.

1          *THE COURT:*  THE CURRENT STATUS IS STATUS QUO AT THE

2    MOMENT IS THAT THE PARCEL, IT'S 8238, IS THAT RIGHT, IT'S IN

3    THE POSSESSION OF MR. RITCHIE?

4          *MR. ZEBROWSKI:*  AS I UNDERSTAND, IT'S IN MR. RITCHIE'S

5    POSSESSION RIGHT NOW, BUT I ALSO UNDERSTAND, AND I DON'T KNOW

6    MEXICAN LAW, BUT I UNDERSTAND OWNERSHIP AND POSSESSION ARE TWO

7    TOTALLY SEPARATE RIGHTS, AND OWNERSHIP IS STILL BEING LITIGATED

8    AND CONTESTED.

9          *THE COURT:*  BUT HE'S THERE.

10          *MR. ZEBROWSKI:*  HE'S THERE IN LAW.  I DON'T THINK HE

11    LIVES THERE.

12          *THE COURT:*  AND THE PLANT IS OPERATING?

13          *MR. ZEBROWSKI:*  YES.

14          *THE COURT:*  OKAY.  AND IN READING THE COMPLAINT, IT

15    LOOKS LIKE TO ME THAT AS OF OCTOBER 11TH, 2007, THERE WAS A

16    HEARING THAT RESULTED IN A COURT FINDING THAT MR. RITCHIE OWNED

17    AND POSSESSED THE PROPERTY, NOT SEMPRA.  BUT THERE WAS CLEARLY

18    AN APPEAL, BECAUSE YOUR NEXT PARAGRAPH IS IN MARCH OF 2009, THE

19    SUPERIOR COURT OF THE 10TH DISTRICT OF ENSENADA SUSTAINED THE

20    TRIAL COURT'S FINDINGS.  SO WOULD THE FACT THAT THERE WAS A

21    JUDGMENT IN HIS FAVOR BUT IT WAS APPEALED, IS IT FINAL THEN, OR

22    IS IT APPEALED?  THEY WERE THERE.

23          I MEAN, THIS IS WHERE I'M GETTING INTO THESE PROBLEMS.

24    AM I GOING TO HAVE TO INTERPRET WHAT'S THE FINAL IF IT WAS ON

25    APPEAL?  AND SO THEN IN 2009, THERE IS THIS APPELLATE ORDER AND

1    THEN SOMETHING ELSE HAPPENED AFTER THAT BECAUSE THERE ISN'T A

2    FINAL ORDER UNTIL 2010 TO TELL SEMPRA TO GIVE THE PROPERTY BACK

3    TO MR. RITCHIE.  SO IS THEIR CONTINUED POSSESSION DURING THE

4    APPELLATE PROCESS AN ACT OF TRESPASS UNDER MEXICAN LAW?  IS

5    THAT SOMETHING THIS COURT IS GOING TO BE ASKED AGAIN TO

6    DETERMINE?

7           *MR. ZEBROWSKI:*  YOUR HONOR, I DON'T KNOW HOW YOU CAN

8    POSSIBLY MAINTAIN OR ADJUDICATE THESE CLAIMS WITHOUT MAKING

9    THAT DETERMINATION.  WE HAVE CLAIMS.  TRESPASS IS OBVIOUSLY ONE

10   OF THEM.  ANOTHER IS INTERFERENCE WITH CONTRACT OR PERSPECTIVE

11   BUSINESS ADVANTAGE FOR THE ABILITY TO SELL.  ANOTHER ONE IS

12   UNJUST ENRICHMENT BECAUSE WE WERE BENEFITING FROM SOMEHOW

13   WRONGFULLY POSSESSING HIS LAND AS WE WERE OPERATING OUR PLANT

14   EVEN THOUGH WE DIDN'T NEED THE LAND TO OPERATE THE PLANT.

15          YOU HAVE TO FIGURE OUT WHAT POINT IN TIME, IF EVER,

16   WAS SEMPRA UNLAWFULLY OCCUPYING THE LAND UNDER MEXICAN LAW,

17   MEXICAN ENFORCEMENT RIGHTS, MEXICAN FINALITY.  AND THEN WITH

18   THE SECOND PROSECUTION FOLLOWING ON THE FIRST.

19          *THE COURT:*  THE CRIMINAL PROSECUTIONS I THINK ARE THE

20   SUBJECT OF THE MALICIOUS PROSECUTION, AND WE'RE GOING TO TALK

21   ABOUT THOSE SEPARATELY.

22          BUT LET ME HEAR YOUR SIDE OF THIS.

23          *MR. HULETT:*  THE PARADE OF HORRIBLES THAT ARE

24   ATTEMPTED TO BE PORTRAYED HERE DON'T EXIST.  THIS COMPLAINT

25   STATES A CAUSE OF ACTION FOR TRESPASS UNDER CALIFORNIA TRESPASS

1    LAW.  THERE IS NOTHING BEFORE YOUR HONOR ABOUT CONFLICT OF LAWS

2    ISSUES OR WHICH LAW HAS TO BE INTERPRETED OR WHICH LAW DOESN'T

3    HAVE TO BE INTERPRETED.  MAYBE SOME DAY THAT ISSUE IS BEFORE

4    THE COURT.

5         WHAT WE HAVE HERE IS A CLAIM FOR DAMAGES AGAINST A

6    CALIFORNIA CORPORATION WHO UNLAWFULLY POSSESSED PROPERTY IN

7    MEXICO.  AND THE ONLY QUESTION I THINK TODAY IS WHETHER OR NOT

8    THAT POSSESSION WAS PRIVILEGED UNDER 47(B) OR WHETHER YOUR

9    HONOR NECESSARILY WILL HAVE TO REINTERPRET AND POTENTIALLY

10   CONFLICT WITH RULINGS OF THE MEXICAN COURT.  AND I THINK WE

11   TRIED TO TELL YOU THAT WILL NEVER HAPPEN.

12        THERE IS NOTHING ON THIS RECORD, AND THERE IS NOTHING

13   WHEN WE TRIED THIS CASE THAT WILL REQUIRE YOU TO MAKE FINDINGS

14   OF LAW THAT MEXICAN AUTHORITIES MISAPPLIED MEXICAN LAW OR THE

15   JURY IS GOING TO HAVE TO APPLY WHETHER THERE WAS A TRESPASS OR

16   THERE WASN'T A TRESPASS.  THOSE RULINGS ALREADY HAVE BEEN MADE.

17   THOSE RULINGS HAVE ALREADY BEEN MADE.

18        AND SO WE WILL BE SUBMITTING, JUST AS THEY SUBMITTED,

19   THEY WILL BE SUBMITTING, JUST AS WE'LL BE SUBMITTING, JUST AS

20   THEY HAVE SUBMITTED RULINGS FROM THE MEXICAN COURTS ASKING FOR

21   JUDICIAL NOTICE OF THE FINDINGS AND THE CONCLUSIONS OF LAW AND

22   FACT THAT WERE MADE BY THOSE JUDGMENTS.  AND WE ARE SEEKING TO

23   ENFORCE THOSE JUDGMENTS.  THAT'S ALL.

24        AND SO WHEN THE TRESPASS OCCURRED IS, I THINK, A FAIR

25   QUESTION, AND THAT COULD BE A QUESTION OF FACT FOR THE JURY.

1   DID IT OCCUR IN 2006?  DID IT OCCUR IN 2007?  DID IT OCCUR IN

2   2008, '9 OR '10?  OR WAS THERE EVER A TRESPASS?  WHAT WE AREN'T

3   GOING TO HAVE TO DO IS INTERPRET MEXICAN LAW AND APPLY IT TO

4   THE ACTIONS OF SEMPRA DOWN IN MEXICO.

5           *THE COURT:*  I WISH I HAD YOUR CONFIDENCE THAT THAT'S

6   TRUE.  I STILL HAVE THIS NAGGING CONCERN, AND I AM BUILDING ON

7   WHAT JUDGE SAMMARTINO HAS LAID AS A FRAMEWORK HERE ON THE

8   MOTION TO DISMISS WITH REGARD TO THE PRIVILEGE.  SHE DIDN'T

9   EVEN GET INTO THE OTHER ISSUES RAISED BUT I THINK ARE

10  SIGNIFICANT AS WELL, IF THE ACTS THAT WERE TAKEN AFTER THE

11  ORDER IS ISSUED IN 2006, THAT GAVE SEMPRA OWNERSHIP OF THE LAND

12  AND THEN THEY DID WHAT THEY DID TO GET PHYSICAL POSSESSION OF

13  IT, AND THEN THAT WAS CHALLENGED AND REVERSED AND APPEALED, AND

14  IT WASN'T AT LEAST DECIDED UNTIL 2010.  WHY AREN'T ALL THE ACTS

15  THAT HAPPENED IN THE INTERIM ON BOTH SIDES A CONTINUING PART OF

16  THE PRIVILEGE?

17          I MEAN, EVERYONE IS ACTING ON JUDICIAL ORDERS, AND

18  THOSE ORDERS ARE SORT OF STAYED PENDING THESE APPEALS.  SO THE

19  ONLY ORDER I HAVE IS THE STARTING ORDER IN 2006 THAT SAYS IT'S

20  THEIRS, SEMPRA'S, AND THEY CAN POSSESS IT.  AND THEN IT'S

21  CHALLENGED, AND THE CHALLENGE IS APPEALED AND THE APPEAL IS

22  LOST.  AND DON'T I HAVE TO SOMEHOW FIGURE OUT AGAIN FINALITY OF

23  ORDERS?

24          *MR. HULETT:*  NO, I DON'T THINK YOU HAVE TO.  SEMPRA

25  TAKES THE RISK WHEN THEY OCCUPY PROPERTY.  WHEN THEY OCCUPY

1    PROPERTY, THEY TAKE THE RISK THAT THEY'RE DOING SO AGAINST THE

2    OWNERSHIP INTEREST OF THE TRUE OWNER.  AND THE DAMAGES THAT

3    ACCRUE AS A CONSEQUENCE OF THAT IS ALL THAT WE'RE SEEKING.

4            WE DON'T HAVE TO PROVE -- THEY CAN ARGUE ALL DAY LONG

5    AS A MATTER OF FACT THAT SOMEHOW THEY WERE PRIVILEGED TO OCCUPY

6    THIS PROPERTY EVEN THOUGH A COURT TOLD THEM THEY WERE NOT THE

7    LEGAL POSSESSOR.  REMEMBER THAT MY CLIENT WAS OUSTED PHYSICALLY

8    FROM HIS PROPERTY WITH BRUTE FORCE ON A PROVISIONAL ORDER

9    BEFORE APPEALS WERE TERMINATED, BEFORE THE ENTIRE PROCESS WAS--

10   WE'RE IN A PRELIMINARY INJUNCTION PROCESS.

11           NOW IF IT HAD TURNED OUT THAT MR. RITCHIE, IN FACT,

12   HAD BEEN TRESPASSING ON SEMPRA'S LAND, HE WOULD HAVE HAD

13   LIABILITIES FOR TRESPASS.  THAT'S THE SIMPLE FACT.  POSSESSION

14   IN THIS CASE IS NOT 9/10THS OF THE LAW.  POSSESSION IN THIS

15   CASE IS NOT 9/10TH OF THE LAW.  POSSESSION IN THIS CASE IS

16   9/10THS OF DAMAGES.

17           WHAT WE HAVE HERE IF THEY WERE NOT LEGALLY ENTITLED TO

18   THAT PROPERTY, WHICH THE COURTS HAVE FOUND.  THEIR CONTINUED

19   POSSESSION OF THE PROPERTY IS THEIR RISK, AND THEY HAVE TO PAY

20   DAMAGES FOR IT.  THAT'S PRETTY MUCH, I THINK, THE LAW.

21           *THE COURT:*  THE LAW WHERE?

22           *MR. HULETT:*  IN CALIFORNIA.

23           *THE COURT:*  BUT THIS ISN'T IN CALIFORNIA.

24           *MR. HULETT:*  IF WE'RE GOING TO HAVE A CONFLICTS OF LAW

25   ISSUE, I THINK WE CAN ADDRESS THAT.  THERE IS NOTHING ON THIS

1   RECORD THAT SUGGESTED THERE IS A CONFLICT OF LAW ISSUE HERE.

2   AND IF --

3       *THE COURT:*  REALLY?  BECAUSE I SEE A HUGE ONE.  I'M

4   NOT GOING TO APPLY CALIFORNIA TRESPASS LAW TO A TRESPASS THAT

5   TOOK PLACE IN MEXICO.  THAT DOESN'T MAKE ANY SENSE.

6       *MR. HULETT:*  WE DON'T NEED TO.  THAT'S SORT OF THE

7   POINT, WHICH IS, THE TRESPASS LAW HAS ALREADY BEEN ADJUDICATED.

8   WE DON'T HAVE TO SAY WHETHER THAT'S A TRESPASS UNDER CALIFORNIA

9   LAW.  WE ALREADY HAVE AN ADJUDICATION THAT WAS A TRESPASS.

10      *THE COURT:*  THEY DON'T AGREE.

11      *MR. HULETT:*  I'M SURE THEY WON'T.  I'M SURE IN FRONT

12  OF THE JURY, THEY WON'T AGREE.  THEY'RE GOING TO SAY THAT --

13      *THE COURT:*  SO WE'RE GOING TO HAVE THIS JURY DECIDE IF

14  THEY TRESPASSED UNDER MEXICAN LAW?

15      *MR. HULETT:*  NO.  WE'RE GOING TO ADVISE THE JURY, JUST

16  LIKE WE DO IN ADVISING THEM ARIZONA LAWS APPLY TO CALIFORNIA

17  CITIZENS AND ALL OF THOSE SORTS OF CONFLICT ISSUES.  WE'LL

18  INSTRUCT THE JURY ON WHAT THE FINDINGS ARE, WHAT THE LAW IS,

19  AND THEY'LL APPLY THE FACTS TO THE LAW, IF THAT'S WHERE WE GO.

20      *THE COURT:*  JUST BECAUSE WE HAVE TRIED TO GET THROUGH

21  AN AWFUL LOT OF MATERIAL, BUT I HAVE NOT LOCATED THE 2006

22  ORDER.  DID THAT EVER GET SUBMITTED AS A DOCUMENT THAT WE COULD

23  TAKE JUDICIAL NOTICE OF BECAUSE IT WENT TO BEING AN ORDER TO

24  NOW BEING CHARACTERIZED AS A PROVISIONAL ORDER TO NOW BEING

25  REFERRED TO AS AN INJUNCTION, WHICH ARE ALL COMPLETELY

1   DIFFERENT THINGS.  AND IF IT HASN'T BEEN SUBMITTED, IT HASN'T.

2        *MR. HULETT:*  I DON'T WANT TO SUGGEST THAT I WAS TRYING

3   TO INTERPRET PROVISIONAL ORDER IN ANY WAY.  I'M JUST SUGGESTING

4   THAT'S WHAT THEY CALLED IT IN MEXICO IS A PROVISIONAL ORDER,

5   AND MY INTERPRETATION OF THAT IS MORE AKIN TO THERE IS SOME

6   EVIDENCE TO SUPPORT YOUR ALLEGATIONS, GO FORTH.  JUST LIKE

7   THERE MIGHT BE A CRIMINAL ARREST, WE HAVEN'T CONVICTED THE

8   DEFENDANT, BUT WE MAY HAVE ARRESTED HIM.

9        *THE COURT:*  ALL RIGHT.

10       *MR. ZEBROWSKI:*  YOUR HONOR, IN RESPONSE TO THAT

11  QUESTION, WE HAVE NOT SUBMITTED ORDERS.  WE'VE SUBMITTED

12  VARIOUS PLEADINGS AND CLAIMS TO SHOW WHAT WAS PENDING.  I FIND

13  IT INTERESTING THAT THE ENTIRE DISCUSSION IS FOCUSED ON

14  TRESPASS BECAUSE FUNDAMENTALLY WHAT I THINK THIS CASE IS ABOUT,

15  AND THAT IS, ABSOLUTELY BARRED BY THE LOCAL ACTION DOCTRINE.

16  IT WOULDN'T MATTER IF THIS LAND WAS IN ARIZONA OR NEVADA OR

17  TENNESSEE.

18       IT HAPPENS TO BE IN MEXICO, WHICH MAKES IT THAT MUCH

19  MORE COMPLICATED, BUT IT'S NOT IN THE JURISDICTION OF THIS

20  COURT, SO A TRESPASS CASE DOESN'T BELONG HERE.  YET THE

21  DISCUSSION IS ALSO INFORMATIVE BECAUSE I, FRANKLY, GOT A LITTLE

22  CONFUSED JUST TRYING TO UNDERSTAND THE ARGUMENT.

23       *THE COURT:*  I'M SORRY.  DID I CONFUSE YOU?

24       *MR. ZEBROWSKI:*  NOT BY THE COURT, BY COUNSEL BECAUSE

25  IT'S A FINAL ORDER, BUT IT'S NOT A FINAL ORDER.  THERE'S

1    ALREADY BEEN DETERMINED THAT THERE HAS BEEN TRESPASS DOWN

2    THERE, WE'RE JUST HERE TO ENFORCE A JUDGMENT.  THIS ISN'T AN

3    ACTION TO ENFORCE A MEXICAN JUDGMENT.  THIS IS AN ACTION FROM

4    SCRATCH TO TRY TO GET THE UNITED STATES JUDGMENT FROM A U.S.

5    JURY FOR TRESPASS ON MEXICAN LAND.

6          AND THEN WE HEAR, POSSESSION HAS ALREADY BEEN

7    DETERMINED, NO, BUT IT WAS SORT OF AN INTERIM ORDER, WHICH

8    AGAIN, LET'S SET ASIDE THE FACT THAT IT'S TRESPASS, SO IT'S

9    BARRED BY LOCAL ACT.  IT CLEARLY GETS US INTO THE ACT OF STATE

10   DOCTRINE BECAUSE WE HAVE TO FIGURE OUT, WHAT DID MEXICO DO,

11   WHAT IT DID MEAN UNDER MEXICAN LAW, AND HOW ARE WE GOING TO

12   INTERPRET AND APPLY IT UP HERE.  AND IS IT GOING TO BE

13   CONSISTENT WITH WHAT MEXICAN LAW IS AND WHAT THE MEXICAN

14   AUTHORITIES ARE DOING IN MATTERS THAT ARE CONTINUING DOWN

15   THERE.

16         AND I DON'T KNOW HOW TRESPASS COULD HAVE BEEN

17   DETERMINED AT ANY POINT, AT LEAST PRIOR TO THE DATE IN 2010

18   WHEN MY CLIENT VACATED, BECAUSE THAT'S WHEN THE FINAL JUDGMENT

19   WAS AFFIRMED DOWN THERE.  SO I DON'T KNOW MEXICAN LAW, BUT I

20   THINK IN AMERICAN LAW, IF SOMEONE SUES ME TO GET ME OFF MY OWN

21   PROPERTY AND THEY HAPPEN TO WIN IN TRIAL COURT AND I APPEAL AND

22   I WIN, I HAVEN'T BEEN TRESPASSING, I WAS ENTITLED TO STAY

23   THERE.  IF THEY WIN AND I LOSE AND I LEAVE, I HAVEN'T

24   TRESPASSING, I WAS ENTITLED TO BE THERE.  IT WAS BEING

25   ADJUDICATED.  AND AT THE END OF THE ADJUDICATION, SEMPRA LEFT.

1        SO I JUST FIND INTERESTING THE TRESPASS IS A PARADIGM,

2   BECAUSE TO ME, THAT'S THE VERY EASIEST ONE.  NO. 1, IT IS

3   PRIVILEGED UNDER THE CIVIL CODE; NO. 2, WE HAVE AN ACT OF STATE

4   PROBLEM THAT IS JUST BLATANT; AND NO. 3, YOU HAVE A LOCAL

5   ACTION ISSUE.  AND, OF COURSE, A VERY RELATED ISSUE IS

6   *NOERR-PENNINGTON*.  I THINK IT JUST FALLS INTO ALL OF THEM.

7        THE OTHER PROBLEM YOU HAVE IS, DEPENDING WHEN WE ARE

8   ALLEGED TO HAVE TRESPASSED, IT'S PROBABLY DARK BY THE STATUTE

9   OF LIMITATIONS.  IF YOU GO BACK TO 2007, THEN THE CASE IS TIME

10  BARRED.  SO IT'S A GOOD LITTLE PARADIGM BECAUSE IT REALLY DOES

11  RAISE ALL OF THE ISSUES, AND THEY APPLY EQUALLY TO ALL OF THE

12  CLAIMS BECAUSE THE CAUSES OF ACTION ARE JUST VARIATION ON A

13  THEME.

14        YOU WENT INTO MEXICO, YOU DID THINGS IN MEXICAN

15  COURTS, MEXICAN LEGISLATURES, MEXICAN ADMINISTRATIVE AGENCIES

16  AND PERMITTING AGENCIES THAT CAUSED YOU TO GET A PERMIT AND

17  CAUSED ME TO GET PROSECUTED AND CAUSED YOU TO BE ON MY LAND IN

18  MEXICO.  AND I'M GOING TO COME UP HERE AND CLAIM THAT THOSE

19  THINGS WERE WRONG WHILE THEY'RE STILL PENDING IN MEXICO, AND

20  I'M GOING ON SUE YOU FOR DAMAGES.

21        *THE COURT:*  OKAY.  I'D LIKE TO MOVE ON THEN.  WAS

22  THERE SOMETHING ELSE YOU WANTED TO ADD?

23        *MR. HULETT:*  JUST TWO THINGS.  THE LOCAL ACTION RULE

24  WE'VE BRIEFED, AND WE'VE CITED CASES THAT IF YOU'RE NOT

25  INTERPRETING THE PROPRIETY OF THE OWNERSHIP, WHO OWNS THE

1    PROPERTY, THE LOCAL ACTION DOCTRINE DOES NOT APPLY.  IT'S ONLY

2    IF WE WERE ASKING YOU TO DETERMINE WHO THE RIGHTFUL OWNERS WERE

3    IN MEXICO.  AND WE'RE NOT DOING THAT.

4         AS TO THE THREE-YEAR STATUTE LIMITATION ON THE

5    TRESPASS, THE ORDER THAT YOU REFERRED TO WAS OCTOBER OF 2007,

6    AND THIS CASE WAS FILED IN JULY OF 2010, WHICH WAS LESS THAN

7    THREE YEARS.

8         *MR. ZEBROWSKI:*  YOUR HONOR, MAY I BRIEFLY RESPOND?

9    THE CASES THAT THEY CITED ARE OUTSIDE THE NINTH CIRCUIT WHERE

10   LOCAL ACTION IN SOME JURISDICTIONS IS CONSIDERED TO BE A MATTER

11   OF VENUE.  IN THE NINTH CIRCUIT, IT'S CONSIDERED TO BE A MATTER

12   OF JURISDICTION.  SO THOSE CASES ARE ALL THE SAME.  HERE THERE

13   IS SIMPLY NO JURISDICTION TO HEAR A TRESPASS CASE ON PROPERTY

14   OUTSIDE OF THE STATE.

15        *THE COURT:*  I'VE HAD A QUESTION FROM MY LAW CLERK,

16   SO... AND SHE WANTS TO KNOW, AND I GUESS I WANT TO KNOW AS

17   WELL, WHAT LAW WOULD APPLY TO DETERMINE WHETHER YOU'RE ALLOWED

18   TO CONTINUE POSSESSION PENDING THE APPEAL, WHICH WAS

19   FUNDAMENTALLY THE QUESTION THAT I WAS ASKING, WAS IN 2007, A

20   COURT GRANTED POSSESSION TO MR. RITCHIE BUT IT WAS APPEALED AND

21   THEY CONTINUED IN ON POSSESSION UNTIL ALL THE APPELLATE PROCESS

22   WAS RESOLVED.  THAT'S NOT GOING TO BE SOMETHING THAT'S GOING TO

23   BE DETERMINED BY FINALITY OF JUDGMENTS UNDER AMERICAN LAW OR

24   NINTH CIRCUIT LAW OR THIS DISTRICT, BUT RATHER MEXICAN LAW,

25   RIGHT?

1          *MR. HULETT:*  WELL, I HAVE TO ADMIT THAT I DON'T

2    PROFESS TO BE AN EXPERT ON CONFLICT OF LAW AND CHOICES OF

3    CONFLICT OF LAW, SO WITHOUT HAVING DONE THE RESEARCH, I

4    CERTAINLY DON'T WANT TO MAKE AN ADMISSION OR STATEMENT THAT

5    IT'S INCONSISTENT WITH WHAT THE STATE OF THE LAW IS.

6          MY BELIEF IS THAT PRESENTLY WE HAVE A CLAIM UNDER

7    CALIFORNIA LAW TO ASK FOR DAMAGES ARISING FROM ORDERS OF

8    MEXICAN COURTS THAT FOUND MY CLIENT TO HAVE BEEN ENTITLED TO

9    POSSESSION FROM AT LEAST OCTOBER OF 2007, AND DURING A

10   THREE-YEAR PERIOD OF TIME, HE WAS NOT IN POSSESSION, PERIOD.

11   AND WE'RE ASKING FOR DAMAGES FOR THE PERIOD OF TIME HE WAS

12   DISPOSSESSED.  AND IF THE ISSUE -- IF THE ISSUE WANTS TO BE

13   BRIEFED?

14          *THE COURT:*  BUT WE WILL NEED TO ANSWER THE QUESTION

15   BECAUSE IT IS IN THE SCOPE OF YOUR COMPLAINT THAT THE 2007

16   ORDER WAS APPEALED AND WASN'T AFFIRMED UNTIL AT LEAST MARCH OF

17   2009, SO CAN IT BE AN ACT OF TRESPASS?  MAYBE IT'S GETTING TO

18   MERITS, BUT IT GETS TO MY QUESTIONS ABOUT WHOSE LAW IS GOING TO

19   APPLY HERE, WHETHER THERE'S A JURISDICTIONAL ISSUE AND ALL THE

20   OTHER CONFLICTS WE HAVE.  IF THEY REMAINED IN POSSESSION DURING

21   THE PENDENCY OF THE APPEAL OF THE 2007 ORDER, IS THAT AN ACT OF

22   TRESPASS?

23          *MR. HULETT:*  YES.

24          *THE COURT:*  NOT BECAUSE OF THE OUTCOME IN 2009, BUT

25   BECAUSE THE LAW WOULD DICTATE THAT THE JUDGMENT IS REVERSED IS

1    FINAL IN 2007?

2            *MR. HULETT:* YES.

3            *THE COURT:* AND WHOSE LAW IS THAT?  BECAUSE THAT'S NOT

4    OUR LAW.

5            *MR. HULETT:* WELL, IT'S NO LONGER A PRIVILEGED ACT

6    ONCE YOU HAVE BEEN FOUND BY THE COURT, WHETHER YOU'RE ON APPEAL

7    OR NOT ON APPEAL.  IT'S JUST IF WE'VE GOT A JUDGMENT HERE OR

8    JURY VERDICT, WE WOULD BE ENTITLED TO BOND OR AN EXECUTE ON THE

9    JUDGMENT, RIGHT?  SO JUST AS A FINDING THAT SEMPRA WAS

10   UNLAWFULLY POSSESSING MY CLIENT'S PROPERTY, THEY TOOK THE RISK

11   AND ASSUMED DAMAGE THAT AROSE AS A CONSEQUENCE OF THOSE

12   FINDINGS.  IF THEY HAD GOT IT REVERSED, THEY WOULD BE OFF THE

13   HOOK BECAUSE THEIR FINDINGS WILL BE, YOU'RE IN LAWFUL

14   POSSESSION.

15           BUT THE FACT THAT THEY UNLAWFULLY POSSESSED THE

16   PROPERTY IS NOT DISPUTED.  IT'S A FINDING.  IT'S A FINDING OF

17   THE COURTS IN MEXICO.  AND MR. ZEBROWSKI HAS SUGGESTED THAT

18   THAT IS STILL CONTESTED.

19           THAT'S NOT PART OF OUR COMPLAINT, AND I'M NOT SURE

20   WHERE HE'S COMING UP WITH THESE EXTRA FACTS THAT ARE NOT

21   PROPERLY BEFORE THE COURT.  AND IF THIS IS SOMETHING THAT IS A

22   FACT THAT HE BELIEVES THAT SEMPRA CONTINUES TO DISPUTE

23   POSSESSION OR OWNERSHIP, THAT MAY BE, BUT THAT'S A QUESTION OF

24   FACT FOR SOME LATER PROCEEDINGS.  THAT'S NOT BEFORE THE COURT.

25           *THE COURT:* ALL RIGHT.  THANK YOU.

```
 1          MR. ZEBROWSKI:  TWO THING, YOUR HONOR.  FIRST OF ALL,

 2   I READ CONFLICTS IN A NUTSHELL IN 1982 AND TOOK THE CLASS, SO

 3   THAT'S AS MUCH AS I REMEMBER.  BUT I CAN'T IMAGINE THAT THE

 4   QUESTION THE COURT POSED COULD POSSIBLY BE A QUESTION OF

 5   CALIFORNIA LAW IN THIS CASE.  IT HAS TO BE A QUESTION OF

 6   MEXICAN LAW.  T.

 7          HE ISSUE, AGAIN, WHICH SHOULD NOT BE IN THIS COURT,

 8   BUT THE LEGAL ISSUE IS WHETHER MY CLIENT WAS UNLAWFULLY IN

 9   POSSESSION OF THE PROPERTY IN MEXICO WHILE MEXICAN LEGAL

10   PROCEEDINGS WERE PENDING.  TO ANSWER THAT QUESTION, WE NEED TO

11   KNOW MEXICAN LAW CONCERNING THE RIGHT OF POSSESSION DURING THE

12   PENDENCY OF THOSE PROCEEDINGS.

13          SECOND, I THINK I'M HEARING COUNSEL SAY, WELL, GOSH IF

14   YOU GET TO THE END AND, YOU LOSE.  WELL IN THAT CASE, YOUR

15   ACTIONS DURING THE LITIGATION ARE NO LONGER PRIVILEGED, YOU

16   WERE TAKING A RISK.  THAT'S NOT THE LAW.  IT DOESN'T MATTER WHO

17   WINS OR LOSES IN THE END.  YOUR ACTIONS IN LITIGATION AND YOUR

18   ACTIONS IN ADMINISTRATIVE PROCEEDINGS AND LEGISLATIVE

19   PROCEEDINGS, AND YOU NAME IT ARE PRIVILEGED AT ALL TIMES

20   WHETHER YOU WIN OR LOSE.

21          AND WHETHER YOU WIN IN THE BEGINNING OR LOSE AT THE

22   END, MAKES ABSOLUTELY NO DIFFERENCE.  SEMPRA'S ULTIMATE OUTCOME

23   IN TURNING LAND OVER IN 2012 AT THE END OF THE LITIGATION

24   DOESN'T MEAN THAT, THEREFORE, WHAT THEY DID IN THE LITIGATION

25   IS ALL OF A SUDDEN ACTIONABLE.  THAT'S NOT THE LAW.  THAT'S
```

1   TURNING IT ON ITS HEAD.

2           *THE COURT:*  ALL RIGHT.  I HAVE A LOT TO LOOK AT.

3           I WANT TO TURN TO THE MALICIOUS PROSECUTION CLAIM

4   BECAUSE THAT'S SEPARATE.  AND JUDGE SAMMARTINO HAD INITIALLY

5   GRANTED THE MOTION TO DISMISS ON MALICIOUS PROSECUTION BECAUSE

6   IT APPEARED FROM THE PLEADINGS AT THE FIRST AMENDED COMPLAINT

7   THAT THERE WAS AN ACKNOWLEDGMENT AND CONVICTION AND, THEREFORE,

8   SHE FOUND THAT IT COULDN'T BE MALICIOUS EVEN IF IT WAS

9   OVERTURNED IN APPEAL.  THAT CHANGED ON THE THIRD AMENDED

10  COMPLAINT.

11          AND THE PLAINTIFF, HE WAS NOT, IN FACT, CONVICTED IN

12  2007, AND SO THE ELEMENT AT ISSUE WOULD THEN BE WHETHER OR NOT

13  THERE WAS PROBABLE CAUSE TO BRING THE ARREST WARRANT.  AND THE

14  QUESTION I HAVE, AND I'LL ASK THE PLAINTIFF FIRST ON THIS, SO

15  DOES THAT REQUIRE THAT THE DEFENDANT LACKED PROBABLE CAUSE, OR

16  THAT THE PROSECUTION ITSELF LACKED PROBABLE CAUSE WHEN IT WAS

17  INITIATED BY THE COURTS?

18          AND I THINK THE DISTINCTION TO MY MIND, AND THIS IS --

19  AGAIN, THIS IS NOT CLEAR AS MUD, THIS AREA, TO ME, BUT THE

20  AUTHORITIES ACTED PRESUMABLY ON A COMPLAINT RAISED BY SEMPRA

21  STATING CERTAIN FACTS TO THEM SAYING, AND, THEREFORE, WE'RE

22  ASKING YOU TO BRING CRIMINAL PROSECUTION AGAINST THE PLAINTIFF.

23  AND IF THOSE FACTS CONSTITUTED PROBABLE CAUSE, THEN IT CAN'T BE

24  A MALICIOUS PROSECUTION IF THE FACTS WERE FALSE AND SEMPRA KNEW

25  THEY WERE FALSE AND THERE ARE NO SET OF FACTS THAT COULD HAVE

1    SUPPORTED PROBABLE CAUSE THAT WERE TRUE, THEN THEY COULD BE

2    LIABLE FOR MALICIOUS PROSECUTION, I THINK.  HELP ME.

3        *MR. HULETT:*  I'M GOING TO TRY HELP YOU.  I DON'T THINK

4    THE CONCEPT OF PROBABLE CAUSE, AS YOU'VE ASKED THE QUESTION, IS

5    WHAT JUDGE SAMMARTINO WAS INTERPRETING.  I THINK WHAT THE CASE

6    LAW SAYS IS THAT IF SOMEBODY IS CONVICTED OR THERE ARE

7    FINDINGS, THEN THERE IS A PRESUMPTION OF PROBABLE CAUSE.

8        SO IF, FOR EXAMPLE, MY CLIENT HAD BEEN ARRESTED,

9    TRIED, AND CONVICTED OF THE CRIME OF POSSESSION OR TRESPASS,

10   THAT, ACCORDING TO JUDGE SAMMARTINO'S RULINGS, WOULD IMMUNIZE

11   SEMPRA FROM A MALICIOUS PROSECUTION CLAIM UNLESS WE WERE TO

12   PROVE THE FRAUD EXCEPTION.

13       *THE COURT:*  RIGHT.

14       *MR. HULETT:*  OKAY.  IT DOESN'T ADDRESS THE QUESTION OF

15   WHETHER OR NOT A POLICE OFFICER WOULD HAVE PROBABLE CAUSE TO

16   MAKE AN ARREST.  THAT IS NOT THE PROBABLE CAUSE.  THAT IS

17   IMPLICATED HERE ON THE PRESUMPTION.  THE PRESUMPTION IS IF

18   SOMEBODY IS CONVICTED AFTER HAVING BEEN PROSECUTED OR, FOR

19   EXAMPLE, EVEN IN A CIVIL CASE, IF ONE WERE TO LOSE A CLAIM

20   BEFORE A JURY, THAT'S PRESUMPTIVELY PROBABLE CAUSE THAT THE

21   CLAIM HAD VALIDITY TO IT, EVEN THOUGH SUBSEQUENTLY, IT WAS

22   REVERSED ON APPEAL.  AND THAT'S THE KIND OF THING WE'RE TALKING

23   ABOUT.  IF YOU PREVAIL AT A FINAL ADJUDICATION, THEN PROBABLE

24   CAUSE COULD BE PRESUMED.

25       HERE, THERE'S NEVER BEEN A FINAL ADJUDICATION AGAINST

1    MR. RITCHIE IN ANY FORM, AND THAT IS THE FUNDAMENTAL CHANGE IN

2    THE ALLEGATIONS FROM THE MISINTERPRETED ACTIONS ORIGINALLY.  HE

3    WAS NEVER CONVICTED, AND SO THERE WAS NO PRESUMPTION OF

4    PROBABLE CAUSE BASED ON THE ORIGINAL ALLEGATIONS THAT HE HAD

5    BEEN CONVICTED.  SO THAT'S ONE CHANGE.

6          AND THEN EVEN IF, EVEN IF THERE WERE PROBABLE CAUSE,

7    WE BELIEVE THAT THAT PRESUMPTION IS OVERCOME BY THE ALLEGATIONS

8    THAT ARE PLED IN THE COMPLAINT OF SEMPRA'S CONTINUED COURSE OF

9    CONDUCT AND FALSIFYING RECORDS, PROVIDING FALSE TESTIMONY, AND

10   WITHHOLDING MATERIAL EVIDENCE FROM THE COURTS.  AND THE COURT,

11   JUDGE SAMMARTINO, SHE SUGGESTED IN HER ORDER THAT MR. RITCHIE

12   HAD PRESENTED ALL OF THE FACTS THAT WE NEED NOW PLEAD, HAD

13   PRESENTED ALL THOSE FACTS TO THE COURTS IN MEXICO.  AND

14   ACCORDINGLY, THAT ADJUDICATION COULD NOT BE THE BASIS FOR A

15   MALICIOUS PROSECUTION CLAIM AS WE SET FORTH IN OUR AMENDED

16   COMPLAINT.

17         THERE ARE TWO FACTS THAT MR. RITCHIE DID NOT KNOW BUT

18   SEMPRA DID KNOW AT THE TIME SEMPRA WAS PROVIDING INFORMATION TO

19   THE GOVERNMENT TO TRY TO HAVE MR. RITCHIE PROSECUTED, AND

20   BECAUSE THOSE FACTS WERE NOT KNOWN TO MR. RITCHIE, THEY WERE

21   NOT PRESENTED IN HIS DEFENSE, AS JUDGE SAMMARTINO BELIEVED,

22   ERRONEOUSLY SO, THAT HAD BEEN PRESENTED.

23         *THE COURT:*  AND THAT'S THE ATTEMPT IN 2001 FOR THAT

24   THIRD-PARTY GROUP TO ESTABLISH OWNERSHIP OF THE PROPERTY THAT

25   WAS DENIED, AND THEN AT THE TIME OF THE PURCHASE, THAT ONE OF

1  THOSE MEMBERS OF THAT GROUP ACTUALLY WAS DECEASED AND SO THE

2  POWER OF ATTORNEY WAS EXPIRED --

3       *MR. HULETT:*  PRECISELY.

4       *THE COURT:*  -- AND SO NO SALE COULD BE MADE ON BEHALF

5  OF GROUP.

6       *MR. HULETT:*  CORRECT.  AND SO THOSE FACTS WERE NOT

7  PRESENTED BY MR. RITCHIE IN HIS DEFENSE BACK IN 2006 AND,

8  THEREFORE, COULDN'T HAVE BEEN THE BASIS FOR DENIAL OF THE

9  MALICIOUS PROSECUTION CLAIM.

10       *THE COURT:*  AND YOU'VE ALLEGED THAT SEMPRA WAS AWARE

11  OF BOTH OF THOSE FACTS WHEN THEY ASKED FOR THE CRIMINAL

12  PROSECUTION OF MR. RITCHIE.

13       *MR. HULETT:*  RIGHT.  AND WE'VE ALSO PRESENTED, I

14  THINK, SOME COMPELLING INFORMATION THAT THE TWO KEY

15  INVESTIGATORS IN MEXICO SAID THAT HAD THEY BEEN PRESENTED WITH

16  THIS INFORMATION THAT WE ALLEGE SEMPRA HAD, THAT NOTHING

17  FURTHER WOULD HAVE BEEN DONE AGAINST MR. RITCHIE.

18       *THE COURT:*  OKAY.  I NEED TO UNDERSTAND HOW -- THE

19  ALLEGATION ABOUT THE 2009 PROSECUTION ARE REALLY BARE BONES,

20  AND I DON'T EVEN UNDERSTAND WHAT HAPPENED IN 2009, BUT LET ME

21  LET MR. ZEBROWSKI RESPOND FIRST TO THIS QUESTION.

22       *MR. ZEBROWSKI:*  YES, THANK YOU, YOUR HONOR.  A FEW

23  BULLET POINTS, IF YOU WILL, ON MALICIOUS PROSECUTION.  FIRST, I

24  GO BACK TO *KIRKPATRICK* ON THE ACT OF STATE.  IT SAYS "ACT OF

25  STATE ISSUES ARISE WHEN THE OUTCOME OF THE CASE TURNS UPON THE

1    EFFECT OF OFFICIAL ACTION BY A FOREIGN SOVEREIGN."

2              THAT'S, BY WAY OF BACKGROUND, FOR THE CASE CALLED

3    *NOCULA V. UGS CORPORATION,* WHICH WE CITED.  IT'S 520 F.3D 719.

4    THERE IT WAS A CIVIL CASE AGAINST A CIVIL DEFENDANT ALLEGING

5    MALICIOUS PROSECUTION, AND IT WAS DISMISSED BECAUSE THE

6    DECISION OF A FOREIGN SOVEREIGN TO EXERCISE ITS POLICE POWER

7    THROUGH THE ENFORCEMENT OF ITS CRIMINAL LAWS CLEARLY QUALIFY AS

8    AN ACT OF STATE.  AND THAT'S WHAT WE HAVE HERE.

9              IN ORDER TO COME HERE AND ADJUDICATE WHETHER THERE WAS

10   A MALICIOUS PROSECUTION BY THE CALIFORNIA ATTORNEY GENERAL ONE

11   OR TWO TIMES, ONE WOULD NECESSARILY BE INVADING THE TURF OF THE

12   ACT OF STATE DOCTRINE.  SO WHEN YOU PUT THE *KIRKPATRICK* CASE,

13   AND THAT FOLLOWS A WHOLE LINE OF UNITED STATES SUPREME COURT

14   CASES, THEN YOU APPLY THAT DIRECTLY IN A CIVIL MALICIOUS

15   PROSECUTION CASE BASED ON A FOREIGN MALICIOUS PROSECUTION,

16   THAT'S *NOCULA*, THE CASE IS DISMISSED.  SO THAT'S NO. 1.

17             NO. 2, AND I SHOULD SAY TOO, JUDGE SAMMARTINO NEVER

18   GOT TO THESE ISSUES.  WE BRIEFED THEM, BUT BECAUSE OF THE

19   RULING ON THE CIVIL CODE PRIVILEGE, WE NEVER GOT TO ACT OF

20   STATE AND THE LIKE.

21             SO ONE PROBLEM WITH THE MALICIOUS PROSECUTION CASE IS

22   IT'S BARRED UNDER THE ACT OF STATE DOCTRINE.  THE SECOND

23   PROBLEM IS IT'S BARRED UNDER THE NOERR-PENNINGTON DOCTRINE.

24   NOERR-PENNINGTON IS VERY MUCH AKIN TO THE CIVIL CODE PRIVILEGE,

25   EXCEPT IT DOES NOT HAVE AN EXCEPTION FOR MALICIOUS PROSECUTION

1    CASES.  AND SO WHAT WE HAVE HERE IS ALLEGATIONS THAT WE WENT

2    DOWN AS SEMPRA AND SAID THINGS OR DID THINGS TO MEXICAN

3    PROSECUTORS TO CAUSE THEM TO INSTITUTE CRIMINAL PROSECUTION.

4    THOSE ACTIONS ARE PRIVILEGED UNDER THE NOERR-PENNINGTON

5    DOCTRINE AND CANNOT BE THE BASIS FOR CIVIL LIABILITY.

6         *THE COURT:* EVEN IF THE STATEMENTS WERE KNOWINGLY

7    FALSE?

8         *MR. ZEBROWSKI:* ABSOLUTELY.  AND I CAN CITE SOME OF

9    THE CASES FROM OUR NOERR-PENNINGTON BRIEFING, BUT THAT'S

10   ABSOLUTELY CORRECT.  EVEN THE NOERR-PENNINGTON CASES GO SO FAR

11   AS TO SAY BRIBERY IS NOT ACTIONABLE WHEN IT'S DONE FOR THE

12   PURPOSE OF PETITIONING THE GOVERNMENT TO GET SOMETHING.

13        THEN THE LAST ONE IS A CASE THAT WAS DECIDED, I THINK

14   THAT WAS DECIDED AFTER THE BRIEFING WAS DONE ON THIS MOTION.

15   IT'S CALLED *ROBERTS V. MCAFEE*.  IT'S A NINTH CIRCUIT CASE CITED

16   NOVEMBER 7TH OF 2011.  AND THERE, THEY SAID EVEN A DEFENDANT

17   WHO FABRICATES EVIDENCE STILL ACTS WITH PROBABLE CAUSE IF THE

18   DEFENDANT IS AWARE OF OTHER EVIDENCE WHICH WOULD MAKE IT

19   OBJECTIVELY REASONABLE TO SUSPECT THE PLAINTIFF'S GUILT.

20        AND SO THE MERE FACT, EVEN IF YOU ASSUME THE

21   CORRECTNESS OF THESE ALLEGATIONS, WE MUST HEAR THAT FALSE

22   EVIDENCE WAS PRESENTED TO A MEXICAN PROSECUTOR, THAT DOES NOT

23   EQUAL MALICIOUS PROSECUTION ON ITS FACE.

24        BUT MORE IMPORTANT REALLY IS THE IDEA THAT THIS

25   MALICIOUS PROSECUTION CLAIM BASED ON PETITIONING THE MEXICAN

1   GOVERNMENT IS BARRED UNDER THE NOERR-PENNINGTON DOCTRINE, AND

2   IN THE FACT THIS HAPPENED IN MEXICO, IT'S ALSO BARRED UNDER THE

3   ACT OF STATE DOCTRINE.

4          *THE COURT:* ALL RIGHT.  THANK YOU.

5          MR. HULETT, ANY RESPONSE TO THAT, AND THEN WOULD YOU

6   PLEASE EXPLAIN THE WHAT HAPPENED IN 2009.

7          *MR. HULETT:* WHAT HAPPENED IN 2009 FROM -- AGAIN,

8   WE'RE GOING BY THE ALLEGATIONS IN THE COMPLAINT, BUT OBVIOUSLY

9   THERE IS ADDITIONAL INFORMATION THAT I DON'T WANT TO MISSTATE

10  IT OR UNDERSTATE IT OR OVERSTATE IT, BUT MY UNDERSTANDING IS,

11  SEMPRA WAS NOT CONTENT TO ABIDE BY THE ADJUDICATIONS OF THE

12  COURT'S FINDING MR. RITCHIE WAS IN LAWFUL POSSESSION, THAT HE

13  WAS NOT A CRIMINAL TRESPASSER, NOT A CRIMINAL IN ANY WAY,

14  SHAPE, OR FORM, WASN'T HAPPY WITH THAT VERDICT AND WENT FORUM

15  SHOPPING ESSENTIALLY AND LOOKED FOR OTHERS WITHIN THE

16  GOVERNMENT OF MEXICO TO TAKE UP THEIR CAUSE AGAINST

17  MR. RITCHIE, WHO WAS OBVIOUSLY WINNING HIS RIGHTS BACK TO

18  POSSESSION, AND IN AN EFFORT THAT WE ALLEGE TO DISABUSE HIM OF

19  HIS RIGHTS, SOUGHT A CRIMINAL PROSECUTION.

20         IN MEXICO, IT'S A BIT DIFFERENT THAN HERE.  ONE

21  INITIATES A CRIMINAL PROSECUTION BY YOUR OWN DECLARATIONS, AND

22  THAT'S APPARENTLY WHAT HAPPENED.  THAT PROSECUTION NEVER

23  MATERIALIZED IN ANY REAL FORM.  MR. RITCHIE DID HAVE TO DEFEND

24  HIMSELF WHEN ARRESTED, APPARENTLY IN RELATION TO THESE CHARGES,

25  BUT WAS EXONERATED WITHOUT MUCH FURTHER ADO AFTER PRESENTING

1  THE EVIDENCE OF PRIOR ORDERS OF THE COURTS.

2        BUT THAT'S WHAT I BELIEVE HAPPENED IN 2009.  IT WAS

3  JUST ANOTHER INSTANCE OF SEMPRA ATTEMPTING TO HARASS AND ANNOY

4  MR. RITCHIE WHO WAS OBVIOUSLY MAKING HEADWAY AGAINST THEIR

5  CASE.

6        WITH RESPECT TO THE MALICIOUS PROSECUTION CLAIM, WE

7  DON'T HAVE TO INTERPRET ANYTHING.  THEY SPECIFICALLY EXCLUDE IT

8  UNDER 47(B).  IT'S NOT A PRIVILEGED ACT.

9        *THE COURT:*  AND THEY'RE NOT ARGUING IT IS.  I'M

10  JUST -- IN 2007 IT'S MY UNDERSTANDING, BASED ON THE PRIOR

11  COMPLAINTS, THERE WAS AN ACTUAL PROSECUTION, THERE'S TRIAL, A

12  LOT OF STUFF HAPPENED.  IN 2009, THERE WAS A COMPLAINT SWORN

13  OUT, BUT THERE WAS NO ACTUAL PROSECUTION, THERE WAS NO -- OR

14  WAS THERE?

15        *MR. HULETT:*  I BELIEVE THERE WAS A HEARING.

16        *THE COURT:*  THERE WAS A HEARING.

17        *MR. HULETT:*  WHERE EVIDENCE WAS PRESENTED.

18        *THE COURT:*  OKAY.

19        *MR. HULETT:*  AND FROM THE WAY IT'S BEEN PRESENTED TO

20  ME, IT WAS MORE OF A SUMMARY PROCEEDING WITH THE PRESENTATION

21  TO THE COURT OF THE PRIOR JUDGMENTS OF THE COURT SAYING MR.

22  RITCHIE WAS LAWFULLY IN POSSESSION, AND WITH THOSE JUDGMENTS,

23  IF YOU WILL, THOSE FINDINGS, THE TRIAL COURT WAS NOT TOO

24  IMPRESSED WITH SEMPRA'S RENEWED ACTIVITIES BASED ON THE SAME

25  FALSE ACCUSATIONS, AND SUMMARILY DISMISSED THE CHARGES.

1           *THE COURT:*  ALMOST AKIN WHO TO WHAT WE WOULD HAVE

2    HERE, A PRELIMINARY HEARING WHERE YOU LOOK AT THE EVIDENCE

3    SUBMITTED.  I HATE TO GO BACK TO THE WORDS "FOR PROBABLE

4    CAUSE," BUT NO BASIS TO GO FORWARD WITH CRIMINAL ACTION.

5           *MR. HULETT:*  THAT'S MY UNDERSTANDING.

6           *THE COURT:*  ALL RIGHT.

7           *MR. ZEBROWSKI:*  MAY I BRIEFLY ADDRESS?

8           *THE COURT:*  YES, YOU MAY.

9           *MR. ZEBROWSKI:*  I DON'T KNOW THE MEXICAN SYSTEM, I

10   DON'T KNOW THE AMERICAN CRIMINAL SYSTEM, BUT I DON'T THINK HERE

11   YOU CAN APPEAL FROM A PRELIMINARY HEARING AS A DETERMINATION

12   NOT TO PROSECUTE.  THERE WAS AN APPEAL DOWN THERE.  IT WENT

13   DOWN FOR ANOTHER YEAR AND A HALF OR SO.

14          *THE COURT:*  ON THE 2009?

15          *MR. ZEBROWSKI:*  YES.  IF YOU LOOK AT PARAGRAPH 31 OF

16   THE COMPLAINT AND GOING OVER INTO PARAGRAPH 32 OF THE SECOND

17   AMENDED COMPLAINT, PARAGRAPH 31 SAYS "LATER IN 2009, THE

18   ATTORNEY GENERAL INSTITUTED A SECOND CRIMINAL PROSECUTION."

19          *THE COURT:*  UM-HMM.

20          *MR. ZEBROWSKI:*  ON THE BOTTOM OF LINE 28, THERE IT

21   SAYS "THE TRIAL COURT REJECTED."  AT THE TOP OF 11, IT SAYS

22   "SEMPRA CAUSED AN APPEAL OF THAT RULING."  AND THEN PARAGRAPH

23   32 SAYS IN MARCH OF 2010, IT WAS AFFIRMED.  AND THEN YOU READ

24   ON TO MAY 24, THE ORDERS ISSUED MAY 25, THE PROPERTY IS

25   RETURNED FOLLOWING THAT APPEAL.  SO I DON'T KNOW THE NATURE OF

1   THE PROCEEDING DOWN THERE, BUT I JUST POINT OUT THAT THERE WAS

2   AN APPEAL THAT STRETCHED OUT.

3            *THE COURT:*  ALL RIGHT.

4            *MR. ZEBROWSKI:*  THE ONLY OTHER THING, YOUR HONOR, IS

5   IF ANY PART OF THIS CASE SURVIVES TODAY IN THE MOTION TO

6   DISMISS, WE HAVEN'T TALKED ABOUT THE MOTION TO SEAL.  I WOULD

7   JUST ASK THE COURT CONSIDER RELEASING ANYTHING THAT WAS

8   SUBMITTED THAT IS NOT, IN FACT, SUBJECT TO WORK PRODUCT

9   PRIVILEGE IF THIS CASE GOES FORWARD, SO I KNOW WHERE THE FILING

10  IS.

11           *THE COURT:*  THANK YOU.  LET'S GO BACK TO WHAT MY

12  ORIGINAL QUESTION WAS, BECAUSE WE WENT ALL THE WAY AROUND IT ON

13  THE MALICIOUS PROSECUTION ISSUE, THE QUESTION OF WHETHER THE

14  PLAINTIFF HAS TO PLEAD THE ELEMENT OF THE LACK OF PROBABLE

15  CAUSE THAT THE DEFENDANT LACKED IT OR THAT THE PROSECUTION

16  LACKED IT.

17           *MR. ZEBROWSKI:*  YOU KNOW, IT'S INTERESTING BECAUSE *THE*

18  *NOCULA* CASE BASICALLY SAYS, AS I UNDERSTAND IT, YOU NEED TO

19  PROVE THAT THERE WAS A LACK OF PROBABLE CAUSE FOR THE

20  PROSECUTION BY THE ATTORNEY GENERAL, BECAUSE *NOCULA* SAYS THAT

21  IS AN ACT OF STATE PROBLEM.  SO IT'S NOT A MATTER OF PUTTING

22  THIS DEFENDANT ON THE WITNESS STAND UP HERE AND SAYING, WHAT

23  DID YOU THINK?  BECAUSE IT'S NOT A CIVIL CASE.  IT'S NOT

24  MALICIOUS PROSECUTION OF A CIVIL CASE.

25           IT IS MALICIOUS PROSECUTION OF A CRIMINAL CASE BY A

1  MEXICAN PROSECUTOR, AND THE QUESTION IS, WHY DID THAT PERSON DO

2  THAT, WHAT INFORMATION DID THAT PERSON HAVE TO RELY ON.  IT'S

3  ALLEGED THAT HE RELIED ON SEMPRA.  WE DON'T KNOW WHAT HE

4  ACTUALLY RELIED ON AND WHAT HE ACTUALLY KNEW, SO THAT STARTS TO

5  ACTIVATE THE *ROBERTS V. MCAFEE* ISSUE ON MALICIOUS PROSECUTION

6  ALONE.

7          BUT MORE IMPORTANT, IT BUMPS STRAIGHT INTO THE ACT OF

8  STATE DOCTRINE UNDER THIS *NOCULA V. UGS* COURT, BECAUSE THERE

9  WAS A CIVIL CASE AGAINST THE CIVIL COMPLAINANT IN THE

10  UNDERLYING CRIMINAL MATTER, AND THEY SAID, WELL, WAIT A MINUTE,

11  TO ADJUDICATE THIS CRIMINAL MALICIOUS PROSECUTION CASE IN A

12  FOREIGN COUNTRY, WE'RE GOING TO HAVE TO LOOK AT WHAT THAT

13  PROSECUTOR HAD IN MIND, AND WE CAN'T DO THAT UNDER THE ACT OF

14  STATE DOCTRINE.

15          *THE COURT:*  THANK YOU.

16          DO YOU HAVE ANYTHING YOU WANT TO ADD?

17          *MR. HULETT:*  I APOLOGIZE FOR NOT ANSWERING YOUR

18  QUESTION DIRECTLY.  IT'S IF THE PROBABLE CAUSE ISSUE -- WHETHER

19  OR NOT DEFENDANT IN A MALICIOUS PROSECUTION CLAIM HAD PROBABLE

20  CAUSE TO MAKE THE ACCUSATIONS THAT IT MADE, IT'S NOT WHETHER

21  THE GOVERNMENT HAD PROBABLE CAUSE TO MAKE AN ARREST FOR

22  PROBABLE CAUSE TO DO ANYTHING.  IF THE DEFENDANT SEMPRA MAKES

23  WILDLY INACCURATE ACCUSATIONS THAT LATER PROVE TO BE NOT TRUE,

24  THEY CAN RELY UPON A PROBABLE CAUSE DOCTRINE TO SAY, WE HAD

25  PROBABLE CAUSE TO MAKE THE ALLEGATIONS IF THERE WAS AN

1   ADJUDICATION OF SOME SORT IN THEIR FAVOR.  AND THAT'S WHAT THE

2   PROBABLE CAUSE STATES, AND THAT THEY HAVEN'T BEEN ABLE TO

3   SUSTAIN.

4         *THE COURT:*  ALL RIGHT.  THANK YOU.  ON THE MOTION TO

5   SEAL, THE COURT REVIEWED THE DOCUMENTS, AND IN LIGHT OF BOTH

6   THE CONTENT OF THE COMPLAINT AND THE CONTENT OF THE ACTUAL

7   MOTION PAPERS SUBMITTED BY THE PLAINTIFF IN OPPOSITION TO THE

8   RULE 11 SANCTIONS, I'VE LOOKED AT THE CONTENT OF WHAT YOU'VE

9   ASKED TO THE COURT CONSIDER IN CAMERA, AND THERE DOESN'T APPEAR

10  TO BE WORK PRODUCT THERE, AND THE BULK OF THE ACTUAL

11  SIGNIFICANT PORTIONS OF IT ARE DISCLOSED IN BOTH YOUR PAPERS

12  AND IN THE PLEADINGS, AND, THEREFORE, THE COURT WILL DENY THE

13  MOTION TO SEAL AND REQUEST THAT THOSE MATERIALS BE MADE

14  AVAILABLE TO THE DEFENDANTS.

15        *MR. HULETT:*  I RESPECT THAT DECISION.  I'M NOT GOING

16  TO ARGUE ABOUT THAT, BUT THERE ARE STATEMENTS MADE IN MY

17  DECLARATION THAT WERE COMMUNICATED TO ME DIRECTLY FROM MY

18  CLIENT AND FROM WITNESSES THAT WERE NOT PART OF THE DOCUMENTS

19  SUBMITTED.

20        *THE COURT:*  WELL, YOU'VE ALLUDED TO THEM BOTH HERE IN

21  COURT NOW AND RELIED ON THEM IN YOUR OPPOSITION THAT THE

22  DECLARATION REGARDING THE COMMENTS MADE THAT THE STATEMENTS

23  THAT WERE TAKEN UNDER OATH BY THE MEXICAN OFFICIALS SAYING THEY

24  WOULD NOT GO FORWARD HAD THEY KNOWN, AND THAT'S THE BASIS OF

25  IT.  SO IF YOU WANT TO PRODUCE THAT.  IF THERE'S OTHER PARTS OF

1    THAT THAT YOU THINK WERE NOT DISCLOSED, YOU CAN REDACT THOSE.

2          *MR. HULETT:*  I UNDERSTAND THERE'S A PARAGRAPH

3    SPECIFICALLY WHERE MY CLIENT TELLS ME WHAT HAPPENED IN A

4    PARTICULAR MEETING WHERE SEMPRA OFFICIALS TELL HIM HOW MUCH

5    THEY NEED THE PROPERTY AND WHATNOT.  AND, YOU KNOW, OBVIOUSLY

6    WHEN HIS DEPOSITION IS TAKEN IN THIS CASE, HE'LL BE OBLIGATED

7    TO TESTIFY ABOUT THOSE MATTERS.  BUT AS IT STANDS NOW, YOU

8    KNOW, AND THE RULE 11 MOTION, WHICH HAS BEEN DENIED, CLEARLY IT

9    IS SUBTERFUGE TO FIND OUT WHAT WE KNOW AND WHAT KIND OF

10   INVESTIGATION WE'VE COMPLETED AND WHAT KIND OF THINGS MY CLIENT

11   MAY OR MAY NOT KNOW THAT SEMPRA ALREADY KNOWS BUT THEY DIDN'T

12   KNOW THAT WE KNEW.  AND WE HAVEN'T BEEN ABLE TO GET ANY

13   DISCOVERY.  AND THAT'S ALL SEMPRA WAS TRYING TO DO BY THIS RULE

14   11 MOTION.

15          AND FOR THAT REASON AND FOR THE REASONS SET FORTH IN

16   RULE 11, WHICH SPECIFICALLY PROVIDE FOR A AN IN CAMERA

17   INSPECTION TO BE IN LIEU OF.  SO PRODUCING THE EXHIBITS, I

18   WOULD NOT OBJECT TO, BUT PRODUCING TO THEM THE INTERVIEW NOTES

19   AS WELL AS COMMENTARY FROM MY CLIENT, I DO OBJECT TO.

20          *THE COURT:*  YOU GAVE ME A DECLARATION THAT ATTACHES

21   SIX EXHIBITS.

22          *MR. HULETT:*  CORRECT.

23          *THE COURT:*  AND NONE OF THESE EXHIBITS, WITH POSSIBLY

24   THE EXCEPTION OF THE INTERVIEW, ARE WORK PRODUCT.  THEY'RE --

25          *MR. HULETT:*  I AGREE.

1          *THE COURT:* -- JUST DOCUMENTS.

2          *MR. HULETT:* I AGREE.

3          *THE COURT:* AND THEY'RE PUBLICLY AVAILABLE DOCUMENTS.

4     AND, IN FACT, MOST OF THEM ARE SEMPRA'S DOCUMENTS.  AND YOU

5     HAVE ASKED THE COURT TO CONSIDER AND RELY ON THEM, AND I THINK

6     SEMPRA IS ENTITLED TO KNOW SINCE IT'S NOT YOUR WORK PRODUCT,

7     YOUR CONCLUSIONS, THOUGHTS, AND STRATEGY, THEIR OWN DOCUMENTS

8     THAT YOU ASK THE COURT TO CONSIDER.  SO AT LEAST WITH REGARD TO

9     EXHIBIT A, B, C, D, WHICH WAS YOUR LETTER TO MR. ZEBROWSKI, AND

10    F, THOSE DOCUMENTS SHOULD ALL BE PRODUCED TO SEMPRA.

11          NOW WITH REGARD TO E, WHICH WAS THAT TRANSCRIPT, YOU

12    CAN PRODUCE JUST THE SECTION HIGHLIGHTED FOR THE COURT TO

13    CONSIDER, BECAUSE I DIDN'T READ THE WHOLE THING, I READ THE

14    HIGHLIGHTED SECTIONS.  AND IF THERE IS SOMETHING ELSE IN THERE

15    THAT GOES TO YOUR ASSESSMENTS OF THE CASE AND STRATEGY AND,

16    THAT IS, AN INTERVIEW THAT WAS DONE THAT WOULD STILL

17    CONSTITUTE, I THINK AT THIS POINT IN TIME, WORK PRODUCT, THEN

18    YOU CAN JUST GIVE THEM THE HIGHLIGHTED SECTION ON EXHIBIT E,

19    AND THEN YOU'LL HAVE EVERYTHING THE COURT CONSIDERED.

20          *MR. ZEBROWSKI:* YES, YOUR HONOR.  WITH RESPECT TO THE

21    DECLARATION, I WOULD LIKE TO HAVE THAT.  I DON'T MIND IF THE

22    PARAGRAPH THAT RECITES WHAT COUNSEL WAS TOLD BY HIS CLIENT IS

23    REDACTED, BUT I WOULD LIKE TO HAVE THE REST OF THE DECLARATION.

24          *THE COURT:* YOU'LL GET IT WHEN YOU DO YOUR RULE 26

25    DISCLOSURE.  YOU HAVEN'T DONE THEM YET.  BUT MEANWHILE, YOU'LL

```
 1    JUST GET THE PART THE COURT CONSIDERED.

 2              MR. ZEBROWSKI:  THANK YOU.

 3              THE COURT:  OKAY.  THE MOTION FOR SANCTIONS IS DENIED.

 4              THE MOTION FOR PUTTING THE DOCUMENTS UNDER SEAL IS

 5    DENIED WITH THE EXCEPTION OF EXHIBIT E, WHICH IS TO BE PRODUCED

 6    PARTIALLY.

 7              AND THE MOTION TO DISMISS IS UNDER SUBMISSION, AND WE

 8    HOPE TO GET YOUR DECISION SHORTLY.  THANK YOU.

 9              MR. HULETT:  THANK YOU SO MUCH, YOUR HONOR, FOR YOUR

10    TIME.

11              MR. ZEBROWSKI:  THANK YOU.

12         (COURT IN RECESS AT 3:44 P.M.)

13    ***  END OF REQUESTED TRANSCRIPT ***

14                              -OOO-

15                 C E R T I F I C A T I O N

16              I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
      AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
17    DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
      TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
18    ON MARCH 16, 2012; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT
      TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT
19    USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE
      UNITED STATES JUDICIAL CONFERENCE.
20    DATE:  JULY 15, 2014, AT SAN DIEGO, CALIFORNIA.

21                              S/MAURALEE A. RAMIREZ

22                              MAURALEE A. RAMIREZ
                                OFFICIAL COURT REPORTER
23                              RPR, CSR NO. 11674

24

25
```